1 | Michael Partos, State Bar No. 143845
  | mpartos@cozen.com
2 | COZEN O'CONNOR
3 | 601 South Figueroa Street, Suite 3700
  | Los Angeles, California 90017
4 | Telephone:    213.892.7900,
  | Facsimile:    213.892.7999
5 | Attorneys for Defendants USPlabs, LLC, USPlabs Jack3d, LLC, USPlabs OxyElite, LLC,
6 | USPlabs Holding, LLC, Jonathan Vincent Doyle and Jacob Geissler

FILED
CLERK, U.S. DISTRICT COURT

JAN 2 7 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

CV14-00620-SJO(JCGx)

JUSTIN CAROLYNE, TIMOTHY
HEPWORTH, MARCUS HARKINS, DEREK
MITCHELL, BYRON NUTHALL, MICHAEL
GARCIA, LAWRENCE SIEGEL, JACINTA
LITTLE, MARK HERSHKOWITZ, BRIAN
WEST, WILLIAM JETTON, JULIAN
LOPEZ, LIAM JAKACKI, TROY HIXON,
KYRIE TERRY, STEVEN MILAZZO, and
SARAH LECHNER on behalf of and as
Representative for MARC LECHNER,

    Plaintiffs,

v.

USPLABS, LLC, JONATHAN VINCENT
DOYLE (an individual), JACOB GEISSLER
(an individual), USPLABS JACK3D, LLC,
USPLABS OXYELITE, LLC, USPLABS
HOLDING, LLC, GNC CORPORATION,
THE VITAMIN SHOPPE, VITAMIN
SHOPPE INDUSTRIES INC,
BODYBUILDING.COM, LLC, SUPER
SUPPLEMENTS, INC., MAX MUSCLE
MARKETING, INC., RITE AID
CORPORATION, NATURAL ALTERNATIVES
INTERNATIONAL, INC.
and DOES 1-500, Inclusive,

    Defendants.

CASE NO.

(Los Angeles Superior Court
Case No. BC508212)

**DEFENDANTS' NOTICE OF
REMOVAL PURSUANT TO
28 U.S.C. §§ 1331, 1332, 1441,
1453 and 1446.**

**[MASS ACTION AND]
FEDERAL QUESTION]
[Table of Contents
Attached Pursuant to L.R. 11-8]**

**Magistrate:**

**Judge:**

1

NOTICE OF REMOVAL

1  Michael Partos, State Bar No. 143845
   mpartos@cozen.com
2  COZEN O'CONNOR
   601 South Figueroa Street, Suite 3700
3  Los Angeles, California 90017
   Telephone:    213.892.7900,
4  Facsimile:    213.892.7999
5  Attorneys for Defendants USPlabs, LLC, USPlabs Jack3d, LLC, USPlabs OxyElite, LLC,
   USPlabs Holding, LLC, Jonathan Vincent Doyle and Jacob Geissler
6

7                    UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9  JUSTIN CAROLYNE, TIMOTHY           )    CASE NO. _____
   HEPWORTH, MARCUS HARKINS, DEREK    )
10 MITCHELL, BYRON NUTHALL, MICHAEL   )    (Los Angeles Superior Court
   GARCIA, LAWRENCE SIEGEL, JACINTA   )    Case No. BC508212)
11 LITTLE, MARK HERSHKOWITZ, BRIAN    )
   WEST, WILLIAM JETTON, JULIAN       )
12 LOPEZ, LIAM JAKACKI, TROY HIXON,   )
13 KYRIE TERRY, STEVEN MILAZZO, and   )
   SARAH LECHNER on behalf of and as  )
14 Representative for MARC LECHNER,   )
                                      )
15      Plaintiffs,                   )
                                      )
16                                    )    DEFENDANTS' NOTICE OF
   v.                                 )    REMOVAL PURSUANT TO
17                                    )    28 U.S.C. §§ 1331, 1332, 1441,
   USPLABS, LLC, JONATHAN VINCENT     )    1453 and 1446.
18 DOYLE (an individual), JACOB GEISSLER )
   (an individual), USPLABS JACK3D, LLC, )  [MASS ACTION AND]
19 USPLABS OXYELITE, LLC, USPLABS     )    FEDERAL QUESTION]
   HOLDING, LLC, GNC CORPORATION,     )    [Table of Contents
20 THE VITAMIN SHOPPE, VITAMIN        )    Attached Pursuant to L.R. 11-8]
   SHOPPE INDUSTRIES INC,             )
21 BODYBUILDING.COM, LLC, SUPER       )    Magistrate:
22 SUPPLEMENTS, INC., MAX MUSCLE      )
   MARKETING, INC., RITE AID          )    Judge:
23 CORPORATION, NATURAL ALTERNATIVES  )
   INTERNATIONAL, INC.                )
24 and DOES 1-500, Inclusive,         )
25                                    )
        Defendants.                   )
26 _____)

27

28                            1

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL PARTIES:**

### DEFENDANTS' NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendants USPlabs, LLC, Jonathan Doyle, Jacob Geissler, USPlabs Jack3d, LLC, USPlabs Holding, LLC and USPlabs OxyElite, LLC ("USPlabs Defendants"), pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1453, and 1446, remove to this Court the state action described below, which is within the original jurisdiction of this Court and properly removed under those statutes. Pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal are being served upon counsel for Plaintiffs Justin Carolyne, Timothy Hepworth, Marcus Harkins, Derek Mitchell, Byron Nuthall, Michael Garcia, Lawrence Siegel, Jacinta Little, Mark Hershkowitz, Brian West, William Jetton, Julian Lopez, Liam Jakacki, Troy Hixon, Kyrie Terry, Steven Milazzo, and Sarah Lechner  ("Plaintiffs") and filed with the Clerk of the California Superior Court for the County of Los Angeles, as an exhibit to a Notice of State Court Removal to Federal Court. A copy of the Notice being filed in state court is attached hereto as Exhibit A. In support of this action, the USPlabs Defendants state as follows:

2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................4

I.    PROCEDURAL    HISTORY    AND    TIMELINESS    OF    REMOVAL
..................................................................................6

    A.  Plaintiffs' initial pleading did not establish removability.........................6

    B.  Plaintiffs' December 27, 2013 "Notice of Claims" is "Other Paper" that
        established removability.................................................7

II.   REMOVAL IS PROPER BECAUSE THE COMPLAINT IS A MASS ACTION UNDER THE CLASS
    ACTION FAIRNESS ACT OF 2005..........................................10

    A.  The amount in controversy exceeds $5 million.................................11

    B.  All plaintiffs' claims exceed $75,000.........................................13

    C.  Minimal diversity exists among the parties.....................................14

    D.  Plaintiffs propose joint trial on grounds that their claims involve common
        questions of law and fact..............................................15

    E.  Plaintiffs' fraudulent attempt to thwart CAFA does not deprive this court of
        jurisdiction...........................................................16

III.  A  NECESSARY  AND  SUBSTANTIAL  FEDERAL  QUESTION  IS  EMBEDDED  WITHIN
    PLAINTIFFS' STATE-LAW CLAIMS.........................................20

IV.   CONCLUSION.......................................................24

NOTICE OF REMOVAL

## TABLE OF AUTHORITIES

### CASES

*Atwell v. Boston Scientific Corp.*

  2013 WL 6050762 (8th Cir. Nov. 18, 2013)..................................................15

*Avans v. Foster Wheeler Const. Co.*

  2010 WL 3153972 (E.D. Cal. Aug. 6, 2010).............................................  8

*Babasa v. LensCrafters, Inc.*

  498 F.3d 972 (9th Cir. 2007).....................................................7,8

*Bates v. Gen. Nutrition Centers, Inc.*

  897 F. Supp. 2d 1000 (C.D. Cal. 2012)........................................14

*Freeman v. Blue Ridge Paper Products, Inc.*

  551 F.3d 405 (6th Cir. 2008).................................................18

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*

  545 U.S. 308 (2005)..........................................................23

*Hamilton v. Burlington N. Santa Fe Ry. Co.*

  2008 WL 8148619 (W.D. Tex. Aug. 8, 2008)...................................19

*Harris v. Bankers Life & Cas. Co.*

  425 F.3d 689 (9th Cir. 2005).................................................7

*Kearns v. Ford Motor Co.*

  2005 WL 3967998 (C.D.Cal. 2005)...........................................14

*Koral v. Boeing Co.*

  628 F.3d 945 (7th Cir. 2011)................................................14

*Lewis v. Verizon Commc'ns, Inc.*

  627 F.3d 395 (9th Cir. 2010) ...............................................11

4

*Mariners Hosp. v. Neighborhood Health Partnership, Inc.*

    2004 WL 3201003 (S.D. Fla. 2004)................................................................8, 9

*Mireles v. Wells Fargo Bank, N.A.*

    845 F. Supp. 2d 1034 (C.D. Cal. 2012) ........................................................11, 12

*Molina v. Lexmark Int'l, Inc.*

    2008 WL 4447678 (C.D. Cal. Sept. 30, 2008)......................................................8

*Rentz v. McKesson Corp.*

    2013 WL 645634 (C.D. Cal. Feb. 20, 2013)......................................................10

*Westwood Apex v. Contreras*

    644 F.3d 799 (9th Cir. 2011)...............................................................................9

**STATUTES**

21 U.S.C. § 301, et seq. (FDCA and DSHEA)...........................................17,18

28 U.S.C. § 1331................................................................................................1,20

28 U.S.C. § 1332................................................................................1,9,10,11,20

28 U.S.C. § 1441...........................................................................................1,2,9,20

28 U.S.C. § 1453..............................................................................................1,9,20

28 U.S.C. § 1446.........................................................................................1,7,8,9,20

28 U.S.C. § 1711.................................................................................................6,14

**OTHER AUTHORITIES**

S. Rep. 109-14....................................................................................................15

S. Rep. 109-15....................................................................................................14

NOTICE OF REMOVAL

# I.    PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

## A.    PLAINTIFFS' INITIAL PLEADING

## DID NOT ESTABLISH REMOVABILITY

1.    On May 8, 2013, Plaintiffs filed a mass Complaint For Damages And Demand For Jury Trial captioned *Justin Carolyne et a. v. USPlabs, LLC et al.*, Case No. BC508212, against the USPlabs Defendants in the California Superior Court for the County of Los Angeles ("First State Court Action"). A true and correct copy of the Complaint is attached hereto as Exhibit B.

2.    On November 1, 2013, Plaintiffs' counsel filed another mass Complaint For Damages And Demand For Jury Trial captioned *Jeremy Reed et al. v USPlabs, LLC et al.*, Case No. 37-2013-00074052, against the USPlabs Defendants in the California Superior Court for the County of San Diego ("Second State Court Action"). A true and correct copy of the Complaint is attached hereto as Exhibit C. The USPlabs Defendants timely removed the Second State Court Action on December 20, 2013.

3.    Also on November 1, 2013, Plaintiffs' counsel filed a "Notice of Related Case" in the Second State Court Action. The notice asserts that the First State Court Action is related to the Second State Court Action; according to the form, it is related because it "involves the same parties and is based on the same or similar claims" and "arises from the same or substantially identical transactions, incidents, or events

6

requiring the determination of the same or substantially identical questions of law or fact." A true and correct copy of the "Notice of Related Case" is attached hereto as Exhibit D.

4.     The First State Court Action asserted state-law claims on behalf of 17 plaintiffs against defendants from whom their complete diversity was lacking. The First State Court Action also did not allege an amount in controversy. Consequently, Plaintiffs' initial pleading did not establish that the case was removable.

## B.     PLAINTIFFS' DECEMBER 27, 2013 "NOTICE OF CLAIMS" IS "OTHER PAPER" THAT ESTABLISHED REMOVABILITY

5.     On December 27, 2013, Plaintiffs' counsel sent a "Notice of Claims" to the USPlabs Defendants by Federal Express, detailing the additional claims of 119 persons and listing an estimate of each claim's value. The total of the 119 claims' estimated value is $862 million. A true and correct copy of the "Notice of Claims" is attached hereto as Exhibit E.

6.     This Notice of Removal is filed within 30 days of the USPlabs Defendants' receipt of "other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also Babasa v. LensCrafters, Inc.*, 498 F.3d 972 (9th Cir. 2007); *Avans v. Foster Wheeler Const. Co.*, 2010 WL 3153972 (E.D. Cal. Aug. 6, 2010).

7.    As explained by the Ninth Circuit, a case is not removable when the defendant receives an initial pleading if no ground for removal is evident in that pleading. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). In such case, the notice of removal may be filed within thirty days after the defendant receives "an amended pleading, motion, order or other paper" from which it can be ascertained from the face of the document that removal is proper. *Id.* (citing 28 U.S.C. § 1446(b)).

8.    The Ninth Circuit held that a letter from counsel containing an estimate of damages may serve as "other paper" in *Babasa v. LensCrafters, Inc.*, 498 F.3d 972 (9th Cir. 2007).  In *Babasa*, the plaintiffs argued that removal was untimely because the notice of removal was filed more than 30 days after defendant received a letter. The court noted that the letter put the defendant on notice that the amount in controversy exceeded the jurisdictional amount, finding that a "settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Id.* at 975 (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.2002));  *see also Molina v. Lexmark Int'l, Inc.*, 2008 WL 4447678 (C.D. Cal. Sept. 30, 2008) (following *Babasa*); *Avans v. Foster Wheeler Const. Co.*, 2010 WL 3153972 (E.D. Cal. Aug. 6, 2010) (finding e-mail correspondence between counsel was an "other paper" from which defendant ascertained the removability of the underlying litigation);  *Mariners Hosp. v. Neighborhood Health Partnership,*

8

*Inc.*, 2004 WL 3201003, *1 -2 (S.D. Fla. 2004) (letter from plaintiff's counsel was "other paper" establishing federal question, making case removable).

9. The "Notice of Claims" contained an estimate of claims from which it can be ascertained that the amount in controversy is satisfied under the Class Action Fairness Act of 2005 ("CAFA"). Moreover, the "Notice of Claims" put defendants on notice that Plaintiffs are pursuing the claims of an additional 119 plaintiffs, thereby exceeding the numerosity requirement of CAFA as well. Consequently, the "Notice of Claims" is "other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

10. Because this Notice of Removal is filed within 30 days of the USPlabs' Defendant's receipt of "other paper," removal is timely.

11. Consent to removal by all defendants is not required under the Class Action Fairness Act of 2005. 28 U.S.C. § 1453(b); *see also Westwood Apex v. Contreras*, 644 F.3d 799, 806 (9th Cir. 2011).

12. True and correct copies of all pleadings, process, orders, and other filings in the State Court Action are attached hereto as Exhibit B as required by 28 U.S.C. § 1446(a).

13. Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the State Court Action has been proceeding is located in this district.

9

## II.    REMOVAL IS PROPER BECAUSE THE COMPLAINT IS A MASS

## ACTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005

14.    Under the Class Action Fairness Act of 2005 ("CAFA"), removal of a "mass action" is proper if the following elements are satisfied:    (1) the amount in controversy exceeds $5 million; (2) there is minimal diversity, meaning at least one plaintiff is diverse from at least one defendant; (3) at least one plaintiff's claim exceeds $75,000; and (4) 100 or more plaintiffs have proposed to try their case jointly on the ground that their claims involve common questions of law and fact. *See Rentz v. McKesson Corp.*, 2013 WL 645634 (C.D. Cal. Feb. 20, 2013).

15.    A "mass action" under CAFA is any action in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. §1332(d)(11).

16.    As more fully explained below, this action satisfies the criteria for removal of a mass action under CAFA.    Because Plaintiffs have engaged in a deliberate, fraudulent attempt to evade this Court's jurisdiction under CAFA, the First State Court Action does not by itself meet the 100-plaintiff procedural requirement for removal under CAFA.    However, the "Notice of Claims" plainly demonstrates that Plaintiffs' counsel intends to prosecute the claims of 119 additional Plaintiffs, either by joining them in the First State Court Action through an amended pleading, joining them to the Second State Court Action, or through the filing of another, separate

10

action or actions.   When the First State Court Action is considered in light of the

"Notice of Claims," it satisfies all criteria for removal under CAFA as a mass action:

The amount in controversy exceeds $5 million, there is minimal diversity, more than

100 plaintiffs are proposed for their claims' joint trial, and several, if not all, of the

Plaintiffs' claims exceed $75,000.    This Court should therefore exercise its

jurisdiction consistent with the spirit and purpose of CAFA and removal jurisdiction.

### A.    THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

17.    The First State Court Action does not contain any reference to monetary

amounts and does not quantify the damages sought. *See* Complaint, Exhibit B.

However, Plaintiffs' counsel's "Notice of Claims" lists the estimated value of an

additional 119 claims, which total $862 million. *See* Exhibit E.   The amount in

controversy is an estimate of the total amount in dispute, not a prospective assessment

of defendant's liability. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th

Cir. 2010) (quoting *McPhail v. Deere & Co.,* 529 F.3d 947, 956 (10th Cir.2008) ("The

amount in controversy is not proof of the amount the plaintiff will recover. Rather, it

is an estimate of the amount that will be put at issue in the course of the litigation.")).

Under CAFA, the claims of individual plaintiffs in a mass action are aggregated to

determine the amount in controversy.   28 U.S.C. § 1332(d)(6); *Mireles v. Wells Fargo

Bank, N.A.*, 845 F. Supp. 2d 1034, 1051 (C.D. Cal. 2012) (noting the aggregate

11

amount in controversy for all plaintiffs must exceed $5 million to remove a mass action under CAFA).

18.    Moreover, the "Notice of Claims" places an estimated value on injuries comparable to those allegedly suffered by Plaintiffs in the First State Court Action. For example, the "Notice of Claims" values the claim of Novallie Hill, who allegedly suffered a stroke as a result of ingesting a product manufactured by USPlabs, LLC, at $1 million.  Likewise, the lead named Plaintiff in the First State Court Action, Justin Carolyne, allegedly suffered a stroke as a result of ingesting a product manufactured by USPlabs, LLC.  *See* Complaint, Exhibit B at ¶ 36.  Thus, it is ascertainable from the "Notice of Claims" that the amount sought for Carolyne's alleged injury is $1 million.

19.    As the "Notice of Claims" makes clear, Plaintiffs are seeking at least $1 million for each and every Plaintiff.  The "Notice of Claims" includes a range of values for each claim, from $1 million to $50 million per person.  *See* Exhibit E.  The alleged injuries listed in the "Notice of Claims" are entirely comparable to the injuries allegedly suffered by Plaintiffs in the First State Court Action.    Thus, it is ascertainable that Plaintiffs are seeking at least $17 million in the First State Court Action, or at least $1 million per named Plaintiff.    Additionally, the "Notice of Claims" lists claims with a total value of $862 million, according to Plaintiffs'

12

counsel's own estimate, thus bringing the amount in controversy to at least $879 million. *Id.*

20. Moreover, the First State Court Action seeks punitive and treble damages. *See* Complaint, Exhibit B, ¶¶ 313-322 and Prayer For Relief at ¶(g).

21. Consequently, the amount in controversy here is unquestionably far in excess of $5 million. 28 U.S.C. § 1332(d)(6); *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1051 (C.D. Cal. 2012) (noting the aggregate amount in controversy for all plaintiffs must exceed $5 million to remove a mass action under CAFA).

**B.    ALL PLAINTIFFS' CLAIMS EXCEED $75,000**

22. As previously noted, the First State Court Action does not quantify Plaintiffs' damages or specify any monetary amounts. However, the "Notice of Claims" lists monetary amounts for various injuries, all of which are comparable to the injuries alleged in the First State Court Action. The value estimated for the injuries of every Plaintiff listed in the "Notice of Claims" is at least $1 million, including miscellaneous, unspecified injuries. *See* Exhibit E. Consequently, Plaintiffs have shown that they are seeking at least $1 million for every Plaintiff. As the First State Court Action notes, Plaintiffs are seeking punitive damages and treble damages. *See* Complaint, Exhibit B, ¶¶ 313-322 and Prayer For Relief at ¶(g). Therefore, each Plaintiff seeks damages far in excess of $75,000.

13

## C.    MINIMAL DIVERSITY EXISTS AMONG THE PARTIES

23.    Plaintiffs in the First State Court Action are citizens of 10 states, including Ohio, New Hampshire, Washington, Alabama, California, South Carolina, Florida, New York, New Jersey, and Michigan.  *See* Complaint, Exhibit B at ¶¶ 32-113.

24.    Similarly, Plaintiffs in the Second State Court Action are citizens of 14 states, including California, New Jersey, Utah, Texas, Illinois, North Carolina, Massachusetts, Pennsylvania, Virginia, Hawaii, Florida, Mississippi, Maryland, and Nevada. *See* Complaint, Exhibit C at ¶¶ 26-111.

25.    None of the defendants is in the First State Court Action is a citizen of Ohio, New Hampshire, Alabama, South Carolina, Florida, Michigan, Utah, Illinois, North Carolina, Massachusetts, Virginia, Hawaii, Mississippi, Maryland, or Nevada. *See* Complaint, Exhibit B at ¶¶ 3-26.   The same is true of the defendants in the Second State Court Action. *See* Complaint, Exhibit C at ¶¶ 3-20.

26.    Because at least one plaintiff is diverse from at least one defendant, minimal diversity exists among the parties. *Bates v. Gen. Nutrition Centers, Inc.,* 897 F. Supp. 2d 1000, 1003 (C.D. Cal. 2012) (noting CAFA's minimal diversity requirement is met when at least one plaintiff is diverse from one defendant).

14

**D.    PLAINTIFFS PROPOSE JOINT TRIAL ON GROUNDS THAT THEIR CLAIMS INVOLVE COMMON QUESTIONS OF LAW AND FACT**

27.    The "Notice of Related Case" filed by Plaintiffs' counsel also demonstrates the legal and factual commonality of the First and Second State Court Actions. *See* Exhibit D. As indicated on the form submitted by Plaintiffs' counsel, they contend that the two cases are related because they involve "the same parties and [are] based on the same or similar claims," and they arise "from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact." *Id.*

28.    The "Notice of Claims" sent by Plaintiffs' counsel evidences their intent to try the claims of the additional 119 Plaintiffs jointly. *See* Exhibit E. The letter states Plaintiffs' counsel "represents the following claims for personal injury resulting from USPlabs LLC products." *Id.* Although the letter does not state that the 119 Plaintiffs' claims will be joined with those of the First State Court Action, the similarity of the claims, including the alleged injuries and their alleged cause, along with their grouping together in the "Notice of Claims" and the Plaintiffs' representation by the same law firm, demonstrates an obvious intention to prosecute them together. As the Eighth Circuit has observed, a proposal to try claims jointly can be "implicit." *Atwell v. Boston Scientific Corp.*, 2013 WL 6050762 at *3 (8th Cir. Nov. 18, 2013). The *Atwell* plaintiffs filed three cases in Missouri state court,

15

and the three groups filed similar motions proposing that the state court assign to each group "a single judge for the purposes of discovery and trial." *Id.* at *1. At a hearing, plaintiffs' counsel cited the need to avoid "inconsistent rulings," though he asserted, "We . . . don't want these cases consolidated." *Id.* at *4. The Sixth Circuit said counsel's statements revealed the motions' purpose was a joint assignment in which the inevitable result would be a joint trial. *Id.* at *5. Here, the "Notice of Claims" presents an implicit proposal to try an additional 119 Plaintiffs' claims jointly with those Plaintiffs named in the First State Court Action.

29.    The First and Second State Court Actions contain Plaintiffs' requests for jury trial "on all issues so triable." *See* Complaints at Jury Demand, Exhibits B and C. This request implicitly assumes that the claims of all Plaintiffs in each action will be tried jointly. *See Koral v. Boeing Co.,* 628 F.3d 945, 947 (7th Cir. 2011) (finding a single trial is intended when various plaintiffs' claims are joined in one complaint).

30.    Viewed together, the First State Court Action, the Second State Court Action, the "Notice of Related Case" and the "Notice of Claims" show that the claims of at least 100 Plaintiffs are proposed to be tried jointly, on the grounds that they involve questions of law and fact in common.

E.    **PLAINTIFFS' FRAUDULENT ATTEMPT TO THWART CAFA DOES NOT DEPRIVE THIS COURT OF JURISDICTION**

31.    Splintering the claims of more than 100 plaintiffs into smaller, separate but nearly identical actions violates CAFA's purpose: To expand federal jurisdiction

16

over class actions and mass actions.  *See Kearns v. Ford Motor Co.*  2005 WL 3967998, *7 (C.D.Cal. 2005).  As the Senate Committee Report on CAFA makes clear, CAFA's "provisions should be read broadly, with a strong preference that interstate class [and mass] actions should be heard in federal court is properly removed by any defendants."  S. Rep. No. 109-15, at 34; *see also* 28 U.S.C. § 1711 (CAFA is intended to "restore the intent of the framers of the United States Constitution by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction.").  Here, the First State Court Action involves the claims of 17 Plaintiffs, the Second State Court Action involves the claims of 18 Plaintiffs, and the "Notice of Claims" lists the claims of 119 additional Plaintiffs.  By splitting one mass action that involves 154 or more Plaintiffs into two or more separate actions, Plaintiffs are deliberately and fraudulently attempting to thwart CAFA by pleading around its 100-person requirement.

32.    Plaintiffs' jurisdictional gerrymandering violates the purpose of CAFA's mass action provisions to provide for federal jurisdiction over "class actions in disguise."  S. Rep. 109-14, at 37.  As the Senate Committee Report explains, "[M]ass actions are simply class actions in disguise.  They involve a lot of people who want their claims adjudicated together and they often result in the same abuses as class actions."  S. Rep. 109-14, at 37.

17

33.    The procedural sham in this case is similar to the one faced by the Sixth Circuit in *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008). In *Freeman*, the plaintiffs had divided their nuisance suit against a paper mill into five separate class actions, each limiting their damages to $4.9 million, below CAFA's threshold, and each one covering a distinctly different time period. *See id.* at 406. The court held removal was proper because the plaintiffs "put forth no colorable reason for breaking up the lawsuits in this fashion, other than to avoid federal jurisdiction." *Id.* at 407. "CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction." *Id.* Consequently, the court held that where recovery is expanded by virtue of splintering of lawsuits for no colorable reason, the number of plaintiffs in the splintered lawsuits may be aggregated. *Freeman, 551* at 408.

34.    Just as in *Freeman*, there is no colorable reason here for the splintering of one mass action into several actions, as is evidenced by the First State Court Action, the Second State Court Action, and the "Notice of Claims." The allegations of the First State Court Action mirror those of the Second State Court Action. *Compare* Complaint, Exhibit B, at ¶¶ 118-322, *with* Complaint, Exhibit C, at ¶¶ 116-321. Plaintiffs in the two actions are residents of 21 different states. *Compare* Complaint, Exhibit B at ¶¶ 32-113 *with* Complaint, Exhibit C at ¶¶ 26-111. The defendants in the First and Second State Court Actions are virtually identical. *Compare*

18

NOTICE OF REMOVAL

Complaint, Exhibit B, at ¶¶ 3-26, *with* Complaint, Exhibit C, at ¶¶ 3-20. The only truly distinctive difference between the two actions is the identity of individual Plaintiffs, but both actions have a variety of such diverse residence that no logic in their grouping is discernable. Plainly, these actions could and should have been filed as one mass action, but Plaintiffs splintered the action into separate suits to avoid federal jurisdiction and subvert CAFA.

35.    Just as the Sixth Circuit permitted aggregation under CAFA in *Freeman*, the district court in *Hamilton v. Burlington N. Santa Fe Ry. Co.*, 2008 WL 8148619 (W.D. Tex. Aug. 8, 2008) allowed six separate actions to be aggregated. In *Hamilton*, plaintiffs brought six separate actions in a Texas state court, each with fewer than 100 plaintiffs, and defendants removed under CAFA. *Id.* at *2. Noting precedent that enabled the court to "pierce the pleadings" and examine the true nature of the action, the court upheld removal, holding that "Plaintiff is ordinarily the master of the complaint, but there are limits to a Plaintiff's ability to evade removal jurisdiction through artful pleading." *Id.* at *5. In a footnote, the court added, "[i]n other words, if it looks like a duck, walks like a duck, and quacks like a duck, it surely is not six separate and distinct lawsuits." *Id.* at n. 1.

36.    The same is true here. The First State Court Action, along with the Second State Court Action and "Notice of Claims," looks like, reads like, and is proceeding like *one* mass action. Plaintiffs have attempted to evade this Court's

19

jurisdiction through artful pleading by filing separate lawsuits, but these are not different lawsuits. Plaintiffs are engaged in a scheme to prosecute one mass action in disguise by filing separate but nearly identical lawsuits, each one with a number of plaintiffs fewer than CAFA's threshold of 100. This Court should ignore the procedural sham, pierce the pleadings, and exercise its jurisdiction over this thinly disguised mass action.

### III.   A NECESSARY AND SUBSTANTIAL FEDERAL QUESTION IS EMBEDDED WITHIN PLAINTIFFS' STATE-LAW CLAIMS

37.   On its face, Plaintiff's Complaint asserts various causes of action under state law, including negligence, strict products liability (defective design), strict products liability (failure to warn), breach of express warranty, breach of implied warranty, and unlawful business acts and practices in violation of California Business and Professions Code § 17200. *See* Complaint, Exhibit B, at ¶¶ 180-194, 195-224, 225-254, 255-278, 279-299, 300-312. However, the Complaint also presents a necessary and substantial federal question that forms the basis of those claims, namely whether a substance known as 1,3 Dimethylamylamine ("DMAA") is a safe and lawful component of dietary supplements under federal law.

38.   Although Plaintiffs artfully pleaded their claims to couch them under state law, the Second State Court Action, "Notice of Related Case" and "Notice of Claims" clarify that violations of federal law form the fundamental basis of Plaintiffs' Complaint. Viewed together, these documents demonstrate that

20

Plaintiffs are engaged in a fraudulent scheme to circumvent federal jurisdiction, not only by splitting a mass action into separate suits and thereby thwarting CAFA, but also by having a state court adjudicate a significant and disputed federal issue.

39.    Plaintiffs' claims are premised upon alleged violations of the federal Food Drug & Cosmetic Act (FDCA) and the Dietary Supplement Health and Education Act (DSHEA). *See* Complaint, Exhibit B at ¶ 302 (citing specifically DSHEA, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45(a)(1) (August 2, 1984); Federal Food, Drug and Cosmetic Act §402(f)(1)(A) (21 U.S.C. §342)).

40.    Plaintiffs rely heavily on allegations made by the federal Food and Drug Administration (FDA) and actions taken by the FDA, which give rise to the claims set forth. *See* Complaint, Exhibit B at ¶¶128, 142, 143, 147, 164, 165, 167, 175, 176, 177, 178, 257(g), 265(e), 302, 316, and 318.

41.    All of Plaintiffs' allegations regarding violations of federal law, statements by federal agency officials, actions taken by the FDA, and the federal agency's interpretation of federal regulations, specifically concern DMAA, an ingredient formerly contained in the USPlabs Defendants' products, OxyElite Pro and Jack 3d.  For example, Plaintiffs quote an FDA letter as saying Jack3d and OxyElite are "adulterated" under 21 U.S.C. §§ 342(f)(1)B) and 350(a) because they contain DMAA. *See* Complaint, Exhibit B at ¶176.  Plaintiffs allege that the FDA warned consumers to stop using DMAA products. *Id.* at ¶177.  Plaintiffs also

21

claim FDA considers the products "illegal." *Id.* at ¶316.

42.    Whether DMAA is considered a dietary ingredient within the meaning of FDCA § 201(ff)(1) and DSHEA, an issue disputed by the FDA and the USPlabs Defendants, undergirds every one of Plaintiffs' claims, and the resolution of their claims require construction and interpretation of complex federal regulatory schemes that should be decided by a federal court under federal question jurisdiction.

43.    Because the assertions made by Plaintiffs in the First and Second State Court Actions are so similar, as discussed, and Plaintiffs maintain that the two actions are based on the same allegations through their "Notice of Related Case," their argument regarding this "evidence" applies equally to the First State Court Action.    However, before Plaintiffs can use their "evidence" of purported statements, actions, and events, the validity and legality of the FDA's actions and its interpretation of complex federal regulatory schemes must be decided by a Court.    Such as complex legal analysis and determination should not be left to a state court, as it requires uniform federal determination.

44.    This case satisfies the United States Supreme Court's four-part inquiry set forth in *Grable*, namely whether the federal issue is: (1) necessary, (2) actually disputed and (3) substantial; and (4) whether accepting jurisdiction would be too disruptive on the balance between state and federal judicial responsibilities.    *See*

22

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005).  In *Grable*, the Supreme Court concluded that federal question jurisdiction existed because the actions of the federal government gave rise to the state law claim.  Accordingly, the interpretation of federal law was essential to resolving the state law claim. *Id.* at 314-315.  The same is clearly true here as well.

45.   Plaintiffs' Complaint necessarily implicates federal statutes FDCA and DSHEA because they base allegations of the USPlabs Defendants' wrongful conduct on violations of FDCA, DSHEA, and FDA directives by sales of the subject products.  References to the FDA's interpretation and application of federal laws are pervasive throughout Plaintiffs' Complaint, confirmed in the Second State Court Action, "Notice of Related Case" and "Notice of Claims," and form the foundation of their causes of action.   Disputed issues of federal law must be addressed prior to any determination as to the viability of Plaintiffs' state law claims.  These issues impact not only the USPlabs Defendants but also companies that have sold and marketed dietary supplements.  The FDA's position on these issues pose federal legality questions, as well as create substantial, industry-wide questions.   Finally, whether the USPlabs Defendants violated federal laws, regulations, and directives requires extensive construction and application of the federal scheme at issue and consideration of federal public policy.   This consideration is exclusively a federal judicial responsibility.

23

NOTICE OF REMOVAL

## IV.   **CONCLUSION**

46.   Plaintiffs are attempting to avoid federal jurisdiction through jurisdictional gerrymandering and artful pleading, but consideration of the First and Second State Actions, along with the "Notice of Related Case" and "Notice of Claims" clearly sheds light on that sham.   The two actions, along with the claims of an additional 119 Plaintiffs, are part of one, single mass action over which this Court has jurisdiction under CAFA.

Additionally, resolving the issues in this case necessarily raises a federal question, which provides an additional ground for this court to exercise jurisdiction.   This case does not involve the mere application of a federal standard to a single claim, and its implications will be felt nationwide.   The federal question in this case is peculiar, fact-specific, pervasive, and inextricably linked to Plaintiffs' claims.   It is most properly decided by this Court.

For all the reasons stated above, this action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1441.   Accordingly, this action is removed pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1453, and 1446.

Dated:  January 24, 2014

Respectfully submitted,

By:
Michael Partos
COZEN O'CONNOR

24

601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: 213.892.7900
Facsimile: 213.892.7999
Attorneys for Defendants USPlabs,
LLC, Jonathan Vincent Doyle, Jacob
Geissler, USPlabs Jack3d, LLC, USPlabs
OxyElite, LLC, USPlabs Holding, LLC

25

1   Michael Partos, State Bar No. 143845
    mpartos@cozen.com
2   David Shimkin, State Bar No. 290818
    dshimkin@cozen.com
3   COZEN O'CONNOR
4   601 South Figueroa Street, Suite 3700
    Los Angeles, California 90017
5   Telephone:    213.892.7900
    Facsimile:    213.892.7999
6
7   Attorneys for Defendants USPLabs, LLC, GNC
    Corporation, The Vitamin Shoppe, Inc., Vitamin
8   Shoppe Industries, Inc. and Rite Aid
    Corporation, and Specially-Appearing
9   Defendants USPLabs Jack3d, LLC, USPLabs
    OxyELITE, LLC, USPLabs Holding, LLC,
10  Jonathan Vincent Doyle and Jacob Geissler

11                SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                IN AND FOR THE COUNTY OF LOS ANGELES

13  JUSTIN CAROLYNE, TIMOTHY HEPWORTH,      )   Case No.: BC 508212
    MARCUS HARKINS, DEREK MITCHELL, BYRON   )
14  NUTHALL, MICHAEL GARCIA, LAWRENCE       )   **NOTICE OF REMOVAL**
    SIEGEL, JACINTA LITTLE, MARK            )   **TO FEDERAL COURT**
15  HERSHKOWITZ, BRIAN WEST, WILLIAM        )
    JETTON, JULIAN LOPEZ, LIAM JAKACK1, TROY)   Complaint Filed:  May 8, 2013
16  HIXSON, KYRIE TERRY, STEVEN MILAZZO, and)
    SARAH LECHNER on behalf of and as representative )   Date:  January 24, 2014
17  for MARC LECHNER,                       )   Time:
                                            )   Location: Department 42, Stanley Mosk
18              Plaintiffs,                 )   Courthouse, 111 North Hill Street in Los
    vs.                                     )   Angeles, California
19                                          )
    USPLABS, LLC, JONATHAN VINCENT DOYLE    )   [Assigned for all purposes to the
20  (an individual), JACOB GEISSLER (an individual), )   Honorable Holly E. Kendig, Department
    USPLABS JACK3D, LLC, USPLABS OXYELITE,  )   42 ]
21  LLC, USPLABS HOLDING, LLC, GNC          )
    CORPORATION, THE VITAMIN SHOPPE,        )
22  VITAMIN SHOPPE INDUSTRIES, INC.,        )
    BODYBUILDING.COM, LLC, SUPER            )
23  SUPPLEMENTS, INC., MAX MUSCLE           )
    MARKETING, INC., RITE AID CORPORATION,  )
24  NATURAL ALTERNATIVES INTERNATIONAL,     )
    INC., and DOES 1-500, Inclusive,        )
25                                          )
                Defendants.                 )
26
27
28

                                    1

## NOTICE OF FILING REMOVAL TO FEDERAL COURT

**TO PLAINTIFFS, THEIR COUNSEL OF RECORD AND THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO:**

PLEASE TAKE NOTICE that on January 24, 2014, Defendants USPlabs, LLC, Jonathan Vincent Doyle, Jacob Geissler, USPlabs Jack3d, LLC, and USPlabs OxyElite, LLC filed a Notice of Removal of this action in the United State District Court for the Central District of California. A true and correct copy of said Notice of Removal (without exhibits) is attached hereto as Exhibit A and is served and filed herewith.

PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446, the filing of said Notice affects the removal of this action to the federal court, and this Court is directed to "proceed no further unless and until the case is remanded."

28 U.S.C. § 1446 (d).

DATED:          January 24, 2014          COZEN O'CONNOR

By: _____

Michael Partos
601 S. Figueroa Street
Suite 3700
Los Angeles, CA 90017
Telephone: 213.892.7900
Toll Free Phone: 800.563.1027
Facsimile: 213.892.7999
Attorneys for Defendant(s)
USPlabs, LLC, Jonathan Vincent Doyle, Jacob
Geissle, USPlabs Jack3d, LLC, USPlabs
Oxyelite, LLC, USPlabs Holding, LLC

**EXHIBIT B**

● ORIGINAL ●

A7200
91016

1  Andrews & Thornton
2  2 Corporate Park, Suite 110
   Irvine, California 92606
3  Phone: (949) 748-1000
   Facsimile: (949) 315-3540
4  Anne Andrews, Esq., SBN 103280
   aa@andrewsthornton.com
5  John C. Thornton, Esq., SBN 84492
   jct@andrewsthornton.com
6  Sean Thomas Higgins, Esq., SBN 266888
   shiggins@andrewsthornton.com
7
8  Attorneys for Plaintiffs

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 08 2013

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
(sHaylia Chambers)

D42 Holly Kendig

9            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10              COUNTY OF LOS ANGELES  BC 508212

11  JUSTIN CAROLYNE, TIMOTHY         )  No.
    HEPWORTH, MARCUS HARKINS, DEREK  )
12  MITCHELL, BYRON NUTHALL, MICHAEL )  COMPLAINT FOR DAMAGES AND
    GARCIA, LAWRENCE SIEGEL, JACINTA )
13  LITTLE, MARK HERSHKOWITZ, BRIAN  )  DEMAND FOR JURY TRIAL
    WEST, WILLIAM JETTON, JULIAN     )
14  LOPEZ, LIAM JAKACKI, TROY HIXSON,)     1. Negligence (Against USP)
    KYRIE TERRY, STEVEN MILAZZO, and )     2. Negligence (Against Retailer
15  SARAH LECHNER on behalf of and as)        Defendants)
    representative for MARC LECHNER, )     3. Negligence (Against NAI)
16                                   )     4. Strict Products Liability – Defective
17                                   )        Design (Against USP)
                                     )     5. Strict Products Liability – Defective
18          Plaintiffs,             )        Design (Against Retailer Defendants)
                                     )     6. Strict Products Liability – Defective
19                                   )        Design (Against NAI)
                                     )     7. Strict Products Liability – Failure to
20  v.                               )        Warn (Against USP)
                                     )     8. Strict Products Liability – Failure to
21                                   )        Warn (Against Retailer Defendants)
                                     )     9. Strict Products Liability – Failure to
22                                   )        Warn (Against NAI)
    USPLABS, LLC, JONATHAN VINCENT   )    10. Breach of Express Warranty (Against
23  DOYLE (an individual), JACOB GEISSLER )     USP)
    (an individual), USPLABS JACK3D, LLC, )  11. Beach of Express Warranty (Against
24  USPLABS OXYELITE, LLC, USPLABS   )        GNC)
    HOLDING, LLC, GNC CORPORATION,   )    12. Breach of Express Warranty (Against
25  THE VITAMIN SHOPPE, VITAMIN      )        NAI)
    SHOPPE INDUSTRIES INC.,          )    13. Breach of Implied Warranty (Against
26  BODYBUILDING.COM, LLC, SUPER     )        USP)
    SUPPLEMENTS, INC., MAX MUSCLE    )    14. Breach of Implied Warranty (Against
27  MARKETING, INC., RITE AID        )
28

-------------------------------------
- 1 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

BY FAX

RECEIPT #: CCH53917904S
DATE PAID: 05/08/2013 12:44 PM
PAYMENT RECEIVED: $1,435.00
CARD CASH CHECK:
BC508212 310

$1,435.00  $0.00
$0.00  $0.00

05/08/2013

CORPORATION, NATURAL )
ALTERNATIVES INTERNATIONAL, INC, )
and DOES 1-500, Inclusive, )
)
Defendants. )
)

Retailer Defendants)
15. Breach of Implied Warranty (Against NAI)
16. Unlawful Business Acts and Practices in Violation of California Business and Professions Code §17200 et seq. (Against USP)

Plaintiffs JUSTIN CAROLYNE, TIMOTHY HEPWORTH, MARCUS HARKINS, DEREK MITCHELL, BYRON NUTHALL, MICHAEL GARCIA, LAWRENCE SIEGEL, JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, WILLIAM JETTON, JULIAN LOPEZ, LIAM JAKACKI, TROY HIXSON, KYRIE TERRY, STEVEN MILAZZO, and SARAH LECHNER on behalf of and as representative for MARC LECHNER, (collectively "Plaintiffs") by and through their Attorneys of record, bring this action against Defendants USPLABS, LLC, JONATHAN VINCENT DOYLE (an individual), JACOB GEISSLER (an individual), USPLABS JACK3D, LLC, USPLABS OXYELITE, LLC, USPLABS HOLDING, LLC, GNC CORPORATION, THE VITAMIN SHOPPE, VITAMIN SHOPPE INDUSTRIES INC., BODYBUILDING.COM, LLC, SUPER SUPPLEMENTS, INC., MAX MUSCLE MARKETING, INC., RITE AID CORPORATION, NATURAL ALTERNATIVES INTERNATIONAL, INC., and DOES 1-500, (collectively, "DEFENDANTS"). Plaintiffs allege on information and belief, except for information based on personal knowledge, as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs allege an amount in controversy in excess of the minimal jurisdictional limits of this Court.

2.      Venue is proper since at least one Defendant can be found in this County.

## DEFENDANT PARTIES

**I.    Product Manufacturers**

3.      Defendants USPLABS, LLC, USPLABS JACK3D, LLC, USPLABS OXYELITE, LLC and USPLABS HOLDING, LLC are Wyoming corporations (except as to USPLABS, LLC which is a Texas corporation) headquartered in Dallas, TX and were and are regularly engaged in the business of licensing, manufacturing, formulating, packaging, distributing, and/or selling, either

1  directly or indirectly, through third parties or related entities, non-prescription dietary supplements

2  for sale to, and use by, members of the general public, and as a part of their business, said

3  Defendants,    directly    or    indirectly    were    and    are    engaged    in    the

4  manufacturing/formulating/packaging/distributing/selling of a purported nutritional/dietary

5  supplement under the proprietary, trademarked names "Jack3d" and "OxyELITE Pro" in interstate

6  commerce and in California, which Plaintiffs ingested as alleged herein.

7       4.    Jack3d and OxyELITE contain the ingredient 1,3-dimethylamylamine (also known

8  as, and hereinafter referred to, as "DMAA"), a dangerous sympathomimetic, which can cause

9  adverse cardiovascular events such as heart attack, stroke, heart arrhythmias, heart palpitations,

10  dizziness, cardiac arrest, rhabdomyolysis, loss of consciousness and death as well as other serious

11  adverse effects including liver failure, kidney failure and seizures.

12      5.    Defendants JONATHAN VINCENT DOYLE and JACOB GEISSLER, who live in

13  Denton, TX, are individuals having ownership interest in and executive positions in the USP entities.

14  Upon information and belief, Defendants DOYLE and GEISSLER are shareholders in each of the

15  USP entities, are corporate officers in each of the USP entities, direct and participate in the day to

16  day operations of the USP entities, were responsible for the acts of the USP entities and for all

17  intents and purposes own, operate and act through the USP entities. (USPLABS, LLC, JONATHAN

18  VINCENT DOYLE (an individual), JACOB GEISSLER (an individual), USPLABS JACK3D, LLC,

19  USPLABS OXYELITE, LLC, and USPLABS HOLDING, LLC, are hereinafter collectively referred

20  to as "USP" or "USP DEFENDANTS".)

21      6.    Furthermore, USP DEFENDANTS were at all times alleged herein under the control

22  of their founders and dominant principals, Defendants JONATHAN VINCENT DOYLE and

23  JACOB GEISSLER. The Corporate filing for USPLabs, LLC with the Texas Secretary of State

24  states "The limited liability company is to be managed by managers, the names and addresses of the

25  governing persons are set forth below" wherein GEISSLER and GOYLE are named.

26      7.    At all times herein alleged, each of the acts of the employees, including but not

27  limited to Defendants DOYLE and GEISSLER, were on behalf of, for the benefit of, at the direction

28  of, and at the behest of USP DEFENDANTS and were ratified by said USP DEFENDANTS.

- 3 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Further, each of the acts of the employees, including but not limited to Defendants DOYLE and GEISSLER were done pursuant to and in accordance with corporate policy.

8.   USP DEFENDANTS, and each of them, are engaged in a single enterprise of developing, marketing, and distributing dietary supplements. There exists, and at all times herein alleged, there existed, a unity of interest in ownership between and among USP DEFENDANTS such that any individuality and separateness between and among USP DEFENDANTS has ceased and the individual USP DEFENDANTS are the alter-egos of and agents of each other and exerted control over each other. Adherence to the fiction of the separate existence of the USP DEFENDANTS as entities distinct from each other will permit an abuse of the corporate privilege and would sanction fraud and promote injustice. The alter ego entities were formed for the purpose of selling untested and dangerous dietary supplements, including   Jack3d and OxyELITE, which carried a high risk of causing serious personal injuries, without being responsible to the injured customers.

9.   Additionally the corporate fiction of USP DEFENDANTS, and each of them, were a sham to perpetrate a fraud as herein alleged and to shield GEISSLER, DOYLE and the responsible USP entities from liability for breach of their legal and equitable duties. Adherence to the fiction of the separate existence of the USP DEFENDANTS would promote injustice and result in inequity to Plaintiffs.

10.   At all relevant times, the USP DEFENDANTS were each engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities Jack3d and OxyELITE and/or the Defendants are otherwise responsible as corporate successors for the liabilities of the entities that designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold Jack3d and OxyELITE.

11.   Upon information and belief, at all relevant times, the USP DEFENDANTS were present and doing business in the State of California.

- 4 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

12.    At all relevant times, the USP DEFENDANTS transacted, solicited, and conducted business whether through retail stores or through internet merchants in the State of California and derived substantial revenue from such business.

13.    At all relevant times, the USP DEFENDANTS expected or should have expected that their acts would have consequences within the United States of America and within the State of California.

**II.    Ingredient Manufacturers**

14.    Defendant NATURAL ALTERNATIVES INTERNATIONAL, INC. (hereinafter "NAI"), is a California corporation headquartered in San Marcos, CA and was and is regularly engaged in the business of designing ingredients and/or mixtures, both trademarked and not, used in non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business, said Defendant, directly or indirectly was and is engaged in the designing/formulating/marketing/selling/licensing of an ingredient trademarked under the name CarnoSyn for use in dietary supplements including Jack3d in interstate commerce and in California, which Plaintiffs ingested as alleged herein.

15.    NAI owns the patent and trademark rights to the CarnoSyn contained in the actual Jack3d purchased and ingested by Plaintiffs as alleged herein. CarnoSyn contains beta-alanine, which Defendant advertises/ encourages users to increase the length, workload and intensity of workouts. As a result, persons using products containing CarnoSyn, such as the Jack3d used by Plaintiffs, and engaging in more intense workouts are subject to heightened effects and exacerbation of the sympathomimetic and adverse effects of DMAA. NAI additionally marketed CarnoSyn knowing the ingredient would be used in a product containing sympathomimetics, which when used in conjunction with CarnoSyn during intense workouts would subject consumers to an increased risk from cardiovascular stress. Moreover, CarnoSyn, as a patented ingredient may include as yet undetermined chemicals in addition to beta-alanine contributing to the toxicity of Jack3d. As alleged herein, as a result of exposure to CarnoSyn and DMAA contained in the Jack3d ingested by Plaintiffs, Plaintiffs suffered injuries as alleged herein.

III.    Retailers

16.    Defendant GNC CORPORATION ("GNC") is a Delaware corporation with its principal place of business located in Pittsburgh, Pennsylvania. Defendant GNC conducted regular and sustained business in the State of California and throughout the nation, including the sale of Jack3d and OxyELITE by its retail outlets, affiliates and franchisees. Defendant GNC was regularly engaged in the business of packaging, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business said Defendant sold the Jack3d and OxyELITE purchased by, ingested by and causing harm to Plaintiffs as alleged herein.

17.    At all times herein alleged, each of the acts of the employees of GNC were on behalf of, for the benefit of, at the direction of, and at the behest of GNC and were ratified by GNC. Further, each of the acts of the GNC employees were done pursuant to and in accordance with corporate policy.

18.    Defendants VITAMIN SHOPPE INDUSTRIES INC. and THE VITAMIN SHOPPE ("VITAMIN SHOPPE") are New York corporations with their principal place of business located in North Bergen, New Jersey. Defendants VITAMIN SHOPPE conducted regular and sustained business in the State of California and throughout the nation, including the sale of Jack3d and OxyELITE by their retail outlets, affiliates and franchisees. Defendants VITAMIN SHOPPE were regularly engaged in the business of packaging, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business said Defendants sold the of Jack3d and OxyELITE purchased by, ingested by and causing harm to Plaintiffs as alleged herein.

19.    At all times herein alleged, each of the acts of the employees of VITAMIN SHOPPE were on behalf of, for the benefit of, at the direction of, and at the behest of VITAMIN SHOPPE and were ratified by VITAMIN SHOPPE. Further, each of the acts of the VITAMIN SHOPPE employees were done pursuant to and in accordance with corporate policy.

20.     Defendant BODYBUILDING.COM, LLC ("BODYBUILDING.COM") is a Delaware corporation with its principal place of business located in Pennsylvania. Defendant BODYBUILDING.COM conducted regular and sustained business in the State of California and throughout the nation, including the sale of Jack3d and OxyELITE. It did so through its interactive internet website which directed its advertising and sales to California (and all states) and generated a significant percentage of its sales in California. Defendant BODYBUILDING.COM was regularly engaged in the business of packaging, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business said Defendant sold the Jack3d and OxyELITE purchased by, ingested by and causing harm to Plaintiffs as alleged herein.

21.     At all times herein alleged, each of the acts of the employees of BODYBUILDING.COM were on behalf of, for the benefit of, at the direction of, and at the behest of BODYBUILDING.COM and were ratified by BODYBUILDING.COM. Further, each of the acts of the BODYBUILDING.COM employees were done pursuant to and in accordance with corporate policy.

22.     Defendant SUPER SUPPLEMENTS, INC. ("SUPER SUPPLEMENTS") is a Washington corporation with its principal place of business located in Seattle, Washington. Defendant SUPER SUPPLEMENTS conducted regular and sustained business in the State of California and throughout the nation, including the sale of Jack3d and OxyELITE by its retail outlets, affiliates and franchisees. Defendant SUPER SUPPLEMENTS was regularly engaged in the business of packaging, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business said Defendant sold the Jack3d and OxyELITE purchased by, ingested by and causing harm to Plaintiffs as alleged herein.

23.     At all times herein alleged, each of the acts of the employees of SUPER SUPPLEMENTS were on behalf of, for the benefit of, at the direction of, and at the behest of SUPER SUPPLEMENTS and were ratified by SUPER SUPPLEMENTS. Further, each of the acts of

- 7 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   the SUPER SUPPLEMENTS employees were done pursuant to and in accordance with corporate

2   policy.

3       24.   · Defendant MAX MUSCLE MARKETING, INC. ("MAX MUSCLE") is a California

4   corporation with its principal place of business located in Orange, California. Defendant MAX

5   MUSCLE conducted regular and sustained business in the State of California and throughout the

6   nation, including the sale of Jack3d and OxyELITE by its retail outlets, affiliates and franchisees.

7   Defendant MAX MUSCLE was regularly engaged in the business of packaging, distributing, and/or

8   selling, either directly or indirectly, through third parties or related entities, non-prescription

9   nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part

10   of their business said Defendant sold the Jack3d and OxyELITE purchased by, ingested by and

11   causing harm to Plaintiffs as alleged herein.

12       25.     At all times herein alleged, each of the acts of the employees of MAX MUSCLE were

13   on behalf of, for the benefit of, at the direction of, and at the behest of MAX MUSCLE and were

14   ratified by MAX MUSCLE. Further, each of the acts of the MAX MUSCLE employees were done

15   pursuant to and in accordance with corporate policy.

16       26.     Defendant RITE AID CORPORATION ("RITE AID") is a Delaware corporation

17   with its principal place of business located in Camp Hill, Pennsylvania. Defendant RITE AID

18   conducted regular and sustained business in the State of California and throughout the nation,

19   including the sale of Jack3d and OxyELITE by its retail outlets, affiliates and franchisees.

20   Defendant RITE AID was regularly engaged in the business of packaging, distributing, and/or

21   selling, either directly or indirectly, through third parties or related entities, non-prescription

22   nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part

23   of their business said Defendant sold the Jack3d and OxyELITE purchased by, ingested by and

24   causing harm to Plaintiffs as alleged herein.

25       27.     At all times herein alleged, each of the acts of the employees of RITE AID were on

26   behalf of, for the benefit of, at the direction of, and at the behest of RITE AID and were ratified by

27   RITE AID. Further, each of the acts of the RITE AID employees were done pursuant to and in

28   accordance with corporate policy.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

28.    Defendants GNC, VITAMIN SHOPPE, RITE AID, MAX MUSCLE, BODYBUILDING.COM, and SUPER SUPPLEMENTS are hereinafter collectively referred to as "RETAILER DEFENDANTS."

29.    The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiffs who are therefore ignorant of the true names and sues said Defendants by such fictitious names. Plaintiffs believe and allege that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

30.    At all times hereinafter alleged, "All DEFENDANTS" include all herein named Defendants as well as Defendants DOES 1 through 500, inclusive.

31.    At all times herein alleged, each of the DEFENDANTS was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining DEFENDANTS herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other DEFENDANTS, knowing that their conduct constituted a breach of duty owed to Plaintiffs.

**PLAINTIFF JUSTIN CAROLYNE**

32.    At all relevant times, Plaintiff JUSTIN CAROLYNE was a resident of the State of Ohio.

33.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and GNC made therein in making his decision to purchase Jack3d, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI and GNC. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

34.    From in or about February 2012 until his injury in April 2012, Plaintiff ingested Jack3d purchased from a GNC store in Kent, Ohio.

35.    At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

36.    On or about April 14, 2012, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, containing CarnoSyn designed by NAI, and sold by GNC, Plaintiff suffered stroke and related injuries.

### PLAINTIFF TIMOTHY HEPWORTH

37.    At all relevant times, TIMOTHY HEPWORTH was a resident of the State of New Hampshire.

38.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and VITAMIN SHOPPE made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI and VITAMIN SHOPPE. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

39.    In or about October 2011 until his injury in December 2011, Plaintiff ingested Jack3d purchased from a VITAMIN SHOPPE store in Manchester, New Hampshire.

40.    At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

41.    On or about December 13, 2011, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by VITAMIN SHOPPE, Plaintiff suffered kidney failure, liver failure and related injuries.

### PLAINTIFF MARCUS HARKINS

42.    At all relevant times, Plaintiff MARCUS HARKINS was a resident of the State of Washington.

43.     Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and SUPER SUPPLEMENTS made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI and SUPER SUPPLEMENTS. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

44.     In or about April 2010 until his injury in May 2010, Plaintiff ingested Jack3d purchased from a SUPER SUPPLEMENTS store in Lynnwood, Washington.

45.     At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

46.     On or about May 14, 2010, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by SUPER SUPPLEMENTS, Plaintiff suffered multiple seizures, loss of consciousness and related injuries.

### PLAINTIFF DEREK MITCHELL

47.     At all relevant times, Plaintiff DEREK MITCHELL was a resident of the State of Alabama.

48.     Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and GNC made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI and GNC. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

49.     In or about November 2011 until his injury in December 2011, Plaintiff ingested Jack3d purchased from a GNC store in Dekalb County, Alabama.

50.     At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

1    51.    On or about December 5, 2011, after taking the recommended dosing of and as a

2  result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by

3  GNC, Plaintiff suffered stroke, seizure and related injuries.

4                          **PLAINTIFF BYRON NUTHALL**

5    52.    At all relevant times, Plaintiff BYRON NUTHALL was a resident of the State of

6  California.

7    53.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of

8  Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI, GNC

9  and RITE AID made therein in making his decision to purchase Jack3d with CarnoSyn, believing it

10  would be safe and effective for its advertised use and relying on the expertise of USP, NAI, GNC

11  and RITE AID. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and

12  that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it

13  and would not have used it.

14    54.    In or about May 2011 until his injury in January 2012, Plaintiff ingested purchased

15  from a RITE AID/GNC store in Hesperia, California.

16    55.    At no time did Plaintiff take more than the recommended dosing regimen contained in

17  Jack3d.

18    56.    On or about January 14, 2012, after taking the recommended dosing of and as a result

19  of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by RITE

20  AID/GNC, Plaintiff suffered atrial fibrillation requiring cardioversion and related injuries.

21                          **PLAINTIFF MICHAEL GARCIA**

22    57.    Plaintiff MICHAEL GARCIA is currently a resident of the State of Florida. At the

23  time of his injury MICHAEL GARCIA was a resident of the State of South Carolina.

24    58.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of

25  Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and

26  VITAMIN SHOPPE made therein in making his decision to purchase Jack3d with CarnoSyn,

27  believing it would be safe and effective for its advertised use and relying on the expertise of USP,

28  NAI and VITAMIN SHOPPE. Had Plaintiff known Jack3d was not safe and not effective for its

- 12 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not

2    have purchased it and would not have used it.

3        59.    In or about March 2012 until his injury in April 2012, Plaintiff ingested Jack3d

4    purchased from a VITAMIN SHOPPE store in Myrtle Beach, South Carolina.

5        60.    At no time did Plaintiff take more than the recommended dosing regimen contained in

6    Jack3d.

7        61.    On or about April 7, 2012, after taking the recommended dosing of and as a result of

8    Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by VITAMIN

9    SHOPPE, Plaintiff suffered intracranial hemorrhage, stroke, respiratory failure and related injuries.

10                    **PLAINTIFF LAWRENCE SIEGEL**

11        62.    At all relevant times, Plaintiff LAWRENCE SIEGEL was a resident of the State of

12    Florida.

13        63.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of

14    Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and

15    VITAMIN SHOPPE made therein in making his decision to purchase Jack3d with CarnoSyn,

16    believing it would be safe and effective for its advertised use and relying on the expertise of USP,

17    NAI and VITAMIN SHOPPE. Had Plaintiff known Jack3d was not safe and not effective for its

18    advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not

19    have purchased it and would not have used it.

20        64.    From in or about 2011 until his injury in July 2012, Plaintiff ingested Jack3d

21    purchased from a VITAMIN SHOPPE store in Florida.

22        65.    At no time did Plaintiff take more than the recommended dosing regimen contained in

23    Jack3d.

24        66.    On or about July 18, 2012, after taking the recommended dosing of and as a result of

25    Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by VITAMIN

26    SHOPPE, Plaintiff suffered atrial fibrillation requiring cardioversion and related injuries.

27

28

- 13 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

### PLAINTIFF JACINTA LITTLE

67.    At all relevant times, Plaintiff JACINTA LITTLE was a resident of the State of Florida.

68.    Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made therein in making her decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, she would not have purchased it and would not have used it.

69.    In or about April 2011, Plaintiff ingested OxyELITE purchased from a GNC store in Florida.

70.    At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE.

71.    In or about April 2011, after taking the recommended dosing of and as a result of OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered stroke and related injuries.

### PLAINTIFF MARK HERSHKOWITZ

72.    At all relevant times, Plaintiff MARK HERSHKOWITZ was a resident of the State of Florida.

73.    Before purchasing Jack3d and OxyELITE, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn and OxyELITE. Plaintiff relied on the representations and warranties from USP, NAI and GNC made therein in making his decision to purchase Jack3d with CarnoSyn and OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI and GNC. Had Plaintiff known Jack3d and OxyELITE were not safe and not effective for their advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased them and would not have used them.

74.    In or about December 2012 until his injury in January 2013, Plaintiff ingested Jack3d and OxyELITE purchased from a GNC store in Florida.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

75. At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d and OxyELITE.

76. In or about January 2013, after taking the recommended dosing of and as a result of Jack3d and OxyELITE manufactured by USP, which contained CarnoSyn designed by NAI, and sold by GNC, Plaintiff suffered tachycardia, dizziness, chest pain and related injuries.

## PLAINTIFF BRIAN WEST

77. At all relevant times, Plaintiff BRIAN WEST was a resident of the State of New York.

78. Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

79. In or about January 2012 until his injury in February 2012, Plaintiff ingested OxyELITE purchased from a GNC store in DeWitt, New York.

80. At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE.

81. On or about February 6, 2012, after taking the recommended dosing of and as a result of OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered myocardial infarction, ventricular fibrillation arrest, acute pulmonary embolism and related injuries.

## PLAINTIFF WILLIAM JETTON

82. At all relevant times, Plaintiff WILLIAM JETTON was a resident of the State of Alabama.

83. Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and BODYBUILDING.COM made therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and

1  BODYBUILDING.COM. Had Plaintiff known OxyELITE was not safe and not effective for its

2  advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not

3  have purchased it and would not have used it.

4      84.    In or about June 2010 until his injury in or about June 2012, Plaintiff ingested

5  OxyELITE purchased from BODYBUILDING.COM.

6      85.    At no time did Plaintiff take more than the recommended dosing regimen contained in

7  OxyELITE.

8      86.    In or about June 2012, after taking the recommended dosing of and as a result of

9  OxyELITE manufactured by USP and sold by BODYBUILDING.COM, Plaintiff suffered

10  superventricular tachycardia and related injuries.

11                  **PLAINTIFF JULIAN LOPEZ**

12      87.    At all relevant times, Plaintiff JULIAN LOPEZ was a resident of the State of New

13  Jersey.

14      88.    Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing

15  of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made

16  therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its

17  advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was

18  not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous

19  sympathomimetic, he would not have purchased it and would not have used it.

20      89.    In or about February 2013 until his injury in March 2013, Plaintiff ingested

21  OxyELITE purchased from a GNC store in New Jersey.

22      90.    At no time did Plaintiff take more than the recommended dosing regimen contained in

23  OxyELITE.

24      91.    In or about March 2013, after taking the recommended dosing of and as a result of

25  OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered arrhythmia and related

26  injuries.

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**PLAINTIFF LIAM JAKACKI**

92.    At all relevant times, Plaintiff LIAM JAKACKI was a resident of the State of Michigan.

93.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and GNC made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI and GNC. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

94.    In or about 2010 until his injury in May 2011, Plaintiff ingested Jack3d purchased from a GNC store in Michigan.

95.    At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

96.    On or about May 16, 2011, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by GNC, Plaintiff suffered strokes and related injuries.

**PLAINTIFF TROY HIXSON**

97.    At all relevant times, Plaintiff TROY HIXSON was a resident of the State of New York.

98.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI, VITAMIN SHOPPE and GNC made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI, VITAMIN SHOPPE and GNC. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

- 17 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

99.   In or about January 2013 until his injury in February 2013, Plaintiff ingested Jack3d purchased from a VITAMIN SHOPPE and GNC store in New York, New York.

100.   At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

101.   On or about February 12, 2013, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by GNC and VITAMIN SHOPPE, Plaintiff suffered seizure, loss of consciousness and related injuries.

### PLAINTIFF KYRIE TERRY

102.   At all relevant times, Plaintiff KYRIE TERRY was a resident of the State of Florida.

103.   Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI, and GNC made therein in making her decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI, and GNC. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, she would not have purchased it and would not have used it.

104.   In or about November 2011 until her injury in 2012, Plaintiff ingested Jack3d purchased from a GNC store in Florida.

105.   At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

106.   In or about 2012, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by GNC, Plaintiff suffered palpitations, arrhythmia and related injuries.

### PLAINTIFF STEVEN MILAZZO

107.   At all relevant times, Plaintiff STEVEN MILAZZO was a resident of the State of California.

108.   Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI, and

1   MAX MUSCLE made therein in making his decision to purchase Jack3d with CarnoSyn, believing

2   it would be safe and effective for its advertised use and relying on the expertise of USP, NAI, and

3   MAX MUSCLE. Had Plaintiff known Jack3d was not safe and not effective for its advertised use

4   and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have

5   purchased it and would not have used it.

6       109.    In or about January 2012 until his injury in May 2012, Plaintiff ingested Jack3d

7   purchased from a MAX MUSCLE store in Pasadena, California.

8       110.    At no time did Plaintiff take more than the recommended dosing regimen contained in

9   Jack3d.

10      111.    On or about May 28, 2012, after taking the recommended dosing of and as a result of

11  Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by MAX

12  MUSCLE, Plaintiff suffered rhabdomyolysis and related injuries.

13                  **PLAINTIFF SARAH LECHNER OBO MARC LECHNER**

14      112.    At all relevant times, Plaintiff SARAH LECHNER was a resident of the State of

15  California.

16      113.    At all relevant times, Plaintiff-Decedent MARC LECHNER was a resident of the

17  State of California.

18      114.    Before purchasing Jack3d, Plaintiff-Decedent was exposed to the advertising and

19  marketing of Jack3d and CarnoSyn. Plaintiff-Decedent relied on the representations and warranties

20  from USP, NAI, and VITAMIN SHOPPE made therein in making his decision to purchase Jack3d

21  with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the

22  expertise of USP, NAI, and VITAMIN SHOPPE. Had Plaintiff-Decedent known Jack3d was not

23  safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous

24  sympathomimetic, he would not have purchased it and would not have used it.

25      115.    In or about 2012 until his death in January 2013, Plaintiff-Decedent ingested Jack3d

26  purchased from a VITAMIN SHOPPE store in San Diego, California.

27      116.    At no time did Plaintiff-Decedent take more than the recommended dosing regimen

28  contained in Jack3d.

- 19 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

117.    On or about January 3, 2013, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by VITAMIN SHOPPE, Plaintiff suffered heart attack and related injuries and death.

### FACTUAL BACKGROUND

*The JACK3D AND OXYELITE Products*

118.    Jack3d and OxyELITE are trademarked products sold by USP. Jack3d and OxyELITE contain the following ingredients as depicted in its labels:








119. One of the ingredients of Jack3d and OxyELITE is DMAA. DMAA is a dangerous sympathomimetic. Jack3d and OxyELITE additionally contain caffeine, thereby increasing the sympathomimetic qualities and dangers of DMAA.

120. Jack3d additionally contains CarnoSyn a propriety beta-alanine product designed by NAI, which is dangerous alone and particularly because it exacerbates the sympathomimetic qualities of DMAA.

121. Additionally, Jack3d and OxyELITE do not work.

122. Jack3d and OxyELITE are sold through retailers in California and across the country.

*DMAA, a Dangerous Chemical Shunned by the Pharmaceutical Industry, Reemerges in Dietary Supplements*

123. DMAA is an active ingredient contained in Jack3d and OxyELITE manufactured, marketed, distributed, and sold by All DEFENDANTS.

124. DMAA, also known as methylhexanamine (MHA), is an aliphatic amine compound that has properties mimicking those of the endogenous neurotransmitters of the sympathetic nervous system. As such, it belongs to a group of compounds known as "sympathomimetics." Members of this class include ephedrine and the amphetamines.

125. While sympathomimetics are used by physicians to increase blood pressure and to constrict blood vessels, they are also widely abused because of their perceived ability to enhance

athletic performance and in some cases induce euphoria.

126.    Sympathomimetic compounds were originally developed in the 19th century as drugs for the treatment of cold symptoms.    Compounds capable of constricting  blood  vessels were actively sought.  First cocaine, then epinephrine, and in 1925 ephedrine, were used for this purpose. However, the adverse effects, inability to provide long term relief and addictiveness eventually resulted in the search for similarly structured chemicals.  Through trial and error, it was eventually determined that slight modification of the ephedrine molecule would result in molecules having equivalent vasoconstrictor properties to ephedrine.  These modifications eventually led to the development of DMAA, originally named Fouramine.

127.    In 1943, DMAA was introduced as a nasal decongestant by Eli Lilly under the trade name of Forthane. For unexplained reasons Lilly voluntarily withdrew Forthane from the market in 1983. No other prescription or over-the-counter drugs or dietary supplements used DMAA from 1983 until approximately 2005. In 2005, Patrick Arnold, a chemist convicted for his role in the BALCO baseball steroid scandal, reintroduced MHA/DMAA as an over-the-counter dietary supplement with amphetamine-like qualities. It was marketed as an alternative to ephedrine. The use of DMAA in dietary supplements spread and eventually found its way into Jack3d and OxyELITE.

128.    Animal testing in a variety of models demonstrated that DMAA was a potent pressor drug causing increases in blood pressure that is comparable to ephedrine. The structure of and mechanism by which DMAA increases blood pressure is thus similar to ephedrine. Dietary supplements containing ephedra, the natural form of ephedrine, were ordered off the market by the FDA in 2004, because the blood pressure and heart rate effects were associated with a number of serious adverse events to users including heart attack, stroke and death.

*Defendants' Jack3d and OxyELITE Claims*

129.    USP Defendants conveyed their deceptive claims about Jack3d and OxyELITE

1  through a variety of media, including television, newspapers, magazines, direct mail, the Internet,

2  point of sale displays, and on the Jack3d and OxyELITE labels and packaging. In addition,

3  retailers, including RETAILER DEFENDANTS promoted, marketed and sold Jack3d and

4  OxyELITE in stores, on its websites and through other mediums of advertising.

5
6      130. In their advertisements and on their website, USP represented that Jack3d and

7  OxyELITE are:

8      -  "Voted # 1 Pre-Workout"

9      -  "Backed by 2 Peer-Reviewed Published Clinical University Research Studies"

10     -  "Jack3d is now backed by multiple University studies, **including double-blind, placebo-**

11        **controlled research.**"

12     -  "Jack3d– **proven in the real world & in the lab** . . ."

13
14 These representations were false, misleading and deceptive.

15     131. USP further represented on its website that

16     - "The hemodynamic response to acute ingestion was assessed as well. OxyElite Pro did not

17     result in a statistically significant change in heart rate or diastolic pressure, but did cause a

18     statistically significant change in systolic blood pressure from baseline. This increase was

19     mild and transient, and was similar to the changes reported in the scientific literature for

20     subjects ingesting an amount of caffeine equivalent to 2-3 cups of coffee."

21     - "Jack3d, which contains DMAA, was well tolerated and no serious adverse events were

22
23     noted."

24     - "At the beginning and end of the study, blood pressure, heart rate and various indicators of

25     renal and liver function were assessed. The study found that there were no statistically

26     significant changes from baseline to the end of the study. No serious adverse events were

27
28     noted."

- "NEWLY RELEASED, GROUNDBREAKING RESEARCH STUDIES SHOW
USPLABS' DMAA SUPPLEMENTS ARE SAFE AND EFFECTIVE."

USP's representations were false, misleading and deceptive.

132.    USP also advertises on fitness blogs and websites such as bodybuilding.com making
similar representations. In fact, Defendant GEISSLER even writes letters on such sites claiming
Jack3d and OxyELITE:

- will make "everyone <u>dominate the weights and have crazy, lasting energy along with
sick, muscle-engorging pumps</u>,"

- contains a "synergistic combination (which) is KEY,"

- is not like other products, which are "a bunch of ingredients thrown together
haphazardly," and

- uses "only the highest quality ingredients."

However, these like the other misrepresentations with respect to the safety, efficacy, and purity of
Jack3d and OxyELITE, are false, misleading and deceptive.

133.    USP has also issued press releases, which promote the purported safety and efficacy
of Jack3d and OxyELITE.  For example, on February 24, 2012, just weeks after the Defense
Department pulled Jack3d and OxyELITE from military store shelves, USPLabs issued a press
release entitled "USPLabs Jack3d Peer-Review Clinical Safety Study Published."   In its press
release, USPLabs stated:

USPlabs Jack3d ™ and OxyElite Pro® are among the most studied finished dietary

supplements ever sold.  This most recent study is the 7th peer-reviewed, published clinical

trial supporting the safe use of DMAA when used as directed, in addition to an industry

estimated over one billion servings consumed by satisfied customers.  More specifically,

Jack3d ™ & OxyElite Pro® have 5 clinical trials that show they are safe when used as

directed.

134.    USP made similar statements about the purported safety and efficacy of the Jack3d
and OxyELITE in another press release, dated March 7, 2012, entitled "USPlabs Shares Results of

1    Seven Peer-Reviewed DMAA Safety Studies as Part of Scientific Review on Jack3d™ and OxyElite

2    Pro® . . . ."

3            135.    USP owns and operates another website, www.dmaaresearch.com, where it makes

4    similar statements about the purported research supporting the safety and efficacy of DMAA. For

5    example, on its dmaaresearch.com website USP lists "[a]ll current available clinical data on

6    DMAA," which are also purportedly "conducted by independent experts and published in respected

7    journals." As discussed herein, the "seven" studies cited by USP and discussed on its websites, are

8    not conducted by independent experts, are not published in legitimate journals, and furthermore,

9    demonstrate that Defendants' claims about the safety and efficacy of Jack3d and OxyELITE are

10   unsubstantiated, false and deceptive.

11           136.    USP's websites, including www.USPLabsDirect.com and www.DMAAResearch.com

12   are available to the general public and USP's advertisements in other media promote these websites.

13           137.    RETAILER DEFENDANTS further enabled USP to make representations concerning

14   the quality of the Jack3d and OxyELITE. The retailers that sold the Jack3d and OxyELITE adopted,

15   and are responsible for, the representations USP made on packaging regarding the safety and

16   efficacy of the Jack3d and OxyELITE, when they decided to place Jack3d and OxyELITE on their

17   store shelves, on military bases and on retail websites, and thereafter advertised and sold Jack3d and

18   OxyELITE to Plaintiffs.

19           138.    Further, GNC advertised and included a prominent link on their own website to

20   USP's Jack3d and OxyELITE websites.

21           139.    GNC further reinforces these claims of safety and efficacy. For example, it states that

22   Jack3d and OxyELITE are "University Studied." The representation that Jack3d and OxyELITE are

23   "universally studied" implies that the studies universally demonstrate safety, when instead they

24   demonstrated blood pressure and heart rate findings which do not demonstrate safety. GNC further

25   stated that "DMAA is perfectly safe when taken as directed," "What we particularly love about the

26   OxyELITE Pro formula...aside from its effectiveness...is that it doesn't make you feel wired and

27   jittery, nor does it dry out your mouth and keep you up at night" and "Jack3d is now backed by

28   multiple University studies, including double-blind, placebo-controlled research."

- 25 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

140.   GNC prominently displays its misrepresentations in its retail stores:



141.   On information and belief, RETAILER DEFENDANTS set up displays in their stores that stated that Jack3d and OxyELITE are "University Studied." The representation that Jack3d and OxyELITE are "universally studied" implies that the studies universally demonstrate safety, when instead they demonstrated blood pressure and heart rate findings which do not demonstrate safety.

142.   Despite the overwhelming evidence that Jack3d and OxyELITE are neither safe nor effective, GNC continued to make public statements to the contrary, assuring consumers that DMAA is safe. For example, in response to the FDA's 2012 warning letter GNC stated: "We are completely opposed to this unilateral, factually and legally unfounded action by the FDA and we believe the

1  large consumer base that has safely used products containing DMAA in millions of doses will also

2  oppose it."

3       143.    In February 2012, under pressure from the Department of Defense after the death of

4  two soldiers from Jack3d and OxyELITE, GNC agreed to pull its DMAA-containing products,

5  including Jack3d and OxyELITE, from its stores on military bases. Nevertheless, GNC continues to

6  market and sell Jack3d and OxyELITE to consumers in its other retail stores and through its online

7  website.

8       144.    NAI advertises of its beta-alanine ingredient, under the trademarked name CarnoSyn,

9  that:

10       In nearly every athletic endeavor, from bodybuilding and cycling to running and swimming,

11       numerous clinical studies have proven Beta-Alanine is effective in boosting muscle

12       carnosine, buffering lactic acid, increasing strength and endurance and speeding recovery.

13

14       145.    Dr. John Wise, who is affiliated with the NAI laboratory, in web videos supports the

15  efficacy of CarnoSyn and beta-alanine by claiming that "virtually any athlete is going to be

16  benefitted by supplementing with beta-alanine."

17       146.    Without requisite proof, All DEFENDANTS also claim that Jack3d and OxyELITE

18  are safe, effective, and proven by research. For the types of marketing claims at issue, the Federal

19  Trade Commission rules, mirroring common law duties of fair representation, require that All

20  DEFENDANTS actually have the level of proof claimed, here clinical proof, at the time the claims

21  are made. However, All DEFENDANTS did not, and have never possessed the requisite proof.

22       147.    The health problems associated with Jack3d and OxyELITE manifest themselves

23  when consumers, including Plaintiffs as alleged herein, use the product at recommended dosage

24  levels. In fact, in a warning letter sent to USP, FDA expressed its opinion that Jack3d and

25  OxyELITE are adulterated under §402(f)(1)(A) of the Federal Food, Drug, and Cosmetic Act, 21

26  U.S.C. §342, in that Jack3d and OxyELITE presents a significant or unreasonable risk of illness or

27  injury under conditions of use recommended or suggested in labeling:

28

. . . Oxy Elite Pro and Jack3d are adulterated under 21 U.S.C. 342(f)(1)(B) and 350b(a) because they contain a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury. Introduction of such products into interstate commerce is prohibited under 21 U.S.C. 331(a) and (v). To the best of FDA's knowledge, there is no history of use or other evidence of safety establishing that dimethylamylamine will reasonably be expected to be safe as a dietary ingredient. In fact, dimethylamylamine narrows the blood vessels and arteries, which increases cardiovascular resistance and frequently leads to elevated blood pressure. This rise in blood pressure may increase the work of the heart such that it could precipitate a cardiovascular event, which could range from shortness of breath to tightening of the chest and/or a possible myocardial infarction (heart attack).

148.    Notwithstanding significant and mounting evidence that Jack3d and OxyELITE are falsely labeled, ineffective, and poses significant health risks, USP did not recall Jack3d and OxyELITE, which remain on the market. Despite the evidence of significant health risks, USP continued to make material misrepresentations and omissions on Jack3d and OxyELITE packaging and labeling. Moreover, as stated herein, USP continues to downplay the true health risks involved with consuming Jack3d and OxyELITE.

149.    Remarkably, USP even filed suit in the Northern District of Texas (Case 3:12-cv-01605-O) against an individual and entity for allegedly false and disparaging statements about Jack3d. The statements included well-known, incontrovertible facts about Jack3d such as that it is an "amphetamine-like compound," and that it "speeds up your heart rate." USP continues to not only make misrepresentations to the public about the nature of DMAA and Jack3d and OxyELITE as alleged above, it so vehemently denies their sympathomimetic qualities that it is suing individuals for defamation. Making such action even more reprehensible is that USP's own funded studies concede DMAA is a "simple aliphatic amine with sympathomimetic properties" (Whitehead, PN,

1  Schilling, BK, Farney, TM, Bloomer, RJ. Impact of a dietary supplement containing 1,3-

2  dimethylamulamine on blood pressure and bloodborne markers of health: a 10-week intervention

3  study. *Nutrition and Metabolic Insights* 2012:5 33-39.) as does the FDA warning letter sent to USP.

4  This lawsuit was brought in an attempt to intimidate and stifle the dissemination of essential safety

5  information about Jack3d and OxyELITE.

6

7                    *Studies Promoted by USP Demonstrate Lack of Safety or Efficacy for Jack3d and*

8                                            *OxyELITE*

9        I.    Claims Regarding Safety

10       150.    USP also claims that the safety and efficacy of Jack3d and OxyELITE has been

11  shown in clinical studies. For example, at its usplabsdirect.com and dmaaresearch.com websites,

12  USP    lists    seven    studies    involving    DMAA    and    states:    "NEWLY    RELEASED,

13  GROUNDBREAKING RESEARCH STUDIES SHOW USPLABS' DMAA SUPPLEMENTS ARE

14  SAFE AND EFFECTIVE". However, none of these studies constitutes reliable scientific or clinical

15  proof.

16       151.    Despite claims made by USP in its marketing and advertising, as detailed above,

17  Jack3d and OxyELITE are not scientifically tested or proven to provide, and do not provide the

18  advertised health benefits of "increase[d] . . . fat breakdown and energy expenditure," "reduced fat

19  mass," "weight loss" and other similar benefits. Accordingly, USP's marketing claims that Jack3d

20  and OxyELITE are proven, including because they are "UNIVERSITY STUDIED," "Scientifically

21  Reviewed," and "PHARMACIST FORMULATED" are false, misleading, and likely to deceive the

22  ordinary consumer.

23       152.    Properly-conducted human studies do not demonstrate the safety or efficacy of the

24  Jack3d and OxyELITE or DMAA. In fact, human data regarding the safety or efficacy of DMAA

25  are few and the majority are funded by the USP Defendants.

26       153.    Even Defendants' own purported clinical proof demonstrates the falsity of its claims.

27  On its websites, usplabsdirect.com (which is referred to on the Jack3d and OxyELITE's labeling)

28

1   and dmaaresearch.com, USP lists "seven" studies on DMAA containing products.    USP

2   characterizes one study that had male and female cohorts as two studies in order to state "seven"

3   DMAA studies substantiate its claims. USP admits its involvement and funding of five of the seven

4   studies. Furthermore, none of these studies provide substantiation for the marketing claims

5        a.   McCarthy, Farney et al. 2012: Twelve subjects ingested OxyELITE Pro or a

6            placebo over two days. USPLabs provided funding for the study, which

7            analyzed subjects' blood markers and metabolic rates.    The authors

8            acknowledged that "little objective scientific evidence is available" on

9            DMAA, and that "some subjects reported feeling 'jittery'; 'on-edge',

10           'sweaty', and 'shaky', sometimes involving cold sweats, a racing heart beat,

11           and poor sleep quality on the night of treatment." According to the authors,

12           and with respect to DMAA, "no published reports are available pertaining to

13           these [weight/fat loss] effects in human subjects." (emphasis added). The

14           authors also noted that subjects consuming DMAA-containing OxyELITE

15           Pro experienced increased heart rate and blood pressure.    The study

16           concluded that "well-controlled intervention trials are needed in order to

17           determine the chronic effects of the supplement on body weight/fat loss and

18           associated metabolic and biomechanical markers of health."

19        b.   McCarthy, Canale et al. 2012: Thirty-two subjects ingested OxyELITE Pro

20           or a placebo over eight weeks. The study was funded by USPLabs. Five of

21           sixteen subjects who consumed OxyELITE Pro reported jitters and

22           sleeplessness when consuming two capsules per day. The authors observed

23           an increase in resting heart rate for those consuming DMAA-containing

24           OxyELITE Pro and noted that the lack of control of subjects' dietary intake

25           was a limitation.

26        c.   Farney, McCarthy et al. 2012: Once per day for two weeks seven men

27           ingested Jack3d, and six subjects ingested OxyELITE Pro. The study was

28           funded by USPLabs.  The authors noted that the lack of a placebo is a

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

| | |
|---|---|
| 1 | limitation of this study. Because appetite was lower on subjects consuming |
| 2 | OxyELITE Pro, but not Jack3d, the authors observed that it was possible that |
| 3 | ingredients other than DMAA or caffeine may be responsible for appetite |
| 4 | suppression. According to the study, "Based on our data, which admittedly |
| 5 | involved a very small number of subjects, it appears that such products |
| 6 | should be avoided by individuals who are hypersensitive [] or who are pre- |
| 7 | hypersensitive." Subjects reported sleeplessness, anxiousness, feeling of |
| 8 | chills, tingling, sweating, and shakiness. |
| 9 | d.   Bloomer, Schilling et al. 2012: Twenty-five men were assigned to consume a |
| 10 | placebo or Jack3d. The study was funded by USPLabs. Systolic blood |
| 11 | pressure increased in those consuming Jack3d. The authors stated that "Due |
| 12 | to the fact that our sample size is small, additional well-designed experiments |
| 13 | of similar scope, inclusive of larger sample sizes, are needed to extend the |
| 14 | findings presented within." The authors also noted that only "some support" |
| 15 | for safety was provided, and that "more work is needed involving a larger |
| 16 | intervention period and the inclusion of additional measures of health [], to |
| 17 | more fully elucidate the safety or oral [DMAA]." |
| 18 | e.   Bloomer, Harvey et al. 2011: Ten men consumed five different amounts of |
| 19 | DMAA. No placebo was used, which the authors conceded was a limitation |
| 20 | to this study. The authors noted that no study had tested DMAA's effect on |
| 21 | heart rate and blood pressure in humans. The study found that consuming |
| 22 | DMAA with caffeine results in increased systolic blood pressure, diastolic |
| 23 | blood pressure, and rate pressure product. Dr. Bloomer disclosed his |
| 24 | conflicts of interest with USPlabs and other nutritional supplement |
| 25 | companies. |
| 26 | f.   Bloomer, McCarthy et al. 2011: Twelve subjects ingested placebo, caffeine, |
| 27 | DMAA, or DMAA plus caffeine over four days and immediately prior to |
| 28 | competing a 10k run. The authors noted that "[t]he literature pertaining to |

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

the use of [DMAA] is scant." The authors concluded that DMAA increases systolic blood pressure, and had no impact on the outcome of greatest interest – run time.

154.   USP made further misrepresentations on its website that two studies conducted by Dr. Richard Bloomer were conducted by an "independent scientist without the involvement of the company," these studies like the other five are all from the same laboratory at the University of Memphis. Dr. Bloomer was a lead researcher in each of the seven studies cited by USP. Moreover, Bloomer, Harvey et al. 2011, which USP claims was conducted by an independent scientist, concedes that the opposite is true by stating at the conclusion of the study "CONFLICT OF INTEREST STATEMENT – Richard J. Bloomer, PhD discloses conflicts of interest with . . . USPLabs." On information and belief, Dr. Bloomer has received $524,332 in funding from USPLabs: $132,860 (2010-2011), $225,600 (2011-2012), $128,860 (2012-2013), and $37,012 (2012-2013).

155.   Bloomer, Harvey et al. 2011 further reported that both caffeine and DMAA increased diastolic and systolic blood pressure separately (with the effect of DMAA being greater than caffeine), and that when the two ingredients were combined the healthy study volunteers experienced mean blood pressures of 140 mm Hg, a 20% increase consistent with hypertension despite low normal pre-exposure pressures. The data from Bloomer, Harvey et al. 2011 thus demonstrates that DMAA given in the proprietary formulation as compared to alone has a less pharmacologically clean effect and results in a greater increase in rate-pressure product ("RPP," a measure of myocardial work or cardiovascular risk).

156.   USP further mischaracterizes the sympathomimetic effects of DMAA, specifically including the statistically significant increased blood pressure found by one study caused by OxyELITE, by comparing the risk to mild amounts of coffee, a universally regarded safe sympathomimetic when used in isolation:

The hemodynamic response to acute ingestion was assessed as well. OxyElite Pro did not result in a statistically significant change in heart rate or diastolic pressure, but did cause a statistically significant change in systolic blood pressure from

baseline. This increase was mild and transient, and was similar to the changes reported in the scientific literature for subjects ingesting an amount of caffeine equivalent to 2-3 cups of coffee. (emphasis added)

This statement with respect to acute ingestion is misleading given the study results demonstrate that "Compared to pre-ingestion and in general, both supplements resulted in an increase in SBP, DBP, and RPP from 5%-15%, with a peak occurring at the 60 or 90 minute post-ingestion time." The study went on to highlight the acute cardiovascular risks:

> As expected based on the pharmacologic profiles of caffeine and of 1,3-dimethylamylamine, acute intake of dietary supplements containing these agents results in an increase in myocardial work. Specifically, SBP is increased significantly in response to treatment, while DBP, and RPP increase to a lesser extent.

157.    The "seven" cited studies do not constitute substantiation for Defendants' claims relating to safety and efficacy, and in fact, are proof that Jack3d and OxyELITE are unsafe and ineffective. First, there are no independent studies performed by researchers without conflicts: each of the studies come from a single laboratory funded by USP, and are led by a researcher who has received over $500,000 from USP. Second, the studies, which contain a total of 99 subjects, are grossly underpowered (a fact repeatedly conceded in the studies themselves), restricted to a very young population, and there is no attempt to characterize the pharmacokinetics or purity of the drugs. Despite the lack of reliability or validity of the purportedly independent studies, the studies present a relatively consistent picture. DMAA, particularly when combined with caffeine or other agents, causes highly significant increases in blood pressure in healthy, resting individuals within one hour of consumption in a manner consistent with its known action as a vasoconstrictor. These sorts of changes should be anticipated to cause substantial and possibly dangerous increases in blood pressure during exercise (particularly weight lifting, cycling, or other resistance exercise). Vasoconstriction during exercise would increase myocardial oxygen consumption leading to an increased risk for cardiovascular events like heart attack and stroke. In other words, the studies themselves, flawed as they are, demonstrate the dangerous and synergistic sympathomimetic effects of the DMAA formulation contained in Jack3d and OxyELITE. In fact, USP Defendants do not

- 33 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   deny the synergistic effects of DMAA and caffeine stating on their website "a common synergistic

2   combination."

3        158.    Thus, USP knew, or in the exercise of reasonable care ought to have known, from

4   their own studies that DMAA, when used in isolation or in conjunction with the other ingredients

5   contained in Jack3d and OxyELITE including caffeine and CarnoSyn, is dangerous and could injure

6   or kill consumers like Plaintiffs. In fact, USP knew or should have known long before its own

7   studies that DMAA could cause adverse effects based on the fact DMAA is in the same class of

8   chemicals as amphetamines, based on adverse event reports made to FDA and other regulatory

9   agencies in other countries, based on the medical literature, based on poison control reports, based

10  on regulatory actions taken against DMAA and based on the Forthane patent.

11       159.    In making these and similar representations in advertising and in the Jack3d and

12  OxyELITE product labeling, USP misled users and Plaintiffs about the risks of Jack3d and

13  OxyELITE. USP also failed to adequately warn users of the potential serious dangers of DMAA

14  toxicity in susceptible users which USP knew or should have known might result from consuming

15  Jack3d and OxyELITE.  USP widely and successfully marketed the products throughout the United

16  States by, among other things, conducting a marketing campaign which misrepresented the testing

17  for efficacy and potential risks of the products in order to induce widespread consumption.

18       160.    Likewise, RETAILER DEFENDANTS knew or should have known that DMAA

19  could cause cardiovascular and other adverse effects based on the fact DMAA is in the same class of

20  chemicals as amphetamines.

21       161.    GNC joined in the misrepresentations about DMAA, by asserting in its marketing of

22  Jack3d and OxyELITE that GNC conducts a review and has a requirement that the products it sells

23  have labels that truthfully disclose health and safety issues and that the ingredients be safe.  GNC

24  represents that it exercises the highest standard of care in the nutritional supplement industry by

25  "demanding truth in labeling, ingredient safety."  Moreover, GNC markets its own propriety

26  products containing DMAA with knowledge that DMAA could injure consumers.

27       162.    Similarly, NAI knew, or in the exercise of reasonable care ought to have known, that

28  CarnoSyn, when used in isolation or in conjunction with the other ingredients contained in Jack3d,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  including caffeine and DMAA, is dangerous and could injure or kill consumers like Plaintiffs. It

2  conducted no studies on the safety of CarnoSyn and possessed no evidence of its safety or efficacy

3  before selling the rights to the design/formula and anticipating and requiring CarnoSyn be

4  incorporated into dietary supplements like Jack3d.

5

6  II.    Claims Regarding Efficacy and Composition

7  163.  USP similarly knew, or in the exercise of reasonable care ought to have known, that

8  Jack3d and OxyELITE are not effective for weight loss, to build strength, to increase endurance or

9  any other health benefits claimed by USP.

10  164.  USP additionally knew that consumers believe that natural supplements are more

11  healthful and less dangerous than synthetic, chemically produced supplements. USP represented in

12  its advertising and marketing that Jack3d and OxyELITE are natural dietary supplements, when in

13  fact it knew that the active ingredient DMAA, was not a natural ingredient but was a chemically

14  compounded, synthetic ingredient. In fact, in a response letter to FDA on May 15, 2012, it

15  acknowledged DMAA was synthetically created. USP further knew that DMAA is not contained in

16  natural substances like geranium oil. It made these false representations that Jack3d and OxyELITE

17  are natural products to mislead and falsely reassure consumers that Jack3d and OxyELITE are safe

18  products.

19  165.  FDA denied that DMAA is a natural as opposed to synthetically-created compound:

20  "The agency additionally warned the companies that synthetically-produced DMAA is not a 'dietary

21  ingredient' and, therefore, is not eligible to be used as an active ingredient in a dietary supplement.

22  DSHEA defines a dietary ingredient as a vitamin, mineral, amino acid, herb or other botanical, a

23  dietary substance for use by man to supplement the diet, or a concentrate, metabolite, constituent,

24  extract, or combination of these substances."

25  166.  The purpose of these submission requirements for dietary supplements is to protect

26  consumers from exposure to new, synthetically created dietary supplements which are not

27  demonstrated to be safe and effective, the exact situation here.

28

167.    USP attempted to assuage concerns from critics, FDA and concerned consumers about the safety of DMAA by suggesting DMAA comes from a naturally occurring herb and is therefore safe. However, DMAA is a dangerous synthetically-created chemical known by industry insiders like USP to display sympathomimetic side effects. A single Chinese study claims that DMAA occurs naturally in geranium oil (Ping Z, Jun Q, and Qing L. A study on the chemical constituents of geranium oil. Journal of Guizhou Institute of Technology 25: 1996.)   The New Zealand National Measurement Institute performed a rigorous evaluation of this claim and found it impossible to substantiate (Lisi A, Hasick N, Kazlauskas R, and Goebel C. Studies of methylhexaneamine in supplements and geranium oil. Drug Test Anal 2011.)   Health Canada likewise could find no evidence that DMAA occurs in nature (Health Canada, Health Products and Food Branch. Classification of 1,3-dimethylamylamine (DMAA). http://www.scribd.com/doc/82744576/DMAA-Health-Canada-2011. Accessed March 22, 2012.)

168.    Additionally, in a study published June 25, 2012 (ElSohly, MA, et al., Pelargonium oil and Methyl Hexaneamine (MHA): Analytical approaches supporting the absence of MHA in authenticated Pelargonium graveolens plant material and oil. Journal of Analytic Toxicology: published online: June 25, 2012), the authors concluded, after numerous and varied tests of geranium oils and plants, that geranium oils and plants contain no detectable levels of DMAA. This research refutes any claims that synthetic DMAA is identical to naturally derived ingredients. It is impossible for synthetic DMAA to be identical to the natural geranium plant and oil since geranium plant and oil do not contain detectable levels of DMAA.

169.    Despite these facts, USPlabs has circulated a letter purporting to have proof from two laboratories claiming that DMAA can be found in geranium oil. The data are allegedly not available for review because they have been submitted for publication. USP persists in its representations that DMAA is a natural chemical to reassure consumers that the product is safe and natural, when in fact it is neither.

170.    NAI similarly knew, or in the exercise of reasonable care ought to have known, that CarnoSyn is not effective for increasing strength, endurance or any other health benefits claimed by NAI.

- 36 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

*Adverse Events From DMAA Pile Up and FDA Warns USP*

171.    On December 6th, 2011, the US Army removed all DMAA containing compounds from its commissaries.  This action followed the deaths of two soldiers believed to be due to Jack3d. A case series from New Zealand reported three cases of cerebral hemorrhage in adults taking DMAA (Gee P, Tallon C, Long N, Moore G, Boet R, Jackson S. Use of Recreational Drug 1,3-Dimethylethylamine (DMAA) Associated With Cerebral Hemorrhage.)  In one case, a 41 year old man developed a systolic blood pressure of 240 mm Hg thirty minutes after taking a DMAA supplement and bled into his brain.    Another published report attributes stress-induced cardiomyopathy to use of DMAA (Salinger L, Daniels B, Sangalli B, Bayer M. Recreational use of bodybuilding supplement resulting in severe cardiotoxicity.  Clin Toxicol. 2011;49(6):573-574.) Pieter Cohen, a Harvard internist, has recently drawn attention to DMAA in a letter to the Archives of Internal Medicine (Cohen PA. DMAA as a Dietary Supplement Ingredient. Arch Intern Med. 2012 May 7 [Epub ahead of print].)

172.    Numerous reports of serious adverse events from DMAA were reported in New Zealand in 2009, prompting the New Zealand government to begin restricting DMAA and warn consumers not to use it. In 2010, Gee et al. reported a hemorrhage in a 21 year old using DMAA. The World Anti-Doping Agency banned DMAA beginning in 2010.

173.    Additionally, there were over 50 reports to the Texas Poison Control with respect to DMAA-containing products between 2010-2011 alone.

174.    Numerous other countries have already banned DMAA including Canada, New Zealand and several European countries.

175.    In a letter addressed to USPLabs from FDA dated April 27, 2012, the Agency warned that it had received 42 adverse event reports on products containing DMAA, including cardiac disorders, nervous system disorders, and death. Other adverse events reported include Rhabdomyolysis, kidney failure, liver injuries, seizures and other serious adverse events. Many of those adverse event reports were specifically for Jack3d and OxyELITE and stretch back to early 2010, if not earlier. The number of adverse events reported to FDA has since climbed to over 60.

FDA and GAO believe adverse events reported for dietary supplements are greatly underreported so the true number of consumers hurt by these products is likely to far exceed the number of adverse events reported.

176.    Daniel Fabricant, director of FDA's Dietary Supplement Program (DSP) stated "Before marketing products containing DMAA, manufacturers and distributors have a responsibility under the law to provide evidence of the safety of their products. They haven't done that and that makes the products adulterated." FDA challenged manufacturers to demonstrate that DMAA was in use as a dietary supplement prior to 1994.

177.    In April 2013, FDA issued a consumer alert "Stimulant Potentially Dangerous to Health, FDA Warns" warning consumers to stop using DMAA products. FDA indicated that "after reviewing the studies provided by USPLabs, FDA has found the information insufficient to defend the use of DMAA as an ingredient in dietary supplements." While USP stated that it would stop selling Jack3d and OxyELITE and their website stopped selling Jack3d and OxyELITE, GNC continues to sell Jack3d and OxyELITE to this day. GNC said in a public statement that it would "continue to sell the products as long as USP Labs makes them available, unless the products are recalled by either the FDA or USP Labs...GNC has no reason to believe that DMAA is unsafe." USP attempts to falsely reassure FDA and consumers that it will stop selling Jack3d and OxyELITE but then continues to manufacture Jack3d and OxyELITE and sell it to retailers like GNC. GNC continues to sell DMAA until the bitter end, inviting FDA to make it stop. USP and GNC continue to place profit above safety.

178.    FDA has indicated it is doing everything it can to get DMAA off the market since USP will not voluntarily recall its dangerous product from the market.

179.    USP continues to deflect attention away from safety concerns and to misrepresent the actual risks of DMAA.

///

- 38 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

<u>COUNT I</u>

NEGLIGENCE

(All Plaintiffs Against USP and DOES 1-500)

180.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

181.    At all times herein mentioned, USP and DOES 1-500, and each of them, had a duty to exercise reasonable care in the research, development, testing for safety, formulation, manufacture, hiring of and use of qualified scientific or medical personnel, labeling, packaging, promotion, advertising, marketing, distribution, sale, and otherwise releasing into the stream of commerce Jack3d and OxyELITE.

182.    USP and DOES 1-500, and each of them, breached their duty of reasonable care to Plaintiffs in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled and/or sold Jack3d and OxyELITE. Specifically, USP and DOES 1-500 failed to exercise reasonable care in ways which included, but were not limited to, one or more of the following particulars:

a.    In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the dangerous and defective characteristics of Jack3d and OxyELITE;

b.    In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the propensity of Jack3d and OxyELITE to cause side effects, serious injury and death;

c.    In their failure to adequately represent the result of clinical trials before marketing Jack3d and OxyELITE;

d.    In representing that Jack3d and OxyELITE were safe and effective for their intended use when, in fact, the products were unsafe for their intended use;

e.    In failing to perform appropriate, reliable and valid pre-market testing of Jack3d and OxyELITE;

f.    In failing to perform appropriate post-market testing of Jack3d and OxyELITE;

g.    in failing to disclose to consumers and Plaintiffs adverse events received from FDA by users of DMAA; and

h.    In failing to perform appropriate post-market surveillance of Jack3d and OxyELITE.

183.    USP and DOES 1-500, and each of them, knew or should have known that consumers, such as Plaintiffs herein, would foreseeably suffer injury as a result of the USP and DOES 1-500's failure to exercise reasonable and ordinary care.

184.    As a direct and proximate result of USP and DOES 1-500s' carelessness and negligence, and of the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered severe and permanent injuries. Plaintiffs endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiffs incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and were otherwise physically, emotionally, and economically injured. Plaintiffs suffered severe pecuniary loss. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT II

## NEGLIGENCE

**(Plaintiffs JUSTINE CAROLYNE, DEREK MITCHELL, BYRON NUTHALL, JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, JULIAN LOPEZ, LIAM JAKACKI, TROY HIXSON, and KYRIE TERRY Against GNC)**

**(Plaintiffs TIMOTHY HEPWORTH, MICHAEL GARCIA, LAWRENCE SIEGEL, TROY HIXSON, and SARAH LECHNER on behalf of and as representative for MARC LECHNER Against VITAMIN SHOPPE)**

**(Plaintiff MARCUS HARKINS Against SUPER SUPPLEMENTS)**

**(Plaintiff BYRON NUTHALL Against RITE AID)**

**(Plaintiff WILLIAM JETTON Against BODYBUILDING.COM)**

**(Plaintiff STEVEN MILAZZO Against MAX MUSCLE)**

185.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

- 40 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

186.    At all times herein mentioned, RETAILER DEFENDANTS, and each of them, had a duty to exercise reasonable care in the testing, packaging, promotion, advertising, marketing, distribution, sale, and otherwise releasing into the stream of commerce Jack3d and OxyELITE.

187.    RETAILER DEFENDANTS, and each of them, breached their duty of reasonable care to Plaintiffs in that they negligently tested, inspected, packaged, promoted, marketed, distributed, and/or sold Jack3d and OxyELITE. Specifically, RETAILER DEFENDANTS, and each of them, failed to exercise reasonable care in ways which included, but were not limited to, one or more of the following particulars:

a.    In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the dangerous and defective characteristics of Jack3d and OxyELITE;

b.    In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the propensity of Jack3d and OxyELITE to cause side effects, serious injury and death;

c.    In their failure to adequately represent the results of USP's research with respect to Jack3d and OxyELITE;

d.    In representing that Jack3d and OxyELITE were safe and effective for their intended use when, in fact, the products were unsafe for their intended use;

e.    In failing to perform appropriate, reliable and valid pre-market testing of Jack3d and OxyELITE;

f.    In failing to perform appropriate post-market testing of Jack3d and OxyELITE;

g.    in failing to disclose to consumers and Plaintiffs adverse events received from FDA by users of DMAA; and

h.    In failing to perform appropriate post-market surveillance of Jack3d and OxyELITE.

188.    RETAILER DEFENDANTS, and each of them, knew or should have known that consumers, such as Plaintiffs herein, would foreseeably suffer injury as a result of the RETAILER DEFENDANTS's failure to exercise reasonable and ordinary care.

189.    As a direct and proximate result of RETAILER DEFENDANTS's carelessness and negligence, and of the unreasonably dangerous and defective characteristics of Jack3d and

OxyELITE, Plaintiffs suffered severe and permanent injuries. Plaintiffs endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiffs incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and were otherwise physically, emotionally, and economically injured. Plaintiffs suffered severe pecuniary loss. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT III

## NEGLIGENCE

**(Plaintiffs JUSTIN CAROLYNE, TIMOTHY HEPWORTH, MARCUS HARKINS, DEREK MITCHELL, BYRON NUTHALL, MICHAEL GARCIA, LAWRENCE SIEGEL, MARK HERSHKOWITZ, LIAM JAKACKI, TROY HIXSON, KYRIE TERRY, STEVEN MILAZZO, and SARAH LECHNER on behalf of and as representative for MARC LECHNER Against NAI)**

190.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

191.    At all times herein mentioned, NAI had a duty to exercise reasonable care in the research, development, testing for safety, formulation, labeling, promotion, advertising, marketing, designing, and otherwise releasing into the stream of commerce CarnoSyn.

192.    NAI, breached their duty of reasonable care to Plaintiffs in that they negligently designed, developed, tested, promoted, marketed, labeled and/or sold CarnoSyn. Specifically, NAI failed to exercise reasonable care in ways which included, but were not limited to, one or more of the following particulars:

a.    In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the dangerous and defective characteristics of CarnoSyn both when used alone and when used in dietary supplements containing sympathomimetics like DMAA and when used in the Jack3d ingested by Plaintiffs;

b.    In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the propensity of CarnoSyn to cause

- 42 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

side effects, serious injury and death, particularly when used in dietary supplements containing sympathomimetics like DMAA and when used in the Jack3d ingested by Plaintiffs;

c.    In representing that CarnoSyn was safe and effective for its intended use when, in fact, the product was ineffective and unsafe for its intended use;

d.    In failing to perform appropriate, reliable and valid pre-market testing of CarnoSyn;

e.    In failing to perform appropriate post-market testing of CarnoSyn;

f.    in failing to disclose to consumers and Plaintiffs adverse events received from FDA by users of DMAA; and

g.    In failing to perform appropriate post-market surveillance of CarnoSyn.

193.    NAI, knew or should have known that consumers, such as Plaintiffs herein, would foreseeably suffer injury as a result of the NAI's failure to exercise reasonable and ordinary care.

194.    As a direct and proximate result of NAI's carelessness and negligence, and of the unreasonably dangerous and defective characteristics of CarnoSyn and Jack3d, Plaintiffs suffered severe and permanent injuries. Plaintiffs endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiffs incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and were otherwise physically, emotionally, and economically injured. Plaintiffs suffered severe pecuniary loss.  The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT IV

## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

### (All Plaintiffs Against USP and DOES 1 - 500)

195.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

196.    At all times material to this action, USP and DOES 1-500, and each of them, were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement Jack3d and OxyELITE, which are defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

- 43 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

197.    At all times material to this action, Jack3d and OxyELITE were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the respective DEFENDANTS in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    When placed in the stream of commerce, the drugs contained unreasonably dangerous design defects and were not reasonably safe and fit for their intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiffs, to risks which exceeded the benefits of the drug;

b.    The drugs did not perform as safely as an ordinary consumer would have expected them to perform when used in an intended or reasonably foreseeable way;

b.    The drugs were insufficiently tested;

c.    The drugs caused harmful side effects that outweighed any potential utility;

d.    The drugs were more dangerous than other dietary supplements on the market; and

e.    The drugs were not accompanied by adequate labeling or instructions for use to fully apprise the public and consumers, including Plaintiffs, of the potential risks and serious side effects associated with its use.

198.    In light of the potential and actual risk of harm associated with the drugs' use, a reasonable person who had actual knowledge of this potential risk of harm would have concluded Jack3d and OxyELITE should not have been marketed in that condition.

199.    There existed safer alternative designs, but USP and DOES 1-500 chose to market a more dangerous design.

200.    At all times relevant herein, USP and DOES 1-500 knew that Jack3d and OxyELITE would be purchased by members of the general public and would be used by such purchasers without a prescription and without any inspections for defects, and would rely upon the representations made by USP and DOES 1-500 on the product label and in their marketing including public statements and promotional and sales materials.

201.    At all times material to this action, Jack3d and OxyELITE were expected to reach,

- 44 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   and did reach, consumers in the State of California and throughout the United States, including

2   Plaintiffs, without substantial change in the condition in which it was sold.

3       202.   USP and DOES 1-500 knew or should have known of the defective nature of Jack3d

4   and OxyELITE but continued to research, develop, design, test, manufacture, package, formulate,

5   inspect, label, distribute, market, promote, sell and otherwise release these products into the stream

6   of commerce so as to maximize sales and profits at the expense of the public health and safety, in

7   conscious disregard of the foreseeable harm caused by their products, including serious

8   cardiovascular disorders, stroke, heart attack, dizziness, loss of consciousness, death, kidney failure,

9   liver conditions, rhabdomyolysis, seizures and other health problems.

10      203.   At all times, Plaintiffs used Jack3d and OxyELITE for their intended or reasonably

11  foreseeable purpose.

12      204.   As a direct and proximate result of the defective and unreasonably dangerous

13  condition of Jack3d and OxyELITE and of their failure to perform safely, Plaintiffs suffered injuries

14  as set forth above.

15                          **COUNT V**

16              **STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

17      **(Plaintiffs JUSTINE CAROLYNE, DEREK MITCHELL, BYRON NUTHALL,**

18  **JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, JULIAN LOPEZ, LIAM**

19  **JAKACKI, TROY HIXSON and KYRIE TERRY Against GNC)**

20      **(Plaintiffs TIMOTHY HEPWORTH, MICHAEL GARCIA, LAWRENCE SIEGEL,**

21  **TROY HIXSON, and SARAH LECHNER on behalf of and as representative for MARC**

22  **LECHNER Against VITAMIN SHOPPE)**

23      **(Plaintiff MARCUS HARKINS Against SUPER SUPPLEMENTS)**

24      **(Plaintiff BYRON NUTHALL Against RITE AID)**

25      **(Plaintiff WILLIAM JETTON Against BODYBUILDING.COM)**

26      **(Plaintiff STEVEN MILAZZO Against MAX MUSCLE)**

27      205.   Plaintiffs incorporate by reference each and every prior paragraph of this Complaint

28  as though set forth in full in this cause of action.

---

206.   At all times material to this action, RETAILER DEFENDANTS, and each of them, were responsible for testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement Jack3d and OxyELITE, which are defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

207.   At all times material to this action, Jack3d and OxyELITE were tested, packaged, promoted, marketed, distributed, labeled, and/or sold by RETAILER DEFENDANTS, and each of them, in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.     When placed in the stream of commerce, the drugs contained unreasonably dangerous design defects and were not reasonably safe and fit for their intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiffs, to risks which exceeded the benefits of the drug;

b.     The drugs did not perform as safely as an ordinary consumer would have expected them to perform when used in an intended or reasonably foreseeable way;

b.     The drugs were insufficiently tested;

c.     The drugs caused harmful side effects that outweighed any potential utility;

d.     The drugs were more dangerous than other dietary supplements on the market; and

e.     The drugs were not accompanied by adequate labeling or instructions for use to fully apprise the public and consumers, including Plaintiffs, of the potential risks and serious side effects associated with its use.

208.   In light of the potential and actual risk of harm associated with the drugs' use, a reasonable person who had actual knowledge of this potential risk of harm would have concluded Jack3d and OxyELITE should not have been marketed in that condition.

209.   There existed safer alternative designs, but RETAILER DEFENDANTS, and each of them, chose to market a more dangerous design.

- 46 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

210.    At all times relevant herein, RETAILER DEFENDANTS, and each of them, knew that Jack3d and OxyELITE would be purchased by members of the general public and would be used by such purchasers without a prescription and without any inspections for defects, and would rely upon the representations made by RETAILER DEFENDANTS in their marketing including public statements and promotional and sales materials.

211.    At all times material to this action, Jack3d and OxyELITE were expected to reach, and did reach, consumers in the State of California and throughout the United States, including Plaintiffs, without substantial change in the condition in which it was sold.

212.    RETAILER DEFENDANTS, and each of them, knew or should have known of the defective nature of Jack3d and OxyELITE but continued to test, package, inspect, label, distribute, market, promote, sell and otherwise release these products into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their products, including serious cardiovascular disorders, stroke, heart attack, dizziness, loss of consciousness, death, kidney failure, liver conditions, rhabdomyolysis, seizures and other health problems.

213.    At all times, Plaintiffs used Jack3d and OxyELITE for their intended or reasonably foreseeable purpose.

214.    As a direct and proximate result of the defective and unreasonably dangerous condition of Jack3d and OxyELITE and of their failure to perform safely, Plaintiffs suffered injuries as set forth above.

## COUNT VI

### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

(Plaintiffs JUSTIN CAROLYNE, TIMOTHY HEPWORTH, MARCUS HARKINS, DEREK MITCHELL, BYRON NUTHALL, MICHAEL GARCIA, LAWRENCE SIEGEL, MARK HERSHKOWITZ, LIAM JAKACKI, TROY HIXSON, KYRIE TERRY, STEVEN MILAZZO, and SARAH LECHNER on behalf of and as representative for MARC LECHNER Against NAI)

215.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint

1   as though set forth in full in this cause of action.

2       216.   At all times material to this action, NAI was responsible for research, development,

3   testing for safety, formulation, promotion, advertising, marketing, designing, and selling, directly

4   and indirectly, through third parties or related entities the dietary supplement CarnoSyn, which is

5   defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

6       217.   At all times material to this action, CarnoSyn was researched, developed, formulated,

7   promoted, advertised, marketed, and designed, by NAI in a defective and unreasonably dangerous

8   condition in ways which included, but were not limited to, one or more of the following particulars:

9       a.      When placed in the stream of commerce, the drug contained unreasonably

10              dangerous design defects and was not reasonably safe and fit for its intended or

11              reasonably foreseeable purpose or as intended to be used, thereby subjecting users

12              and/or consumers of the drug, including Plaintiffs, to risks which exceeded the

13              benefits of the drug;

14      b.      The drug did not perform as safely as an ordinary consumer would have expected it

15              to perform when used in an intended or reasonably foreseeable way;

16      c.      The drug was insufficiently tested;

17      d.      The drug caused harmful side effects that outweighed any potential utility;

18      e.      The drug was more dangerous than other dietary supplements on the market; and

19      f.      The drug was not accompanied by adequate labeling or instructions for use to fully

20              apprise the public and consumers, including Plaintiffs, of the potential risks and

21              serious side effects associated with its use both alone and when used in conjunction

22              with sympathomimetics and as used in Jack3d.

23      218.   In light of the potential and actual risk of harm associated with the drug's use, a

24   reasonable person who had actual knowledge of this potential risk of harm would have concluded

25   CarnoSyn should not have been marketed in that condition.

26      219.   There existed safer alternative designs, but NAI chose to market a more dangerous

27   design.

28      220.   At all times relevant herein, NAI knew that CarnoSyn and Jack3d containing

CarnoSyn would be purchased by members of the general public and would be used by such

1  purchasers without a prescription and without any inspections for defects, and would rely upon the

2  representations made by NAI through its advertising, marketing and other public statements and on

3  the Jack3d label.

4       221.  At all times material to this action, CarnoSyn was expected to reach, and did reach,

5  consumers in the State of California and throughout the United States, including Plaintiffs, without

6  substantial change in the condition in which it was sold.

7       222.  NAI knew or should have known of the defective nature of CarnoSyn but continued

8  to develop, design, formulate, market, promote, sell and otherwise release these products into the

9  stream of commerce so as to maximize sales and profits at the expense of the public health and

10 safety, in conscious disregard of the foreseeable harm caused by their products, including serious

11 cardiovascular disorders, stroke, heart attack, dizziness, loss of consciousness, death, and other

12 health problems.

13      223.  At all times, Plaintiffs used CarnoSyn for its intended or reasonably foreseeable

14 purpose.

15      224.  As a direct and proximate result of the defective and unreasonably dangerous

16 condition of CarnoSyn and of its failure to perform safely, Plaintiffs suffered injuries as set forth

17 above.

18                           **COUNT VII**

19          **STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

20             (All Plaintiffs Against USP and DOES 1-500)

21      225.  Plaintiffs incorporate by reference each and every prior paragraph of this Complaint

22 as though set forth in full in this cause of action.

23      226.  At all times material to this action, USP and Does 1-500 were responsible for

24 designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing,

25 labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary

26 supplement Jack3d and OxyELITE, which are defective and unreasonably dangerous to users and/or

27 consumers of the drug, including Plaintiffs.

28

- 49 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

227.    At all times material to this action, Jack3d and OxyELITE were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by USP and Does 1-500 in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous risks and reactions associated with Jack3d and OxyELITE, and the comparative severity, duration and the extent of the risks and reactions;

b.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the propensity to cause a substantial increased risk of serious bodily harm;

c.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous drug-drug interactions and food-drug interactions; and

d.    The warnings that were given by the USP and Does 1-500 were not accurate, clear, and/or were ambiguous.

228.    Plaintiffs could not have discovered any defect in Jack3d and OxyELITE through the exercise of reasonable care.

229.    USP and Does 1-500, as manufacturers, sellers and/or distributors of Jack3d and OxyELITE, are held to the level of knowledge of an expert in the field.

230.    Plaintiffs reasonably relied on the skill, superior knowledge, and judgment of USP and Does 1-500.

231.    USP and Does 1-500 had a continuing duty to warn the Plaintiffs of the dangers associated with the use of Jack3d and OxyELITE.

232.    Plaintiffs consumed and used Jack3d and OxyELITE for their intended purpose as a dietary workout supplement.

233.    Had Plaintiffs received adequate warnings regarding the risks of Jack3d and OxyELITE, Plaintiffs would not have used them.

234.   As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

## COUNT VIII

### STRICT PRODUCTS LIABILITY – FAILURE TO WARN

(Plaintiffs JUSTINE CAROLYNE, DEREK MITCHELL, BYRON NUTHALL, JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, JULIAN LOPEZ, LIAM JAKACKI, TROY HIXSON and KYRIE TERRY Against GNC)

(Plaintiffs TIMOTHY HEPWORTH, MICHAEL GARCIA, LAWRENCE SIEGEL, TROY HIXSON, and SARAH LECHNER on behalf of and as representative for MARC LECHNER Against VITAMIN SHOPPE)

(Plaintiff MARCUS HARKINS Against SUPER SUPPLEMENTS)

(Plaintiff BYRON NUTHALL Against RITE AID)

(Plaintiff WILLIAM JETTON Against BODYBUILDING.COM)

(Plaintiff STEVEN MILAZZO Against MAX MUSCLE)

235.   Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

236.   At all times material to this action, RETAILER DEFENDANTS, and each of them, were responsible for testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement Jack3d and OxyELITE, which are defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

237.   At all times material to this action, Jack3d and OxyELITE were tested, packaged, promoted, marketed, distributed, labeled, and/or sold by RETAILER DEFENDANTS, and each of them, in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous risks and reactions associated with Jack3d and OxyELITE, and the comparative severity, duration and the extent of the risks and reactions;

b.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the propensity to cause a substantial increased risk of serious bodily harm;

c.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous drug-drug interactions and food-drug interactions; and

d.    The warnings that were given by the RETAILER DEFENDANTS, and each of them, were not accurate, clear, and/or were ambiguous.

238.    Plaintiffs could not have discovered any defect in Jack3d and OxyELITE through the exercise of reasonable care.

239.    RETAILER DEFENDANTS, and each of them, as sellers and/or distributors of Jack3d and OxyELITE, are held to the level of knowledge of an expert in the field.

240.    Plaintiffs reasonably relied on the skill, superior knowledge, and judgment of RETAILER DEFENDANTS.

241.    RETAILER DEFENDANTS, and each of them, had a continuing duty to warn the Plaintiffs of the dangers associated with the use of Jack3d and OxyELITE.

242.    Plaintiffs consumed and used Jack3d and OxyELITE for their intended purpose as a dietary workout supplement.

243.    Had Plaintiffs received adequate warnings regarding the risks of Jack3d and OxyELITE, Plaintiffs would not have used them.

244.    As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

///
///
///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## COUNT IX

## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

(Plaintiffs JUSTIN CAROLYNE, TIMOTHY HEPWORTH, MARCUS HARKINS, DEREK MITCHELL, BYRON NUTHALL, MICHAEL GARCIA, LAWRENCE SIEGEL, MARK HERSHKOWITZ, LIAM JAKACKI, TROY HIXSON, KYRIE TERRY, STEVEN MILAZZO, and SARAH LECHNER on behalf of and as representative for MARC LECHNER Against NAI)

245.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

246.    At all times material to this action, NAI was responsible for designing, developing, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement CarnoSyn, which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

247.    At all times material to this action, CarnoSyn was designed, developed, promoted, marketed, distributed, labeled, and/or sold by NAI in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    it contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous risks and reactions associated with CarnoSyn when used alone and when used in dietary supplements like Jack3d containing sympathomimetics, and the comparative severity, duration and the extent of the risks and reactions;

b.    it contained warnings insufficient to alert consumers, including Plaintiffs herein, of the propensity to cause a substantial increased risk of serious bodily harm;

c.    it contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous drug-drug interactions and food-drug interactions, specifically the interactions between CarnoSyn and DMAA and caffeine; and

d.    most basically, it contained no warnings.

248.    Plaintiffs could not have discovered any defect in CarnoSyn through the exercise of reasonable care.

249.    NAI as a designer of CarnoSyn is held to the level of knowledge of an expert in the field.

250.    Plaintiffs reasonably relied on the skill, superior knowledge, and judgment of the NAI.

251.    NAI had a continuing duty to warn the Plaintiffs of the dangers associated with the use of CarnoSyn and Jack3d.

252.    Plaintiffs consumed and used CarnoSyn for its intended purpose as a dietary workout supplement.

253.    Had Plaintiffs received adequate warnings regarding the risks of CarnoSyn, Plaintiffs would not have used Jack3d.

254.    As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of CarnoSyn, Plaintiffs suffered injuries as set forth above.

## COUNT X

## BREACH OF EXPRESS WARRANTY

### (All Plaintiffs Against USP DEFENDANTS and DOES 1-500)

255.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

256.    At all times, USP expressly warranted that Jack3d and OxyELITE were safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, that they were made from natural ingredients (i.e. geranium),  and that they were adequately tested and fit for their intended purpose. Specifically, in reference to research funded by USP, USP represented on its website and through its advertising that:

  a.  "The hemodynamic response to acute ingestion was assessed as well. OxyElite Pro did not result in a statistically significant change in heart rate or diastolic pressure, but did cause a statistically significant change in systolic blood pressure from baseline. This

increase was mild and transient, and was similar to the changes reported in the scientific literature for subjects ingesting an amount of caffeine equivalent to 2-3 cups of coffee."

b. "Jack3d, which contains DMAA, was well tolerated and no serious adverse events were noted."

c. "At the beginning and end of the study, blood pressure, heart rate and various indicators of renal and liver function were assessed. The study found that there were no statistically significant changes from baseline to the end of the study. No serious adverse events were noted."

d. "NEWLY RELEASED, GROUNDBREAKING RESEARCH STUDIES SHOW USPLABS' DMAA SUPPLEMENTS ARE SAFE AND EFFECTIVE."

257.    At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of Jack3d and OxyELITE, USP knew or should have known that despite the above and other warranties alleged herein:

a. In fact, the studies cited found statistically increased blood pressure, myocardial work and RPP;

b. That participants in the studies did experience adverse cardiovascular effects from use of products even if not serious;

c. USP's studies, given their underpowered size, did not and could not prove that Jack3d and OxyELITE do not result in serious adverse events;

d. USP's claims of safety and efficacy were not supported by researchers at the University of Memphis even though said researchers were financially interested and biased researchers;

e. Jack3d and OxyELITE contained DMAA, which was synthetically derived, and not natural;

f.   that geranium plants and oil do not contain detectable amounts of DMAA and therefore synthetic DMAA cannot be equivalent to geranium; and that

g.   Since USP knew FDA had received 42 serious adverse events from DMAA products, Jack3d and OxyELITE containing DMAA were unsafe.

258.   At the time of making these warranties and other similar warranties, USP knew or should have known that, in fact, even apart from the result of USP funded studies the representations and warranties were false, misleading, and untrue in that Jack3d and OxyELITE were not safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

259.   Plaintiffs reasonably relied upon the skill and judgment of USP, and upon said express warranties in using Jack3d and OxyELITE. As a result, Plaintiffs used Jack3d and OxyELITE for their intended purpose.

260.   USP breached said express warranties, in that, Jack3d and OxyELITE were not safe, effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in their recommended dose.

261.   Due to USP's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with Jack3d and OxyELITE until after they used them.

262.   As a direct and proximate result of the USP's breach of express warranties and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

///

///

///

## COUNT XI

## BREACH OF EXPRESS WARRANTY

(Plaintiffs JUSTINE CAROLYNE, DEREK MITCHELL, BYRON NUTHALL, JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, JULIAN LOPEZ, LIAM JAKACKI, TROY HIXSON, and KYRIE TERRY Against GNC)

263.   Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

264.   At all times, GNC expressly warranted that Jack3d and OxyELITE were safe, effective and fit for use by consumers and users, including Plaintiffs, for its intended use, that they were of merchantable quality, that they did not produce dangerous side effects, that they were made from natural ingredients (i.e. geranium),  and that they were adequately tested and fit for their intended purpose. Specifically, GNC represented on its website and through its advertising that:

a. "DMAA is perfectly safe when taken as directed."

b. OxyELITE is "Pharmacist formulated"

c. "What we particularly love about the OxyELITE Pro formula...aside from its effectiveness...is that it doesn't make you feel wired and jittery, nor does it dry out your mouth and keep you up at night."

d. "Jack3d is now backed by multiple University studies, including double-blind, placebo-controlled research."

265.   At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of Jack3d and OxyELITE, GNC knew or should have known that despite the above and other warranties alleged herein:

a. USP's university studies did not and could not prove that Jack3d and OxyELITE do not result in serious adverse events;

b. OxyELITE was not formulated by a licensed pharmacist;

c. . GNC's claims of safety and efficacy were not supported by any research let alone researchers at the University of Memphis;

d. DMAA is not safe when used as directed; and

e. Since GNC knew FDA had received 42 serious adverse events from DMAA products, Jack3d and OxyELITE containing DMAA were unsafe.

266.    At the time of making these warranties and other similar warranties, GNC knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that Jack3d and OxyELITE were not safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

267.    Plaintiffs reasonably relied upon the skill and judgment of GNC, and upon said express warranties in using Jack3d and OxyELITE. As a result, Plaintiffs used Jack3d and OxyELITE for their intended purpose.

268.    GNC breached said express warranties, in that, Jack3d and OxyELITE were not safe, effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in their recommended dose.

269.    Due to GNC's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with Jack3d and OxyELITE until after they used them.

270.    As a direct and proximate result of the GNC's breach of express warranties and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

///

///

///

## COUNT XII

## BREACH OF EXPRESS WARRANTY

(Plaintiffs JUSTIN CAROLYNE, TIMOTHY HEPWORTH, MARCUS HARKINS, DEREK MITCHELL, BYRON NUTHALL, MICHAEL GARCIA, LAWRENCE SIEGEL, MARK HERSHKOWITZ, LIAM JAKACKI, TROY HIXSON, KYRIE TERRY, STEVEN MILAZZO, and SARAH LECHNER on behalf of and as representative for MARC LECHNER Against NAI)

271.   Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

272.   At all times, NAI expressly warranted that CarnoSyn was safe, effective and fit for use by consumers and users, including Plaintiffs, for its intended use, that it was of merchantable quality, that it did not produce dangerous side effects, and that it was adequately tested and fit for its intended purpose. Specifically, NAI represented on its website and through its advertising that:

    a.   In nearly every athletic endeavor, from bodybuilding and cycling to running and swimming, numerous clinical studies have proven Beta-Alanine is effective in boosting muscle carnosine, buffering lactic acid, increasing strength and endurance and speeding recovery; and

    b.   virtually any athlete is going to be benefitted by supplementing with beta-alanine.

273.   At the time of making these warranties, NAI knew or should have known that the representations and warranties were false, misleading, and untrue in that despite the warranties, CarnoSyn and beta-alanine are not safe and not effective. Further, CarnoSyn is not proven to increase strength or endurance.

274.   Plaintiffs reasonably relied upon the skill and judgment of NAI, and upon said express warranties in purchasing Jack3d containing CarnoSyn/beta-alanine.

275.   Plaintiffs used Jack3d and CarnoSyn for their intended purpose.

- 59 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

276.    NAI breached said express warranties, in that, CarnoSyn/beta-alanine was not safe, effective and fit for its intended purpose, was not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in its recommended dose.

277.    Due to NAI's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with CarnoSyn/beta-alanine until after they used it.

278.    As a direct and proximate result of the NAI's breach of express warranties and the unreasonably dangerous and defective characteristics of Jack3d, Plaintiffs suffered injuries as set forth above.

## COUNT XIII

## BREACH OF IMPLIED WARRANTY

### (Against USP and Does 1-500)

279.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

280.    At all times, USP and Does 1-500 impliedly warranted that Jack3d and OxyELITE were safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, and that they were adequately tested and fit for their intended purpose.

281.    At the time of making these warranties, USP and Does 1-500 knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that Jack3d and OxyELITE were not safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

282.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of USP and Does 1-500 and upon said implied warranties in using Jack3d and OxyELITE. As a result, Plaintiffs used Jack3d and OxyELITE for its intended purpose.

283.  USP and Does 1-500 breached said implied warranties, in that, Jack3d and OxyELITE were not safe, effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in their recommended dose.

284.  Due to USP and Does 1-500's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with Jack3d and OxyELITE until after they used them.

285.  As a direct and proximate result of the USP and Does 1-500's breach of implied warranties and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

### COUNT XIV

### BREACH OF IMPLIED WARRANTY

**(Plaintiffs JUSTINE CAROLYNE, DEREK MITCHELL, BYRON NUTHALL, JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, JULIAN LOPEZ, LIAM JAKACKI, TROY HIXSON and KYRIE TERRY Against GNC)**

**(Plaintiffs TIMOTHY HEPWORTH, MICHAEL GARCIA, LAWRENCE SIEGEL, TROY HIXSON, and SARAH LECHNER on behalf of and as representative for MARC LECHNER Against VITAMIN SHOPPE)**

**(Plaintiff MARCUS HARKINS Against SUPER SUPPLEMENTS)**

**(Plaintiff BYRON NUTHALL Against RITE AID)**

**(Plaintiff WILLIAM JETTON Against BODYBUILDING.COM)**

**(Plaintiff STEVEN MILAZZO Against MAX MUSCLE)**

286.  Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

287.  At all times, RETAILER DEFENDANTS, and each of them, impliedly warranted that Jack3d and OxyELITE were safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, and that they were adequately tested and fit for their intended purpose.

288.    At the time of making these warranties, RETAILER DEFENDANTS, and each of them, knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that Jack3d and OxyELITE were not safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

289.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of RETAILER DEFENDANTS, and each of them, and upon said implied warranties in using Jack3d and OxyELITE. As a result, Plaintiffs used Jack3d and OxyELITE for their intended purpose.

290.    RETAILER DEFENDANTS, and each of them, breached said implied warranties, in that, Jack3d and OxyELITE were not safe, effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in their recommended dose.

291.    Due to RETAILER DEFENDANTS' wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with Jack3d and OxyELITE until after they used them.

292.    As a direct and proximate result of the RETAILER DEFENDANTS' breach of implied warranties and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

///

///

///

## COUNT XV

### BREACH OF IMPLIED WARRANTY

**(Plaintiffs JUSTIN CAROLYNE, TIMOTHY HEPWORTH, MARCUS HARKINS, DEREK MITCHELL, BYRON NUTHALL, MICHAEL GARCIA, LAWRENCE SIEGEL, MARK HERSHKOWITZ, LIAM JAKACKI, TROY HIXSON, KYRIE TERRY, STEVEN MILAZZO, and SARAH LECHNER on behalf of and as representative for MARC LECHNER Against NAI)**

293.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

294.    At all times, NAI impliedly warranted that CarnoSyn was safe, effective and fit for use by consumers and users, including Plaintiffs, for its intended use, that it was of merchantable quality, that it did not produce dangerous side effects, and that it was adequately tested and fit for its intended purpose.

295.    At the time of making these warranties, NAI knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that CarnoSyn was not safe, effective and fit for use by consumers and users, including Plaintiffs, for its intended use, that it was not of merchantable quality, that it did produce dangerous side effects, and that it was not adequately tested or fit for its intended purpose.

296.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of NAI and upon said implied warranties in using CarnoSyn. As a result, Plaintiffs used CarnoSyn for its intended purpose.

297.    NAI breached said implied warranties, in that, CarnoSyn was not safe, effective and fit for its intended purpose, was not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in its recommended dose.

298.    Due to NAI's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with CarnoSyn until after they used it.

299.    As a direct and proximate result of the NAI's breach of implied warranties and the unreasonably dangerous and defective characteristics of CarnoSyn, Plaintiffs suffered injuries as set forth above.

## COUNT XVI

### UNLAWFUL BUSINESS ACTS AND PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 ET SEQ.

**(All Plaintiffs Against USP DEFENDANTS and DOES 1-500)**

300.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

301.    California Business and Professions Code §17200 prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, USP has engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business and Professions Code §17200, specifically including but not limited to mischaracterizing research conducted on DMAA and USP products and promoting Jack3d and OxyELITE as safe and effective, when in fact Jack3d and OxyELITE are neither safe nor effective.

302.    California Business and Professions Code §17200 also prohibits any "unlawful business act or practice." USP has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1770, California Business and Professions Code §17200 et seq., California Health and Safety Code §§110660, 110760, 110765, the DSHEA (Pub. L. No. 103-417, 108 Stat. 4325 (1994)), 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45(a)(1), 49 Fed. Reg. 30999 (Aug. 2, 1984), Federal Food, Drug and Cosmetic Act §402(f)(1)(A) (21 U.S.C. §342), and the common law.

303.    Plaintiffs reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

304.    California Business and Professions Code §17200 also prohibits any "unfair . . . business act or practice."

305.    USP's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of California Business

and Professions Code §17200 *et seq.* in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

306. . As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth-in-advertising laws in California and other states resulting in harm to consumers. Plaintiffs assert violation of the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of California Business and Professions Code §17200 et seq.

307. There were reasonably available alternatives to further USP's legitimate business interests, other than the conduct described herein.

308. California Business and Professions Code §17200 also prohibits any "fraudulent business act or practice."

309. USP's claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of California Business and Professions Code §17200.

310. USP's conduct caused and continues to cause substantial injury to Plaintiffs and other consumers. Plaintiffs have suffered injury as a result of USP's unfair conduct.

311. USP has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiffs to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.

312. Additionally, pursuant to California Business and Professions Code §17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices, and requiring USP to engage in a corrective advertising campaign, including notification of Jack3d and OxyELITE's health risks.

///
///
///

## Punitive Damages Allegations

### (All Plaintiffs Against USP)

### (Plaintiffs JUSTINE CAROLYNE, DEREK MITCHELL, BYRON NUTHALL, JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, JULIAN LOPEZ, LIAM JAKACKI, TROY HIXSON and KYRIE TERRY Against GNC)

313.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

314.    At all times material hereto, USP and GNC knew that the use of Jack3d and OxyELITE could result in the development of serious harm and death. Additionally, USP and GNC knew that the use of Jack3d and OxyELITE would cause certain susceptible users to suffer serious injury and death, including Plaintiffs.

315.    At all times material hereto, USP and GNC engaged in conduct that constitutes malice, oppression or fraud, including without limitation the misrepresentations, warranties and omissions set forth above.

316.    USP and GNC continued to aggressively market Jack3d and OxyELITE to consumers, including Plaintiffs, without disclosing the fact that use of Jack3d and OxyELITE could result in the development of serious injuries, that it was ineffective, that it was not made from natural ingredients, that DMAA was an amphetamine, that FDA considered Jack3d and OxyELITE illegal, that DMAA was known to cause serious cardiovascular effects, that several countries had banned DMAA, that FDA had received numerous adverse reports from users of Jack3d and OxyELITE and other information about the safety of Jack3d and OxyELITE. They did so knowing that their failure to reveal the probable consequences of ingesting Jack3d and OxyELITE would seriously injure or kill consumers, including Plaintiffs, in order to make a profit and in so doing acted with malice.

317.    USP and GNC went further than failing to warn of Jack3d and OxyELITE's defective and dangerous nature. They intentionally and falsely represented and warranted that Jack3d and OxyELITE was safe when they knew that, in fact, Jack3d and OxyELITE were unsafe and posed a serious risk of injury to consumers, including Plaintiffs. They further concealed the true risks of

1  Jack3d and OxyELITE as alleged herein. USP threatened and intimidated individuals revealing the

2  risks of DMAA to further conceal dissemination of the safety risks of DMAA. In so doing, they

3  acted with fraud.

4      318.   USP and GNC continued to sell Jack3d and OxyELITE despite FDA's warning that

5  the product was illegal and posed material safety risks. Even after FDA warned USP a second time

6  that they would take all necessary action to remove Jack3d and OxyELITE from the market, USP

7  attempted to mislead consumers by publicly stating it would stop selling Jack3d and OxyELITE but

8  then secretly and recklessly continuing to sell Jack3d and OxyELITE to GNC. Despite FDA's very

9  clear warning that DMAA is illegal, dangerous and that it would take all necessary steps to remove it

10  from the market, GNC continues to sell Jack3d and OxyELITE today. Such conduct is despicable

11  and oppressive.

12      319.   USP and GNC's acts of malice, oppression and fraud were on the part of corporate

13  officers, directors or managing agents, or were on the part of employees and were ratified or

14  authorized by USP and GNC, respectively.

15      320.   USP and GNC's intentional and/or reckless failure to disclose information deprived

16  Plaintiffs of necessary information to enable Plaintiffs to weigh the true risks of Jack3d and

17  OxyELITE against the benefits in making their decision to use Jack3d and OxyELITE.

18      321.   As a direct and proximate result of the USP and GNC's conscious and deliberate

19  disregard for the rights and safety of consumers, Plaintiffs suffered severe injury and loss. Plaintiffs

20  likewise suffered loss as alleged herein. Plaintiffs seek actual and punitive damages from USP and

21  GNC as alleged herein.

22      322.   The aforesaid conduct of the USP and GNC was committed with knowing,

23  conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiffs

24  herein, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish USP and

25  GNC and deter them from similar conduct in the future.

26      ///

27

28

## WRONGFUL DEATH ALLEGATIONS

### (SARAH LECHNER on behalf of and as representative for MARC LECHNER Against USP Defendants and VITAMIN SHOPPE)

323.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

324.    As a direct and proximate result of Defendants' wrongful conduct causing the death of Plaintiff-Decedent MARC LECHNER, Plaintiff SARAH LECHNER suffered the loss of consortium, including the loss of love, service, society, comfort, affection, moral support, companionship, and support of the Plaintiff-Decedent.

325.    As a direct and proximate result of Defendants' wrongful conduct as herein alleged and of the death of Plaintiff-Decedent MARC LECHNER, Plaintiff SARAH LECHNER incurred the cost of burial and funeral expenses and will lose any future financial support, gifts, benefits and value from household services that Plaintiff-Decedent would have provided.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a.      As to all Counts and all DEFENDANTS, damages to the Plaintiffs according to proof including as applicable:

      i.      Past and future medical and care expenses of Plaintiffs according to proof;

      iii.     Past and future loss of earnings (and/or profits) of Plaintiffs according to proof;

      iii.     Other economic loss;

b.      As to all Counts and all DEFENDANTS, Non-economic damages according to proof including as applicable:

      i.      Compensation for physical pain and discomfort

      ii.     Compensation for fright, nervousness, anxiety, worry, and apprehension

      iii.    Loss of consortium;

c.      As to all Counts and all DEFENDANTS, Awarding pre-judgment and post-judgment interest to the Plaintiffs according to proof;

d.      As to all Counts and all DEFENDANTS, Awarding reasonable costs to the Plaintiffs as provided by law;

e.      As to Count XVI and USP, Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein;

f.      As to Count XVI and USP, Ordering Defendants to engage in a corrective advertising campaign;

g.      As to Counts IV, V, VII, VIII, X, XI, XIII, XIV and XVI and USP and GNC, Awarding Plaintiffs punitive and treble damages;

h.      As to Plaintiff SARAH LECHNER on behalf of and as representative for MARC LECHNER as against USP and VITAMIN SHOPPE, burial and funeral expenses, loss of earnings of Plaintiff-Decedent, loss of future financial support, gifts, benefits and value from household services that Plaintiff-Decedent would have provided, and damages to Plaintiff for loss of consortium, including the loss of love, service, society, comfort, and companionship of Plaintiff-Decedent. according to proof, and

i.      As to all Counts and all DEFENDANTS, Granting all such other relief as the Court deems necessary, just and proper.


## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Date: 5/8/2013

ANDREWS THORNTON

Attorneys for Plaintiff

---

- 69 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

● **ORIGINAL** ●

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Sean T. Higgins, Esq., SBN: 266888<br>ANDREWS & THORNTON<br>2 Corporate Park, Ste 110<br>Irvine, CA 92606<br>TELEPHONE NO.: 949-748-1000    FAX NO.: (949) 315-3540<br>ATTORNEY FOR (Name): Plaintiff, Justin Carolyne, et al. | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>MAY 0 8 2013<br><br>John A. Clarke, Executive Officer/Clerk<br>BY _____ Deputy<br>Ishaylia Chambers |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: Carolyne, et al. v. USPLabs, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **BC 5 0 8 2 1 2**<br>JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46)<br>**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>[ ] Asbestos (04)<br>[X] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23)<br>**Non-PI/PD/WD (Other) Tort**<br>[ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35)<br>**Employment**<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[ ] Insurance coverage (18)<br>[ ] Other contract (37)<br>**Real Property**<br>[ ] Eminent domain/Inverse condemnation (14)<br>[ ] Wrongful eviction (33)<br>[ ] Other real property (26)<br>**Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11)<br>[ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment**<br>[ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties    d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action (specify): 16
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: May 8, 2013
Sean T. Higgins, Esq., SBN: 266888                        ▶ _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**



Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice—
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach—Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (non-
    domestic relations)
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

● ORIGINAL ●

| SHORT TITLE: Carolyne, et al. v. USPLabs, LLC, et al. | CASE NUMBER BC508212 |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES  CLASS ACTION? [ ] YES  LIMITED CASE? [ ] YES  TIME ESTIMATED FOR TRIAL 20 [ ] HOURS/ [X] DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/Wrongful Death Tort | Asbestos (04) | [ ] A6070  Asbestos Property Damage<br>[ ] A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | [X] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2.,③,④, 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons<br>[ ] A7240  Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250  Premises Liability (e.g., slip and fall)<br>[ ] A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>[ ] A7270  Intentional Infliction of Emotional Distress<br>[ ] A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

LA-CV109

| SHORT TITLE: Carolyne, et al. v. USPLabs, LLC, et al. | CASE NUMBER | |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031 Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation     Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2., 6. |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: Carolyne, et al. v. USPLabs, LLC, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109. (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: Carolyne, et al. v. USPLabs, LLC, et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: |
|---|---|
| ☐1. ☐2. ☒3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: Monrovia | STATE: CA | ZIP CODE: 91016 |
|---|---|---|

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk _____ courthouse in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: May 8, 2013

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

● ORIGINAL ●

| | **SUM-100** |
|---|---|

## SUMMONS
### *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** USPLABS, LLC
*(AVISO AL DEMANDADO):*

(Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:** JUSTIN CAROLYNE
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
(Additional Parties Attachment form is attached)

*FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 08 2013

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
Ishaylia Chambers

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | **CASE NUMBER:**<br>*(Número del Caso):*<br>**BC508212** |
|---|---|

Superior Court of California, County of Los Angeles
111 North Hill Street
Los Angeles, CA 90012
Stanley Mosk Courthouse

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Sean T. Higgins, Esq., SBN: 266888          (949) 748-1000  (949) 315-3540
ANDREWS & THORNTON
2 Corporate Park, Ste 110
Irvine, CA 92606

| DATE:<br>*(Fecha)* MAY 08 2013 **John A. Clarke** | Clerk, by _____, Deputy<br>*(Secretario)* Ishaylia Chambers *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Legal<br>Solutions<br>Plus | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|---|



**BY FAX**

SUM-200(A)

| SHORT TITLE:  Carolyne, et al. v. USPLabs, LLC, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons:  "Additional Parties Attachment form is attached."

List additional parties (*Check only one box.  Use a separate page for each type of party.*):

[X] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

Timothy Hepworth, Marcus Harkins, Derek Mitchell, Byron Nuthall, Michael Garcia, Lawrence Siegel, Jacinta Little, Mark Hershkowitz, Brian West, William Jetton, Julian Lopez, Liam Jakacki, Troy Hixson, Kyrie Terry, Steven Milazzo, and Sarah Lechner on behalf of and as representative for Marc Lechner,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Legal Solutions Plus

SUM-200(A)

| SHORT TITLE:  Carolyne, et al. v. USPLabs, LLC, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons:  "Additional Parties Attachment form is attached."

List additional parties *(Check only one box.  Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Jonathan Vincent Doyle (an individual), Jacob Geissler (an individual), USPLabs Jack3d, LLC, USPLabs OXYELITE, LLC, USPLABS Holding, LLC, GNC Corporation, The Vitamin Shoppe, Vitamin Shoppe Industries Inc., Bodybuilding.com, LLC, Super Supplements, Inc., Max Muscle Marketing, Inc., Rite Aid Corporation, Natural Alternatives International, Inc., and DOES 1-500, Inclusive,

Page __1__ of __1__

Page 1 of 1

### ADDITIONAL PARTIES ATTACHMENT
#### Attachment to Summons

Legal
Solutions
Plus

00/00/2013   12:19:27 FAX  2132499090          NATIONWIDE LEGAL                                    3

**ORIGINAL**

| Attorney or Party without Attorney: | | | | | For Court Use Only |
|---|---|---|---|---|---|

SEAN T. HIGGINS, ESQ., Bar #266888
ANDREWS & THORNTON
2 CORPORATE PARK
SUITE 110
IRVINE, CA 92606
Telephone No: (949) 748-1000     FAX No: (949) 315-3540

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 09 2013

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
Glorietta Robinson

Ref. No. or File No.:  CAROLYNE V USPLABS

Attorney for: Plaintiff

Insert name of Court, and Judicial District and Branch Court:
Los Angeles County Superior Court, Stanley Mosk Courthouse

Plaintiff: JUSTIN CAROLYNE
Defendant: USPLABS, LLC

| PROOF OF SERVICE SUMMONS & COMPLAINT | Hearing Date: | Time: | Dept/Div: 42 | Case Number: BC508212 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUMMONS; ADDITIONAL PARTIES ATTACHMENT (Attachment to Summons); COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT-UNLIMITED CIVIL CASE; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS PACKAGE.

3. a. Party served:  MAX MUSCLE MARKETING, INC. c/o JOE WELLS, AGENT FOR SERVICE OF PROCESS
   b. Person served:  KAREN ELDER, CONTROLLER/AUTHORIZED TO ACCEPT SERVICE

4. Address where the party was served:  210 W. TAFT AVENUE.
   ORANGE, CA 92865

5. I served the party:
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Wed., May. 08, 2013 (2) at: 3:30PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: MAX MUSCLE MARKETING, INC.
   Under CCP 416.10 (corporation)

7. Person Who Served Papers:                                              Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. PAUL FLYNN.                                    d.  The Fee for Service was:  $154.50
   b. Service Provided for:                          e.  I am: (3) registered California process server
      NATIONWIDE LEGAL LLC                              (i)   Independent Contractor
      820 N. PARTON ST. (L.A. 12-234648)               (ii)  Registration No.:   PSC #2564
      SANTA ANA, CA  92701                             (iii) County:            Orange
   c. (714) 558-2400

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Thu, May. 09, 2013

Judicial Council Form POS-010.
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE                    (PAUL FLYNN)    2441416   sschig.210481

BY FAX

00/00/2013  12:19:27 FAX  2132499990          NATIONWIDE LEGAL

# ORIGINAL

1

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| SEAN T. HIGGINS, ESQ., Bar #266888<br>ANDREWS & THORNTON<br>2 CORPORATE PARK<br>SUITE 110<br>IRVINE, CA 92606<br>Telephone No: (949) 748-1000     FAX No: (949) 315-3540 | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>**MAY 09 2013** |
| Attorney for: Plaintiff | John A. Clarke, Executive Officer/Clerk |
| Ref. No. or File No.: CAROLYNE V USPLABS | BY _____, Deputy<br>Robinson |
| Insert name of Court, and Judicial District and Branch Court:<br>Los Angeles County Superior Court, Stanley Mosk Courthouse | |

| Plaintiff: JUSTIN CAROLYNE | | | | |
|---|---|---|---|---|
| Defendant: USPLABS, LLC | | | | |
| **PROOF OF SERVICE**<br>**SUMMONS & COMPLAINT** | Hearing Date: | Time: | Dept/Div:<br>40 | Case Number:<br>BC508212 |

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; ADDITIONAL PARTIES ATTACHMENT (Attachment to Summons); COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT-UNLIMITED CIVIL CASE; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS PACKAGE.

3. a. *Party served:*      NATURAL ALTERNATIVES INTERNATIONAL, INC.
   b. *Person served:*     KEN WOLF, AGENT FOR SERVICE OF PROCESS

4. *Address where the party was served:*     1185 LINDA VISTA DR
                                           SAN MARCOS, CA 92078

5. *I served the party:*
   b. by substituted service. On: Wed., May. 08, 2013 at: 3:58PM by leaving the copies with or in the presence of:
                               LINDA BRADY, PAYROLL & BENEFITS ADMINISTRATOR
   (1) (Business) Person in charge over 18. I informed him or her of the general nature of the papers.
   (4) A declaration of mailing is attached.

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
   on behalf of: NATURAL ALTERNATIVES INTERNATIONAL, INC.
   Under CCP 416.10 (corporation)

7. *Person Who Served Papers:*                      Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. ANTHONY CARLOS JACKSON           d. *The Fee for Service was:*    $239.55
   b. Service Provided for:            e. I am: (3) registered California process server
      NATIONWIDE LEGAL LLC                  (i)  Independent Contractor
      820 N. PARTON ST. (L.A. 12-234648)    (ii) Registration No.:     1754
      SANTA ANA, CA 92701                   (iii) County:              San Diego
   c. (714) 558-2400

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   Date: Thu, May. 09, 2013

                                                        _____
   Judicial Council Form POS-010      **PROOF OF SERVICE**    (ANTHONY CARLOS JACKSON)
   Rule 2.150(a)&(b) Rev January 1, 2007

BY FAX

00/00/2013  12:19:27 FAX 2132499990         NATIONWIDE LEGAL                                    2

| Attorney or Party without Attorney:<br>SEAN T. HIGGINS, ESQ., Bar #266888<br>ANDREWS & THORNTON<br>2 CORPORATE PARK<br>SUITE 110<br>IRVINE, CA 92606<br>Telephone No: (949) 748-1000   FAX No: (949) 315-3540 | For Court Use Only |
|---|---|
| Attorney for: Plaintiff | Ref. No or File No.:<br>CAROLYNE V USPLABS |

Insert name of Court, and Judicial District and Branch Court:
Los Angeles County Superior Court, Stanley Mosk Courthouse

Plaintiff: JUSTIN CAROLYNE

Defendant: USPLABS, LLC

| PROOF OF SERVICE<br>By Mail | Hearing Date: | Time: | Dept/Div: | Case Number:<br>BC508212 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.

2. I served copies of the SUMMONS; ADDITIONAL PARTIES ATTACHMENT (Attachment to Summons); COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT-UNLIMITED CIVIL CASE; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS PACKAGE.

3. By placing a true copy of each document in the United States mail, in a sealed envelope by First Class mail with postage prepaid as follows:

    a. Date of Mailing:                     Wed., May. 08, 2013
    b. Place of Mailing:                  SANTA ANA, CA 92701
    c. Addressed as follows:           NATURAL ALTERNATIVES INTERNATIONAL, INC. c/o KEN WOLF,
                                          AGENT FOR SERVICE OF PROCESS
                                          1185 LINDA VISTA DR
                                          SAN MARCOS, CA 92078

4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Wed., May. 08, 2013 in the ordinary course of business.

5. Person Serving:
    a. OMAR MURILLO
    b. Service Provided for:
       NATIONWIDE LEGAL LLC
       820 N. PARTON ST. (L.A. 12-234648)
       SANTA ANA, CA 92701
    c. (714) 558-2400

Recoverable Cost Per CCP 1033.5(a)(4)(B)
    d. The Fee for Service was:  $239.55
    e. I am: (3) registered California process server
          (i)   Employee
          (ii)  Registration No.:  12-234648
          (iii) County:        Los Angeles

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Date: Thu, May. 09, 2013

Judicial Council Form POS-030<br>Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
By Mail

(OMAR MURILLO)

00/31/13  12:19:27 FAX 2132499990        NATIONWIDE LEGAL

**ORIGINAL**

D-42

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Sean T. Higgins, Esq. SBN: 266888<br>ANDREWS & THORNTON<br>2 Corporate Park, Suite 110<br>Irvine, California 92606<br>TELEPHONE NO: 949-748-1000   FAX NO. (Optional): 949-315-3540<br>E-MAIL ADDRESS (Optional): shiggins@andrewsthornton.com<br>ATTORNEY FOR (Name): Plaintiff, Carolyne, et al. | **FILED**<br>LOS ANGELES SUPERIOR COURT<br>MAY 31 2013<br>JOHN A. CLARKE, Clerk<br>BY NORMA ALVARADO, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Carolyne, et al.

DEFENDANT/RESPONDENT: USPLabs, LLC, et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|
| [✓] Personal Injury, Property Damage, or Wrongful Death<br>　　[ ] Motor Vehicle　[ ] Other<br>[ ] Family Law　[ ] Eminent Domain<br>[ ] Other (specify) : | BC508212<br>D-42 |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please dismiss this action as follows:
　a. (1) [ ] With prejudice　(2) [✓] Without prejudice
　b. (1) [✓] Complaint　(2) [ ] Petition
　　(3) [ ] Cross-complaint filed by (name):　　　　　　　　on (date):
　　(4) [ ] Cross-complaint filed by (name):　　　　　　　　on (date):
　　(5) [ ] Entire action of all parties and all causes of action
　　(6) [✓] Other (specify):* as to Defendant BodyBuilding.com, LLC ONLY

2. (Complete in all cases except family law cases.)
　　[ ] Court fees and costs were waived for a party in this case. (This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).

Date: 5/30/2013

Sean T. Higgins, SBN: 266888

(TYPE OR PRINT NAME OF [✓] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)　　　　(SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
[✓] Plaintiff/Petitioner　[ ] Defendant/Respondent
[ ] Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
　Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)　　　　(SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complaint (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner　[ ] Defendant/Respondent
[ ] Cross-Complainant

(To be completed by clerk)
4. [✓] Dismissal entered as requested on (date): MAY 31 2013
5. [ ] Dismissal entered on (date):　　　　as to only (name):
6. [ ] Dismissal not entered as requested for the following reasons (specify):

7. a. [ ] Attorney or party without attorney notified on (date):
　b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
　　　　[ ] a copy to be conformed [ ] means to return conformed copy

Date: MAY 31 2013　　　Clerk, by N. Alvarado　　　, Deputy

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. July 1, 2009] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390<br>www.courtinfo.ca.gov |
|---|---|---|

Page 1 of 2

**BY FAX**

ORIGINAL

00/      /013   12:19:27 FAX 2132499960          NATIONWIDE LEGAL                                    2

CIV-110

| PLAINTIFF/PETITIONER: Carolyne, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: USPLabs, LLC, et al. | BC508212 |

## Declaration Concerning Waived Court Fees

The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name):*

2. The person in item 1 *(check one):*
   a. ☐ is not recovering anything of value by this action.
   b. ☐ is recovering less than $10,000 in value by this action.
   c. ☐ is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____          _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

CIV-110 [Rev. July 1, 2009]                    **REQUEST FOR DISMISSAL**                    Page 2 of 2

00/00/2013 12:19:27 FAX 2132499900          NATIONWIDE LEGAL                    3

1 | Anne Andrews (SBN. 103280)
  | John C. Thornton (SBN. 84492)
2 | Sean T. Higgins, Esq. (SBN. 266888)
  | ANDREWS & THORNTON
3 | 2 Corporate Park, Suite 110
4 | Irvine, California 92606
  | Phone: (949) 748-1000
5 | Facsimile: (949) 315-3540

6 | **Attorneys for Plaintiff-Decedent**

7

8 |            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9 |                FOR THE COUNTY OF LOS ANGELES

10

11 | JUSTIN CAROLYNE, TIMOTHY          ) | *Case No.:*
   | HEPWORTH, MARCUS HARKINS,         ) | BC508212
12 | DEREK MITCHELL, BYRON NUTHALL,    ) |
   | MICHAEL GARCIA, LAWRENCE          ) |
13 | SIEGEL, JACINTA LITTLE, MARK      ) | **PROOF OF SERVICE**
   | HERSHKOWITZ, BRIAN WEST,          ) |
14 | WILLIAM JETTON, JULIAN LOPEZ,     ) |
15 | LIAM JAKACKI, TROY HIXSON, KYRIE  ) |
   | TERRY, STEVEN MILAZZO, and SARAH  ) |
16 | LECHNER on behalf of and as       ) |
17 | representative for MARC LECHNER,  ) |
   |                                   ) |
18 |           Plaintiffs,             ) |
   |                                   ) |
19 | v.                                ) |
   |                                   ) |
20 | USPLABS, LLC, JONATHAN VINCENT    ) |
21 | DOYLE (an individual), JACOB      ) |
   | GEISSLER (an individual), USPLABS ) |
22 | JACK3D, LLC, USPLABS OXYELITE,    ) |
   | LLC, USPLABS HOLDING, LLC, GNC    ) |
23 | CORPORATION, THE VITAMIN          ) |
   | SHOPPE, VITAMIN SHOPPE            ) |
24 | INDUSTRIES INC.,                  ) |
   | BODYBUILDING.COM, LLC, SUPER      ) |
25 | SUPPLEMENTS, INC., MAX MUSCLE     ) |
   | MARKETING, INC., RITE AID         ) |
26 | CORPORATION, NATURAL              ) |
27 | ALTERNATIVES INTERNATIONAL, INC,  ) |
   | and DOES 1-500, Inclusive,        ) |
28 |                                   ) |
   |           Defendants.             ) |

                              1
                        PROOF OF SERVICE

00/00/2013  12:19:27 FAX 2132499900      NATIONWIDE LEGAL

1        I am a citizen of the United States and am employed in the County of Orange,
2    State of California.  I am over the age of 18 and not a party to the within action.  My
business address is 2 Corporate Park, Suite 110, Irvine, California 92606.
3
    On May 30, 2013, I served the following documents in the manner indicated
4    on the below-named on the below listed party/parties or counsel:
5
6          **REQUEST FOR DISMISSAL AS TO BODYBUILDING.COM, LLC ONLY**

7    By placing ___ the original  XX  true copies thereof enclosed in sealed envelopes
8    addressed and sent in the following manner:

9     XX   **BY U.S. POSTAL SERVICE** as follows:  I am "readily familiar" with the firm's
10   practice of collection and processing correspondence for mailing.  Under that practice it
would be deposited with the U.S. Postal Service on the same day with postage thereon
11   fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on
motion of party served, service is presumed invalid if postal cancellation date or postage
12   meter date is more than I day after date of deposit for mailing in affidavit.
13
The above listed documents were served on the below listed parties:
14
15       **SEE ATTACHED SERVICE LIST***

16    XX   **STATE**: I declare under penalty of perjury that the foregoing is true and correct.

17       Executed on May 30, 2013, at Irvine, California.
18
19
20   MELCHISEDEC GABRIEL HALL
21
22
23

24
25
26
27
28

---

## SERVICE LIST

*In Re Carolyne, et al. v USPLabs, LLC, et al.*
*Case No.: BC508212*

| | |
|---|---|
| Jacob Geissler<br>10761 King William Drive<br>Dallas, TX 75220 | President of USPLabs Jack3d, LLC<br>USPLabs Jack3d, LLC<br>10761 King William Drive<br>Dallas, TX 75220 |
| Jonathan Doyle<br>10761 King William Drive<br>Dallas, TX 75220 | President of USPLabs OxyElite, LLC<br>USPLabs OxyElite, LLC<br>10761 King William Drive<br>Dallas, TX 75220 |
| President of USPLabs Holding, LLC<br>USPLabs Jack3d, LLC<br>350 N Saint Paul St STE 2900<br>Dallas, TX 75201-4234 | President of USPLabs, LLC<br>USPLabs, LLC<br>10761 King William Drive<br>Dallas, TX 75220 |
| Vitamin Shoppe Industries Inc.<br>CSC - Lawyers Incorporating Service<br>2710 Gateway Oaks Dr STE 150N<br>Sacramento CA 95833 | President of The Vitamin Shoppe<br>2101 91st St<br>North Bergen, NJ 07047-4796 |
| President of Max Muscle Marketing, Inc.<br>Max Muscle Marketing, Inc.<br>210 West Taft Avenue<br>Orange, California 92865 | President of BodyBuilding.com, LLC<br>Bodybuilding.com, LLC<br>2026 S. Silverstone Way<br>Meridian, ID 83642 |
| President of Super Supplements, Inc.<br>James E Sweeney<br>750 S Michigan St.<br>Seattle WA 98108 | Matthew Lawrence Marshall<br>MORRIS, POLICH & PURDY<br>1055 West Seventh Street, Suite 2400<br>Los Angeles, CA 90017<br>*for* Natural Alternatives International, Inc. |
| President of GNC Corporation<br>GNC Corporate Office Headquarters<br>300 Sixth Avenue<br>Pittsburgh, PA 15222 | Rite Aid Corporation<br>c/o CT Corporation System<br>818 W Seventh St.<br>Los Angeles CA 90017 |

3
PROOF OF SERVICE

00/__/13   12:19:27 FAX 2132499990       NATIONWIDE LEGAL                                    1

# ORIGINAL 

D-42

CIV-110

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Sean T. Higgins, Esq. SBN: 266888
ANDREWS & THORNTON
2 Corporate Park, Suite 110
Irvine, California 92606
TELEPHONE NO.: 949-748-1000    FAX NO. *(Optional):* 949-315-3540
E-MAIL ADDRESS *(Optional):* shiggins@andrewsthornton.com
ATTORNEY FOR *(Name):* Plaintiff, Carolyne, et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Carolyne, et al.

DEFENDANT/RESPONDENT: USPLabs, LLC, et al.

**REQUEST FOR DISMISSAL**
[✓] Personal Injury, Property Damage, or Wrongful Death
[ ] Motor Vehicle   [ ] Other
[ ] Family Law   [ ] Eminent Domain
[ ] Other *(specify)* :

*FOR COURT USE ONLY*

**FILED**
**LOS ANGELES SUPERIOR COURT**

MAY 3 1 2013

JOHN A. CLARKE, CLERK
Received
BY NORMA ALVARADO, DEPUTY 2013

*Filing Window*

CASE NUMBER:
BC508212
D-42

**BY FAX**

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) [ ] With prejudice   (2) [✓] Without prejudice
   b. (1) [✓] Complaint   (2) [ ] Petition
   (3) [ ] Cross-complaint filed by *(name)*:                    on *(date)*:
   (4) [ ] Cross-complaint filed by *(name)*:                    on *(date)*:
   (5) [ ] Entire action of all parties and all causes of action
   (6) [✓] Other *(specify):* as to Defendant BodyBuilding.com, LLC ONLY

2. *(Complete in all cases except family law cases.)*
   [ ] Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed.)*

Date: 5/30/2013

Sean T. Higgins, SBN: 266888

(TYPE OR PRINT NAME OF [✓] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)     ▷ _____ (SIGNATURE)
*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.*

Attorney or party without attorney for:
[✓] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:
   _____
   (TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)     ▷ _____ (SIGNATURE)
   ** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
[ ] Cross-Complainant

*(To be completed by clerk.)*
4. [✓] Dismissal entered as requested on *(date)*: MAY 3 1 2013
5. [ ] Dismissal entered on *(date)*:    as to only *(name)*:
6. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

7. a. [ ] Attorney or party without attorney notified on *(date)*:
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to be conformed   [ ] means to return conformed copy

Date: MAY 3 1 2013    Clerk, by _____ N. Alvarado , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]
**REQUEST FOR DISMISSAL**
Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov
Page 1 of 2

00/__/2013  12:19:27 FAX 2132499990     NATIONWIDE LEGAL                                    2

CIV-110

| PLAINTIFF/PETITIONER: Carolyne, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: USPLabs, LLC, et al. | BC508212 |

### Declaration Concerning Waived Court Fees

> The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name):*

2. The person in item 1 *(check one):*
   a. ☐ is not recovering anything of value by this action.
   b. ☐ is recovering less than $10,000 in value by this action.
   c. ☐ is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____          ▷_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

00/00/2013   12:19:27 FAX 2132499990        NATIONWIDE LEGAL                                    3

1 | Anne Andrews (SBN. 103280)
  | John C. Thornton (SBN. 84492)
2 | Sean T. Higgins, Esq. (SBN. 266888)
3 | ANDREWS & THORNTON
  | 2 Corporate Park, Suite 110
4 | Irvine, California 92606
  | Phone: (949) 748-1000
5 | Facsimile: (949) 315-3540

6 | **Attorneys for Plaintiff-Decedent**

7

8 |              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9 |                     FOR THE COUNTY OF LOS ANGELES

10

11 | **JUSTIN CAROLYNE, TIMOTHY**        | **Case No.:**
   | **HEPWORTH, MARCUS HARKINS,**      | **BC508212**
12 | **DEREK MITCHELL, BYRON NUTHALL,**
   | **MICHAEL GARCIA, LAWRENCE**        | **PROOF OF SERVICE**
13 | **SIEGEL, JACINTA LITTLE, MARK**
14 | **HERSHKOWITZ, BRIAN WEST,**
   | **WILLIAM JETTON, JULIAN LOPEZ,**
15 | **LIAM JAKACKI, TROY HIXSON, KYRIE**
   | **TERRY, STEVEN MILAZZO, and SARAH**
16 | **LECHNER on behalf of and as**
17 | **representative for MARC LECHNER,**

18 |                **Plaintiffs,**

19 | v.

20 | **USPLABS, LLC, JONATHAN VINCENT**
21 | **DOYLE (an individual), JACOB**
   | **GEISSLER (an individual), USPLABS**
22 | **JACK3D, LLC, USPLABS OXYELITE,**
   | **LLC, USPLABS HOLDING, LLC, GNC**
23 | **CORPORATION, THE VITAMIN**
24 | **SHOPPE, VITAMIN SHOPPE**
   | **INDUSTRIES INC.,**
25 | **BODYBUILDING.COM, LLC, SUPER**
   | **SUPPLEMENTS, INC., MAX MUSCLE**
26 | **MARKETING, INC., RITE AID**
   | **CORPORATION, NATURAL**
27 | **ALTERNATIVES INTERNATIONAL, INC,**
   | **and DOES 1-500, Inclusive,**
28

   |                **Defendants.**

---

1

PROOF OF SERVICE

00/00/2013  12:19:27 FAX 2132499990          NATIONWIDE LEGAL

I am a citizen of the United States and am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 2 Corporate Park, Suite 110, Irvine, California 92606.

On May 30, 2013, I served the following documents in the manner indicated on the below-named on the below listed party/parties or counsel:

**REQUEST FOR DISMISSAL AS TO BODYBUILDING.COM, LLC ONLY**

By placing ___ the original  XX  true copies thereof enclosed in sealed envelopes addressed and sent in the following manner:

 XX  **BY U.S. POSTAL SERVICE** as follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than I day after date of deposit for mailing in affidavit.

The above listed documents were served on the below listed parties:

**\*SEE ATTACHED SERVICE LIST\***

 **XX**  **STATE**:  I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2013, at Irvine, California.

MELCHISEDEC GABRIEL HALL

00/00/2013  12:19:27 FAX 2132499990   NATIONWIDE LEGAL

## SERVICE LIST
*In Re Carolyne, et al. v USPLabs, LLC, et al.*
*Case No.: BC508212*

| | |
|---|---|
| Jacob Geissler<br>10761 King William Drive<br>Dallas, TX 75220 | President of USPLabs Jack3d, LLC<br>USPLabs Jack3d, LLC<br>10761 King William Drive<br>Dallas, TX 75220 |
| Jonathan Doyle<br>10761 King William Drive<br>Dallas, TX 75220 | President of USPLabs OxyElite, LLC<br>USPLabs OxyElite, LLC<br>10761 King William Drive<br>Dallas, TX 75220 |
| President of USPLabs Holding, LLC<br>USPLabs Jack3d, LLC<br>350 N Saint Paul St STE 2900<br>Dallas, TX 75201-4234 | President of USPLabs, LLC<br>USPLabs, LLC<br>10761 King William Drive<br>Dallas, TX 75220 |
| Vitamin Shoppe Industries Inc.<br>CSC - Lawyers Incorporating Service<br>2710 Gateway Oaks Dr STE 150N<br>Sacramento CA 95833 | President of The Vitamin Shoppe<br>2101 91st St<br>North Bergen, NJ 07047-4796 |
| President of Max Muscle Marketing, Inc.<br>Max Muscle Marketing, Inc.<br>210 West Taft Avenue<br>Orange, California 92865 | President of BodyBuilding.com, LLC<br>Bodybuilding.com, LLC<br>2026 S. Silverstone Way<br>Meridian, ID 83642 |
| President of Super Supplements, Inc.<br>James E Sweeney<br>750 S Michigan St.<br>Seattle WA 98108 | Matthew Lawrence Marshall<br>MORRIS, POLICH & PURDY<br>1055 West Seventh Street, Suite 2400<br>Los Angeles, CA 90017<br>*for* Natural Alternatives International, Inc. |
| President of GNC Corporation<br>GNC Corporate Office Headquarters<br>300 Sixth Avenue<br>Pittsburgh, PA 15222 | Rite Aid Corporation<br>c/o CT Corporation System<br>818 W Seventh St.<br>Los Angeles CA 90017 |



00/00/2013  12:19:27 FAX 2132499990                    NATIONWIDE LEGAL                                    1

**FILED**                                              POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Sean T. Higgins, Esq., SBN: 266888<br>ANDREWS & THORNTON<br>2 Corporate Park, Ste 110<br>Irvine, CA 92606<br>TELEPHONE NO.: 949-748-1000   FAX NO. *(Optional):*  (949) 315-3540<br>E-MAIL ADDRESS *(Optional):* shiggins@andrewsthornton.com<br>ATTORNEY FOR *(Name):* Plaintiff, Justin Carolyne, et al. | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>JUN 10 2013<br><br>John A. Clarke, Executive Officer/Clerk<br>BY _____ Deputy<br>Glorietta Robinson |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles<br>STREET ADDRESS: 600 S Commonwealth Ave.<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles, CA 90005<br>BRANCH NAME: Central Civil West Courthouse (CCW) | |
| PLAINTIFF/PETITIONER: Justin Carolyne, et al.<br><br>DEFENDANT/RESPONDENT: USPLabs, LLC, et al. | CASE NUMBER:<br>BC508212   D-42 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents):* Civil Case Cover Sheet Addendum, Proof of Service of Summons on Max Muscle
      Marketing, Inc., Proof of Service of Summons on Natural Alternatives International, Inc.

3. a. Party served *(specify name of party as shown on documents served):*  USPLabs, LLC

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
         President of USPLabs, LLC

4. Address where the party was served: 10761 King William Drive, Dallas, TX 75220

5. I served the party *(check proper box)*
   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on *(date):*                    (2) at *(time):*
   b. [ ] **by substituted service.** On *(date):*           at *(time):*            I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
          of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
          place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
          address of the person to be served, other than a United States Postal Service post office box. I informed
          him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
          at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
          *(date):*       from *(city):*              or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS**<br><br>Legal<br>Solutions<br>Ca Plus | Code of Civil Procedure, § 417.10 |

**BY FAX**

00/00/2013  12:19:27 FAX 2132499990            NATIONWIDE LEGAL                                    2

| PLAINTIFF/PETITIONER: Justin Carolyne, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: USPLabs, LLC, et al. | BC508212 |

5.  c.  [X]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):* 5/13/2013                    (2) from *(city):* Irvine

    (3) [ ]  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.  *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) [X]  to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

  d.  [ ]  **by other means** *(specify means of service and authorizing code section):*

    [ ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  [ ]  as an individual defendant.

  b.  [ ]  as the person sued under the fictitious name of *(specify):*

  c.  [ ]  as occupant.

  d.  [X]  On behalf of *(specify):* USPLabs, LLC

    under the following Code of Civil Procedure section:

    [X]  416.10 (corporation)        [ ]  415.95 (business organization, form unknown)

    [ ]  416.20 (defunct corporation)    [ ]  416.60 (minor)

    [ ]  416.30 (joint stock company/association)  [ ]  416.70 (ward or conservatee)

    [ ]  416.40 (association or partnership)  [ ]  416.90 (authorized person)

    [ ]  416.50 (public entity)       [ ]  415.46 (occupant)

                             [ ]  other:

7.  **Person who served papers**

  a.  Name: Melchisedec Gabriel Hall

  b.  Address: 2 Corporate Park Ste 110, Irvine CA 92606

  c.  Telephone number: 949-748-1000

  d.  The fee for service was: $ 0.00

  e.  I am:

    (1) [X]  not a registered California process server.

    (2) [ ]  exempt from registration under Business and Professions Code section 22350(b).

    (3) [ ]  registered California process server:

      (i) [ ]  owner   [ ]  employee   [ ]  independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  [X]  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  [ ]  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 6/7/2013

Melchisedec Gabriel Hall                    ►
_____                    _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                    (SIGNATURE)

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 1 4 2013

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
VICTOR SINO-CRUZ

1  Michael Partos, State Bar No. 143845
   mpartos@cozen.com
2  Issa Mikel, State Bar No. 289097
   imikel@cozen.com
3  COZEN O'CONNOR
4  601 South Figueroa Street, Suite 3700
   Los Angeles, California 90017
5  Telephone:    213.892.7900,
   Facsimile:    213.892.7999
6
7  Paul K. Leary, Jr. (*pro hac vice* application to be filed)
   pleary@cozen.com
8  COZEN O'CONNOR
   1900 Market Street
9  Philadelphia, PA 19103
   Telephone:    215.665.2000
10 Facsimile:    215.665.2013
11 Attorneys for Defendant Rite Aid Corporation

12          SUPERIOR COURT OF THE STATE OF CALIFORNIA

13              IN AND FOR THE COUNTY OF LOS ANGELES

14 JUSTIN CAROLYNE, TIMOTHY HEPWORTH,      ) Case No.: BC 508212
   MARCUS HARKINS, DEREK MITCHELL, BYRON   )
15 NUTHALL, MICHAEL GARCIA, LAWRENCE       ) **DEMURRER TO COMPLAINT**
   SIEGEL, JACINTA LITTLE, MARK            )
16 HERSHKOWITZ, BRIAN WEST, WILLIAM        )
   JETTON, JULIAN LOPEZ, LIAM JAKACK1, TROY) Date:  November 6, 2013
17 HIXSON, KYRIE TERRY, STEVEN MILAZZO, and) Time:  8:30 AM
   SARAH LECHNER on behalf of and as representative )
18 for MARC LECHNER,                       ) Complaint Filed:  May 8, 2013
                                           )
19         Plaintiffs,                      ) [Assigned for all purposes to the
                                           ) Honorable Holly E. Kendig,
20 vs.                                     ) Department 42 ]
                                           )
21 USPLABS, LLC, JONATHAN VINCENT DOYLE    )
   (an individual), JACOB GEISSLER (an individual), )
22 USPLABS JACK3D, LLC, USPLABS OXYELITE,  )
   LLC, USPLABS HOLDING, LLC, GNC          )
23 CORPORATION, THE VITAMIN SHOPPE,        )
   VITAMIN SHOPPE INDUSTRIES, INC.,        )
24 BODYBUILDING.COM, LLC, SUPER            )
   SUPPLEMENTS, INC., MAX MUSCLE           )
25 MARKETING, INC., RITE AID CORPORATION,  )
   NATURAL ALTERNATIVES INTERNATIONAL,     )
26 INC., and DOES 1-500, Inclusive,        )
                                           )
27         Defendants.                      )
                                           )
28 ///
   ///

1
DEMURRER OF RITE AID CORPORATION

RECEIPT #: CCH420411075
DATE PAID: 08/14/13  04:03 PM
PAYMENT:  $435.00
RECEIVED:
  CHECK:      $435.00
  CASH:       $0.00
  CHANGE:     $0.00
  CARD:       $0.00
310

CIT/CASE:  BC508212
LIEN/DEF#:

TO THE COURT, TO EACH PARTY AND TO COUNSEL OF RECORD FOR EACH PARTY:

YOU ARE HEREBY NOTIFIED THAT on November 6, 2013, at 8:30 a.m. in Department 42 of this Court, located at 111 North Hill Street in Los Angeles, California, before the Honorable Holly E. Kendig, Defendant RITE AID CORPORATION ("Rite Aid") will and hereby does demur to the Complaint filed by Plaintiffs.

This Demurrer is made pursuant to Code Civ. P. §§ 335.1, 430.10-430.70, and the cases cited in the points and authorities below, and challenges the Complaint and each cause of action within on the following grounds:

1. **Demurrer to All Causes of Action by Plaintiffs Marcus Harkins and Jacinta Little**: The claims by Plaintiffs Marcus Harkins and Jacinta Little were commenced more than two years after their alleged injuries and are therefore barred by the two-year statute of limitations of Code Civ. P. § 335.1.

2. **Demurrer to Counts I – II**: Counts I – II of the Complaint (for Negligence) are uncertain (Code of Civil P. § 430.10(f)).

3. **Demurrer to Counts VII - VIII**:
Plaintiffs' Complaint must be dismissed in its entirety because the field of dietary supplement disclosure and labeling has been preempted by federal law.

4. **Demurrer to Count XVI**:
Count XVI of the Complaint (for Unlawful Business Acts and Practices under Cal. Bus. & Prof. Code § 17200, *et seq.*) fails to state facts sufficient to constitute a cause of action (Code of Civil P. § 430.10(e));

///
///
///
///
///
///

2

1    5.    **Demurrer to Count XVI**:  Count XVI of the Complaint (for Unlawful Business Acts

2  and Practices under Cal. Bus. & Prof. Code § 17200, *et seq.*) is uncertain (Code of Civil P. §

3  430.10(f)).

4

5  Dated August 14, 2013

6
                            COZEN O'CONNOR

7                      By: _____

8                            Michael Partos
                            Issa Mikel
9                            Counsel for Defendant Rite Aid Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is a personal injury action by seventeen Plaintiffs allegedly suffering from a variety of injuries that they allege were caused by dietary supplements known as Jack3d and OxyELITE Pro (the "Supplements"). The Complaint is fatally flawed in three respects:

*First*, two Plaintiffs, Marcus Harkins and Jacinta Little, expressly state in the Complaint that their alleged injuries occurred *more than two years* prior to the filing of the Complaint. As such, all claims by those Plaintiffs are time barred under the two-year statute of limitations provided in Code Civ. P. § 335.1.

*Second*, Plaintiffs' failure to warn claims asserted against all Defendants are preempted by federal law. Federal law has occupied the field of dietary supplement labeling and disclosure via a comprehensive scheme of statutes and regulations. Under the "field preemption" doctrine, where Congress has so thoroughly regulated a particular area as to have "occupied the field," state law in that area is preempted.

*Third*, Plaintiffs' claims under California Business and Professions Code Section 17200, *et seq.*, fail because Plaintiffs do not state the facts supporting the statutory elements of each of the underlying violations.

Under California law, a demurrer is appropriate where there are no facts sufficient to constitute a cause of action, or the claim is barred by an affirmative defense or lacks the requisite elements for that cause of action. *See Bainbridge v. Stoner*, 16 Cal. 2d 423, 431 (1940). A demurrer is also appropriate when a plaintiff files a complaint that has allegations that are vague or uncertain. *See* Code Civ. P. § 430.10(f). Based upon the foregoing, and the California authority that will be discussed below, Rite Aid's Demurrer must be sustained.

### II.   LEGAL ARGUMENT

#### A.   PLAINTIFFS HARKINS' AND LITTLE'S CLAIMS ARE TIME BARRED BY CCP § 335.1.

Under California law, "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another" must be brought within two years after

1   the cause of action accrues.  CCP §§ 312, 335.1.  Similarly, actions for death or injury caused by a

2   defective product must also be filed within two years.  *See Bennett v. Suncloud*, 56 Cal. 4th 91, 97

3   (1997).  The time to bring suit runs from the time the injury occurs.  *See Fox v. Ethicon Endo-*

4   *Surgery, Inc.*, 35 Cal. 4th 797, 808 n.2 (2005).  Moreover, a plaintiff cannot avoid the two–year

5   limitations period by framing the action in terms of breach of warranty or other cause of action.  No

6   matter what the causes of action are called, the two–year statute governs where the gravamen of the

7   complaint is a claim for personal injury.  *See Rivas v. Safety–Kleen Corp.*, 98 Cal. 4th 218, 228–29

8   (2002).

9       The gravamen of the Complaint is solely a claim for personal injury, as Plaintiffs claim that

10   they suffered various personal injuries as a result of Defendants' alleged actions or omissions.  (*See,*

11   *e.g., id.* ¶¶ 46, 71.)  Thus, the two year limitation applies.

12       The Complaint in this action was filed on May 8, 2013.  Plaintiff Marcus Harkins alleges that

13   nearly *three years* earlier, "[o]n or about May 14, 2010, after taking the recommended dosing and as

14   a result of Jack3d . . . [he] suffered multiple seizures, loss of consciousness and related injuries."

15   (Compl. ¶ 46.)

16       Plaintiff Jacinta Little alleges that, *more than two years* prior to the May 8, 2013 filing of the

17   Complaint, "[i]n or about April 2011, after taking the recommended dosing of and as a result of

18   OxyELITE . . ." she suffered stroke and related injuries.  (*Id.* ¶ 71.)

19       As the Complaint plainly shows that Plaintiffs Harkins and Little brought their claims *more*

20   *than two years* after their alleged injuries, all of their claims must be dismissed with prejudice.

21   **B.    PLAINTIFFS' FAILURE TO WARN CLAIMS ARE PREEMPTED BY**

22   **FEDERAL LAW.**

23       Under well-settled federal law, state law is preempted "when Congress indicates in some

24   manner an intent to occupy a given field to the exclusion of state law." *Montalvo v. Spirit Airlines*,

25   508 F.3d 464, 470 (9th Cir. 2007).  Congressional intent "may be inferred from a 'scheme of federal

26   regulation ... so pervasive as to make reasonable the inference that Congress left no room for the

27   States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest

28   is so dominant that the federal system will be assumed to preclude enforcement of state laws on that

5

1  subject.'" *English v. General Electric Co.*, 496 U.S. 72, 79 (1990) (citations omitted).

2      In addition to a statutory scheme regulating a particular field of activity, when determining

3  Congressional intent, courts "also look to the pervasiveness of the regulations enacted pursuant to

4  the relevant statute to find preemptive intent." *Montalvo*, 508 F.3d at 470 (citing *Fidelity Fed. Sav.*

5  *& Loan Ass'n*, 458 U.S. at 153 ("Federal regulations have no less preemptive effect than statutes.").

6  This is because "[w]here ... Congress has entrusted an agency with the task of promulgating

7  regulations to carry out the purposes of a statute, as part of the preemption analysis we must consider

8  whether the regulations evidence a desire to occupy a field completely." *R.J. Reynolds Tobacco Co.*

9  *v. Durham County*, 479 U.S. 130, 149 (1986).

10      Plaintiffs assert causes of action in Counts VII and VIII of the Complaint against defendants

11  based upon an alleged failure to adequately warn Plaintiffs of dangers, risks and reactions associated

12  with the Supplements. (Compl. ¶¶ 227 and 237).  Plaintiffs claimed, in effect, that the Supplements

13  were improperly labeled and advertised, failed to disclose material information about alleged

14  adverse effects and made false or misleading statements regarding benefits.  (*See generally* Compl.

15  ¶¶ 226-244.)  Plaintiffs' claims are preempted as federal statutes and regulations have so thoroughly

16  regulated the field of dietary supplement labeling and disclosure as to evidence a clear intent to

17  occupy it.

18      The Federal Food, Drug, and Cosmetic Act defines dietary supplements and establishes

19  regulatory authority to regulate them. 21 U.S.C. 321(ff).  The Food and Drug Administration has,

20  pursuant to this Act, promulgated a detailed list of regulations specifically regulating dietary

21  supplement labeling.  In that scheme, five statements are required on dietary supplement labels:

22      1) the statement of identity (name of the dietary supplement);

23      2) the net quantity of contents statement (amount of the dietary supplement);

24      3) the nutrition labeling – setting forth the serving size, etc;

25      4) the ingredient list; and

26      5) the name and place of business of the manufacturer, packer, or distributor.

27  (21 C.F.R. § 101.3(a), 21 C.F.R. § 101.105(a), 21 C.F.R. § 101.36, 21 C.F.R. § 101.4(a)(1), and 21

28  C.F.R. § 101.5.)  These regulations further detail where information is provided, the size and

1   prominence of the labeling, the country of origin of the supplement, and other requirements. *See,*

2   *e.g.*, 21 C.F.R. §§ 101.2(a), 101.5, 101.2(e), 101.2(c), 101.2(f), 101.15, 101.105(h). The federal

3   regulations further provide a detailed scheme for governing "health claims" by foods and dietary

4   supplements. *See* 21 C.F.R. § 101.14.

5          Thus, Plaintiffs' failure to warn claims are preempted to the extent they assert that Moving

6   Defendants were required to provide warnings in addition to the five statements described above.

7   *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) (Federal Cigarette Labeling and

8   Advertising Act ("FCLA"), which set forth specific and exclusive warnings required and allowed on

9   cigarette packaging, preempts state law failure to warn claims, where such state law claims depend

10  upon an assertion that the defendants should have included additional, or more clearly stated

11  warnings than those required under the FCLA).

12         In light of the legislative intent by Congress to occupy the field of dietary supplement

13  labeling, California law in this field is preempted and the Complaint should be dismissed in its

14  entirety and with prejudice.

15  **C.     COUNT XVI FOR UNFAIR BUSINESS PRACTICES FAILS TO STATE A**

16  **CAUSE OF ACTION.**

17         By proscribing "any unlawful" business practice, Business & Professions Code Section

18  17200, *et seq.*, "borrows violations of other laws and treats them as unlawful practices that the unfair

19  competition law makes independently actionable." *Cel–Tech Communications, Inc. v. Los Angeles*

20  *Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). As such, *a complaint for unlawful business*

21  *practices under Section 17200 must specifically identify the law the defendant allegedly violated and*

22  *"state with reasonable particularity the facts supporting the statutory elements of the violation."*

23  Conclusory statements that some other law was violated is not sufficient to withstand demurrer.

24  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993); *see also People v. McKale*,

25  25 Cal. 3d 626, 635 (1979).

26         Although paragraph 302 of the Complaint provides a laundry list of purported statutory

27  violations supporting the Plaintiffs' Section 17200 claims, the Complaint fails to "state with

28  reasonable particularity the facts supporting the statutory elements of the violation" of each of these

1    statutes. *Khoury*, 14 Cal. App. 4th at 619. Nor do Plaintiffs even remotely set forth with reasonable

2    particularity facts supporting the elements for fraud or deceit. (*See* Compl. ¶¶ 300-312.)

3          For example, Plaintiffs allege that defendants' behavior violated the provisions of the

4    California Civil Code, which define actual and constructive fraud. *See* Cal. Civ. Code §§ 1572-

5    1573, Compl. ¶ 302. Section 1572 defines actual fraud as:

6          [A]ny of the following acts, committed by a party to the contract, or
with his connivance, with intent to deceive another party thereto, or to

7          induce him to enter into the contract:

8          1. The suggestion, as a fact, of that which is not true, by one who does
not believe it to be true;

9

10          2. The positive assertion, in a manner not warranted by the information
of the person making it, of that which is not true, though he believes it
to be true;

11

12          3. The suppression of that which is true, by one having knowledge or
belief of the fact;

13          4. A promise made without any intention of performing it; or,

14          5. Any other act fitted to deceive.

15    Nowhere do Plaintiffs even attempt to plead facts showing that these factors were satisfied. (*See*

16    *also id.* § 1573 ("Constructive fraud consists: 1. In any breach of duty which, without an actually

17    fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by

18    misleading another to his prejudice, or to the prejudice of any one claiming under him; or, 2. In any

19    such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.");

20    *see also* Compl. ¶ 302 (alleging defendants violated, among other laws, California Health and Safety

21    Code §§ 110660, 110760, 110765, 21 U.S.C. § 343, and "the common law").

22          As the Complaint lacks allegations factually supporting Rite Aid's alleged violations of the

23    specific elements of any of the purported statutory violations listed in Count XVI, Plaintiffs have

24    failed to sufficiently allege a violation of B&P Section 17200. *Khoury v. Maly's of California, Inc.,*

25    *supra,* 14 Cal. 4th at 619.

26          For these reasons, this Demurrer should be sustained as to Count XVI of the Complaint.

27    ///

28    ///

## III.  <u>CONCLUSION</u>

The claims by Plaintiffs Harkins and Little are time barred, as they were not brought within two years of their alleged injuries.  Counts I, II and XVI of the Complaint fail to state facts sufficient to constitute a cause of action and are vague and uncertain.  For these reasons, Rite Aid requests that this Demurrer be sustained, in full, as requested herein.

Dated:  August 14, 2013                    RESPECTFULLY SUBMITTED,


                                           COZEN O'CONNOR


                                           By:_____
                                           Michael Partos
                                           Issa Mikel
                                           Attorneys for Defendant Rite Aid Corporation

9

**JUSTIN CAROLYNE et al. v. USPLABS, LLC, et al**
**Los Angeles Superior (Central District) Court Case No.: BC 508212**

STATE OF CALIFORNIA       )  s.s.
COUNTY OF LOS ANGELES )

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 601 South Figueroa Street, 37th Floor, Los Angeles, California 90017.

    On **August 14, 2013**, I served the foregoing documents on the interested parties in this action:

<strong>DEMURRER TO COMPLAINT</strong>

**[XX]**  By placing the true copies thereof enclosed in sealed envelopes addresses as listed below:

<strong><u>SEE ATTACHED SERVICE LIST</u></strong>

**[XX]**  BY MAIL.  I caused such envelopes with postage thereon fully prepaid to be placed in the United States mail in the County of Los Angeles following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States postal Service in a sealed envelope with postage fully prepaid.

**[ ]**  BY PERSONAL SERVICE.  I caused such envelopes to be delivered by hand to the offices of _____

**[ ]**  BY UPS.  I enclosed true and correct copies of said document(s) in an envelope, and placed it for collection and mailing via UPS on, for guaranteed delivery on , following the ordinary business practice.

**[ ]**  BY FACSIMILE.  I caused such documents to be sent to the address above via the facsimile number indicated:

**[ ]**  ELECTRONIC:  By E-Mail or Electronic Transmission.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed on the attached Service List.  A confirmation of successful transmission is attached/ I did not receive, within a reasonable time after the transmission, and electronic message or other indication that the transmission was unsuccessful.[

**[XX]**  **(STATE):** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed **August 14, 2013** at Los Angeles, California.

_____
ELAINE BELL

---

PROOF OF SERVICE

## SERVICE LIST

| | |
|---|---|
| Anne Andrews, Esq.<br>John C. Thornton, Esq.<br>Sean T. Higgins, Esq.<br>ANDREWS & THORNTON<br>2 Corporate Park, Suite 110<br>Irvine, CA 92606 | Attorneys for Plaintiffs, *JUSTIN CAROLYNE. TIMOTHY HEPWORTH, MARCUS HARKINS, DEREK MITCHELL, BYRON NUTHALL, MICHAEL GARCIA, LAWRENCE SIEGEL, JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, WILLIAM JETTON, JULIAN LOPEZ, LIAM JAKACKI, TROY HIXSON, KYRIE TERRY, STEVEN MILAZZO and SARAH LECHNER on behalf of and as representative for MARC LECHNER*<br><br>Telephone: 949.748.1000<br>Facsimile: 949.315.3540<br>Email: aa@andrewsthornton.com<br>Email: jct@andrewsthornton.com<br>Email: shiggins@andrewsthornton.com |
| President of BodyBuilding.com, LLC<br>BODYBUILDING.COM LLC<br>2026 S. Silverstone Way<br>Meridian, ID 83642 | Defendant, *BODYBUILDING.COM, LLC*<br><br>Telephone:<br>Facsimile:<br>Email: |
| James E. Sweeney<br>President of SUPER SUPPLEMENTS, INC.<br>750 S. Michigan St.<br>Seattle, WA 98108 | Defendant, *SUPER SUPPLEMENTS, INC.*<br><br>Telephone:<br>Facsimile:<br>Email: |
| Anthony G. Brazil, Esq.<br>Matthew L. Marshall, Esq.<br>Holiday D. Powell, Esq.<br>MORRIS POLICH & PURDY<br>1055 West Seventh Street, 24th Floor<br>Los Angeles, CA 90017 | Attorneys for Defendant, *NATURAL ALTERNATIVES INTERNATIONAL, INC.*<br><br>Telephone: 213.891.9100<br>Facsimile: 213.488.1178<br>Email: mmarshall@mpplaw.com |
| William C. Getty, Esq.<br>WILSON GETTY LLP<br>12555 High Bluff Drive, Suite 270<br>San Diego, CA 92130 | Defendant, MAX MUSCLE MARKETING, INC.<br><br>Telephone: 858.847.3237<br>Facsimile: 858.847.3365<br>Email: |

LEGAL\1671968\1\ 16812.0001.000/337011.000



1 Michael Partos, State Bar No. 143845
  mpartos@cozen.com
2 Issa Mikel, State Bar No. 289097
  imikel@cozen.com
3 COZEN O'CONNOR
  601 South Figueroa Street, Suite 3700
4 Los Angeles, California 90017
  Telephone:    213.892.7900,
5 Facsimile:    213.892.7999

6
  Paul K. Leary, Jr. (*pro hac vice* application to be filed)
7 pleary@cozen.com
  COZEN O'CONNOR
8 1900 Market Street
  Philadelphia, PA 19103
9 Telephone:    215.665.2000
  Facsimile:    215.665.2013
10
  Attorneys for Defendants USPLABS, LLC, JONATHAN
11 VINCENT DOYLE, JACOB GEISSLER, USPLABS
   OXYELITE, LLC, USPLABS HOLDING, LLC, GNC
12 CORPORATION, THE VITAMIN SHOPPE, INC. AND
   VITAMIN SHOPPE INDUSTRIES INC.
13

14          SUPERIOR COURT OF THE STATE OF CALIFORNIA

15          IN AND FOR THE COUNTY OF LOS ANGELES

16 JUSTIN CAROLYNE, TIMOTHY HEPWORTH,      )   Case No.: BC 508212
   MARCUS HARKINS, DEREK MITCHELL, BYRON  )
17 NUTHALL, MICHAEL GARCIA, LAWRENCE       )   **NOTICE OF MOTION AND**
   SIEGEL, JACINTA LITTLE, MARK            )   **MOTION TO QUASH SUMMONS**
18 HERSHKOWITZ, BRIAN WEST, WILLIAM        )   **AND COMPLAINT PURSUANT**
   JETTON, JULIAN LOPEZ, LIAM JAKACKI,     )   **TO CODE OF CCP § 418.10;**
19 HIXSON, KYRIE TERRY, STEVEN MILAZZO, and )  **MEMORANDUM OF POINTS**
   SARAH LECHNER on behalf of and as representative ) **AND AUTHORITIES**
20 for MARC LECHNER,                       )
                                           )   [Filed concurrently with Declaration of
21          Plaintiffs,                    )   Lonnie Clark; Declaration of Jonathan
   vs.                                     )   Vincent Doyle; Declaration of Jacob
22                                         )   Geissler; Declaration of Michael
   USPLABS, LLC, JONATHAN VINCENT DOYLE    )   Partos; [Proposed] Order]
23 (an individual), JACOB GEISSLER (an individual), )
   USPLABS JACK3D, LLC, USPLABS OXYELITE,  )   Date:  November 6, 2013
24 LLC, USPLABS HOLDING, LLC, GNC          )   Time: 8:30 A.M.
   CORPORATION, THE VITAMIN SHOPPE,        )
25 VITAMIN SHOPPE INDUSTRIES, INC.,        )   Complaint Filed:  May 8, 2013
   BODYBUILDING.COM, LLC, SUPER           )
26 SUPPLEMENTS, INC., MAX MUSCLE           )   [Assigned for all purposes to the
   MARKETING, INC., RITE AID CORPORATION,  )   Honorable Holly E. Kendig,
27 NATURAL ALTERNATIVES INTERNATIONAL,     )   Department 42 ]
   INC., and DOES 1-500, Inclusive,        )
28                                         )
            Defendants.                    )
   ───────────────────────────────────────
                              1

TO EACH PARTY AND TO COUNSEL OF RECORD FOR EACH PARTY:

YOU ARE HEREBY NOTIFIED THAT on November 6, 2013, at 8:30 in Department 42 of this Court, located at 111 North Hill Street in Los Angeles, California, before the Honorable Holly E. Kendig, Specially-Appearing Defendants USPLABS HOLDING, LLC, USPLABS JACK3D, LLC, USPLABS OXYELITE, LLC, JONATHAN VINCENT DOYLE and JACOB GEISSLER ("Moving Defendants") will appear specially and move this Court for an Order quashing service of summons in this action on the ground of lack of personal jurisdiction over them.

Good cause for this motion exists because Moving Defendants are not residents of California, do not conduct business in California, and do not otherwise have sufficient contacts to satisfy Constitutional or statutory bases for this Court's jurisdiction.

The motion will be based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Lonnie Clark, Jonathan Vincent Doyle and Jacob Geissler, the files and records in this action and any further evidence and argument that the Court may receive at or before the hearing.

This Motion to Quash is filed concurrently with Moving Defendants' Demurrer to Complaint.

Dated July 25, 2013

COZEN O'CONNOR

By: _____
Michael Partos (SBN 143845)
Issa Mikel (SBN 289097)
Counsel for Defendants USPLABS, LLC, USPLABS JACK3D, LLC, USPLABS OXYELITE, LLC, USPLABS HOLDING, LLC, JONATHAN VINCENT DOYLE, JACOB GEISSLER, GNC CORPORATION, VITAMIN SHOPPE, INC. and VITAMIN SHOPPE INDUSTRIES INC.

2

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ....................................................................................................... 1

II. STATEMENT OF FACTS ......................................................................................... 1

    A.    The Complaint ................................................................................................... 1

    B.    Moving Defendants Have No Ties To California ............................................. 2

          1.    Defendants Doyle and Geissler Have No Ties To California ................ 2

          2.    Defendant USPLabs Holdings, LLC Has No Ties To California .......... 2

          4.    This Motion Was Timely Filed .............................................................. 3

III. ARGUMENT .............................................................................................................. 3

    A.    The Court Lacks Personal Jurisdiction Over Defendants Holdings, Jack3d, OxyELITE, Doyle and Geissler ........................................................... 3

          1.    Plaintiffs Cannot Rely on an Unverified Complaint to Make The Showings Necessary to Establish Personal Jurisdiction over Moving Defendants. ............................................................................... 4

          2.    None of the Traditional Bases For Personal Jurisdiction Exists, as Moving Defendants (a) Were Not Personally Served While Physically Present in California; (b) Are Not Domiciled Within the State; and (c) Did Not Consent To, or Appear In, This Action. ...................... 4

          3.    Plaintiffs Cannot Establish General or Specific Personal Jurisdiction .............................................................................................. 5

               (a)    Plaintiffs Cannot Establish General Jurisdiction. ...................... 5

                    (i)    Defendant USPLabs Holding, LLC Has No Contacts with California and Never Conducted Any Business Anywhere. ............................................................... 6

                    (ii)    Defendants USPLabs Jack3d, LLC and USPLabs OxyELITE, LLC, Have No Contacts with California and Never Conducted Any Business There. ............................................................................ 6

                    (iii)    Defendants Doyle and Geissler are Texas Residents Who Conduct All of Their Business in Texas. ................. 7

               (b)    Specific Jurisdiction Does Not Exist Over Moving Defendants. ........................................................................... 7

MOTION TO QUASH; MEMORANDUM OF POINTS AND AUTHORITIES

(i)     There Has Been No Purposeful Availment. ...........................7

(ii)    Plaintiffs' Claims do Not Arise Out of Substantial
        Connections to California .......................................................8

(iii)   Exercising Jurisdiction Would Be Unreasonable. .................8

IV.     CONCLUSION.......................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anglo Irish Bank Corp., PLC v. Superior Court,*
    165 Cal. App. 4th 969 (2008) ...................................................................5

*Burnham v. Superior Court,*
    495 U.S. 604 (1990).............................................................................3, 4

*Calder v. Jones,*
    465 U.S. 783, 789-90 (1984) ...................................................................7

*Dole Food Co., Inc. v. Watts,*
    303 F. 3d 1104 (9th Cir. 2002) ...............................................................5

*Fahmy v. Hogge,*
    No. CV 08-1152 PSG, 2008 WL 4614322 (C.D. Cal. 2008) ................8

*Fed. Deposit Ins. Corp. v. British-American Ins. Co.,*
    828 F.2d 1439 (9th Cir. 1987) ................................................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    —— U.S. ——, 131 S. Ct. 2846 (2011).................................................5

*HealthMarkets, Inc. v. Superior Court,*
    171 Cal. App. 4th 1160 (2009) ...............................................................4

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)............................................................................3, 5

*Lundgren v. Superior Court,*
    111 Cal. App. 3d 477 (1980) ..................................................................4

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
    647 F.3d 1218 (9th Cir. 2011) ................................................................6

*Mihlon v. Sup.Ct. (Murkey),*
    169 Cal. 3d 703 (1985).............................................................................3

*Panavision Int'l, L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998) ............................................................5, 8

*Pavlovich v. Superior Court,*
    29 Cal. 4th 262 (2002)........................................................................7, 8

*Perkins v. Benguet Consol. Mining Co.,*
    342 U.S. 437 (1952)................................................................................5

MOTION TO QUASH; MEMORANDUM OF POINTS AND AUTHORITIES

*Roy v. Superior Court of County of San Bernadino,*
  127 Cal. App. 4th 337 (2005) ................................................................4

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) ................................................................6

*Sheard v. Superior Court,*
  40 Cal. App. 3d 207 (1974) ..........................................................1, 4, 6

*Shisler v. Sanfer Sports Cars, Inc.,*
  146 Cal. App. 4th 1254 (2006) ...........................................................5, 6

*Snowney v. Harrah's Entertainment, Inc.,*
  35 Cal. 4th 1054 (2005) ......................................................................7

*Vons Companies, Inc. v. Seabest Foods, Inc.,*
  14 Cal. 4th 434 (1996) ......................................................................7, 8

*Ziller Electronics Lab GmbH v. Sup.Ct. (Grosh Scenic Studios),*
  206 Cal. 3d 1222 (1988) ......................................................................4

**STATUTES**

Cal. Code Civ. Proc. § 410.10 ..............................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In an *unverified* complaint filed on May 8, 2013, Plaintiffs sued Moving Defendants, and others, for alleged personal injuries arising out of the use of two dietary supplements allegedly manufactured or supplied by Moving Defendants.

As (a) Moving Defendants have provided concrete, credible and admissible evidence, supported by sworn declarations, showing a total absence of "minimum contacts" between Moving Defendants and the State of California; and (b) as Plaintiffs have, conversely, failed to submit *any* admissible evidence establishing such minimum contacts, this Motion should be granted, and the Summons and Complaint should be quashed and dismissed, as to those Defendants.

## II.   STATEMENT OF FACTS

### A.   The Complaint

Plaintiffs filed an unverified complaint in this action on May 8, 2013, alleging sixteen causes of action, including negligence and strict products liability. (*See* Compl. ¶¶ 180-312).

Plaintiffs are individuals, residents of various states across the country, who allege that they purchased and consumed dietary supplements (hereinafter the "Supplements") branded "Jack3d" and/or "OxyELITE Pro." Plaintiffs allege that, following use of the Supplements, they suffered bodily personal injuries. (*See generally* Complaint.)

Defendants are alleged to be the manufacturers, distributors or retailers of the Supplements. Defendants Doyle and Geissler are sued as principals of the USP entities, (*see* Compl. ¶¶ 3-31.), *i.e.*, the Complaint asserts no wrongful conduct by Doyle or Geissler apart from their employment with, or interest in, the USP entities.

The unverified complaint contains a boilerplate statement that "[*u*]*pon information and belief*, at all relevant times, the USP DEFENDANTS… conducted business [in California], and expected… that their acts would have consequences…within the State of California." (Compl. ¶¶ 11-13 (emphasis added).) However, as discussed below, this unsworn and inadmissible allegation has absolutely *no* weight or value for the purpose of contradicting or opposing the sworn and admissible evidence presented by Defendants on a motion to quash. *Sheard v. Superior Court*, 40

1

1  Cal. App. 3d 207, 212 (1974) (an unverified complaint has no evidentiary value in assessing

2  personal jurisdiction).

3  **B.      Moving Defendants Have No Ties To California.**

4  **          1.      Defendants Doyle and Geissler Have No Ties To California.**

5  Defendants Doyle and Geissler are individuals who are citizens of the State of Texas, are

6  officers of a Texas company, and conduct their business in Texas.  (*See* Doyle Decl. ¶¶ 3-4, 6-9;

7  Geissler Decl. ¶¶ 3-4, 6-9; *see also* Compl. ¶ 5.)  In fact, all of Doyle's and Geissler's corporate

8  activities with relation to the USP Defendants occurred in the state of Texas.  (Doyle Decl. ¶¶ 3-4, 6-

9  9; Geissler Decl. ¶¶ 3-4, 6-9.)

10  The Complaint makes no allegation that Doyle or Geissler, acting as individuals, ever

11  conducted any business in California.  (*See generally* Complaint.)  The Complaint asserts no

12  allegations of tortious conduct against Defendants Doyle or Geissler.  Indeed, the unsupported "alter

13  ego" allegations (Compl. ¶¶ 5-9) are the only allegations in the Complaint that refer to the individual

14  Defendants.

15  **          2.      Defendant USPLabs Holdings, LLC Has No Ties To California.**

16  Defendant USPLabs Holdings, LLC ("Holdings") is formerly a Texas limited liability

17  company.  (Clark Decl. ¶¶ 15-18.)  On November 27, 2012, Holdings filed a certificate of

18  Termination of a Domestic Entity with the Texas Secretary of State.  (*Id.* ¶ 16 & Ex. 2.)  Holdings

19  has never done any business of any kind, and has never been involved in the manufacture, sale,

20  distribution, marketing or other activities in relation to any products, including Jack3d and

21  OxyELITE Pro.  (*Id.* ¶ 17.)  Defendant Holdings is not incorporated in California, is not qualified to

22  do business in California and has never conducted any business in California.  (*Id.* ¶ 18.)  Holdings

23  does not maintain any bank accounts or property in, and it has no other contacts of any kind in

24  California.  (*Id.* ¶¶ 19-23.)  Indeed, Defendant Holdings was not even in existence when many of the

25  alleged injuries took place, as it was formed on October 12, 2012 and was terminated shortly

26  thereafter.  (*Id.* ¶¶ 15-18, 24; *see* Compl. ¶¶ 32-117.)

27  Plaintiffs have submitted no admissible evidence showing that Holdings ever conducted any

28  business in California, owned any property here, or has any other ties to the State.

1        **3.      Defendants USPLabs Jack3d, LLC and USPLabs OxyELITE, LLC Have No Ties to California.**

2

3        Defendants USPLabs Jack3d, LLC ("Jack3d") and USPLabs OxyELITE, LLC

4    ("OxyELITE") are limited liability companies formed under the laws of Wyoming with their

5    principal places of business in Texas. (Clark Decl. ¶ 4.) All of their business occurs in Texas. (*Id.*)

6    Jack3d and OxyELITE have no offices in California, own no property in California, and have no

7    employees, subsidiaries, branch offices, bank accounts, or telephone listings in this state. (*Id.* ¶¶ 5-

8    9.) They do not engage in any advertising in California or hold meetings in California. (*Id.* ¶¶ 10-

9    12.) Indeed, they are non-operational entities that do not manufacture, sell, distribute, market or

10   otherwise operate in the state of California. (*Id.* ¶ 5.)

11       Plaintiffs have submitted no admissible evidence showing that Jack3d or OxyELITE ever

12   conducted any business in California, owned any property here, or have any other ties to the State.

13   (*See generally* Complaint.)

14       **4.      This Motion Was Timely Filed.**

15       Defendants and Plaintiffs entered into a stipulation continuing Defendants' time to respond to

16   the Complaint, which stipulation was filed on June 17, 2013. The instant Motion followed.

17   **III.    ARGUMENT**

18       **A.    The Court Lacks Personal Jurisdiction Over Defendants Holdings, Jack3d,
             OxyELITE, Doyle and Geissler.**
19

20       Traditionally, a court may exercise jurisdiction over a defendant if the defendant: (a) is

21   personally served while physically present in California; (b) is domiciled within the State; or (c)

22   consents to California jurisdiction, or appears in, the action. *See Burnham v. Superior Court*, 495

23   U.S. 604, 609 (1990). In addition, a court may exercise jurisdiction over a defendant that has

24   sufficient "minimum contacts" with California under its long-arm statute. *See* Cal. Code Civ. Proc.

25   § 410.10; *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

26       In order to establish California jurisdiction, Plaintiff bears the burden of making these

27   showings. *See Mihlon v. Sup.Ct. (Murkey)*, 169 Cal. 3d 703, 710 (1985). To carry its burden, a

28   plaintiff must do more than make a *prima facie* showing of jurisdictional facts in the complaint. *See*

3

1   *Roy v. Superior Court of County of San Bernadino*, 127 Cal. App. 4th 337, 343 (2005). The burden

2   is on the plaintiff to demonstrate *by a preponderance of the evidence* that all jurisdictional criteria

3   are met. *See Ziller Electronics Lab GmbH v. Sup.Ct. (Grosh Scenic Studios)*, 206 Cal. 3d 1222,

4   1232 (1988).

5          **1.    Plaintiffs Cannot Rely on an Unverified Complaint to Make The
               Showings Necessary to Establish Personal Jurisdiction over Moving

6            Defendants.**

7          An unverified complaint has no evidentiary value in the determination of personal

8   jurisdiction. *See Sheard*, 40 Cal. App. 3d at 212. Rather, the plaintiff must present *admissible*

9   *evidence* of *facts* demonstrating that the conduct of the defendants related to the pleaded causes is of

10  such an extent as to constitute constitutionally cognizable "minimum contacts." *Lundgren v.*

11  *Superior Court*, 111 Cal. App. 3d 477, 485 (1980). "If the plaintiff satisfies that burden [of

12  presenting admissible evidence of concrete facts regarding contacts to California], the burden shifts

13  to the defendant to show that the exercise of jurisdiction would be unreasonable." *HealthMarkets,*

14  *Inc. v. Superior Court*, 171 Cal. App. 4th 1160, 1168 (2009). Plaintiffs have failed to meet this

15  burden.

16         **2.    None of the Traditional Bases For Personal Jurisdiction Exists, as
               Moving Defendants (a) Were Not Personally Served While Physically

17            Present in California; (b) Are Not Domiciled Within the State; and (c)
               Did Not Consent To, or Appear In, This Action.**

18

19         Moving Defendants are not subject to personal jurisdiction under any of the three traditional

20  bases for jurisdiction: (a) personal service on persons physically present in California, (b) residence

21  within the State, or (c) consent to or appearance in the action. *See Burnham*, 495 U.S. at 609.

22         First, none of the Moving Defendants was served with the summons in California. (*See*

23  Partos Decl. Ex. A.) In fact, Plaintiffs claim to have served them in Texas. (*See id.*)

24         Second, none of the Moving Defendants resides in California. (*See* Doyle Decl. ¶¶ 3-4;

25  Geissler Decl. ¶¶ 3-4; Clark Decl. ¶¶ 4, 15-16.)

26         Third, none of the Moving Defendants has consented to this Court's jurisdiction, nor has any

27  appeared in this action. (Partos Decl. ¶ 3.)

28

1    Moreover, the Complaint contains no allegation and Plaintiffs have submitted no admissible

2    evidence showing that any of the Moving Defendants was served in California, is domiciled in the

3    State, has consented to California jurisdiction, or has appeared in this action.

4    Thus none of the three traditional bases exist for personal jurisdiction over the Moving

5    Defendants.  Accordingly, if Plaintiffs are to assert any argument that personal jurisdiction exists, it

6    must be conveyed by the long-arm statute—by the presentation of admissible evidence of "minimum

7    contacts."

8    **3.    Plaintiffs Cannot Establish General or Specific Personal Jurisdiction.**

9    Since personal jurisdiction over Moving Defendants does not otherwise exist, Plaintiffs must

10   show that these Defendants had at least "minimum contacts" with California, such that the exercise

11   of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Dole Food*

12   *Co., Inc. v. Watts*, 303 F. 3d 1104, 1110-11 (9th Cir. 2002) (citing *International Shoe*, 326 U.S. at

13   316).  Courts have adopted a two-tiered approach to analyze whether a non-resident defendant's

14   contacts with the forum state are sufficiently substantial so as to comport with both the Constitution

15   and traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. at 316.

16   This two-tiered approach involves a determination of whether a court has general or specific

17   jurisdiction over a defendant. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.

18   1998).

19   (a)    Plaintiffs Cannot Establish General Jurisdiction.

20   For California to exercise general jurisdiction over a defendant, a plaintiff must show that the

21   defendant had substantial, continuous, and systematic contacts with this state. *See Anglo Irish Bank*

22   *Corp., PLC v. Superior Court*, 165 Cal. App. 4th 969, 978 (2008) (citing *Perkins v. Benguet Consol.*

23   *Mining Co.*, 342 U.S. 437, 445-446 (1952) ).  The defendant's contacts must be "so 'continuous and

24   systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires*

25   *Operations, S.A. v. Brown*, —— U.S. ——, 131 S. Ct. 2846, 2851 (2011).  Thus, "contacts that are

26   random, fortuitous, or attenuated do not rise to the minimum level, and general jurisdiction cannot be

27   exercised under these circumstances." *Shisler v. Sanfer Sports Cars, Inc.*, 146 Cal. App. 4th 1254,

28   1259 (2006).  "The standard for general jurisdiction 'is an exacting standard, as it should be, because

1    a finding of general jurisdiction permits a defendant to be hailed into court in the forum state to

2    answer for any of its activities anywhere in the world.'" *Mavrix Photo, Inc. v. Brand Technologies,*

3    *Inc.,* 647 F.3d 1218, 1223-25 (9th Cir. 2011), cert. denied, 132 S. Ct. 1101 (U.S. 2012) (quoting

4    *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004)).

5       In the instant case, the evidence before the Court establishes that Moving Defendants do not

6    have any contacts with the State of California, much less continuous and systematic ties to California

7    required for general jurisdiction.  (*See supra* Point II.B.)  Thus, California does not have general

8    jurisdiction over Moving Defendants.  Where, as here, the "[d]efendant has no physical presence in

9    California, is not registered to do business here, and has never intentionally directed its marketing

10    efforts to California residents," there is no basis for general personal jurisdiction.  *Shisler,* 146 Cal.

11    App. 4th at 1259.

12            (i)      *Defendant USPLabs Holding, LLC Has No Contacts with*

13                    *California and Never Conducted Any Business Anywhere.*

14       As set forth above, an unverified pleading is worthless in opposing a Motion to Quash.

15    However, even if the Complaint were verified, it would be of no help in establishing jurisdiction, as

16    Plaintiffs have pled no *facts* of any kind regarding Defendant Holding's contacts with California.

17    This is the case because no such contacts exist.  (*See generally* Clark Decl.; *supra* Point II.)

18    Plaintiffs' boilerplate and unsubstantiated claims that "the USP DEFENDANTS were present and

19    doing business in the State of California," are merely generalized, rote statements of the legal

20    standard, rather than allegations grounded in fact.  Such conclusory allegations in an unverified

21    complaint have no evidentiary value and should be given no weight by the Court.  *See Sheard,* 40

22    Cal. App. 3d at 212.

23            (ii)      *Defendants USPLabs Jack3d, LLC and USPLabs OxyELITE,*

24                    *LLC, Have No Contacts with California and Never Conducted*

                        *Any Business There.*

25       As with Defendant Holding, Plaintiffs have not even attempted to plead specific facts

26    regarding Defendant Jack3d's or OxyELITE's contacts with the State of California.  And as with

27    Defendant Holding, Defendant Jack3d and OxyELITE *have no such contacts.*  (*See generally* Clark

28    Decl.; *supra* Point II.)  Again, Plaintiffs have pled no facts, because they cannot do so.

1                 *(iii)    Defendants Doyle and Geissler are Texas Residents Who Conduct All of Their Business in Texas.*

2

3       As for Defendants Doyle and Geissler, neither Defendant maintains a residence in California.

4 Defendants Doyle and Geissler are individual defendants who are citizens of the State of Texas and

5 officers of a Texas company who conduct their business *in Texas*. (*See* Doyle Decl. ¶¶ 3-14;

6 Geissler Decl. ¶¶ 3-14.) As set forth in the declarations of Doyle and Geissler, any conduct on their

7 part related to corporate governance occurs wholly in the state of Texas. (Doyle Decl. ¶ 7; Geissler

8 Decl. ¶ 7.) Plaintiffs make no allegations contradicting the total absence of contacts with California.

9       For these reasons, Plaintiffs have not pled and cannot plead facts showing that the Court has

10 general jurisdiction over Moving Defendants.

11           (b)    Specific Jurisdiction Does Not Exist Over Moving Defendants.

12       To establish specific jurisdiction, a plaintiff "must demonstrate that the nonresident

13 defendants (1) performed an act or otherwise 'purposefully availed' himself of the privilege of doing

14 business in the forum, (2) that the present cause of action arose from those forum-related acts, and

15 (3) that exercising jurisdiction over defendants would not be unreasonable." *Vons Companies, Inc.*

16 *v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 446 (1996).

17            *(i)*    *There Has Been No Purposeful Availment.*

18       "Purposeful availment exists whenever the defendant purposefully and voluntarily directs its

19 activities toward the forum state in an effort to obtain a benefit from that state." *Snowney v.*

20 *Harrah's Entertainment, Inc.*, 35 Cal. 4th 1054, at 1067 (2005). The inquiry "focuses on the

21 *defendant's intentionality.* This prong is *only satisfied when the defendant purposefully and*

22 *voluntarily directs* [its] activities toward the forum so that [it] should expect, by virtue of the benefit

23 [it] receives, to be subject to the court's jurisdiction based on' [its] contacts with the forum." *Id.*

24 (quoting *Pavlovich v. Superior Court*, 29 Cal. 4th 262, 269 (2002)) (emphasis added). Under *Calder*

25 *v. Jones*, the plaintiff must present admissible evidence showing that the defendant (1) committed an

26 intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

27 likely to be suffered in the forum state. 465 U.S. 783, 789-90 (1984). No such purposeful availment

28 exists here.

In this case, there are no specific factual allegations that Moving Defendants have directed their activities towards the State of California. Indeed, there are no specific factual allegations at all regarding what these defendants are specifically alleged to have done with respect to California. Without such specific allegations, Plaintiffs cannot establish specific jurisdiction. *See, e.g., Fahmy v. Hogge*, No. CV 08-1152 PSG (SHx), 2008 WL 4614322, at *5 (C.D. Cal. 2008). The *Fahmy* court, for example, dismissed a complaint against a nonresident defendant for lack of personal jurisdiction because "[Plaintiff] failed to submit any *admissible evidence* showing that Defendant expressly aimed his conduct at the forum state by targeting Plaintiff, knowing that she was a resident of California." *Id.; see also Pavlovich v. Sup. Ct.*, 29 Cal. 4th at 270-71 ("[Merely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction under the effects test.").

Here, Plaintiffs fail to submit admissible evidence showing any act attributable to the Moving Defendants that occurred in California. To the contrary, Moving Defendants have put forth admissible evidence showing a complete *absence* of such acts. (*See generally* Clark Decl.; Doyle Decl.; Geissler Decl.) Accordingly, the Summons and Complaint should be dismissed as to Moving Defendants for lack of personal jurisdiction.

        (ii)    *Plaintiffs' Claims Do Not Arise Out of Substantial Connections to California*.

The second prong of *Seabest* requires a plaintiff to show that it would not have been injured "but for" the defendant's actionable activities in the forum state. *See Panavision*, 141 F.3d at 1322. Plaintiffs again fail to submit admissible evidence establishing that Moving Defendants had any contacts with California at all. As such, they have not offered admissible evidence to show that their alleged injuries arise from activities by which Moving Defendants purposefully availed themselves of the benefits of the State of California.

        (iii)    *Exercising Jurisdiction Would Be Unreasonable.*

If Plaintiffs had met their burden in satisfying the first two prongs of *Seabest* (which they have not), then the Court would be impelled to consider the reasonableness of exercising jurisdiction in this case.

8

1    The exercise of jurisdiction over Moving Defendants, who have no physical or corporate

2  presence in California, conduct no business within this state, and have no other contacts with the

3  state, would be unreasonable.  Because the Moving Defendants do not have ties to California, they

4  would be substantially burdened if they were forced to defend the claims in this state.  (*See* Doyle

5  Decl. ¶ 16; Geissler Decl. ¶ 16; Clark Decl. ¶¶ 13, 25.)  Where, as here, the Defendants have "done

6  little to reach out to the forum state," the burden of defending itself in a foreign state militates

7  against exercising jurisdiction.  *See Fed. Deposit Ins. Corp. v. British-American Ins. Co.*, 828 F.2d

8  1439, 1444 (9th Cir. 1987).  Texas has a much greater interest in policing the wholly domestic

9  activities of its residents, and California has no special interest in activities conducted outside its

10  borders that are not directed into California.  This is even more true in the present case, where *only*

11  *three Plaintiffs* out of seventeen are residents of California and where some of the Plaintiffs actually

12  reside in Texas.  (*See* Compl. ¶¶ 32-117.)  Thus, exercising specific jurisdiction over Moving

13  Defendants would be unreasonable.

14  **IV.    CONCLUSION**

15      For these reasons, Defendants USPLabs Holding, LLC, USPLabs Jack3d, LLC, USPLabs

16  OxyELITE, LLC, Jonathan Vincent Doyle and Jacob Geissler respectfully pray this Court grant this

17  Motion because this Court lacks both general and specific jurisdiction over their persons.

18  Accordingly, Plaintiffs' Summons and Complaint should be quashed and dismissed.

19  Dated:  July 25, 2013              RESPECTFULLY SUBMITTED,

20                                              COZEN O'CONNOR

21

22                              By:

23                                      Michael Partos
                                        Issa Mikel
24                                      Attorneys for Defendants USPLABS, LLC,
                                        JONATHAN VINCENT DOYLE, JACOB
25                                      GEISSLER, USPLABS OXYELITE, LLC,
                                        USPLABS HOLDINGS, LLC, GNC
26                                      CORPORATION, THE VITAMIN SHOPPE, INC.
                                        AND VITAMIN SHOPPE INDUSTRIES INC.
27

28  LEGAL\16704408\4 16812.0001.000/337011.000

MOTION TO QUASH; MEMORANDUM OF POINTS AND AUTHORITIES

1   Michael Partos, State Bar No. 143845
    mpartos@cozen.com
2   Issa Mikel, State Bar No. 289097
    imikel@cozen.com
3   COZEN O'CONNOR
4   601 South Figueroa Street, Suite 3700
    Los Angeles, California 90017
5   Telephone:    213.892.7900,
    Facsimile:    213.892.7999
6
7   Paul K. Leary, Jr. (*pro hac vice* application to be filed)
    pleary@cozen.com
8   COZEN O'CONNOR
9   1900 Market Street
    Philadelphia, PA 19103
10  Telephone:    215.665.2000
    Facsimile:    215.665.2013
11  Attorneys for Defendants USPLABS, LLC, JONATHAN
    VINCENT DOYLE, JACOB GEISSLER, USPLABS
12  OXYELITE, LLC, USPLABS HOLDINGS, LLC, GNC
    CORPORATION, THE VITAMIN SHOPPE, INC. AND
13  VITAMIN SHOPPE INDUSTRIES INC.

**FILED**
Los Angeles Superior Court

JUL 25 2013

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                 IN AND FOR THE COUNTY OF LOS ANGELES

16  JUSTIN CAROLYNE, TIMOTHY HEPWORTH,        )   Case No.: BC 508212
    MARCUS HARKINS, DEREK MITCHELL, BYRON     )
17  NUTHALL, MICHAEL GARCIA, LAWRENCE         )   **DECLARATION OF JONATHAN**
    SIEGEL, JACINTA LITTLE, MARK              )   **VINCENT DOYLE IN SUPPORT**
18  HERSHKOWITZ, BRIAN WEST, WILLIAM          )   **OF MOTION TO QUASH**
    JETTON, JULIAN LOPEZ, LIAM JAKACKI, TROY  )   **SUMMONS AND COMPLAINT**
19  HIXSON, KYRIE TERRY. STEVEN MILAZZO, and  )
    SARAH LECHNER on behalf of and as representative )   [Filed concurrently with Notice of
20  for MARC LECHNER,                         )   Motion and Motion; Memorandum of
                                              )   Points and Authorities; Declaration of
21                  Plaintiffs,               )   Lonnie Clark; Declaration of Jacob
                                              )   Geissler; Declaration of Michael
22  vs.                                       )   Partos; [Proposed] Order.]
                                              )
23  USPLABS, LLC, JONATHAN VINCENT DOYLE      )   Date:  November 6, 2013
    (an individual), JACOB GEISSLER (an individual), )   Time:  8:30 AM
24  USPLABS JACK3D, LLC, USPLABS OXYELITE,    )
    LLC, USPLABS HOLDING, LLC, GNC            )   Complaint Filed:  May 8, 2013
25  CORPORATION, THE VITAMIN SHOPPE,          )
    VITAMIN SHOPPE INDUSTRIES, INC.,          )   [Assigned for all purposes to the
26  BODYBUILDING.COM, LLC, SUPER              )   Honorable Holly E. Kendig,
    SUPPLEMENTS, INC., MAX MUSCLE             )   Department 42 ]
27  MARKETING, INC., RITE AID CORPORATION,    )
    NATURAL ALTERNATIVES INTERNATIONAL,       )
28  INC., and DOES 1-500, Inclusive,          )
                                              )
                    Defendants.              )

1
DECLARATION OF JONATHAN VINCENT DOYLE IN SUPPORT OF MOTION TO QUASH

1    I, JONATHAN VINCENT DOYLE, hereby declare as follows:

2    1.    I have been named as an individual defendant in this action and I have personal

3    knowledge of each fact stated in this declaration. If called upon to testify under oath to the facts

4    contained in this declaration I could and would testify competently thereto.

5    2.    I do not submit to the Court's jurisdiction in California and provide this declaration as

6    a special appearance for the sole purpose of challenging this court's jurisdiction over my person.

7    3.    I reside in and am a citizen of the State of Texas. I have lived in Texas since

8    February of 2010. Prior to residing in Texas, I resided in Connecticut. I have never resided in

9    California.

10    4.    My domicile is Dallas, Texas.

11    5.    I received a copy of the summons and Complaint in Dallas, Texas, via registered

12    mail. I was not personally served while physically present in California, am not domiciled within

13    California, and have not consented to or appeared in this action.

14    6.    Plaintiffs complaint alleges claims for negligence, strict products liability, breach of

15    express warranty, breach of implied warranty, unlawful business acts and practices per Cal. Bus. &

16    Prof. Code § 17200, punitive damages and wrongful death, all relating to the purchase and use of

17    products ("Jack3d" and "OxyELITE Pro," collectively, the "Subject Products").

18    7.    The Subject Products are sold by USPlabs, LLC. I have never sold the Subject

19    Products in my individual capacity and Plaintiffs' claims against me are limited to an alter ego claim

20    given my role as President of USPlabs, LLC.

21    8.    In my role as President of USPlabs, LLC, all of my corporate governance for the

22    company occurs in the state of Texas and all corporate meetings occur in Texas. Furthermore, to the

23    best of my knowledge all corporate formalities are followed. I have not converted any corporate

24    assets for my own use and have not commingled any corporate assets for my own benefit.

25    9.    I do not now nor have I ever owned, leased, possessed or maintained any real or

26    personal property in California.

27    10.    I do not own, lease or maintain an office in California, and I have never owned,

28    leased or maintained an office, residence or place of business in California.

11.    I have never had an authorized agent or representative in California.

12.    I do not and have never paid income taxes in the state of California.

13.    I do not maintain any bank or savings and loan accounts in California and have never maintained any bank or savings and loan accounts in California.

14.    I have never signed any contracts in California.

15.    I do not presently nor have I never maintained a telephone listing in California.

16.    I have not consented and do not consent to jurisdiction in the State of California.

17.    It would be unreasonable to require me to defend this action in courts within California because, among other reasons, it would impose a great burden upon me of defending this lawsuit in California.

18.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July 22 , 2013 in Dallas, Texas.

JONATHAN VINCENT DOYLE

DECLARATION OF JONATHAN VINCENT DOYLE IN SUPPORT OF MOTION TO QUASH



1   Michael Partos, State Bar No. 143845
mpartos@cozen.com

2   Issa Mikel, State Bar No. 289097
imikel@cozen.com

3   COZEN O'CONNOR

4   601 South Figueroa Street, Suite 3700
Los Angeles, California 90017

5   Telephone:  213.892.7900,
Facsimile:   213.892.7999

6

7   Paul K. Leary, Jr. (*pro hac vice* application to be filed)
pleary@cozen.com

8   COZEN O'CONNOR

9   1900 Market Street
Philadelphia, PA 19103

10   Telephone:  215.665.2000
Facsimile:   215.665.2013

11   Attorneys for Defendants USPLABS, LLC, JONATHAN VINCENT DOYLE,
JACOB GEISSLER, USPLABS OXYELITE, LLC, USPLABS HOLDINGS,

12   LLC, GNC CORPORATION, THE VITAMIN SHOPPE, INC. AND VITAMIN
SHOPPE INDUSTRIES INC.

13

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

                 IN AND FOR THE COUNTY OF LOS ANGELES

15   JUSTIN CAROLYNE, TIMOTHY HEPWORTH,  )  Case No.: BC 508212

16   MARCUS HARKINS, DEREK MITCHELL, BYRON )
NUTHALL, MICHAEL GARCIA, LAWRENCE    )  PROOF OF SERVICE

17   SIEGEL, JACINTA LITTLE, MARK          )
HERSHKOWITZ, BRIAN WEST, WILLIAM    )

18   JETTON, JULIAN LOPEZ. LIAM JAKACK1, TROY )
HIXSON, KYRIE TERRY. STEVEN MILAZZO, and )

19   SARAH LECHNER on behalf of and as representative )
for MARC LECHNER,              )

20                   Plaintiffs,      )

21   vs.                          )

22   USPLABS, LLC, JONATHAN VINCENT DOYLE  )
(an individual), JACOB GEISSLER (an individual), )

23   USPLABS JACK3D, LLC, USPLABS OXYELITE, )
LLC, USPLABS HOLDING, LLC, GNC      )

24   CORPORATION, THE VITAMIN SHOPPE,    )
VITAMIN SHOPPE INDUSTRIES, INC.,     )

25   BODYBUILDING.COM, LLC, SUPER        )
SUPPLEMENTS, INC., MAX MUSCLE      )

26   MARKETING, INC., RITE AID CORPORATION, )
NATURAL ALTERNATIVES INTERNATIONAL, )

27   INC., and DOES 1-500, Inclusive,      )
                               )

28                 Defendants.     )

FILED
Los Angeles Superior Court

JUL 25 2013

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 601 South Figueroa Street, 37th Floor, Los Angeles, California 90017.

On **July 25, 2013**, I served the foregoing documents on the interested parties in this action:

1.     NOTICE OF MOTION AND MOTION TO QUASH SUMMONS AND COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 418.10; MEMORANDUM OF POINTS AND AUTHORITIES;

2.     DECLARATION OF JONATHAN VINCENT DOYLE IN SUPPORT OF MOTION TO QUASH SUMMONS AND COMPLAINT;

3.     DECLARATION OF LONNIE CLARK IN SUPPORT OF MOTION TO QUASH SUMMONS AND COMPLAINT;

4.     DECLARATION OF JACOB GEISSLER IN SUPPORT OF MOTION TO QUASH SUMMONS AND COMPLAINT;

5.     DECLARATION OF MICHAEL J. PARTOS IN SUPPORT OF MOTION TO QUASH SUMMONS AND COMPLAINT;

6.     [PROPOSED] ORDER GRANTING MOTION TO QUASH SUMMONS AND COMPLAINT;

7.     DEMURRER TO COMPLAINT;

8.     [PROPOSED] ORDER RE: DEMURRER.

[XX]   By placing the true copies thereof enclosed in sealed envelopes addresses as listed below:

**SEE ATTACHED SERVICE LIST**

[XX]   BY MAIL. I caused such envelopes with postage thereon fully prepaid to be placed in the United States mail in the County of Los Angeles following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States postal Service in a sealed envelope with postage fully prepaid.

[XX]   **(STATE):** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed July 25, 2013 at Los Angeles, California.

KRISTIN S. MORALES

## SERVICE LIST

| | |
|---|---|
| Sean T. Higgins, Esq.<br>ANDREWS & THORNTON<br>2 Corporate Park, Suite 110<br>Irvine, CA 92606 | Attorneys for Plaintiffs, *JUSTIN CAROLYNE, TIMOTHY HEPWORTH, MARCUS HARKINS, DEREK MITCHELL, BYRON NUTHALL, MICHAEL GARCIA, LAWRENCE SIEGEL, JACINTA LITTLE, MARK HERSHKOWITZ, BRIAN WEST, WILLIAM JETTON, JULIAN LOPEZ, LIAM JAKACKI, TROY HIXSON, KYRIE TERRY, STEVEN MILAZZO* and *SARAH LECHNER on behalf of and as representative for MARC LECHNER*<br><br>Telephone: 949.748.1000<br>Facsimile: 949.315.3540<br>Email: shiggins@andrewsthornton.com |
| President of BodyBuilding.com, LLC<br>BODYBUILDING.COM LLC<br>2026 S. Silverstone Way<br>Meridian, ID 83642 | Defendant, *BODYBUILDING.COM, LLC*<br><br>Telephone:<br>Facsimile:<br>Email: |
| Vitamin Shoppe Industries Inc.<br>CSC – LAWYERS INCORPORATING SERVICE<br>2710 Gateway Oaks Dr., Suite 150N<br>Sacramento, CA 95833 | Defendant, *VITAMIN SHOPPE INDUSTRIES INC.*<br><br>Telephone:<br>Facsimile:<br>Email: |
| James E. Sweeney<br>President of SUPER SUPPLEMENTS, INC.<br>750 S. Michigan St.<br>Seattle, WA 98108 | Defendant, *SUPER SUPPLEMENTS, INC.*<br><br>Telephone:<br>Facsimile:<br>Email: |
| Rite Aid Corporation<br>c/o CT Corporation System<br>818 W. Seventh Street<br>Los Angeles, CA 90017 | Defendant, *RITE AIDE CORPORATION*<br><br>Telephone:<br>Facsimile:<br>Email: |
| Ken Wolf<br>Agent for Service of Process<br>NATURAL ALTERNATIVES INTERNATIONAL, INC.<br>1185 Linda Vista Dr.<br>San Marcos, CA 92078 | Defendant, *NATURAL ALTERNATIVES INTERNATIONAL, INC.*<br><br>Telephone:<br>Facsimile:<br>Email: |

1  | Joe Wells
2  | Agent for Service of Process
   | MAX MUSCLE MARKETING, INC.
3  | 210 W. Taft Avenue
   | Orange, CA  92865

Defendant, *MAX MUSCLE MARKETING, INC.*

Telephone:
Facsimile:
Email:

1  Michael Partos, State Bar No. 143845
   mpartos@cozen.com
2  Issa Mikel, State Bar No. 289097
   imikel@cozen.com
3  COZEN O'CONNOR
   601 South Figueroa Street, Suite 3700
4  Los Angeles, California 90017
   Telephone:    213.892.7900,
5  Facsimile:    213.892.7999
6
7  Paul K. Leary, Jr. (*pro hac vice* application to be filed)
   pleary@cozen.com
8  COZEN O'CONNOR
   1900 Market Street
9  Philadelphia, PA 19103
   Telephone:    215.665.2000
10 Facsimile:    215.665.2013
11 Attorneys for Defendants USPLABS, LLC, JONATHAN
   VINCENT DOYLE, JACOB GEISSLER, USPLABS
12 OXYELITE, LLC, USPLABS HOLDING, LLC, GNC
   CORPORATION, THE VITAMIN SHOPPE, INC. AND
13 VITAMIN SHOPPE INDUSTRIES INC.

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15              IN AND FOR THE COUNTY OF LOS ANGELES

16 JUSTIN CAROLYNE, TIMOTHY HEPWORTH,          ) Case No.: BC 508212
   MARCUS HARKINS, DEREK MITCHELL, BYRON      )
17 NUTHALL, MICHAEL GARCIA, LAWRENCE          ) **DECLARATION OF MICHAEL**
   SIEGEL, JACINTA LITTLE, MARK               ) **PARTOS IN SUPPORT OF**
18 HERSHKOWITZ, BRIAN WEST, WILLIAM           ) **MOTION TO QUASH SUMMONS**
   JETTON, JULIAN LOPEZ, LIAM JAKACK1, TROY   ) **AND COMPLAINT**
19 HIXSON, KYRIE TERRY. STEVEN MILAZZO, and   )
   SARAH LECHNER on behalf of and as representative ) [Filed concurrently with Notice of
20 for MARC LECHNER,                          ) Motion and Motion; Memorandum of
                                              ) Points and Authorities; Declaration of
21              Plaintiffs,                   ) Jonathan Vincent Doyle; Declaration
                                              ) of Jacob Geissler; Declaration of
22 vs.                                        ) Lonnie Clark; [Proposed] Order.]
                                              )
23 USPLABS, LLC, JONATHAN VINCENT DOYLE       ) Date:  November 6, 2013
   (an individual), JACOB GEISSLER (an individual), ) Time:  8:30 AM
24 USPLABS JACK3D, LLC, USPLABS OXYELITE,     )
   LLC, USPLABS HOLDING, LLC, GNC             ) Complaint Filed:  May 8, 2013
25 CORPORATION, THE VITAMIN SHOPPE,           )
   VITAMIN SHOPPE INDUSTRIES, INC.,           ) [Assigned for all purposes to the
26 BODYBUILDING.COM, LLC, SUPER              ) Honorable Holly E. Kendig,
   SUPPLEMENTS, INC., MAX MUSCLE              ) Department 42 ]
27 MARKETING, INC., RITE AID CORPORATION,     )
   NATURAL ALTERNATIVES INTERNATIONAL,        )
28 INC., and DOES 1-500, Inclusive,           )
                                              )
              Defendants.                     )

                                      1

FILED
Los Angeles Superior Court

JUL 25 2013

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

I, MICHAEL PARTOS, hereby declare as follows:

1.    I am an attorney with the law firm Cozen O'Connor, counsel of record for Defendants USPLABS HOLDING, LLC, USPLABS JACK3D, LLC, USPLABS OXYELITE, LLC, JONATHAN VINCENT DOYLE and JACOB GEISSLER ("Moving Defendants") in this action. I am licensed to practice law and in good standing in the state of California. I have personal knowledge of each fact stated in this declaration and if called upon to testify under oath to the facts contained in this declaration I could and would testify competently thereto.

2.    Attached to this declaration as **Exhibit A** are true and correct copies of proofs of services of the Summons and Complaint in this action, provided by Plaintiff's counsel.

3.    While Moving Defendants have stipulated to additional time to respond to the Complaint, none has consented to the jurisdiction of this Court, expressly or impliedly. None has agreed to accept service or submit to the jurisdiction of this Court; nor has any served discovery or engaged in any other conduct that would constitute a general appearance in this action.

4.    Moving Defendants were not personally served while physically present in California, are not domiciled within California, and have not consented to or appeared in this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July 25, 2013 in Los Angeles, California.

MICHAEL PARTOS

LEGAL\16898240\1 16812.0001.000/337011.000

2
DECLARATION OF MICHAEL PARTOS

# EXHIBIT A

00/00/2013  12:19:27 FAX 21324⬛90        NATIONWIDE LEGAL

*Attorney or Party without Attorney:*
SEAN T. HIGGINS, ESQ., Bar #266888
ANDREWS & THORNTON
2 CORPORATE PARK
SUITE 110
IRVINE, CA 92606
Telephone No: (949) 748-1000        FAX No: (949) 315-3540

*Ref. No. or File No.:*
CAROLYNE V USPLABS

*Attorney for:* Plaintiff

*Insert name of Court, and Judicial District and Branch Court:*
Los Angeles County Superior Court, Stanley Mosk Courthouse

*Plaintiff:* JUSTIN CAROLYNE
*Defendant:* USPLABS, LLC

**CONFORMED COPY**
~~CONFORMED FILED~~
Superior Court of California
County of Los Angeles

JUN 10 2013

John A. Clarke, Executive Officer/Clerk
by _____ Deputy

| PROOF OF SERVICE<br>Summons & Complaint | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>BC508212 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUMMONS; ADDITIONAL PARTIES ATTACHMENT (Attachment to Summons); COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT-UNLIMITED CIVIL CASE; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS PACKAGE.

3. a. *Party served:*          JACOB GEISLER (an individual)
   b. *Person served:*        White, Male, 35 Years Old, Brown Hair, 6 Feet 4 Inches, 220 Pounds

4. *Address where the party was served:*    10761 KING WILLIAM DRIVE
                                           DALLAS, TX 75220

5. *I served the party:*
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Tue., May. 28, 2013 (2) at: 12:30PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   a. as an individual defendant

7. *Person Who Served Papers:*                    Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. GEOFFREY HINER                        d. The Fee for Service was:    $379.00
   b. Service Provided for:                  e. I am: not a registered California process server
      NATIONWIDE LEGAL LLC
      820 N. PARTON ST. (LA 12-234648)
      SANTA ANA, CA 92701
   c. 714.558.2400

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Date: Thu, May. 30, 2013

   Judicial Council Form POS-010        PROOF OF SERVICE    *(signature)*  (GEOFFREY HINER)    2472685 .scahig.211139
   Rule 2.150.(a)&(b) Rev January 1, 2007

BY FAX

00/00/2013  12:19:27 FAX 2132    990       NATIONWIDE LEGAL

| | For Court Use Only |
|---|---|
| *Attorney or Party without Attorney:*<br>SEAN T. HIGGINS, ESQ., Bar #266888<br>ANDREWS & THORNTON<br>2 CORPORATE PARK<br>SUITE 110<br>IRVINE, CA 92606<br>Telephone No: (949) 748-1000    FAX No: (949) 315-3540 | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>JUN 10 2013 |
| *Attorney for:* Plaintiff                          *Ref. No. or File No.:*<br>                                        CAROLYNE V USPLABS | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>Los Angeles County Superior Court, Stanley Mosk Courthouse | John A. Clarke, Executive Officer/Clerk<br>BY_____, Deputy.<br>Glonetta Robinson |
| *Plaintiff:* JUSTIN CAROLYNE<br>*Defendant:* USPLABS, LLC | |

| PROOF OF SERVICE | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:* |
|---|---|---|---|---|
| Summons & Complaint | | | | BC508212 |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUMMONS; ADDITIONAL PARTIES ATTACHMENT (Attachment to Summons); COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT-UNLIMITED CIVIL CASE; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS PACKAGE.

3. a. *Party served:*               JONATHAN VINCENT DOYLE (an individual)
   b. *Person served:*             White, Male, 32 Years Old, Brown Hair, 5 Feet 10 Inches, 200 Pounds

4. *Address where the party was served:*   10761 KING WILLIAM DRIVE
                                    DALLAS, TX 75220

5. I served the party:
   a. by personal service. I personally delivered the documents listed in Item 2 to the party or person authorized to receive process for the party (1) on: Tue., May. 28, 2013 (2) at: 12:30PM
6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   a. as an individual defendant
7. *Person Who Served Papers:*                          Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. GEOFFREY HINER                    d. *The Fee for Service was:*    $379.00
   b. Service Provided for:              e. I am: not a registered California process server
      NATIONWIDE LEGAL LLC
      820 N. PARTON ST. (LA 12-234648)
      SANTA ANA, CA 92701
   c. 714.558.2400

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   *Date:* Thu, May. 30, 2013

   PROOF OF SERVICE                        *Geoffrey Hiner*
                                          (GEOFFREY HINER)  *2492697  seahig.211133*

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

BY FAX

00/00/2013  12:19:27 FAX 21324⬤90        NATIONWIDE LEGAL                    1

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sean T. Higgins, Esq., SBN: 266888<br>ANDREWS & THORNTON<br>2 Corporate Park, Ste 110<br><br>Irvine, CA 92606<br>TELEPHONE NO: 949-748-1000    FAX NO. *(Optional):* (949) 315-3540<br>E-MAIL ADDRESS *(Optional):* shiggins@andrewsthornton.com<br>ATTORNEY FOR *(Name):* Plaintiff, Justin Carolyne, et al. | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>JUN 10 2013<br><br>John A. Clarke, Executive Officer/Clerk<br>BY _____, Deputy<br>Glorietta Robinson |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 600 S Commonwealth Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90005
BRANCH NAME: Central Civil West Courthouse (CCW)

| PLAINTIFF/PETITIONER: Justin Carolyne, et al. | CASE NUMBER:<br>BC508212 |
|---|---|
| DEFENDANT/RESPONDENT: USPLabs, LLC, et al. | |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |

·· *(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents):* Civil Case Cover Sheet Addendum, Proof of Service of Summons on Max Muscle Marketing, Inc., Proof of Service of Summons on Natural Alternatives International, Inc.

3. a. Party served *(specify name of party as shown on documents served):* USPLabs Holding, LLC

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

   President of USPLabs Holding, LLC

4. Address where the party was served: 350 N Saint Paul St STE 2900, Dallas, TX 75201-4234

5. I served the party *(check proper box)*
   a. [ ] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*                    (2) at *(time):*
   b. [ ] by substituted service. On *(date):*            at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

BY FAX

00/00/2013  12:19:27 FAX 2132█████90          NATIONWIDE LEGAL                                    2

| PLAINTIFF/PETITIONER: Justin Carolyne, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: USPLabs, LLC, et al. | BC508212 |

5.  c:  [X]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):* 5/13/2013          (2) from *(city):* Irvine

    (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) [X] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  [ ]  **by other means** *(specify means of service and authorizing code section):*

    [ ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  [ ]  as an individual defendant.
  b.  [ ]  as the person sued under the fictitious name of *(specify):*
  c.  [ ]  as occupant.
  d.  [X]  On behalf of *(specify):*  USPLabs Holding, LLC
    under the following Code of Civil Procedure section:

| | |
|---|---|
| [X] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other: |

7.  **Person who served papers**
  a.  Name: Melchisedec Gabriel Hall
  b.  Address: 2 Corporate Park Ste 110, Irvine CA 92606
  c.  Telephone number: 949-748-1000
  d.  The fee for service was: $ 0.00
  e.  I am:
    (1) [X] not a registered California process server.
    (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
    (3) [ ] registered California process server:
      (i) [ ] owner    [ ] employee    [ ] independent contractor.
      (ii) Registration No.:
      (iii) County:

8.  [X]  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    **or**

9.  [ ]  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 6/7/2013

Melchisedec Gabriel Hall
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)          (SIGNATURE)

---

POS-010 [Rev. January 1, 2007]          **PROOF OF SERVICE OF SUMMONS**          Page 2 of 2

00/00/2013  12:19:27 FAX 21324    090        NATIONWIDE LEGAL                          3

# EXHIBIT A

00/00/2013  12:19:27 FAX  2132      990     · NATIONWIDE LEGAL                                                                     4

# COPY

|                                                          | **SUM-100** |
|---|---|

## SUMMONS
### (CITACION JUDICIAL)

NOTICE TO DEFENDANT: USPLABS, LLC
*(AVISO AL DEMANDADO):*

(Additional Parties Attachment form is attached)

YOU ARE BEING SUED BY PLAINTIFF: JUSTIN CAROLYNE
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
    (Additional Parties Attachment form is attached)



FOR COURT USE ONLY
*(SOLD PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 08 2013

John A. Clarke, Executive Officer/Clerk

BY                              Deputy
    Isheylin Chambers

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the Information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | **CASE NUMBER:** *(Número del Caso):* |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>111 North Hill Street<br>Los Angeles, CA 90012<br>Stanley Mosk Courthouse | BC508212 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sean T. Higgins, Esq., SBN: 266888                      (949) 748-1000  (949) 315-3540
ANDREWS & THORNTON
2 Corporate Park, Ste 110
Irvine, CA 92606

DATE:                                      Clerk, by  Isheylin Chambers        , Deputy
*(Fecha)*        John A. Clarke        *(Secretario)*                  *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

MAY 08 2013

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* USPLABS HOLDING, LLC

   under: [X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Legal Solutions Plus | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|---|

BY FAX

.00/00/2013  12:19:27 FAX 2132▊▊990        NATIONWIDE LEGAL                                    5

1  Anne Andrews (SBN. 103280)
   John C. Thornton (SBN. 84492)
2  Sean T. Higgins, Esq. (SBN. 266888)
   ANDREWS & THORNTON
3  2 Corporate Park, Suite 110
   Irvine, California 92606
4  Phone: (949) 748-1000
5  Facsimile: (949) 315-3540

6  **Attorneys for Plaintiff-Decedent**

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  JUSTIN CAROLYNE, TIMOTHY            ) Case No.:
    HEPWORTH, MARCUS HARKINS,           ) BC508212
12  DEREK MITCHELL, BYRON NUTHALL,      )
    MICHAEL GARCIA, LAWRENCE            )
13  SIEGEL, JACINTA LITTLE, MARK        ) PROOF OF SERVICE
    HERSHKOWITZ, BRIAN WEST,            )
14  WILLIAM JETTON, JULIAN LOPEZ,       )
15  LIAM JAKACKI, TROY HIXSON, KYRIE    )
    TERRY, STEVEN MILAZZO, and SARAH    )
16  LECHNER on behalf of and as         )
17  representative for MARC LECHNER,    )
                                        )
18          Plaintiffs,                 )
                                        )
19  v.                                  )
                                        )
20  USPLABS, LLC, JONATHAN VINCENT      )
    DOYLE (an individual), JACOB        )
21  GEISSLER (an individual), USPLABS   )
22  JACK3D, LLC, USPLABS OXYELITE,      )
    LLC, USPLABS HOLDING, LLC, GNC      )
23  CORPORATION, THE VITAMIN            )
    SHOPPE, VITAMIN SHOPPE              )
24  INDUSTRIES INC.,                    )
    BODYBUILDING.COM, LLC, SUPER        )
25  SUPPLEMENTS, INC., MAX MUSCLE       )
26  MARKETING, INC., RITE AID           )
    CORPORATION, NATURAL                )
27  ALTERNATIVES INTERNATIONAL, INC,    )
    and DOES 1-500, Inclusive,          )
28                                      )
            Defendants.                 )

                              1
                        PROOF OF SERVICE

00/00/2013  12:19:27 FAX 2132   990          NATIONWIDE LEGAL                                        6

I am a citizen of the United States and am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 2 Corporate Park, Suite 110, Irvine, California 92606.

On May 13, 2013, I served the following documents in the manner indicated on the below-named on the below listed party/parties or counsel:

- **SUMMONS**
- **ADR PACKAGE**
- **CIVIL CASE COVER SHEET**
- **CIVIL CASE COVER SHEET ADDENDUM**
- **COMPLAINT**

- **PROOF OF SERVICE OF SUMMONS:**
  **MAX MUSCLE MARKETING, INC.**

- **PROOF OF SERVICE OF SUMMONS:**
  **NATURAL ALTERNATIVES INTERNATIONAL, INC.**

By placing ____ the original  **XX**  true copies thereof enclosed in sealed envelopes addressed and sent in the following manner:

  **XX**  **BY U.S. POSTAL SERVICE CERTIFIED PRIORITY MAIL, RETURN RECEIPT REQUESTED** as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than I day after date of deposit for mailing in affidavit.

The above listed documents were served on the below listed parties:

  President of USPLabs Holding, LLC
  USPLabs Jack3d, LLC
  350 N Saint Paul St STE 2900
  Dallas, TX 75201-4234

  **XX**  **STATE:** I declare under penalty of perjury that the foregoing is true and correct.

  Executed on May 13, 2013, at Irvine, California.

MELCHISEDEC GABRIEL HALL

2
PROOF OF SERVICE

00/00/2013 12:19:27 FAX 21324 990     NATIONWIDE LEGAL                    7



U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ 5.05 |
| Certified Fee | 3.10 |
| Return Receipt Fee (Endorsement Required) | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 10.70 |

IRVINE CA 92623
Postmark Here
MAY 13 2013
USPS

Sent To: President of USPLabs Holding, LLC
USPLabs Jack3d, LLC
Street, Apt. No.; 350 N Saint Paul St STE 2900
or PO Box No.
City, State, ZIP+4: Dallas, TX 75201-4234

PS Form 3800?

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President of USPLabs Holding, LLC
USPLabs Jack3d, LLC
350 N Saint Paul St STE 2900
Dallas, TX 75201-4234

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent  ☐ Addressee
B. Received by ( Printed Name)   MAY   C. Date of Delivery  2013

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7010 2780 0001 1778 3185

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

00/00/2013 12:19:27 FAX 2132 990    NATIONWIDE LEGAL    1

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Sean T. Higgins, Esq., SBN.: 266888
ANDREWS & THORNTON
2 Corporate Park, Ste 110
Irvine, CA 92606
TELEPHONE NO: 949-748-1000    FAX NO. (Optional): (949) 315-3540
E-MAIL ADDRESS (Optional): shiggins@andrewsthornton.com.
ATTORNEY FOR (Name): Plaintiff, Justin Carolyne, et al.

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 10 2013

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Glorietta Halloween

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 600 S Commonwealth Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90005
BRANCH NAME: Central Civil West Courthouse (CCW)

PLAINTIFF/PETITIONER: Justin Carolyne, et al.

DEFENDANT/RESPONDENT: USPLabs, LLC, et al.

CASE NUMBER:
BC508212

PROOF OF SERVICE OF SUMMONS

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet (served in complex cases only)
   e. [ ] cross-complaint
   f. [X] other (specify documents): Civil Case Cover Sheet Addendum, Proof of Service of Summons on Max Muscle Marketing, Inc., Proof of Service of Summons on Natural Alternatives International, Inc.

3. a. Party served (specify name of party as shown on documents served): USPLabs OxyElite, LLC

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) (specify name and relationship to the party named in item 3a):
   President of USPLabs OxyElite, LLC

4. Address where the party was served: 10761 King William Drive, Dallas, TX 75220

5. I served the party (check proper box)
   a. [ ] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): (2) at (time):
   b. [ ] by substituted service. On (date): at (time): I left the documents listed in item 2 with or in the presence of (name and title or relationship to person indicated in item 3):

      (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date): from (city): or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Legal
Solutions
Plus

Code of Civil Procedure, § 417.10

BY FAX

```
PCL XL error

        Subsystem:  IMAGE

        Error:      ExtraData

        Operator:   ReadImage

        Position:   17258
```

FILED
Los Angeles Superior Court

JUL 25 2013

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

1    Michael Partos, State Bar No. 143845
     mpartos@cozen.com
2    Issa Mikel, State Bar No. 289097
     imikel@cozen.com
3    COZEN O'CONNOR
     601 South Figueroa Street, Suite 3700
4    Los Angeles, California 90017
5    Telephone:    213.892.7900,
     Facsimile:    213.892.7999
6
7    Paul K. Leary, Jr. (*pro hac vice* application to be filed)
     pleary@cozen.com
8    COZEN O'CONNOR
     1900 Market Street
9    Philadelphia, PA 19103
     Telephone:    215.665.2000
10   Facsimile:    215.665.2013
11   Attorneys for Defendants USPLABS, LLC, JONATHAN
     VINCENT DOYLE, JACOB GEISSLER, USPLABS
12   OXYELITE, LLC, USPLABS HOLDING, LLC, GNC
     CORPORATION, THE VITAMIN SHOPPE, INC. AND
13   VITAMIN SHOPPE INDUSTRIES INC.

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15              IN AND FOR THE COUNTY OF LOS ANGELES

16   JUSTIN CAROLYNE, TIMOTHY HEPWORTH,      )   Case No.: BC 508212
     MARCUS HARKINS, DEREK MITCHELL, BYRON   )
17   NUTHALL, MICHAEL GARCIA, LAWRENCE       )   **DECLARATION OF LONNIE**
     SIEGEL, JACINTA LITTLE, MARK            )   **CLARK IN SUPPORT OF**
18   HERSHKOWITZ, BRIAN WEST, WILLIAM        )   **MOTION TO QUASH SUMMONS**
     JETTON, JULIAN LOPEZ, LIAM JAKACK1, TROY)   **AND COMPLAINT**
19   HIXSON, KYRIE TERRY. STEVEN MILAZZO, and)
     SARAH LECHNER on behalf of and as representative) [Filed concurrently with Notice of
20   for MARC LECHNER,                       )   Motion and Motion; Memorandum of
                                             )   Points and Authorities; Declaration of
21              Plaintiffs,                  )   Jonathan Vincent Doyle; Declaration
     vs.                                     )   of Jacob Geissler; [Proposed] Order.]
22                                           )
     USPLABS, LLC, JONATHAN VINCENT DOYLE    )   Date:  November 6, 2013
23   (an individual), JACOB GEISSLER (an individual),) Time: 8:30 AM
     USPLABS JACK3D, LLC, USPLABS OXYELITE,  )
24   LLC, USPLABS HOLDING, LLC, GNC          )   Complaint Filed:  May 8, 2013
     CORPORATION, THE VITAMIN SHOPPE,        )
25   VITAMIN SHOPPE INDUSTRIES, INC.,        )   [Assigned for all purposes to the
     BODYBUILDING.COM, LLC, SUPER           )   Honorable Holly E. Kendig,
26   SUPPLEMENTS, INC., MAX MUSCLE           )   Department 42 ]
     MARKETING, INC., RITE AID CORPORATION,  )
27   NATURAL ALTERNATIVES INTERNATIONAL,     )
     INC., and DOES 1-500, Inclusive,        )
28                                           )
                Defendants.                  )
     _____
                                    1
     DECLARATION OF LONNIE CLARK IN SUPPORT OF MOTION TO QUASH

1    I, LONNIE CLARK, hereby declare as follows:

2    1.    I have personal knowledge of each fact stated in this declaration and if called upon to

3    testify under oath to the facts contained in this declaration I could and would testify competently

4    thereto.

5    2.    Defendants USPLABS JACK3D, LLC, USPLABS HOLDING, LLC, AND

6    USPLABS OXYELITE, LLC do not hereby submit to the Court's jurisdiction in California, and I

7    provide this declaration as a special appearance for the sole purpose of challenging this court's

8    jurisdiction over the person of those Defendants.

9    **DEFENDANTS USPLABS JACK3D, LLC, AND USPLABS OXYELITE, LLC**

10    3.    I am the Chief Financial Officer of Defendants USPLABS JACK3D, LLC, and

11    USPLABS OXYELITE, LLC and am authorized to make this declaration on their behalf.

12    4.    Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC are limited

13    liability companies formed under the laws of the state Wyoming with their principal places of

14    business in Dallas, Texas.  All of their business is conducted in Texas.  These Defendants were not

15    personally served while physically present in California, are not domiciled within California, and

16    have not consented to or appeared in this action.

17    5.    Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC are non-

18    operational entities.  Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC do

19    not manufacture, sell, distribute, market or otherwise operate in any state, including the state of

20    California.

21    6.    Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC are not

22    incorporated in California; nor have they qualified to do business in California.

23    7.    Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC have no

24    subsidiaries incorporated or qualified to do business in California.

25    8.    Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC have no

26    employees residing or domiciled in California; nor have they contracted with persons residing in

27    California to act on its behalf.

28

2

9.    Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC have no branch office or comparable facilities in California, and have no telephone listings or mailing addresses in California.

10.    Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC have no bank accounts or other tangible personal or real property in California.

11.    Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC do not engage in any advertising in California.

12.    No meetings of Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC have been held in California.

13.    It would be unreasonable to require Defendants USPLABS JACK3D, LLC and USPLABS OXYELITE, LLC to defend this action in courts within California because of the great burden imposed upon them in defending this lawsuit in the state of California.

**DEFENDANT USPLABS HOLDINGS, LLC**

14.    I was involved in obtaining the name for the limited liability company known as USPLABS HOLDING, LLC.

15.    The formation papers for obtaining the name USPLABS HOLDING, LLC were filed on October 12, 2012. A true and correct copy of the Certification of Formation - Limited Liability Company from the state of Texas is attached hereto as **Exhibit 1**. This Defendant was not personally served while physically present in California, are not domiciled within California, and have not consented to or appeared in this action.

16.    Soon after the name USPLABS HOLDING, LLC was obtained, it was decided not to proceed with this new entity. On November 27, 2012, USPLABS HOLDING, LLC filed a Certificate of Termination of a Domestic Entity. A true and correct copy of the Certificate of Termination of a Domestic Entity from the state of Texas is attached hereto as **Exhibit 2**.

17.    USPLABS HOLDING, LLC never conducted any business. USPLABS HOLDING, LLC never was involved in the manufacture, sale, distribution, marketing or otherwise of any products.

3

18.    USPLABS HOLDING, LLC is not incorporated in California; is not qualified to do business in California and has never conducted any business in California.

19.    USPLABS HOLDING, LLC has no subsidiaries or related companies.

20.    USPLABS HOLDING, LLC has no employees.

21.    USPLABS HOLDING, LLC has no office or facilities in California, and has no telephone listings or mailing addresses in California.

22.    USPLABS HOLDING, LLC has no bank accounts or other tangible personal or real property in California.

23.    No meetings of USPLABS HOLDING, LLC were ever held in California.

24.    In addition, Defendant USPLABS HOLDING, LLC was not even in existence when the many of the alleged events occurred concerning Plaintiffs.

25.    It would be unreasonable to require Defendant USPLABS HOLDING, LLC to defend this action in courts within California because of the great burden imposed on Defendant USPLABS HOLDING, LLC in defending this lawsuit in the state of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July 23 , 2013 in Dallas, Texas.

_____
LONNIE CLARK

DECLARATION OF LONNIE CLARK IN SUPPORT OF MOTION TO QUASH

**EXHIBIT 1**

Oct. 11. 2012  6:06PM                                      No. 5364   P. 4

**Form 205**
(Revised 05/11)

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
Filing Fee: $300



**Certificate of Formation
Limited Liability Company**

This space reserved for office use.

**FILED**
In the Office of the
Secretary of State of Texas

**OCT 12 2012**

Corporations Section

### Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

USPlabs Holding, LLC

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

### Article 2 – Registered Agent and Registered Office
(See instructions. Select and complete either A or B and complete C.)

☑ A. The initial registered agent is an organization (cannot be entity named above) by the name of:

CT Corporation

OR

☐ B. The initial registered agent is an individual resident of the state whose name is set forth below:

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

C. The business address of the registered agent and the registered office address is:

| 350 North St. Paul Street Suite 2900 | Dallas | TX | 75201 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

### Article 3—Governing Authority
(Select and complete either A or B and provide the name and address of each governing person.)

☑ A. The limited liability company will have managers. The name and address of each initial manager are set forth below.

☐ B. The limited liability company will not have managers. The company will be governed by its members, and the name and address of each initial member are set forth below.

**GOVERNING PERSON 1**
NAME (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| Lonnie | | Clark | |
|---|---|---|---|
| First Name | M.I. | Last Name | Suffix |

OR
IF ORGANIZATION

Organization Name

ADDRESS

| 10761 King William Drive | Dallas | TX | US | 75225 |
|---|---|---|---|---|
| Street or Mailing Address | City | State | Country | Zip Code |

Form 205                                      4

EX 1

**GOVERNING PERSON 2**
NAME (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

OR
IF ORGANIZATION

Organization Name
ADDRESS

| Street or Mailing Address | City | State | Country | Zip Code |
|---|---|---|---|---|

**GOVERNING PERSON 3**
NAME (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

OR
IF ORGANIZATION

Organization Name
ADDRESS

| Street or Mailing Address | City | State | Country | Zip Code |
|---|---|---|---|---|

### Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

Form 205

5

Oct. 11. 2012  6:06PM                                    No. 5364    P. 6

## Organizer

The name and address of the organizer:

Jeanne Franklin c/o The Brewer Law Group PLLC
_Name_

| 8117 Preston Road Suite 300 | Dallas | TX | 75225 |
| --- | --- | --- | --- |
| _Street or Mailing Address_ | _City_ | _State_ | _Zip Code_ |

### Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

### Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date:  October 11, 2012

_Jeanne Franklin_
Signature of organizer

Jeanne Franklin
Printed or typed name of organizer

Form 205                                    6

Exhibit 2

Form 651
(Revised 05/11)
Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
Filing Fee: $40



This space reserved for office use.

**Certificate of Termination**
**of a**
**Domestic Entity**

## Entity Information

1. The name of the domestic entity is:  USPlabs Holding, LLC

2. The entity is organized as a   Limited Liability Company   under the laws of Texas.
   *e.g., for-profit corporation, limited partnership, etc.*

3. The date of formation of the entity is:  10/12/2012
   *mm/dd/yyyy*

4. The file number issued to the entity by the secretary of state is:  801669237

## Governing Persons

5. The names and addresses of each of the entity's governing persons are: (see Item 5 instructions)

**GOVERNING PERSON 1**

| Name: | Lonnie Clark | | | | |
|---|---|---|---|---|---|
| Address: | 10761 King William Drive | Dallas | TX | USA | 75220 |
| | *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

**GOVERNING PERSON 2**

| Name: | | | | | |
|---|---|---|---|---|---|
| Address: | | | | | |
| | *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

**GOVERNING PERSON 3**

| Name: | | | | | |
|---|---|---|---|---|---|
| Address: | | | | | |
| | *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

**GOVERNING PERSON 4**

| Name: | | | | | |
|---|---|---|---|---|---|
| Address: | | | | | |
| | *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

Form 651

4

EX 2

## Event Requiring Winding Up
### (See Item 6 instructions.)

6. The nature of the event requiring winding up is set forth below:    (You must select either A, B, C, D, or E.)

☑ A.    A voluntary decision to wind up the entity has been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

☐ B.    The period of duration specified in the governing documents of the entity has expired.

☐ C.    The occurrence of an event specified in the governing documents of the entity that requires the winding up, dissolution, or termination of the entity

☐ D.    The occurrence of an event specified in the Texas Business Organizations Code that requires the winding up, dissolution, or termination of the entity

OR

☐ E.    A court decree requiring the winding up, dissolution, or termination of the entity has been rendered under the provisions of the Texas Business Organizations Code or other law.

## Completion of Winding Up

7. The filing entity has complied with the provisions of the Texas Business Organizations Code governing its winding up.

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____
                                                                                        mm/dd/yyyy

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____
                                                                                        mm/dd/yyyy

The following event or fact will cause the document to take effect in the manner described below:

|  |
|--|
|  |

## Tax Certificate
### (Required)

☑ Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid.

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: ___11-27-12___    By: USPlabs Holding, LLC
                            Name of entity (see Execution instructions)

                            _LLClark_
                            Signature of authorized individual (see Execution instructions)

                            Lonnie Clark
                            Printed or typed name of authorized individual

Form 651                                    5

1    Michael Partos, State Bar No. 143845
     mpartos@cozen.com
2    Issa Mikel, State Bar No. 289097
     imikel@cozen.com
3    COZEN O'CONNOR
4    601 South Figueroa Street, Suite 3700
     Los Angeles, California 90017
5    Telephone:    213.892.7900,
     Facsimile:    213.892.7999
6

7    Paul K. Leary, Jr. (*pro hac vice* application to be filed)
     pleary@cozen.com
8    COZEN O'CONNOR
     1900 Market Street
9    Philadelphia, PA 19103
     Telephone:    215.665.2000
10   Facsimile:    215.665.2013

11   Attorneys for Defendants USPLABS, LLC, JONATHAN
     VINCENT DOYLE, JACOB GEISSLER, USPLABS
12   OXYELITE, LLC, USPLABS HOLDINGS, LLC, GNC
     CORPORATION, THE VITAMIN SHOPPE, INC. AND
13   VITAMIN SHOPPE INDUSTRIES INC.

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15              IN AND FOR THE COUNTY OF LOS ANGELES

16   JUSTIN CAROLYNE, TIMOTHY HEPWORTH,        ) Case No.: BC 508212
     MARCUS HARKINS, DEREK MITCHELL, BYRON     )
17   NUTHALL, MICHAEL GARCIA, LAWRENCE          ) **DECLARATION OF JACOB**
     SIEGEL, JACINTA LITTLE, MARK               ) **GEISSLER IN SUPPORT OF**
18   HERSHKOWITZ, BRIAN WEST, WILLIAM           ) **MOTION TO QUASH SUMMONS**
     JETTON, JULIAN LOPEZ, LIAM JAKACK1, TROY   ) **AND COMPLAINT**
19   HIXSON, KYRIE TERRY. STEVEN MILAZZO, and   )
     SARAH LECHNER on behalf of and as representative ) [Filed concurrently with Notice of
20   for MARC LECHNER,                          ) Motion and Motion; Memorandum of
                                                ) Points and Authorities; Declaration of
21              Plaintiffs,                      ) Lonnie Clark; Declaration of Jonathan
     vs.                                        ) Vincent Doyle; Declaration of Michael
22                                              ) Partos; [Proposed] Order.]
     USPLABS, LLC, JONATHAN VINCENT DOYLE       )
23   (an individual), JACOB GEISSLER (an individual), ) Date:  November 6, 2013
     USPLABS JACK3D, LLC, USPLABS OXYELITE,     ) Time:  8:30 AM
24   LLC, USPLABS HOLDING, LLC, GNC             )
     CORPORATION, THE VITAMIN SHOPPE,           ) Complaint Filed:  May 8, 2013
25   VITAMIN SHOPPE INDUSTRIES, INC.,           )
     BODYBUILDING.COM, LLC, SUPER               ) [Assigned for all purposes to the
26   SUPPLEMENTS, INC., MAX MUSCLE              ) Honorable Holly E. Kendig,
     MARKETING, INC., RITE AID CORPORATION,     ) Department 42 ]
27   NATURAL ALTERNATIVES INTERNATIONAL,        )
     INC., and DOES 1-500, Inclusive,           )
28                                              )
                Defendants.                     )

                                                1
     DECLARATION OF JACOB GEISSLER IN SUPPORT OF MOTION TO QUASH

I, JACOB GEISSLER, hereby declare as follows:

1.    I have been named as an individual defendant in this action and I have personal knowledge of each fact stated in this declaration.  If called upon to testify under oath to the facts contained in this declaration I could and would testify competently thereto.

2.    I do not submit to the Court's jurisdiction in California and provide this declaration as a special appearance for the sole purpose of challenging this court's jurisdiction over my person.

3.    I reside in and am a citizen of the State of Texas.  I have lived in Texas my entire life. I have never resided in California.

4.    My domicile is Dallas, Texas.

5.    I received a copy of the summons and Complaint in Dallas, Texas, via registered mail.  I was not personally served while physically present in California, am not domiciled within California, and have not consented to or appeared in this action.

6.    Plaintiffs complaint alleges claims for negligence, strict products liability, breach of express warranty, breach of implied warranty, unlawful business acts and practices per Cal. Bus. & Prof. Code § 17200, punitive damages and wrongful death, all relating to the purchase and use of products ("Jack3d" and "OxyELITE Pro," collectively, the "Subject Products").

7.    The Subject Products are sold by USPlabs, LLC.  I have never sold the Subject Products in my individual capacity and Plaintiffs' claims against me are limited to an alter ego claim given my role as Chief Executive Officer (CEO) of USPlabs, LLC.

8.    In my role as CEO of USPlabs, LLC, all of my corporate governance for the company occurs in the state of Texas and all corporate meetings occur in Texas.  Furthermore, to the best of my knowledge all corporate formalities are followed.  I have not converted any corporate assets for my own use and have not commingled any corporate assets for my own benefit.

9.    I do not now nor have I ever owned, leased, possessed or maintained any real or personal property in California.

10.    I do not own, lease or maintain an office in California, and I have never owned, leased or maintained an office, residence or place of business in California.

11.    I have never had an authorized agent or representative in California.

DECLARATION OF JACOB GEISSLER IN SUPPORT OF MOTION TO QUASH

12.    I do not and have never paid income taxes in the state of California.

13.    I do not maintain any bank or savings and loan accounts in California and have never maintained any bank or savings and loan accounts in California.

14.    I have never signed any contracts in California.

15.    I do not presently nor have I never maintained a telephone listing in California.

16.    I have not consented and do not consent to jurisdiction in the State of California.

17.    It would be unreasonable to require me to defend this action in courts within California because, among other reasons, it would impose a great burden upon me of defending this lawsuit in California.

18.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July _____, 2013 in Dallas, Texas.

JACOB GEISSLER

DECLARATION OF JACOB GEISSLER IN SUPPORT OF MOTION TO QUASH

00/00/2013  12:19:27 FAX 2132499990          NATIONAL LEGAL

● ORIGINAL ●

1  Anne Andrews (SBN. 103280)
   John C. Thornton (SBN. 84492)
2  ANDREWS & THORNTON
   2 Corporate Park, Suite 110
3  Irvine, California 92606
   Phone: (949) 748-1000
4  Facsimile: (949) 315-3540

5

6

7  *Plaintiff's Counsel*

8  JUSTIN CAROLYNE, ET AL.,

9

10          Plaintiffs,

11

12  v.

13

14  USPLABS, LLC, et al.

15          Defendants.

16

17

18

19

20

21

22  ///

23  ///

24  ///

25

26

27

28

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 02 2013

John A. Clarke, Executive Officer/Clerk

Case No. BC508212          042

**DECLARATION OF SARAH LECHNER
PURSUANT TO CALIFORNIA CODE OF
CIVIL PROCEDURE SECTION 377.32**

**BY FAX**

1
LECHNER DECLARATION PURSUANT TO CCP 377.32

Plaintiff Sarah Lechner commenced an action as Decedent Marc Lechner's successor in interest pursuant to California Code of Civil Procedure section 377.32 and declares under penalty of perjury under the laws of this state as follows:

1.  Decedent's name was Marc Lechner.

2.  Decedent Marc Lechner died on 1/3/2013 in San Diego, CA.

3.  No proceeding is now pending in California for administration of the decedent's estate.

4.  Decedent's estate was not administered.

5.  The above-mentioned individual is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding because pursuant to Cal. Code of Civil. Proced. § 377.30 she is his heir at law and succeeds to decedent's estate under Probate Code §§ 6401, 7000 in that she is the surviving spouse of decedent who died intestate with no issue.

6.  No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

7.  The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

A certified copy of the decedent's death certificate is attached to this affidavit as Exhibit A.

Date:  07 | 02 | 2013.

_____
Sarah Lechner

08/03/2013

**EXHIBIT A**

00/00/2013  12:19:27 FAX 2132499990        NATIONWIDE LEGAL

# EXHIBIT A

00/00/2013  12:19:27 FAX 2132499990        NATIONWIDE LEGAL                                    4

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN DIEGO

### CERTIFICATE OF DEATH

3052013001159                                                          3201337000096

| STATE FILE NUMBER | | LOCAL REGISTRATION NUMBER |
|---|---|---|

**DECEDENT PERSONAL DATA**

| 1 NAME OF DECEDENT—FIRST (Given) | 2 MIDDLE | 3 LAST (Family) |
|---|---|---|
| MARC | FRANZ | LECHNER |

| 4 DATE OF BIRTH | 5 AGE YRS | 7 SEX |
|---|---|---|
| 06/16/1972 | 40 | M |

| 8 BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11 EVER IN U.S. ARMED FORCES? | 12 MARITAL STATUS | 6 DATE OF DEATH | 9 HOUR |
|---|---|---|---|---|---|
| ZAMBIA | 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 | X NO | MARRIED | 01/03/2013 | 0841 |

| 13 EDUCATION | 14/15 HISPANIC | 16 DECEDENT'S RACE |
|---|---|---|
| PROFESSIONAL | X NO | CAUCASIAN |

| 17 USUAL OCCUPATION | 18 KIND OF BUSINESS OR INDUSTRY | 19 YEARS IN OCCUPATION |
|---|---|---|
| ENGINEER | MEDICAL DEVICE MANUFACTURING | 18 |

**USUAL RESIDENCE**

| 20 DECEDENT'S RESIDENCE |
|---|
| 10675 TIPPERARY WAY |

| 21 CITY | 22 COUNTY/PROVINCE | 23 ZIP CODE | 24 YEARS IN COUNTY | 25 STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| SAN DIEGO | SAN DIEGO | 92131 | 3 | CA |

**INFORMANT**

| 26 INFORMANT'S NAME, RELATIONSHIP | 27 INFORMANT'S MAILING ADDRESS |
|---|---|
| SARAH-JANE LECHNER, WIFE | 10675 TIPPERARY WAY, SAN DIEGO, CA 92131 |

**SPOUSE/PARENT INFORMATION**

| 28 NAME OF SURVIVING SPOUSE—FIRST | 29 MIDDLE | 30 LAST (BIRTH NAME) |
|---|---|---|
| SARAH-JANE | | SMITH-CHANDLER |

| 31 NAME OF FATHER/PARENT—FIRST | 32 MIDDLE | 33 LAST | 34 BIRTH STATE |
|---|---|---|---|
| GUNTHER | - | LECHNER | AUSTRIA |

| 35 NAME OF MOTHER/PARENT—FIRST | 36 MIDDLE | 37 LAST (BIRTH NAME) | 38 BIRTH STATE |
|---|---|---|---|
| SHEILA | ANN | MCLEOD | S AFRICA |

**FUNERAL DIRECTOR / LOCAL REGISTRAR**

| 39 DISPOSITION DATE | 40 PLACE OF FINAL DISPOSITION |
|---|---|
| 01/09/2013 | SARA-JANE LECHNER, RES, 10675 TIPPERARY WAY, SAN DIEGO, CA 92131 |

| 41 TYPE OF DISPOSITION | 42 SIGNATURE OF EMBALMER | 43 LICENSE NUMBER |
|---|---|---|
| CR/RES | NOT EMBALMED | |

| 44 NAME OF FUNERAL ESTABLISHMENT | 45 | 46 SIGNATURE OF LOCAL REGISTRAR | 47 DATE |
|---|---|---|---|
| CALIFORNIA FUNERAL ALTERNATIVES, POWAY | FD1994 | WILMA WOOTEN, MD | 01/08/2013 |

**PLACE OF DEATH**

| 101 PLACE OF DEATH |
|---|
| POMERADO HOSPITAL |

| 103 COUNTY | 102 STREET ADDRESS | 104 CITY |
|---|---|---|
| SAN DIEGO | 15615 POMERADO ROAD | POWAY |

**CAUSE OF DEATH**

| 107 IMMEDIATE CAUSE | | |
|---|---|---|
| A. CORONARY ARTERY ATHEROSCLEROSIS | YEARS | 13-00022 |

| 108 SIGNIFICANT CONDITIONS |
|---|
| NONE |

| 110 AUTOPSY |
|---|
| NO |

**CORONER'S USE ONLY**

| | |
|---|---|
| MANNER OF DEATH | X NATURAL |

| 121 SIGNATURE OF CORONER/DEPUTY CORONER | 122 DATE | 123 TYPE NAME, TITLE OF CORONER/DEPUTY CORONER |
|---|---|---|
| STEVEN CAMPMAN | 01/07/2013 | STEVEN CAMPMAN, MD, DME |

*A002520149*

County of San Diego - Department of Health Services. 3851 Rosecrans Street. This is to certify that it bearing the OFFICIAL SEAL OF THE STATE OF CALIFORNIA the OFFICIAL SEAL OF SAN DIEGO COUNTY AND THEIR DEPARTMENT OF HEALTH SERVICES EMBOSSED SEAL, this is a true copy of the ORIGINAL DOCUMENT FILED. Required fee paid.

DATE ISSUED: January 11, 2013

WILMA J. WOOTEN, M.D.
REGISTRAR OF VITAL RECORDS
County of San Diego

EXA

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

00/00/2013  12:19:27 FAX 2132499990        NATIONWIDE LEGAL

5

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

**PROOF OF SERVICE**

*In Re Carolyne, et al. v. USPLabs, LLC, et al.*
*Case No.: BC508212*

I am a citizen of the United States and am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 2 Corporate Park, Suite 110, Irvine, California 92606.

On August 2, 2013, I served the following documents in the manner indicated on the below-named on the below listed party/parties or counsel:

**AMENDMENT TO COMPLAINT**

**DECLARATION OF SARAH LECHNER PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 377.32**

By placing ___ the original  XX  true copies thereof enclosed in sealed envelopes addressed and sent in the following manner:

 XX  **BY U.S. POSTAL SERVICE** as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than I day after date of deposit for mailing in affidavit.

The above listed documents were served on the below listed parties:

**\*\*SEE ATTACHED SERVICE LIST\*\***

 XX  **STATE:** I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 2, 2013, at Irvine, California.


_____
DAVID ASFAHA

**SERVICE LIST**
*In RE Carolyne, et al. v USPLabs, LLC, et al.*
*Case No.: BC508212*

| | |
|---|---|
| Issa Mikel, Esq.<br>Michael J. Partos, Esq.<br>COZEN O'CONNOR<br>601 S. Figueroa Street Suite 3700<br>Los Angeles, CA 90017<br>P: 213-892-7900, F: 213-892-7999<br>*For USPLabs, LLC, USPLabs Holding LLC, USPLabs Jack3d, LLC, USPLabs OxyElite, LLC, Jonathan Doyle, Jacob Geissler, GNC Corporation, Vitamin Shoppe Industries Inc., The Vitamin Shoppe* | Paul K. Leary, Esq.<br>COZEN O'CONNOR<br>1900 Market Street<br>Philadelphia, PA 19103<br>P: 215-665-2000, F: 215-665-2013<br>*For USPLabs, LLC, USPLabs Holding LLC, USPLabs Jack3d, LLC, USPLabs OxyElite, LLC, Jonathan Doyle, Jacob Geissler, GNC Corporation, Vitamin Shoppe Industries Inc., The Vitamin Shoppe* |
| Susan L. Germaise<br>McGuireWoods LLP<br>1800 Century Park East, 8th Floor<br>Los Angeles, CA 90067-1501<br>P: 310.315.8239  F: 310.956.3139<br>*For Rite Aid Corporation* | President of Super Supplements, Inc.<br>James E Sweeney<br>750 S Michigan St.<br>Seattle WA 98108 |
| Anthony G. Brazil, Esq. SBN: 84297<br>Matthew L. Marshall, Esq. SBN: 168013<br>Holiday D. Powell, Esq. SBN 245135<br>MORRIS POLICH & PURDY LLP<br>1055 West Seventh Street, 24th Floor<br>Los Angeles, California 90017<br>T: (213) 891-9100  F: (213) 488-1178<br>*For Natural Alternatives International, Inc.* | Mark A. Nialis, Esq.<br>NIALIS LAW GROUP<br>500 N. State College Blvd., Ste. 1200<br>Orange, CA 92868<br>P: 714.634.8001, F: 714.634.3869<br>*For Max Muscle Marketing, Inc.* |
| Ian A. Stewart, Esq.<br>WILSON ELSER MOSKOWITZ<br>EDELMAN & DICKER, LLP<br>555 S. Flower Street Suite 2900<br>Los Angeles, CA 90071<br>T: 213-443-5100, F: 213-443-5101<br>*For Max Muscle Marketing, Inc.* | |

1  Michael Partos, State Bar No. 143845
   mpartos@cozen.com
2  Issa Mikel, State Bar No. 289097
   imikel@cozen.com
3  COZEN O'CONNOR
4  601 South Figueroa Street, Suite 3700
   Los Angeles, California 90017
5  Telephone:    213.892.7900,
   Facsimile:    213.892.7999
6

7  Paul K. Leary, Jr. (*pro hac vice* application to be filed)
   pleary@cozen.com
8  COZEN O'CONNOR
   1900 Market Street
9  Philadelphia, PA 19103
   Telephone:    215.665.2000
10 Facsimile:    215.665.2013
11 Attorneys for Defendants USPLABS, LLC, JONATHAN
   VINCENT DOYLE, JACOB GEISSLER, USPLABS
12 OXYELITE, LLC, USPLABS HOLDINGS, LLC, GNC
   CORPORATION, THE VITAMIN SHOPPE, INC. AND
13 VITAMIN SHOPPE INDUSTRIES INC.

14          SUPERIOR COURT OF THE STATE OF CALIFORNIA

15             IN AND FOR THE COUNTY OF LOS ANGELES

16 JUSTIN CAROLYNE, TIMOTHY HEPWORTH,      ) Case No.: BC 508212
   MARCUS HARKINS, DEREK MITCHELL, BYRON   )
17 NUTHALL, MICHAEL GARCIA, LAWRENCE       ) **DECLARATION OF JACOB**
   SIEGEL, JACINTA LITTLE, MARK            ) **GEISSLER IN SUPPORT OF**
18 HERSHKOWITZ, BRIAN WEST, WILLIAM        ) **MOTION TO QUASH SUMMONS**
   JETTON, JULIAN LOPEZ, LIAM JAKACKI, TROY) **AND COMPLAINT**
19 HIXSON, KYRIE TERRY. STEVEN MILAZZO, and)
   SARAH LECHNER on behalf of and as representative) [Filed concurrently with Notice of
20 for MARC LECHNER,                       ) Motion and Motion; Memorandum of
                                           ) Points and Authorities; Declaration of
21              Plaintiffs,                ) Lonnie Clark; Declaration of Jonathan
                                           ) Vincent Doyle; Declaration of Michael
22 vs.                                     ) Partos; [Proposed] Order.]
23 USPLABS, LLC, JONATHAN VINCENT DOYLE    )
   (an individual), JACOB GEISSLER (an individual),) Date: November 6, 2013
24 USPLABS JACK3D, LLC, USPLABS OXYELITE,  ) Time: 8:30 AM
   LLC, USPLABS HOLDING, LLC, GNC          )
25 CORPORATION, THE VITAMIN SHOPPE,        ) Complaint Filed: May 8, 2013
   VITAMIN SHOPPE INDUSTRIES, INC.,        )
26 BODYBUILDING.COM, LLC, SUPER            ) [Assigned for all purposes to the
   SUPPLEMENTS, INC., MAX MUSCLE           ) Honorable Holly E. Kendig,
27 MARKETING, INC., RITE AID CORPORATION,  ) Department 42 ]
   NATURAL ALTERNATIVES INTERNATIONAL,     )
28 INC., and DOES 1-500, Inclusive,        )
                                           )
              Defendants.                  )

                                    1
        DECLARATION OF JACOB GEISSLER IN SUPPORT OF MOTION TO QUASH

FILED
Los Angeles Superior Court

JUL 25 2013

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

I, JACOB GEISSLER, hereby declare as follows:

1.      I have been named as an individual defendant in this action and I have personal knowledge of each fact stated in this declaration.  If called upon to testify under oath to the facts contained in this declaration I could and would testify competently thereto.

2.      I do not submit to the Court's jurisdiction in California and provide this declaration as a special appearance for the sole purpose of challenging this court's jurisdiction over my person.

3.      I reside in and am a citizen of the State of Texas.  I have lived in Texas my entire life. I have never resided in California.

4.      My domicile is Dallas, Texas.

5.      I received a copy of the summons and Complaint in Dallas, Texas, via registered mail.  I was not personally served while physically present in California, am not domiciled within California, and have not consented to or appeared in this action.

6.      Plaintiffs complaint alleges claims for negligence, strict products liability, breach of express warranty, breach of implied warranty, unlawful business acts and practices per Cal. Bus. & Prof. Code § 17200, punitive damages and wrongful death, all relating to the purchase and use of products ("Jack3d" and "OxyELITE Pro," collectively, the "Subject Products").

7.      The Subject Products are sold by USPlabs, LLC.  I have never sold the Subject Products in my individual capacity and Plaintiffs' claims against me are limited to an alter ego claim given my role as Chief Executive Officer (CEO) of USPlabs, LLC.

8.      In my role as CEO of USPlabs, LLC, all of my corporate governance for the company occurs in the state of Texas and all corporate meetings occur in Texas.  Furthermore, to the best of my knowledge all corporate formalities are followed.  I have not converted any corporate assets for my own use and have not commingled any corporate assets for my own benefit.

9.      I do not now nor have I ever owned, leased, possessed or maintained any real or personal property in California.

10.     I do not own, lease or maintain an office in California, and I have never owned, leased or maintained an office, residence or place of business in California.

11.     I have never had an authorized agent or representative in California.

DECLARATION OF JACOB GEISSLER IN SUPPORT OF MOTION TO QUASH

12.    I do not and have never paid income taxes in the state of California.

13.    I do not maintain any bank or savings and loan accounts in California and have never maintained any bank or savings and loan accounts in California.

14.    I have never signed any contracts in California.

15.    I do not presently nor have I never maintained a telephone listing in California.

16.    I have not consented and do not consent to jurisdiction in the State of California.

17.    It would be unreasonable to require me to defend this action in courts within California because, among other reasons, it would impose a great burden upon me of defending this lawsuit in California.

18.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July _____, 2013 in Dallas, Texas.

JACOB GEISSLER

DECLARATION OF JACOB GEISSLER IN SUPPORT OF MOTION TO QUASH

# Exhibit C

**SUPERIOR COURT OF CALIFORNIA**
# County of SAN DIEGO

**Register of Actions Notice**

| | | | |
|---|---|---|---|
| Case Number: | 37-2013-00074052-CU-PL-CTL | Filing Date: | 11/01/2013 |
| Case Title: | Reed vs. Usplabs LLC [E-FILE] | Case Age: | 45 days |
| Case Status: | Pending | Location: | Central |
| Case Category: | Civil - Unlimited | Judicial Officer: | Ronald S. Prager |
| Case Type: | Product Liability | Department: | C-71 |

## Future Events

| Date | Time | Department | Event |
|---|---|---|---|
| 05/30/2014 | 10:00 AM | C-71 | Demurrer / Motion to Strike |
| 05/30/2014 | 01:00 PM | C-71 | Civil Case Management Conference - Complaint |

## Participants

| Name | Role | Representation |
|---|---|---|
| Anderson, Dan | Plaintiff | THORNTON, JOHN C |
| Anderson, Timothy | Plaintiff | THORNTON, JOHN C |
| Asahi, Johnathan | Plaintiff | THORNTON, JOHN C |
| Black, Nadia | Plaintiff | THORNTON, JOHN C |
| Cenicola, Michael | Plaintiff | THORNTON, JOHN C |
| D'Souza, Anil | Plaintiff | THORNTON, JOHN C |
| Donato, Jeffrey | Plaintiff | THORNTON, JOHN C |
| Doyle, Jonathan Vincent | Defendant | |
| Geissler, Jacob | Defendant | |
| Gnc Corporation | Defendant | |
| Hampton, Torrey | Plaintiff | THORNTON, JOHN C |
| J&N Nutrition LLC; DBA : Nutrishop Norco | Defendant | |
| Jaramillo, Jason | Plaintiff | THORNTON, JOHN C |
| Johnson, Zell | Plaintiff | THORNTON, JOHN C |
| Magee, Lasagon | Plaintiff | THORNTON, JOHN C |
| Miller, Melissa | Plaintiff | THORNTON, JOHN C |
| Morris, Joe | Plaintiff | THORNTON, JOHN C |
| Mullen, Kevin | Plaintiff | THORNTON, JOHN C |
| Natural Alternatives International Inc | Defendant | Firstenberg, Karen M. |
| Nee, Chris | Plaintiff | THORNTON, JOHN C |
| Neidigh, Paul | Plaintiff | THORNTON, JOHN C |
| Nutrishop Inc | Defendant | |
| Obst, John | Plaintiff | THORNTON, JOHN C |
| Reed, Jeremy | Plaintiff | THORNTON, JOHN C |
| The Vitamin Shoppe | Defendant | |
| Usplabs Holding LLC | Defendant | |
| Usplabs Jack3D LLC | Defendant | |
| Usplabs LLC | Defendant | |
| Usplabs Oxyelite LLC | Defendant | |
| Vitamin Shoppe Industries Inc | Defendant | |

## Representation

| Name | Address | Phone Number |
|---|---|---|
| FIRSTENBERG, KAREN M | Not Available | |
| THORNTON, JOHN C | ANDREWS & THORNTON 2 Corporate Park 110 Irvine CA 92606 | (949) 315-3540 |

Exhibit C - 000001

San Diego Superior Court    Case: 37-2013-00074052-CU-CU-CTL    Title: Reed vs. Usplabs LLC [E-FILE]

| ROA# | Entry Date | Short/Long Entry | Filed By |
|------|-----------|------------------|----------|
| 1 | 11/01/2013 | Complaint filed by Reed, Jeremy; Anderson, Timothy; Anderson, Dan; Black, Nadia; Cenicola, Michael; D'Souza, Anil; Jaramillo, Jason; Mullen, Kevin; Nee, Chris; Neidigh, Paul;OTHERS.\nRefers to: Usplabs LLC; Doyle, Jonathan; Geissler, Jacob; Usplabs Oxyelite LLC; Usplabs Jack3D LLC; Usplabs Holding LLC; Gnc Corporation; The Vitamin Shoppe; Vitamin Shoppe Industries Inc; J&N Nutrition LLC; Nutrishop Inc; Natural Alternatives International Inc | Reed, Jeremy (Plaintiff); Anderson, Timothy (Plaintiff); Anderson, Dan (Plaintiff); Black, Nadia (Plaintiff); Cenicola, Michael (Plaintiff) |
| 2 | 11/01/2013 | Original Summons filed by Reed, Jeremy; Anderson, Timothy; Anderson, Dan; Black, Nadia; Cenicola, Michael; D'Souza, Anil; Jaramillo, Jason; Mullen, Kevin; Nee, Chris; Neidigh, Paul;OTHERS.\nRefers to: Usplabs LLC; Doyle, Jonathan; Geissler, Jacob; Usplabs Oxyelite LLC; Usplabs Jack3D LLC; Usplabs Holding LLC; Gnc Corporation; The Vitamin Shoppe; Vitamin Shoppe Industries Inc; J&N Nutrition LLC; Nutrishop Inc; Natural Alternatives International Inc | Reed, Jeremy (Plaintiff); Anderson, Timothy (Plaintiff); Anderson, Dan (Plaintiff); Black, Nadia (Plaintiff); Cenicola, Michael (Plaintiff) |
| 3 | 11/01/2013 | Civil Case Cover Sheet filed by Reed, Jeremy; Anderson, Timothy; Anderson, Dan; Black, Nadia; Cenicola, Michael; D'Souza, Anil; Jaramillo, Jason; Mullen, Kevin; Nee, Chris; Neidigh, Paul;OTHERS.\nRefers to: Usplabs LLC; Doyle, Jonathan; Geissler, Jacob; Usplabs Oxyelite LLC; Usplabs Jack3D LLC; Usplabs Holding LLC; Gnc Corporation; The Vitamin Shoppe; Vitamin Shoppe Industries Inc; J&N Nutrition LLC; Nutrishop Inc; Natural Alternatives International Inc | Reed, Jeremy (Plaintiff); Anderson, Timothy (Plaintiff); Anderson, Dan (Plaintiff); Black, Nadia (Plaintiff); Cenicola, Michael (Plaintiff) |
| 4 | 11/01/2013 | Notice of Related Case (County of Los Angeles case #BC508212) filed by Reed, Jeremy. | Reed, Jeremy (Plaintiff) |
| 5 | 11/04/2013 | Summons issued. | |
| 6 | 11/01/2013 | Case assigned to Judicial Officer Prager, Ronald. | |
| 7 | 11/04/2013 | Civil Case Management Conference scheduled for 05/30/2014 at 01:00:00 PM at Central in C-71 Ronald S. Prager. | |
| 8 | 11/04/2013 | Case initiation form printed. | |
| 9 | 11/22/2013 | Demurrer / Motion to Strike scheduled for 05/30/2014 at 10:00:00 AM at Central in C-71 Ronald S. Prager. | |
| 10 | 12/05/2013 | Stipulation - Other - Fee Due (to Extend the Responsive Pleading Deadline) filed by Natural Alternatives International Inc; Reed, Jeremy. | Natural Alternatives International Inc (Defendant); Reed, Jeremy (Plaintiff) |

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Sean T. Higgins, Esq., SBN: 266888<br>Andrews & Thornton<br>2 Corporate Park, Suite 110<br>Irvine, CA 92606 | |

TELEPHONE NO.: (949) 748-1000    FAX NO.: (949) 315-3540
ATTORNEY FOR *(Name)*: Plaintiffs, Jeremy Reed, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice Courthouse

CASE NAME: Reed, et al. v. USPLABS, LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 37-2013-00074052-CU-PL-CTL |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[x] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [x] Large number of separately represented parties    d. [x] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel    e. [x] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve    in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive

4. Number of causes of action *(specify)*: 16

5. This case [ ] is [x] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 1, 2013

Sean T. Higgins, Esq., SBN: 266888
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
& Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

Exhibit C - 000003

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non- domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non- harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

Exhibit C - 000004

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:** USPLABS, LLC, et al. (Additional *(AVISO AL DEMANDADO):* Parties Attachment form is attached)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**YOU ARE BEING SUED BY PLAINTIFF:** Jeremy Reed, et al.
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* (Additional Parties Attachment form is attached)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Diego
330 West Broadway
San Diego, CA 92101

CASE NUMBER
*(Número del Caso):*
**37-2013-00074052-CU-PL-CTL**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sean T. Higgins, Esq., SBN: 266888        (949) 748-1000   (949) 315-3540
Andrews & Thornton
2 Corporate Park, Suite 110
Irvine, CA 92606

DATE:                                    Clerk, by _____, Deputy
*(Fecha)* **NOV 0 4 2013**             *(Secretario)* K. Hill        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

Exhibit C - 000005

| | SUM-200(A) |
|---|---|
| SHORT TITLE: Reed, et al. v. USPLABS, LLC, et al. | CASE NUMBER: |

### INSTRUCTIONS FOR USE

➤ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➤ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons:  "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[x] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

Timothy Anderson, Dan Anderson, Nadia Black, Michael Cenicola, Anil D'Souza, Jason Jaramillo, Kevin Mullen, Chris Nee, Paul Neidigh, Jeffrey Donato, Melissa Miller, Joe Morris, John Obst, Johnathan Asahi, Lasagon Magee, Torrey Hampton And Zell Johnson

Page __1__ of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

### ADDITIONAL PARTIES ATTACHMENT
#### Attachment to Summons

Legal Solutions Plus

Exhibit C - 000006

| SHORT TITLE: Reed, et al. v. USPLABS, LLC, et al. | CASE NUMBER: | SUM-200(A) |
|---|---|---|

## INSTRUCTIONS FOR USE

➤ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➤ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Jonathan Vincent Doyle (an individual), Jacob Geissler (an individual), USPLABS Jack3d, LLC, USPLABS OXYELITE, LLC, USPLABS Holding, LLC, GNC Corporation, The Vitamin Shoppe, Vitamin Shoppe Industries Inc., J&N Nutrition LLC dba Nutrishop Norco, Nutrishop, Inc., Natural Alternatives International, Inc., and DOES 1-500, Inclusive.

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Legal
Solutions
Plus

Exhibit C - 000007

Andrews & Thornton
2 Corporate Park, Suite 110
Irvine, California 92606
Phone: (949) 748-1000
Facsimile: (949) 315-3540
Anne Andrews, Esq., SBN 103280
aa@andrewsthornton.com
John C. Thornton, Esq., SBN 84492
jct@andrewsthornton.com
Sean Thomas Higgins, Esq., SBN 266888
shiggins@andrewsthornton.com

Attorneys for Plaintiffs

**BY FAX**

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| JEREMY REED, TIMOTHY ANDERSON, DAN ANDERSON, NADIA BLACK, MICHAEL CENICOLA, ANIL D'SOUZA, JASON JARAMILLO, KEVIN MULLEN, CHRIS NEE, PAUL NEIDIGH, JEFFREY DONATO, MELISSA MILLER, JOE MORRIS, JOHN OBST, JOHNATHAN ASAHI, LASAGON MAGEE, TORREY HAMPTON and ZELL JOHNSON,<br><br>Plaintiffs,<br><br>v.<br><br>USPLABS, LLC, JONATHAN VINCENT DOYLE (an individual), JACOB GEISSLER (an individual), USPLABS JACK3D, LLC, USPLABS OXYELITE, LLC, USPLABS HOLDING, LLC, GNC CORPORATION, THE VITAMIN SHOPPE, VITAMIN SHOPPE INDUSTRIES INC., J&N NUTRITION LLC dba NUTRISHOP NORCO, NUTRISHOP, INC., NATURAL ALTERNATIVES INTERNATIONAL, INC, | No. **37-2013-00074052-CU-PL-CTL**<br><br>COMPLAINT FOR DAMAGES AND<br><br>DEMAND FOR JURY TRIAL<br><br>1. Negligence (Against USP)<br>2. Negligence (Against Retailer Defendants)<br>3. Negligence (Against NAI)<br>4. Strict Products Liability – Defective Design (Against USP)<br>5. Strict Products Liability – Defective Design (Against Retailer Defendants)<br>6. Strict Products Liability – Defective Design (Against NAI)<br>7. Strict Products Liability – Failure to Warn (Against USP)<br>8. Strict Products Liability – Failure to Warn (Against Retailer Defendants)<br>9. Strict Products Liability – Failure to Warn (Against NAI)<br>10. Breach of Express Warranty (Against USP)<br>11. Beach of Express Warranty (Against GNC)<br>12. Breach of Express Warranty (Against NAI)<br>13. Breach of Implied Warranty (Against USP) |

- 1 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000008

| | | |
|---|---|---|
| 1 | and DOES 1-500, Inclusive, | ) |
| 2 | Defendants. | ) ) |
| 3 | | ) ) ) |

14. Breach of Implied Warranty (Against Retailer Defendants)
15. Breach of Implied Warranty (Against NAI)
16. Unlawful Business Acts and Practices in Violation of California Business and Professions Code §17200 et seq. (Against USP)

Plaintiffs JEREMY REED, TIMOTHY ANDERSON, DAN ANDERSON, NADIA BLACK, MICHAEL CENICOLA, ANIL D'SOUZA, JASON JARAMILLO, KEVIN MULLEN, CHRIS NEE, PAUL NEIDIGH, JEFFREY DONATO, MELISSA MILLER, JOE MORRIS, JOHN OBST, JOHNATHAN ASAHI, LASAGON MAGEE, TORREY HAMPTON AND ZELL JOHNSON, (collectively "Plaintiffs") by and through their Attorneys of record, bring this action against Defendants USPLABS, LLC, JONATHAN VINCENT DOYLE (an individual), JACOB GEISSLER (an individual), USPLABS JACK3D, LLC, USPLABS OXYELITE, LLC, USPLABS HOLDING, LLC, GNC CORPORATION, THE VITAMIN SHOPPE, VITAMIN SHOPPE INDUSTRIES INC., J&N NUTRITION LLC dba NUTRISHOP NORCO, NUTRISHOP, INC., NATURAL ALTERNATIVES INTERNATIONAL, INC, and DOES 1-500, Inclusive,    (collectively, "DEFENDANTS"). Plaintiffs allege on information and belief, except for information based on personal knowledge, as follows:

### JURISDICTION AND VENUE

1.      Plaintiffs allege an amount in controversy in excess of the minimal jurisdictional limits of this Court.

2.      Venue is proper since at least one Defendant can be found in this County.

### DEFENDANT PARTIES

**I.      Product Manufacturers**

3.      Defendants USPLABS, LLC, USPLABS JACK3D, LLC, USPLABS OXYELITE, LLC and USPLABS HOLDING, LLC are Wyoming corporations (except as to USPLABS, LLC which is a Texas corporation) headquartered in Dallas, TX and were and are regularly engaged in the business of licensing, manufacturing, formulating, packaging, distributing, and/or selling, either

1  directly or indirectly, through third parties or related entities, non-prescription dietary supplements
2  for sale to, and use by, members of the general public, and as a part of their business, said
3  Defendants, directly or indirectly were and are engaged in the
4  manufacturing/formulating/packaging/distributing/selling of a purported nutritional/dietary
5  supplement under the proprietary, trademarked names "Jack3d" and "OxyELITE Pro" in interstate
6  commerce and in California, which Plaintiffs ingested as alleged herein.

7      4.    Jack3d and OxyELITE contain the ingredient 1,3-dimethylamylamine (also known
8  as, and hereinafter referred to, as "DMAA"), a dangerous sympathomimetic, which can cause
9  adverse cardiovascular events such as heart attack, stroke, heart arrhythmias, heart palpitations,
10  dizziness, cardiac arrest, rhabdomyolysis, loss of consciousness and death as well as other serious
11  adverse effects including liver failure, kidney failure and seizures.

12     5.    Defendants JONATHAN VINCENT DOYLE and JACOB GEISSLER, who live in
13  Denton, TX, are individuals having ownership interest in and executive positions in the USP entities.
14  Upon information and belief, Defendants DOYLE and GEISSLER are shareholders in each of the
15  USP entities, are corporate officers in each of the USP entities, direct and participate in the day to
16  day operations of the USP entities, were responsible for the acts of the USP entities and for all
17  intents and purposes own, operate and act through the USP entities. (USPLABS, LLC, JONATHAN
18  VINCENT DOYLE (an individual), JACOB GEISSLER (an individual), USPLABS JACK3D, LLC,
19  USPLABS OXYELITE, LLC, and USPLABS HOLDING, LLC, are hereinafter collectively referred
20  to as "USP" or "USP DEFENDANTS".)

21     6.    Furthermore, USP DEFENDANTS were at all times alleged herein under the control
22  of their founders and dominant principals, Defendants JONATHAN VINCENT DOYLE and
23  JACOB GEISSLER. The Corporate filing for USPLabs, LLC with the Texas Secretary of State
24  states "The limited liability company is to be managed by managers, the names and addresses of the
25  governing persons are set forth below" wherein GEISSLER and GOYLE are named.

26     7.    At all times herein alleged, each of the acts of the employees, including but not
27  limited to Defendants DOYLE and GEISSLER, were on behalf of, for the benefit of, at the direction
28  of, and at the behest of USP DEFENDANTS and were ratified by said USP DEFENDANTS.

1 Further, each of the acts of the employees, including but not limited to Defendants DOYLE and
2 GEISSLER were done pursuant to and in accordance with corporate policy.

3     8.     USP DEFENDANTS, and each of them, are engaged in a single enterprise of
4 developing, marketing, and distributing dietary supplements. There exists, and at all times herein
5 alleged, there existed, a unity of interest in ownership between and among USP DEFENDANTS
6 such that any individuality and separateness between and among USP DEFENDANTS has ceased
7 and the individual USP DEFENDANTS are the alter-egos of and agents of each other and exerted
8 control over each other. Adherence to the fiction of the separate existence of the USP
9 DEFENDANTS as entities distinct from each other will permit an abuse of the corporate privilege
10 and would sanction fraud and promote injustice. The alter ego entities were formed for the purpose
11 of selling untested and dangerous dietary supplements, including    Jack3d and OxyELITE, which
12 carried a high risk of causing serious personal injuries, without being responsible to the injured
13 customers.

14     9.     Additionally the corporate fiction of USP DEFENDANTS, and each of them, were a
15 sham to perpetrate a fraud as herein alleged and to shield GEISSLER, DOYLE and the responsible
16 USP entities from liability for breach of their legal and equitable duties. Adherence to the fiction of
17 the separate existence of the USP DEFENDANTS would promote injustice and result in inequity to
18 Plaintiffs.

19     10.     At all relevant times, the USP DEFENDANTS were each engaged in the business of
20 designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing,
21 labeling, and/or selling, directly and indirectly, through third parties or related entities Jack3d and
22 OxyELITE and/or the Defendants are otherwise responsible as corporate successors for the liabilities
23 of the entities that designed, developed, manufactured, tested, packaged, promoted, marketed,
24 distributed, labeled and/or sold Jack3d and OxyELITE.

25     11.     Upon information and belief, at all relevant times, the USP DEFENDANTS were
26 present and doing business in the State of California.

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000011

12.   At all relevant times, the USP DEFENDANTS transacted, solicited, and conducted business whether through retail stores or through internet merchants in the State of California and derived substantial revenue from such business.

13.   At all relevant times, the USP DEFENDANTS expected or should have expected that their acts would have consequences within the United States of America and within the State of California.

**II.   Ingredient Manufacturers**

14.   Defendant NATURAL ALTERNATIVES INTERNATIONAL, INC. (hereinafter "NAI"), is a California corporation headquartered in San Marcos, CA and was and is regularly engaged in the business of designing ingredients and/or mixtures, both trademarked and not, used in non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business, said Defendant, directly or indirectly was and is engaged in the designing/formulating/marketing/selling/licensing of an ingredient trademarked under the name CarnoSyn for use in dietary supplements including Jack3d in interstate commerce and in California, which Plaintiffs ingested as alleged herein.

15.   NAI owns the patent and trademark rights to the CarnoSyn contained in the actual Jack3d purchased and ingested by Plaintiffs as alleged herein. CarnoSyn contains beta-alanine, which Defendant advertises/ encourages users to increase the length, workload and intensity of workouts. As a result, persons using products containing CarnoSyn, such as the Jack3d used by Plaintiffs, and engaging in more intense workouts are subject to heightened effects and exacerbation of the sympathomimetic and other adverse effects of DMAA. NAI additionally marketed CarnoSyn knowing the ingredient would be used in a product containing sympathomimetics, which when used in conjunction with CarnoSyn during intense workouts would subject consumers to an increased risk from cardiovascular stress and other injuries Moreover, CarnoSyn, as a patented ingredient may include as yet undetermined chemicals in addition to beta-alanine contributing to the toxicity of Jack3d. As alleged herein, as a result of exposure to CarnoSyn and DMAA contained in the Jack3d ingested by Plaintiffs, Plaintiffs suffered injuries as alleged herein.

Exhibit C - 000012

**III.    Retailers**

16.    Defendant GNC CORPORATION ("GNC") is a Delaware corporation with its principal place of business located in Pittsburgh, Pennsylvania. Defendant GNC conducted regular and sustained business in the State of California and throughout the nation, including the sale of Jack3d and OxyELITE by its retail outlets, affiliates and franchisees. Defendant GNC was regularly engaged in the business of packaging, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business said Defendant sold the Jack3d and OxyELITE purchased by, ingested by and causing harm to Plaintiffs as alleged herein.

17.    At all times herein alleged, each of the acts of the employees of GNC were on behalf of, for the benefit of, at the direction of, and at the behest of GNC and were ratified by GNC. Further, each of the acts of the GNC employees were done pursuant to and in accordance with corporate policy.

18.    Defendants VITAMIN SHOPPE INDUSTRIES INC. and THE VITAMIN SHOPPE ("VITAMIN SHOPPE") are New York corporations with their principal place of business located in North Bergen, New Jersey. Defendants VITAMIN SHOPPE conducted regular and sustained business in the State of California and throughout the nation, including the sale of Jack3d and OxyELITE by their retail outlets, affiliates and franchisees. Defendants VITAMIN SHOPPE were regularly engaged in the business of packaging, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business said Defendants sold the of Jack3d and OxyELITE purchased by, ingested by and causing harm to Plaintiffs as alleged herein.

19.    At all times herein alleged, each of the acts of the employees of VITAMIN SHOPPE were on behalf of, for the benefit of, at the direction of, and at the behest of VITAMIN SHOPPE and were ratified by VITAMIN SHOPPE. Further, each of the acts of the VITAMIN SHOPPE employees were done pursuant to and in accordance with corporate policy.

20.    Defendant J&N NUTRITION LLC dba NUTRISHOP NORCO is a California corporation with its principal place of business located in Temecula, California. Defendant NUTRISHOP, INC is a Nevada corporation with its principal place of business in Carson City, NV. Defendants J&N NUTRITION LLC dba NUTRISHOP NORCO and NUTRISHOP LLC are hereinafter collectively referred to as "NUTRISHOP". Defendant NUTRISHOP conducted regular and sustained business in the State of California and throughout the nation, including the sale of Jack3d by its retail outlets, affiliates and franchisees and directly. Defendant NUTRISHOP was regularly engaged in the business of packaging, distributing, and/or selling, either directly or indirectly, through third parties or related entities, non-prescription nutritional/dietary supplements for sale to, and use by, members of the general public, and as a part of their business said Defendant sold the Jack3d purchased by, ingested by and causing harm to Plaintiffs as alleged herein.

21.    At all times herein alleged, each of the acts of the employees of NUTRISHOP were on behalf of, for the benefit of, at the direction of, and at the behest of NUTRISHOP and were ratified by NUTRISHOP. Further, each of the acts of the NUTRISHOP employees were done pursuant to and in accordance with corporate policy.

22.    Defendants GNC, VITAMIN SHOPPE, and NUTRISHOP are hereinafter collectively referred to as "RETAILER DEFENDANTS."

23.    The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiffs who are therefore ignorant of the true names and sues said Defendants by such fictitious names. Plaintiffs believe and allege that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

24.    At all times hereinafter alleged, "All DEFENDANTS" include all herein named Defendants as well as Defendants DOES 1 through 500, inclusive.

25.    At all times herein alleged, each of the DEFENDANTS was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining DEFENDANTS herein and was at all times operating and acting within the purpose and scope of said agency,

1   service, employment, partnership, conspiracy and joint venture and rendered substantial assistance
2   and encouragement to the other DEFENDANTS, knowing that their conduct constituted a breach of
3   duty owed to Plaintiffs.

4   **PLAINTIFF JEREMY REED**

5       26.    At all relevant times, Plaintiff JEREMY REED was a resident of the State of
6   California.

7       27.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of
8   Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI, GNC
9   and NUTRISHOP made therein in making his decision to purchase Jack3d, believing it would be
10  safe and effective for its advertised use and relying on the expertise of USP, NAI, GNC and
11  NUTRISHOP. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and
12  that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it
13  and would not have used it.

14      28.    From in or about October 2011 until his injury in November 2011, Plaintiff ingested
15  Jack3d purchased from a GNC store in the Summer of 2011 in California and a NUTRISHOP store
16  in Norco, California. Additionally, at times prior to the Summer of 2011, Plaintiff ingested Jack3d
17  purchased from other retailers.

18      29.    At no time did Plaintiff take more than the recommended dosing regimen contained in
19  Jack3d.

20      30.    On or about November 4, 2011, after taking the recommended dosing of and as a
21  result of Jack3d manufactured by USP, containing CarnoSyn designed by NAI, and sold by GNC
22  and NUTRISHOP, Plaintiff suffered an aortic dissection and related injuries.

23  **PLAINTIFF TIMOTHY ANDERSON**

24      31.    At all relevant times, TIMOTHY ANDERSON was a resident of the State of New
25  Jersey.

26      32.    Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing
27  of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made
28  therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its

Exhibit C - 000015

1 | advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was
2 | not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous
3 | sympathomimetic, he would not have purchased it and would not have used it.

4 |      33.    In or about March 2013 until his injury in April 2013, Plaintiff ingested OxyELITE
5 | purchased from a GNC store in New Jersey.

6 |      34.    At no time did Plaintiff take more than the recommended dosing regimen contained in
7 | OxyELITE.

8 |      35.    On or about April 22, 2013, after taking the recommended dosing of and as a result of
9 | OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered seizure and related injuries.

10 | **PLAINTIFF DAN ANDERSON**

11 |      36.    At all relevant times, Plaintiff DAN ANDERSON was a resident of the State of Utah.

12 |      37.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of
13 | Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and
14 | GNC made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be
15 | safe and effective for its advertised use and relying on the expertise of USP, NAI and GNC. Had
16 | Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA
17 | was considered a dangerous sympathomimetic, he would not have purchased it and would not have
18 | used it.

19 |      38.    In or about May 2013, Plaintiff ingested Jack3d purchased from a GNC store in Utah.
20 |      39.    At no time did Plaintiff take more than the recommended dosing regimen contained in
21 | Jack3d.

22 |      40.    On or about May 29, 2013, after taking the recommended dosing of and as a result of
23 | Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by GNC,
24 | Plaintiff suffered seizures resulting in a motor vehicle accident, hip injury, kidney injury, and
25 | related injuries.

26 | **PLAINTIFF NADIA BLACK**

27 |      41.    At all relevant times, Plaintiff NADIA BLACK was a resident of the State of Texas.

28 |

Exhibit C - 000016

42.     Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made therein in making her decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, she would not have purchased it and would not have used it.

43.     In or about March 2013 until her injury in June 2013, Plaintiff ingested OxyELITE purchased from a GNC store in Spring, Texas.

44.     At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE.

45.     In or about June 2013, after taking the recommended dosing of and as a result of OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered liver injury, jaundice and related injuries.

### PLAINTIFF MICHAEL CENICOLA

46.     At all relevant times, Plaintiff MICHAEL CENICOLA was a resident of the State of New Jersey.

47.     Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI, and GNC made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI, and GNC. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

48.     In or about August 2012, Plaintiff ingested Jack3d purchased from a GNC store in New Jersey.

49.     At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000017

50.    On or about August 17, 2012, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by GNC, Plaintiff suffered myocardial infarction and related injuries.

### PLAINTIFF ANIL D'SOUZA

51.    At all relevant times, Plaintiff ANIL D'SOUZA was a resident of the State of Illinois.

52.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and VITAMIN SHOPPE made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI and VITAMIN SHOPPE. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

53.    In or about August 2013, Plaintiff ingested Jack3d purchased from a VITAMIN SHOPPE store in Niles, Illinois.

54.    At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

55.    In or about August 2013, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by VITAMIN SHOPPE, Plaintiff suffered heart attacks, seizure, coma and related injuries.

### PLAINTIFF JASON JARAMILLO

56.    At all relevant times, Plaintiff JASON JARAMILLO was a resident of the State of Illinois.

57.    Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

- 11 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000018

58.     From in or about June 2011 until his injury in January 2012, Plaintiff ingested OxyELITE purchased from a GNC store in Illinois.

59.     At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE.

60.     On or about January 22, 2012, after taking the recommended dosing of and as a result of OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered renal failure and related injuries.

## PLAINTIFF KEVIN MULLEN

61.     At all relevant times, Plaintiff KEVIN MULLEN was a resident of the State of North Carolina.

62.     Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d. Plaintiff relied on the representations and warranties from USP, NAI and GNC made therein in making his decision to purchase Jack3d, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI and GNC. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

63.     In or about 2009 through 2012, Plaintiff ingested Jack3d purchased from a GNC store in North Carolina.

64.     At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

65.     In or about 2010, 2011 and 2012, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by GNC, Plaintiff suffered multiple seizures and related injuries. However, Plaintiff did not suspect or discover the wrongful cause of his injuries until in or about March 2013 after seeing publicity about Jack3d and DMAA. Prior to that time he had not seen publicity about Jack3d or DMAA or the wrongful conduct of USP in selling an unlawful, dangerous product. Plaintiff could not have made an earlier discovery despite reasonable diligence since in 2010 and most of 2011, no regulatory action had been taken against DMAA or Subject Products, no consumers warnings had been made

1  about DMAA or Subject Products by any governmental entity, and there was otherwise no publicity

2  about the unlawful use of the stimulant DMAA in Jack3d or its association with seizures.

3  Furthermore, until around March 2013, Plaintiff reasonably relied on numerous misrepresentations

4  from Defendants about the safety of Jack3d as alleged herein.

5  ## PLAINTIFF CHRIS NEE

6  66.    At all relevant times, Plaintiff CHRIS NEE was a resident of the State of

7  Massachusetts.

8  67.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of

9  Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and

10  VITAMIN SHOPPE made therein in making his decision to purchase Jack3d with CarnoSyn,

11  believing it would be safe and effective for its advertised use and relying on the expertise of USP,

12  NAI and VITAMIN SHOPPE. Had Plaintiff known Jack3d was not safe and not effective for its

13  advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not

14  have purchased it and would not have used it.

15  68.    In or about 2012 until his injury in July 2013, Plaintiff ingested Jack3d purchased

16  from a VITAMIN SHOPPE store in Boston, Massachusetts.

17  69.    At no time did Plaintiff take more than the recommended dosing regimen contained in

18  Jack3d.

19  70.    In or about July 2013, after taking the recommended dosing of and as a result of

20  Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by VITAMIN

21  SHOPPE, Plaintiff suffered heart attack and related injuries.

22  ## PLAINTIFF PAUL NEIDIGH

23  71.    At all relevant times, Plaintiff PAUL NEIDIGH was a resident of the State of

24  Pennsylvania.

25  72.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of

26  Jack3d. Plaintiff relied on the representations and warranties from USP, NAI and GNC made therein

27  in making his decision to purchase Jack3d, believing it would be safe and effective for its advertised

28  use and relying on the expertise of USP, NAI and GNC. Had Plaintiff known Jack3d was not safe

1  and not effective for its advertised use and that, in fact, DMAA was considered a dangerous

2  sympathomimetic, he would not have purchased it and would not have used it.

3      73.    In or about October 2011 until his injury in December 2011, Plaintiff ingested Jack3d

4  purchased from a GNC store in Pennsylvania.

5      74.    At no time did Plaintiff take more than the recommended dosing regimen contained in

6  Jack3d.

7      75.    On or about December 26, 2011, after taking the recommended dosing of and as a

8  result of Jack3d manufactured by USP, containing CarnoSyn designed by NAI, and sold by GNC,

9  Plaintiff suffered myocardial infarction and related injuries.

10

11                              **PLAINTIFF JEFFREY DONATO**

12      76.    At all relevant times, Plaintiff JEFFREY DONATO was a resident of the State of

13  Pennsylvania.

14      77.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of

15  Jack3d. Plaintiff relied on the representations and warranties from USP, NAI and VITAMIN

16  SHOPPE made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would

17  be safe and effective for its advertised use and relying on the expertise of USP, NAI and VITAMIN

18  SHOPPE. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that,

19  in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and

20  would not have used it.

21      78.    In or about March 2010 until his injury in November 2010, Plaintiff ingested Jack3d

22  purchased from a VITAMIN SHOPPE store in Pennsylvania.

23      79.    At no time did Plaintiff take more than the recommended dosing regimen contained in

24  Jack3d.

25      80.    In or about November 2010, after taking the recommended dosing of and as a result

26  of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by

27  VITAMIN SHOPPE, Plaintiff suffered stroke and related injuries. However, Plaintiff did not suspect

28  or discover the wrongful cause of his injuries until in or about March 2013 after seeing publicity

1    about Jack3d and DMAA in the New York Times. Prior to that time he had not seen publicity about

2    Jack3d or DMAA or the wrongful conduct of USP in selling an unlawful, dangerous product.

3    Plaintiff could not have made an earlier discovery despite reasonable diligence since in 2010 and

4    most of 2011, no regulatory action had been taken against DMAA or Subject Products, no

5    consumers warnings had been made about DMAA or Subject Products by any governmental entity,

6    and there was otherwise no publicity about the unlawful use of the stimulant DMAA in Jack3d or its

7    association with strokes. Furthermore, until around March 2013, Plaintiff reasonably relied on

8    numerous misrepresentations from Defendants about the safety of Jack3d as alleged herein.

9                            **PLAINTIFF MELISSA MILLER**

10          81.     At all relevant times, Plaintiff MELISSA MILLER was a resident of the State of

11   Virginia.

12          82.     Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing

13   of Jack3d. Plaintiff relied on the representations and warranties from USP and GNC made therein in

14   making her decision to purchase OxyELITE, believing it would be safe and effective for its

15   advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was

16   not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous

17   sympathomimetic, she would not have purchased it and would not have used it.

18          83.     In or about February 2011 until her injury in November 2011, Plaintiff ingested

19   OxyELITE purchased from a GNC store in Christiansburg, Virginia.

20          84.     At no time did Plaintiff take more than the recommended dosing regimen contained in

21   OxyELITE.

22          85.     On or about November 15, 2011, after taking the recommended dosing of and as a

23   result of OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered severe liver injury

24   and related injuries.

25                            **PLAINTIFF JOSEPH MORRIS**

26          86.     At all relevant times, Plaintiff JOSEPH MORRIS was a resident of the State of

27   Hawaii.

28

Exhibit C - 000022

87.    Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

88.    In or about January 2012, Plaintiff ingested OxyELITE purchased from a GNC store in Hilo, Hawaii.

89.    At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE.

90.    In or about January 2012, after taking the recommended dosing of and as a result of OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered palpitations, insomnia and related injuries.

### PLAINTIFF JOHN OBST

91.    At all relevant times, Plaintiff JOHN OBST was a resident of the State of Florida.

92.    Before purchasing Jack3d, Plaintiff was exposed to the advertising and marketing of Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI, and VITAMIN SHOPPE made therein in making his decision to purchase Jack3d with CarnoSyn, believing it would be safe and effective for its advertised use and relying on the expertise of USP, NAI, and VITAMIN SHOPPE. Had Plaintiff known Jack3d was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

93.    In or about September 2011, Plaintiff ingested Jack3d purchased from a VITAMIN SHOPPE store in Florida.

94.    At no time did Plaintiff take more than the recommended dosing regimen contained in Jack3d.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000023

95.    On or about September 15, 2011, after taking the recommended dosing of and as a result of Jack3d manufactured by USP, which contained CarnoSyn designed by NAI, and sold by VITAMIN SHOPPE, Plaintiff suffered rhabdomyolysis, kidney failure, coma and related injuries.

### PLAINTIFF JOHNATHAN ASAHI

96.    At all relevant times, Plaintiff JOHNATHAN ASAHI was a resident of the State of Hawaii.

97.    Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and VITAMIN SHOPPE made therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and VITAMIN SHOPPE. Had Plaintiff known OxyELITE was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

98.    In or about 2011, Plaintiff ingested OxyELITE purchased from a VITAMIN SHOPPE store in Hawaii.

99.    At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE.

100.    In or about 2011, after taking the recommended dosing of and as a result of OxyELITE manufactured by USP and sold by VITAMIN SHOPPE, Plaintiff suffered liver injury and related injuries. However, Plaintiff did not suspect or discover the wrongful cause of his injuries until in or about mid-2013 after seeing publicity about OxyELITE and liver injuries in Hawaii on the news. Plaintiff could not have made an earlier discovery despite reasonable diligence since prior to that time he had not seen publicity about OxyELITE. Plaintiff had never even heard of the associations of liver injuries with OxyELITE until mid-2013 since the first publicity about liver injuries from use of OxyELITE occurred in the summer of 2013 as the Hawaiian Department of Health first made reports of cases of liver injuries in Hawaii from use of OxyELITE. Furthermore, until around mid-2013, Plaintiff reasonably relied on numerous misrepresentations from Defendants about the safety of OxyELITE as alleged herein.

## PLAINTIFF LASAGON MAGEE

101.   At all relevant times, Plaintiff LASAGON MAGEE was a resident of the State of Mississippi.

102.   Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

103.   In or about October 2010 until his injury in May 2011, Plaintiff ingested OxyELITE purchased from a GNC store in Mississippi.

104.   At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE.

105.   On or about May 23, 2011, after taking the recommended dosing of and as a result of OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered rhabdomyolysis, renal failure, and related injuries.

## PLAINTIFF TORREY HAMPTON

106.   At all relevant times, Plaintiff TORREY HAMPTON was a resident of the State of Maryland.

107.   Before purchasing OxyELITE, Plaintiff was exposed to the advertising and marketing of OxyELITE. Plaintiff relied on the representations and warranties from USP and GNC made therein in making his decision to purchase OxyELITE, believing it would be safe and effective for its advertised use and relying on the expertise of USP and GNC. Had Plaintiff known OxyELITE was not safe and not effective for its advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased it and would not have used it.

108.   In or about 2009 until his injury in 2011, Plaintiff ingested OxyELITE purchased from a GNC store in Maryland.

109.   At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE.

110.   In or about 2011, after taking the recommended dosing of and as a result of OxyELITE manufactured by USP and sold by GNC, Plaintiff suffered liver injury and related injuries.

### PLAINTIFF ZELL JOHNSON

111.   At all relevant times, Plaintiff ZELL JOHNSON was a resident of the State of Nevada.

112.   Before purchasing OxyELITE and Jack3d, Plaintiff was exposed to the advertising and marketing of OxyELITE and Jack3d and CarnoSyn. Plaintiff relied on the representations and warranties from USP, NAI and GNC made therein in making his decision to purchase OxyELITE and Jack3d, believing they would be safe and effective for their advertised use and relying on the expertise of USP, NAI and GNC. Had Plaintiff known OxyELITE and Jack3d were not safe and not effective for their advertised use and that, in fact, DMAA was considered a dangerous sympathomimetic, he would not have purchased them and would not have used them.

113.   In or about 2012 until his injury in February 2013, Plaintiff ingested OxyELITE and Jack3d purchased from a GNC store in Nevada.

114.   At no time did Plaintiff take more than the recommended dosing regimen contained in OxyELITE and Jack3d.

115.   In or about February 2013, after taking the recommended dosing of and as a result of OxyELITE and Jack3d manufactured by USP, Carnosyn designed by NAI, and sold by GNC, Plaintiff suffered hepatitis and related injuries.

### FACTUAL BACKGROUND

*The JACK3D AND OXYELITE Products*

116.   Jack3d and OxyELITE are trademarked products sold by USP. Jack3d and OxyELITE contain the following ingredients as depicted in its labels:








117.    One of the ingredients of Jack3d and OxyELITE is DMAA. DMAA is a dangerous sympathomimetic. Jack3d and OxyELITE additionally contain caffeine, thereby increasing the sympathomimetic qualities and dangers of DMAA.

118.    Jack3d additionally contains CarnoSyn a propriety beta-alanine product designed by NAI, which is dangerous alone and particularly because it exacerbates the sympathomimetic qualities of DMAA.

119.    Additionally, Jack3d and OxyELITE do not work.

120.    Jack3d and OxyELITE are sold through retailers in California and across the country.

*DMAA, a Dangerous Chemical Shunned by the Pharmaceutical Industry, Reemerges in Dietary Supplements*

121.    DMAA is an active ingredient contained in Jack3d and OxyELITE manufactured, marketed, distributed, and sold by All DEFENDANTS.

122.    DMAA, also known as methylhexanamine (MHA), is an aliphatic amine compound that has properties mimicking those of the endogenous neurotransmitters of the sympathetic nervous system.  As such, it belongs to a group of compounds known as "sympathomimetics." Members of this class include ephedrine and the amphetamines.

123.    While sympathomimetics are used by physicians to increase blood pressure and to constrict blood vessels, they are also widely abused because of their perceived ability to enhance athletic performance and in some cases induce euphoria.

124.    Sympathomimetic compounds were originally developed in the 19th century as drugs for the treatment of cold symptoms.    Compounds capable of constricting  blood  vessels  were actively sought.  First cocaine, then epinephrine, and in 1925 ephedrine, were used for this purpose. However, the adverse effects, inability to provide long term relief and addictiveness eventually resulted in the search for similarly structured chemicals.  Through trial and error, it was eventually determined that slight modification of the ephedrine molecule would result in molecules having equivalent vasoconstrictor properties to ephedrine.  These modifications eventually led to the development of DMAA, originally named Fouramine.

125.    In 1943, DMAA was introduced as a nasal decongestant by Eli Lilly under the trade name of Forthane. For unexplained reasons Lilly voluntarily withdrew Forthane from the market in 1983. No other prescription or over-the-counter drugs or dietary supplements used DMAA from 1983 until approximately 2005. In 2005, Patrick Arnold, a chemist convicted for his role in the

Exhibit C - 000028

1  BALCO baseball steroid scandal, reintroduced MHA/DMAA as an over-the-counter dietary

2  supplement with amphetamine-like qualities. It was marketed as an alternative to ephedrine. The use

3  of DMAA in dietary supplements spread and eventually found its way into Jack3d and OxyELITE.

4     126.   Animal testing in a variety of models demonstrated that DMAA was a potent pressor

5  drug causing increases in blood pressure that is comparable to ephedrine. The structure of and

6  mechanism by which DMAA increases blood pressure is thus similar to ephedrine. Dietary

7  supplements containing ephedra, the natural form of ephedrine, were ordered off the market by the

8  FDA in 2004, because the blood pressure and heart rate effects were associated with a number of

9  serious adverse events to users including heart attack, stroke and death.

10

11             *Defendants' Jack3d and OxyELITE Claims*

12     127.   USP Defendants conveyed their deceptive claims about Jack3d and OxyELITE

13  through a variety of media, including television, newspapers, magazines, direct mail, the Internet,

14  point of sale displays, and on the Jack3d and OxyELITE labels and packaging.  In addition,

15  retailers, including RETAILER DEFENDANTS promoted, marketed and sold Jack3d and

16  OxyELITE in stores, on its websites and through other mediums of advertising.

17

18     128.   In their advertisements and on their website,  USP represented that Jack3d and

19  OxyELITE are:

20     -   "Voted # 1 Pre-Workout"

21     -   "Backed by 2 Peer-Reviewed Published Clinical University Research Studies"

22     -   "Jack3d is now backed by multiple University studies, **including double-blind, placebo-**

23        **controlled research."**

24     -   "Jack3d– **proven in the real world & in the lab** . . ."

25  These representations were false, misleading and deceptive.

26

27     129.   USP further represented on its website that

28

Exhibit C - 000029

1     - "The hemodynamic response to acute ingestion was assessed as well. OxyElite Pro did not

2     result in a statistically significant change in heart rate or diastolic pressure, but did cause a

3     statistically significant change in systolic blood pressure from baseline. This increase was

4     mild and transient, and was similar to the changes reported in the scientific literature for

5     subjects ingesting an amount of caffeine equivalent to 2-3 cups of coffee."

6     - "Jack3d, which contains DMAA, was well tolerated and no serious adverse events were

7

8     noted."

9     - "At the beginning and end of the study, blood pressure, heart rate and various indicators of

10     renal and liver function were assessed. The study found that there were no statistically

11     significant changes from baseline to the end of the study. No serious adverse events were

12     noted."

13

14     - "NEWLY RELEASED, GROUNDBREAKING RESEARCH STUDIES SHOW

15     USPLABS' DMAA SUPPLEMENTS ARE SAFE AND EFFECTIVE."

16 USP's representations were false, misleading and deceptive.

17     130.   USP also advertises on fitness blogs and websites such as bodybuilding.com making

18 similar representations. In fact, Defendant GEISSLER even writes letters on such sites claiming

19 Jack3d and OxyELITE:

20     -   will make "everyone dominate the weights and have crazy, lasting energy along with

21     sick, muscle-engorging pumps,"

22     -   contains a "synergistic combination (which) is KEY,"

23     -   is not like other products, which are "a bunch of ingredients thrown together

24     haphazardly," and

25     -   uses "only the highest quality ingredients."

26 However, these like the other misrepresentations with respect to the safety, efficacy, and purity of

27 Jack3d and OxyELITE, are false, misleading and deceptive.

28

131.    USP has also issued press releases, which promote the purported safety and efficacy of Jack3d and OxyELITE.  For example, on February 24, 2012, just weeks after the Defense Department pulled Jack3d and OxyELITE from military store shelves, USPLabs issued a press release entitled "USPLabs Jack3d Peer-Review Clinical Safety Study Published."   In its press release, USPLabs stated:

> USPlabs Jack3d ™ and OxyElite Pro® are among the most studied finished dietary supplements ever sold.  This most recent study is the 7th peer-reviewed, published clinical trial supporting the safe use of DMAA when used as directed, in addition to an industry estimated over one billion servings consumed by satisfied customers.  More specifically, Jack3d ™ & OxyElite Pro® have 5 clinical trials that show they are safe when used as directed.

132.    USP made similar statements about the purported safety and efficacy of the Jack3d and OxyELITE in another press release, dated March 7, 2012, entitled "USPlabs Shares Results of Seven Peer-Reviewed DMAA Safety Studies as Part of Scientific Review on Jack3d™ and OxyElite Pro® . . . ."

133.    USP owns and operates another website, www.dmaaresearch.com, where it makes similar statements about the purported research supporting the safety and efficacy of DMAA.  For example, on its dmaaresearch.com website USP lists "[a]ll current available clinical data on DMAA," which are also purportedly "conducted by independent experts and published in respected journals."  As discussed herein, the "seven" studies cited by USP and discussed on its websites, are not conducted by independent experts, are not published in legitimate journals, and furthermore, demonstrate that Defendants' claims about the safety and efficacy of Jack3d and OxyELITE are unsubstantiated, false and deceptive.

134.    USP's websites, including www.USPLabsDirect.com and www.DMAAResearch.com are available to the general public and USP's advertisements in other media promote these websites.

135.    RETAILER DEFENDANTS further enabled USP to make representations concerning the quality of the Jack3d and OxyELITE.  The retailers that sold the Jack3d and OxyELITE adopted, and are responsible for, the representations USP made on packaging regarding the safety and

efficacy of the Jack3d and OxyELITE, when they decided to place Jack3d and OxyELITE on their store shelves, on military bases and on retail websites, and thereafter advertised and sold Jack3d and OxyELITE to Plaintiffs.

136. Further, GNC advertised and included a prominent link on their own website to USP's Jack3d and OxyELITE websites.

137. GNC further reinforces these claims of safety and efficacy. For example, it states that Jack3d and OxyELITE are "University Studied." The representation that Jack3d and OxyELITE are "universally studied" implies that the studies universally demonstrate safety, when instead they demonstrated blood pressure and heart rate findings which do not demonstrate safety. GNC further stated that "DMAA is perfectly safe when taken as directed," "What we particularly love about the OxyELITE Pro formula...aside from its effectiveness...is that it doesn't make you feel wired and jittery, nor does it dry out your mouth and keep you up at night" and "Jack3d is now backed by multiple University studies, including double-blind, placebo-controlled research."

138. GNC prominently displays its misrepresentations in its retail stores:



139.    On information and belief, RETAILER DEFENDANTS set up displays in their stores that stated that Jack3d and OxyELITE are "University Studied." The representation that Jack3d and OxyELITE are "universally studied" implies that the studies universally demonstrate safety, when instead they demonstrated blood pressure and heart rate findings which do not demonstrate safety.

140.    Despite the overwhelming evidence that Jack3d and OxyELITE are neither safe nor effective, GNC continued to make public statements to the contrary, assuring consumers that DMAA is safe. For example, in response to the FDA's 2012 warning letter GNC stated: "We are completely opposed to this unilateral, factually and legally unfounded action by the FDA and we believe the large consumer base that has safely used products containing DMAA in millions of doses will also oppose it."

141.    In February 2012, under pressure from the Department of Defense after the death of two soldiers from Jack3d and OxyELITE, GNC agreed to pull its DMAA-containing products,

1   including Jack3d and OxyELITE, from its stores on military bases. Nevertheless, GNC continues to
2   market and sell Jack3d and OxyELITE to consumers in its other retail stores and through its online
3   website.

4        142.   NAI advertises of its beta-alanine ingredient, under the trademarked name CarnoSyn,
5   that:

6          In nearly every athletic endeavor, from bodybuilding and cycling to running and swimming,
7          numerous clinical studies have proven Beta-Alanine is effective in boosting muscle
8
9          carnosine, buffering lactic acid, increasing strength and endurance and speeding recovery.

10        143.   Dr. John Wise, who is affiliated with the NAI laboratory, in web videos supports the
11   efficacy of CarnoSyn and beta-alanine by claiming that "virtually any athlete is going to be
12   benefitted by supplementing with beta-alanine."

13        144.   Without requisite proof, All DEFENDANTS also claim that Jack3d and OxyELITE
14   are safe, effective, and proven by research. For the types of marketing claims at issue, the Federal
15   Trade Commission rules, mirroring common law duties of fair representation, require that All
16   DEFENDANTS actually have the level of proof claimed, here clinical proof, at the time the claims
17   are made. However, All DEFENDANTS did not, and have never possessed the requisite proof.

18        145.   The health problems associated with Jack3d and OxyELITE manifest themselves
19   when consumers, including Plaintiffs as alleged herein, use the product at recommended dosage
20   levels. In fact, in a warning letter sent to USP, FDA expressed its opinion that Jack3d and
21   OxyELITE are adulterated under §402(f)(1)(A) of the Federal Food, Drug, and Cosmetic Act, 21
22   U.S.C. §342, in that Jack3d and OxyELITE presents a significant or unreasonable risk of illness or
23   injury under conditions of use recommended or suggested in labeling:

24          . . . Oxy Elite Pro and Jack3d are adulterated under 21 U.S.C. 342(f)(1)(B) and 350b(a)
25          because they contain a new dietary ingredient for which there is inadequate information to
26          provide reasonable assurance that such ingredient does not present a significant or
27          unreasonable risk of illness or injury. Introduction of such products into interstate
28

Exhibit C - 000034

commerce is prohibited under 21 U.S.C. 331(a) and (v). To the best of FDA's knowledge, there is no history of use or other evidence of safety establishing that dimethylamylamine will reasonably be expected to be safe as a dietary ingredient. In fact, dimethylamylamine narrows the blood vessels and arteries, which increases cardiovascular resistance and frequently leads to elevated blood pressure. This rise in blood pressure may increase the work of the heart such that it could precipitate a cardiovascular event, which could range from shortness of breath to tightening of the chest and/or a possible myocardial infarction (heart attack).

146.    Notwithstanding significant and mounting evidence that Jack3d and OxyELITE are falsely labeled, ineffective, and poses significant health risks, USP did not recall Jack3d and OxyELITE, which remain on the market. Despite the evidence of significant health risks, USP continued to make material misrepresentations and omissions on Jack3d and OxyELITE packaging and labeling. Moreover, as stated herein, USP continues to downplay the true health risks involved with consuming Jack3d and OxyELITE.

147.    Remarkably, USP even filed suit in the Northern District of Texas (Case 3:12-cv-01605-O) against an individual and entity for allegedly false and disparaging statements about Jack3d. The statements included well-known, incontrovertible facts about Jack3d such as that it is an "amphetamine-like compound," and that it "speeds up your heart rate." USP continues to not only make misrepresentations to the public about the nature of DMAA and Jack3d and OxyELITE as alleged above, it so vehemently denies their sympathomimetic qualities that it is suing individuals for defamation. Making such action even more reprehensible is that USP's own funded studies concede DMAA is a "simple aliphatic amine with sympathomimetic properties" (Whitehead, PN, Schilling, BK, Farney, TM, Bloomer, RJ. Impact of a dietary supplement containing 1,3-dimethylamulamine on blood pressure and bloodborne markers of health: a 10-week intervention study. *Nutrition and Metabolic Insights* 2012:5 33-39.) as does the FDA warning letter sent to USP.

Exhibit C - 000035

1    This lawsuit was brought in an attempt to intimidate and stifle the dissemination of essential safety
2    information about Jack3d and OxyELITE.

3

4            *Studies Promoted by USP Demonstrate Lack of Safety or Efficacy for Jack3d and*
5                                              *OxyELITE*

6    I.    Claims Regarding Safety

7
8            148.    USP also claims that the safety and efficacy of Jack3d and OxyELITE has been
9    shown in clinical studies. For example, at its usplabsdirect.com and dmaaresearch.com websites,
     USP    lists    seven    studies    involving    DMAA    and    states:    "NEWLY    RELEASED,
10   GROUNDBREAKING RESEARCH STUDIES SHOW USPLABS' DMAA SUPPLEMENTS ARE
11   SAFE AND EFFECTIVE". However, none of these studies constitutes reliable scientific or clinical
12   proof.
13
             149.    Despite claims made by USP in its marketing and advertising, as detailed above,
14   Jack3d and OxyELITE are not scientifically tested or proven to provide, and do not provide the
15   advertised health benefits of "increase[d] . . . fat breakdown and energy expenditure," "reduced fat
16   mass," "weight loss" and other similar benefits. Accordingly, USP's marketing claims that Jack3d
17   and OxyELITE are proven, including because they are "UNIVERSITY STUDIED," "Scientifically
18   Reviewed," and "PHARMACIST FORMULATED" are false, misleading, and likely to deceive the
19   ordinary consumer.
20
             150.    Properly-conducted human studies do not demonstrate the safety or efficacy of the
21   Jack3d and OxyELITE or DMAA. In fact, human data regarding the safety or efficacy of DMAA
22   are few and the majority are funded by the USP Defendants.
23
             151.    Even Defendants' own purported clinical proof demonstrates the falsity of its claims.
24   On its websites, usplabsdirect.com (which is referred to on the Jack3d and OxyELITE's labeling)
25   and dmaaresearch.com, USP lists "seven" studies on DMAA containing products. USP
26   characterizes one study that had male and female cohorts as two studies in order to state "seven"
27
28

1    DMAA studies substantiate its claims. USP admits its involvement and funding of five of the seven

2    studies. Furthermore, none of these studies provide substantiation for the marketing claims

    a.   McCarthy, Farney et al. 2012: Twelve subjects ingested OxyELITE Pro or a placebo over two days. USPLabs provided funding for the study, which analyzed subjects' blood markers and metabolic rates. The authors acknowledged that "little objective scientific evidence is available" on DMAA, and that "some subjects reported feeling 'jittery', 'on-edge', 'sweaty', and 'shaky', sometimes involving cold sweats, a racing heart beat, and poor sleep quality on the night of treatment." According to the authors, and with respect to DMAA, "no published reports are available pertaining to these [weight/fat loss] effects in human subjects." (emphasis added). The authors also noted that subjects consuming DMAA-containing OxyELITE Pro experienced increased heart rate and blood pressure. The study concluded that "well-controlled intervention trials are needed in order to determine the chronic effects of the supplement on body weight/fat loss and associated metabolic and biomechanical markers of health."

    b.   McCarthy, Canale et al. 2012: Thirty-two subjects ingested OxyELITE Pro or a placebo over eight weeks. The study was funded by USPLabs. Five of sixteen subjects who consumed OxyELITE Pro reported jitters and sleeplessness when consuming two capsules per day. The authors observed an increase in resting heart rate for those consuming DMAA-containing OxyELITE Pro and noted that the lack of control of subjects' dietary intake was a limitation.

    c.   Farney, McCarthy et al. 2012: Once per day for two weeks seven men ingested Jack3d, and six subjects ingested OxyELITE Pro. The study was funded by USPLabs. The authors noted that the lack of a placebo is a limitation of this study. Because appetite was lower on subjects consuming OxyELITE Pro, but not Jack3d, the authors observed that it was possible that

ingredients other than DMAA or caffeine may be responsible for appetite suppression. According to the study, "Based on our data, which admittedly involved a very small number of subjects, it appears that such products should be avoided by individuals who are hypersensitive [] or who are pre-hypersensitive." Subjects reported sleeplessness, anxiousness, feeling of chills, tingling, sweating, and shakiness.

d.   Bloomer, Schilling et al. 2012: Twenty-five men were assigned to consume a placebo or Jack3d. The study was funded by USPLabs. Systolic blood pressure increased in those consuming Jack3d. The authors stated that "Due to the fact that our sample size is small, additional well-designed experiments of similar scope, inclusive of larger sample sizes, are needed to extend the findings presented within." The authors also noted that only "some support" for safety was provided, and that "more work is needed involving a larger intervention period and the inclusion of additional measures of health [], to more fully elucidate the safety or oral [DMAA]."

e.   Bloomer, Harvey et al. 2011: Ten men consumed five different amounts of DMAA. No placebo was used, which the authors conceded was a limitation to this study. The authors noted that no study had tested DMAA's effect on heart rate and blood pressure in humans. The study found that consuming DMAA with caffeine results in increased systolic blood pressure, diastolic blood pressure, and rate pressure product. Dr. Bloomer disclosed his conflicts of interest with USPlabs and other nutritional supplement companies.

f.   Bloomer, McCarthy et al. 2011: Twelve subjects ingested placebo, caffeine, DMAA, or DMAA plus caffeine over four days and immediately prior to competing a 10k run. The authors noted that "[t]he literature pertaining to the use of [DMAA] is scant." The authors concluded that DMAA increases

1        systolic blood pressure, and had no impact on the outcome of greatest interest

2        – run time.

3        152.    USP made further misrepresentations on its website that two studies conducted by Dr.

4    Richard Bloomer were conducted by an "independent scientist without the involvement of the

5    company," these studies like the other five are all from the same laboratory at the University of

6    Memphis. Dr. Bloomer was a lead researcher in each of the seven studies cited by USP. Moreover,

7    Bloomer, Harvey et al. 2011, which USP claims was conducted by an independent scientist,

8    concedes that the opposite is true by stating at the conclusion of the study "CONFLICT OF

9    INTEREST STATEMENT – Richard J. Bloomer, PhD discloses conflicts of interest with . . .

10   USPLabs." On information and belief, Dr. Bloomer has received $524,332 in funding from

11   USPLabs: $132,860 (2010-2011), $225,600 (2011-2012), $128,860 (2012-2013), and $37,012

12   (2012-2013).

13       153.    Bloomer, Harvey et al. 2011 further reported that both caffeine and DMAA increased

14   diastolic and systolic blood pressure separately (with the effect of DMAA being greater than

15   caffeine), and that when the two ingredients were combined the healthy study volunteers

16   experienced mean blood pressures of 140 mm Hg, a 20% increase consistent with hypertension

17   despite low normal pre-exposure pressures. The data from Bloomer, Harvey et al. 2011 thus

18   demonstrates that DMAA given in the proprietary formulation as compared to alone has a less

19   pharmacologically clean effect and results in a greater increase in rate-pressure product ("RPP," a

20   measure of myocardial work or cardiovascular risk).

21       154.    USP further mischaracterizes the sympathomimetic effects of DMAA, specifically

22   including the statistically significant increased blood pressure found by one study caused by

23   OxyELITE, by comparing the risk to mild amounts of coffee, a universally regarded safe

24   sympathomimetic when used in isolation:

25        The hemodynamic response to acute ingestion was assessed as well. OxyElite Pro

26        did not result in a statistically significant change in heart rate or diastolic pressure,

27        but did cause a statistically significant change in systolic blood pressure from

28        baseline. This increase was mild and transient, and was similar to the changes

1       reported in the scientific literature for subjects ingesting an amount of caffeine

2       equivalent to 2-3 cups of coffee. (emphasis added)

3   This statement with respect to acute ingestion is misleading given the study results

4   demonstrate that "Compared to pre-ingestion and in general, both supplements resulted in an

5   increase in SBP, DBP, and RPP from 5%-15%, with a peak occurring at the 60 or 90 minute post-

6   ingestion time." The study went on to highlight the acute cardiovascular risks:

7       As expected based on the pharmacologic profiles of caffeine and of 1,3-

8       dimethylamylamine, acute intake of dietary supplements containing these agents

9       results in an increase in myocardial work. Specifically, SBP is increased significantly

10      in response to treatment, while DBP, and RPP increase to a lesser extent.

11  155.   The "seven" cited studies do not constitute substantiation for Defendants' claims

12  relating to safety and efficacy, and in fact, are proof that Jack3d and OxyELITE are unsafe and

13  ineffective. First, there are no independent studies performed by researchers without conflicts: each

14  of the studies come from a single laboratory funded by USP, and are led by a researcher who has

15  received over $500,000 from USP. Second, the studies, which contain a total of 99 subjects, are

16  grossly underpowered (a fact repeatedly conceded in the studies themselves), restricted to a very

17  young population, and there is no attempt to characterize the pharmacokinetics or purity of the drugs.

18  Despite the lack of reliability or validity of the purportedly independent studies, the studies present a

19  relatively consistent picture. DMAA, particularly when combined with caffeine or other agents,

20  causes highly significant increases in blood pressure in healthy, resting individuals within one hour

21  of consumption in a manner consistent with its known action as a vasoconstrictor. These sorts of

22  changes should be anticipated to cause substantial and possibly dangerous increases in blood

23  pressure during exercise (particularly weight lifting, cycling, or other resistance exercise).

24  Vasoconstriction during exercise would increase myocardial oxygen consumption leading to an

25  increased risk for cardiovascular events like heart attack and stroke. In other words, the studies

26  themselves, flawed as they are, demonstrate the dangerous and synergistic sympathomimetic effects

27  of the DMAA formulation contained in Jack3d and OxyELITE. In fact, USP Defendants do not

28

1   deny the synergistic effects of DMAA and caffeine stating on their website "a common synergistic

2   combination."

3       156.    Thus, USP knew, or in the exercise of reasonable care ought to have known, from

4   their own studies that DMAA, when used in isolation or in conjunction with the other ingredients

5   contained in Jack3d and OxyELITE including caffeine and CarnoSyn, is dangerous and could injure

6   or kill consumers like Plaintiffs. In fact, USP knew or should have known long before its own

7   studies that DMAA could cause adverse effects based on the fact DMAA is in the same class of

8   chemicals as amphetamines, based on adverse event reports made to FDA and other regulatory

9   agencies in other countries, based on the medical literature, based on poison control reports, based

10   on regulatory actions taken against DMAA and based on the Forthane patent.

11       157.    In making these and similar representations in advertising and in the Jack3d and

12   OxyELITE product labeling, USP misled users and Plaintiffs about the risks of Jack3d and

13   OxyELITE. USP also failed to adequately warn users of the potential serious dangers of DMAA

14   toxicity in susceptible users which USP knew or should have known might result from consuming

15   Jack3d and OxyELITE.  USP widely and successfully marketed the products throughout the United

16   States by, among other things, conducting a marketing campaign which misrepresented the testing

17   for efficacy and potential risks of the products in order to induce widespread consumption.

18       158.    Likewise, RETAILER DEFENDANTS knew or should have known that DMAA

19   could cause cardiovascular and other adverse effects based on the fact DMAA is in the same class of

20   chemicals as amphetamines.

21       159.    GNC joined in the misrepresentations about DMAA, by asserting in its marketing of

22   Jack3d and OxyELITE that GNC conducts a review and has a requirement that the products it sells

23   have labels that truthfully disclose health and safety issues and that the ingredients be safe.  GNC

24   represents that it exercises the highest standard of care in the nutritional supplement industry by

25   "demanding truth in labeling, ingredient safety."  Moreover, GNC markets its own propriety

26   products containing DMAA with knowledge that DMAA could injure consumers.

27       160.    Similarly, NAI knew, or in the exercise of reasonable care ought to have known, that

28   CarnoSyn, when used in isolation or in conjunction with the other ingredients contained in Jack3d,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000041

1  including caffeine and DMAA, is dangerous and could injure or kill consumers like Plaintiffs. It

2  conducted no studies on the safety of CarnoSyn and possessed no evidence of its safety or efficacy

3  before designing, marketing, selling, and anticipating and requiring CarnoSyn be incorporated into

4  dietary supplements like Jack3d.

5

6  II.    Claims Regarding Efficacy and Composition

7      161.    USP similarly knew, or in the exercise of reasonable care ought to have known, that

8  Jack3d and OxyELITE are not effective for weight loss, to build strength, to increase endurance or

9  any other health benefits claimed by USP.

10      162.    USP additionally knew that consumers believe that natural supplements are more

11  healthful and less dangerous than synthetic, chemically produced supplements. USP represented in

12  its advertising and marketing that Jack3d and OxyELITE are natural dietary supplements, when in

13  fact it knew that the active ingredient DMAA, was not a natural ingredient but was a chemically

14  compounded, synthetic ingredient. In fact, in a response letter to FDA on May 15, 2012, it

15  acknowledged DMAA was synthetically created. USP further knew that DMAA is not contained in

16  natural substances like geranium oil. It made these false representations that Jack3d and OxyELITE

17  are natural products to mislead and falsely reassure consumers that Jack3d and OxyELITE are safe

18  products.

19      163.    FDA denied that DMAA is a natural as opposed to synthetically-created compound:

20  "The agency additionally warned the companies that synthetically-produced DMAA is not a 'dietary

21  ingredient' and, therefore, is not eligible to be used as an active ingredient in a dietary supplement.

22  DSHEA defines a dietary ingredient as a vitamin, mineral, amino acid, herb or other botanical, a

23  dietary substance for use by man to supplement the diet, or a concentrate, metabolite, constituent,

24  extract, or combination of these substances."

25      164.    The purpose of these submission requirements for dietary supplements is to protect

26  consumers from exposure to new, synthetically created dietary supplements which are not

27  demonstrated to be safe and effective, the exact situation here.

28

165.    USP attempted to assuage concerns from critics, FDA and concerned consumers about the safety of DMAA by suggesting DMAA comes from a naturally occurring herb and is therefore safe. However, DMAA is a dangerous synthetically-created chemical known by industry insiders like USP to display sympathomimetic side effects. A single Chinese study claims that DMAA occurs naturally in geranium oil (Ping Z, Jun Q, and Qing L. A study on the chemical constituents of geranium oil. Journal of Guizhou Institute of Technology 25: 1996.)   The New Zealand National Measurement Institute performed a rigorous evaluation of this claim and found it impossible to substantiate (Lisi A, Hasick N, Kazlauskas R, and Goebel C. Studies of methylhexaneamine in supplements and geranium oil. Drug Test Anal 2011.)   Health Canada likewise could find no evidence that DMAA occurs in nature (Health Canada, Health Products and Food Branch.    Classification    of    1,3-dimethylamylamine    (DMAA). http://www.scribd.com/doc/82744576/DMAA-Health-Canada-2011. Accessed March 22, 2012.)

166.    Additionally, in a study published June 25, 2012 (ElSohly, MA, et al., Pelargonium oil and Methyl Hexaneamine (MHA): Analytical approaches supporting the absence of MHA in authenticated Pelargonium graveolens plant material and oil. Journal of Analytic Toxicology: published online: June 25, 2012), the authors concluded, after numerous and varied tests of geranium oils and plants, that geranium oils and plants contain no detectable levels of DMAA. This research refutes any claims that synthetic DMAA is identical to naturally derived ingredients. It is impossible for synthetic DMAA to be identical to the natural geranium plant and oil since geranium plant and oil do not contain detectable levels of DMAA.

167.    Despite these facts, USPlabs has circulated a letter purporting to have proof from two laboratories claiming that DMAA can be found in geranium oil. The data are allegedly not available for review because they have been submitted for publication. USP persists in its representations that DMAA is a natural chemical to reassure consumers that the product is safe and natural, when in fact it is neither.

168.    NAI similarly knew, or in the exercise of reasonable care ought to have known, that CarnoSyn is not effective for increasing strength, endurance or any other health benefits claimed by NAI.

*Adverse Events From DMAA Pile Up and FDA Warns USP*

169.    On December 6th, 2011, the US Army removed all DMAA containing compounds from its commissaries. This action followed the deaths of two soldiers believed to be due to Jack3d. A case series from New Zealand reported three cases of cerebral hemorrhage in adults taking DMAA (Gee P, Tallon C, Long N, Moore G, Boet R, Jackson S. Use of Recreational Drug 1,3-Dimethylethylamine (DMAA) Associated With Cerebral Hemorrhage.) In one case, a 41 year old man developed a systolic blood pressure of 240 mm Hg thirty minutes after taking a DMAA supplement and bled into his brain.    Another published report attributes stress-induced cardiomyopathy to use of DMAA (Salinger L, Daniels B, Sangalli B, Bayer M. Recreational use of bodybuilding supplement resulting in severe cardiotoxicity. Clin Toxicol. 2011;49(6):573-574.) Pieter Cohen, a Harvard internist, has recently drawn attention to DMAA in a letter to the Archives of Internal Medicine (Cohen PA. DMAA as a Dietary Supplement Ingredient. Arch Intern Med. 2012 May 7 [Epub ahead of print].)

170.    Numerous reports of serious adverse events from DMAA were reported in New Zealand in 2009, prompting the New Zealand government to begin restricting DMAA and warn consumers not to use it. In 2010, Gee et al. reported a hemorrhage in a 21 year old using DMAA. The World Anti-Doping Agency banned DMAA beginning in 2010.

171.    Additionally, there were over 50 reports to the Texas Poison Control with respect to DMAA-containing products between 2010-2011 alone.

172.    Numerous other countries have already banned DMAA including Canada, New Zealand and several European countries.

173.    In a letter addressed to USPLabs from FDA dated April 27, 2012, the Agency warned that it had received 42 adverse event reports on products containing DMAA, including cardiac disorders, nervous system disorders, and death. Other adverse events reported include Rhabdomyolysis, kidney failure, liver injuries, seizures and other serious adverse events. Many of those adverse event reports were specifically for Jack3d and OxyELITE and stretch back to early 2010, if not earlier. The number of adverse events reported to FDA has since climbed to over 100.

FDA and GAO believe adverse events reported for dietary supplements are greatly underreported so the true number of consumers hurt by these products is likely to far exceed the number of adverse events reported.

174.    Daniel Fabricant, director of FDA's Dietary Supplement Program (DSP) stated "Before marketing products containing DMAA, manufacturers and distributors have a responsibility under the law to provide evidence of the safety of their products. They haven't done that and that makes the products adulterated." FDA challenged manufacturers to demonstrate that DMAA was in use as a dietary supplement prior to 1994.

175.    In April 2013, FDA issued a consumer alert "Stimulant Potentially Dangerous to Health, FDA Warns" warning consumers to stop using DMAA products. FDA indicated that "after reviewing the studies provided by USPLabs, FDA has found the information insufficient to defend the use of DMAA as an ingredient in dietary supplements." While USP stated that it would stop selling Jack3d and OxyELITE and their website stopped selling Jack3d and OxyELITE, GNC continues to sell Jack3d and OxyELITE to this day. GNC said in a public statement that it would "continue to sell the products as long as USP Labs makes them available, unless the products are recalled by either the FDA or USP Labs...GNC has no reason to believe that DMAA is unsafe." USP attempts to falsely reassure FDA and consumers that it will stop selling Jack3d and OxyELITE but then continued to manufacture Jack3d and OxyELITE and sell it to retailers like GNC. GNC continued to sell DMAA until the bitter end, inviting someone to make it stop and the Department of Justice did. USP and GNC continued to place profit above safety.

176.    FDA indicated it was doing everything it could to get DMAA off the market since USP would not voluntarily recall its dangerous product from the market. USP, who in a press release from April 15, 2013 agreed to phase out OxyELITE with DMAA, continued to sell out its inventory. In fact, it took repeated pressure and threats from the FDA of enforcement to get USP to stop selling the illegal Jack3d and OxyELITE. On July 2, 2013, under threat of further legal action by FDA, USP finally agreed to destroy all of its remaining DMAA products estimated at $8 million.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000045

177.   In July 2013, after two warrants were received by federal courts, the Department of Justice seized all Jack3d and OxyELITE sitting in the GNC warehouses since GNC refused to stop selling the products.

178.   USP continues to deflect attention away from safety concerns and to misrepresent the actual risks of DMAA.

**COUNT I**

**NEGLIGENCE**

**(All Plaintiffs Against USP and DOES 1-500)**

179.   Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

180.   At all times herein mentioned, USP and DOES 1-500, and each of them, had a duty to exercise reasonable care in the research, development, testing for safety, formulation, manufacture, hiring of and use of qualified scientific or medical personnel, labeling, packaging, promotion, advertising, marketing, distribution, sale, and otherwise releasing into the stream of commerce Jack3d and OxyELITE.

181.   USP and DOES 1-500, and each of them, breached their duty of reasonable care to Plaintiffs in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled and/or sold Jack3d and OxyELITE. Specifically, USP and DOES 1-500 failed to exercise reasonable care in ways which included, but were not limited to, one or more of the following particulars:

a.     In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the dangerous and defective characteristics of Jack3d and OxyELITE;

b.     In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the propensity of Jack3d and OxyELITE to cause side effects, serious injury and death;

c.     In their failure to adequately represent the result of clinical trials before marketing Jack3d and OxyELITE;

- 39 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000046

d.    In representing that Jack3d and OxyELITE were safe and effective for their intended use when, in fact, the products were unsafe for their intended use;

e.    In failing to perform appropriate, reliable and valid pre-market testing of Jack3d and OxyELITE;

f.    In failing to perform appropriate post-market testing of Jack3d and OxyELITE;

g.    in failing to disclose to consumers and Plaintiffs adverse events received from FDA by users of DMAA; and

h.    In failing to perform appropriate post-market surveillance of Jack3d and OxyELITE.

182.    USP and DOES 1-500, and each of them, knew or should have known that consumers, such as Plaintiffs herein, would foreseeably suffer injury as a result of the USP and DOES 1-500's failure to exercise reasonable and ordinary care.

183.    As a direct and proximate result of USP and DOES 1-500s' carelessness and negligence, and of the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered severe and permanent injuries. Plaintiffs endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiffs incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and were otherwise physically, emotionally, and economically injured. Plaintiffs suffered severe pecuniary loss. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT II
## NEGLIGENCE

**(Plaintiffs JEREMY REED, TIMOTHY ANDERSON, DAN ANDERSON, NADIA BLACK, MICHAEL CENICOLA, JASON JARAMILLO, KEVIN MULLEN, PAUL NEIDIGH, MELISSA MILLER, JOSEPH MORRIS, LASAGON MAGEE, TORREY HAMPTON, and ZELL JOHNSON Against GNC)**

**(Plaintiffs ANIL D'SOUZA, CHRIS NEE, JEFFREY DONATO, JOHN OBST, and JOHNATHAN ASAHI Against VITAMIN SHOPPE)**

**(Plaintiff JEREMY REED Against NUTRISHOP)**

184.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint

---

– 40 –
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000047

1   as though set forth in full in this cause of action.

2       185.    At all times herein mentioned, RETAILER DEFENDANTS, and each of them, had a

3   duty to exercise reasonable care in the testing, packaging, promotion, advertising, marketing,

4   distribution, sale, and otherwise releasing into the stream of commerce Jack3d and OxyELITE.

5       186.    RETAILER DEFENDANTS, and each of them, breached their duty of reasonable

6   care to Plaintiffs in that they negligently tested, inspected, packaged, promoted, marketed,

7   distributed, and/or sold Jack3d and OxyELITE. Specifically, RETAILER DEFENDANTS, and each

8   of them, failed to exercise reasonable care in ways which included, but were not limited to, one or

9   more of the following particulars:

10      a.    In their failure to warn or instruct and/or adequately warn or adequately instruct the

11      public and consumers, including Plaintiffs herein, of the dangerous and defective

12      characteristics of Jack3d and OxyELITE;

13      b.    In their failure to warn or instruct and/or adequately warn or adequately instruct the

14      public and consumers, including Plaintiffs herein, of the propensity of Jack3d and

15      OxyELITE to cause side effects, serious injury and death;

16      c.    In their failure to adequately represent the results of USP's research with respect to

17      Jack3d and OxyELITE;

18      d.    In representing that Jack3d and OxyELITE were safe and effective for their intended

19      use when, in fact, the products were unsafe for their intended use;

20      e.    In failing to perform appropriate, reliable and valid pre-market testing of Jack3d and

21      OxyELITE;

22      f.    In failing to perform appropriate post-market testing of Jack3d and OxyELITE;

23      g.    in failing to disclose to consumers and Plaintiffs adverse events received from FDA

24      by users of DMAA; and

25      h.    In failing to perform appropriate post-market surveillance of Jack3d and OxyELITE.

26      187.    RETAILER DEFENDANTS, and each of them, knew or should have known that

27   consumers, such as Plaintiffs herein, would foreseeably suffer injury as a result of the RETAILER

28   DEFENDANTS's failure to exercise reasonable and ordinary care.

188.    As a direct and proximate result of RETAILER DEFENDANTS's carelessness and negligence, and of the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered severe and permanent injuries. Plaintiffs endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiffs incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and were otherwise physically, emotionally, and economically injured. Plaintiffs suffered severe pecuniary loss. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT III

## NEGLIGENCE

**(Plaintiffs JEREMY REED, DAN ANDERSON, MICHAEL CENICOLA, ANIL D'SOUZA, KEVIN MULLEN, CHRIS NEE, PAUL NEIDIGH, JEFFREY DONATO, JOHN OBST, and ZELL JOHNSON Against NAI)**

189.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

190.    At all times herein mentioned, NAI had a duty to exercise reasonable care in the research, development, testing for safety, formulation, labeling, promotion, advertising, marketing, designing, and otherwise releasing into the stream of commerce CarnoSyn.

191.    NAI, breached their duty of reasonable care to Plaintiffs in that they negligently designed, developed, tested, promoted, marketed, labeled and/or sold CarnoSyn. Specifically, NAI failed to exercise reasonable care in ways which included, but were not limited to, one or more of the following particulars:

a.    In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the dangerous and defective characteristics of CarnoSyn both when used alone and when used in dietary supplements containing sympathomimetics like DMAA and when used in the Jack3d ingested by Plaintiffs;

b.    In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiffs herein, of the propensity of CarnoSyn to cause

side effects, serious injury and death, particularly when used in dietary supplements containing sympathomimetics like DMAA and when used in the Jack3d ingested by Plaintiffs;

c.     In representing that CarnoSyn was safe and effective for its intended use when, in fact, the product was ineffective and unsafe for its intended use;

d.     In failing to perform appropriate, reliable and valid pre-market testing of CarnoSyn;

e.     In failing to perform appropriate post-market testing of CarnoSyn;

f.     in failing to disclose to consumers and Plaintiffs adverse events received from FDA by users of DMAA; and

g.     In failing to perform appropriate post-market surveillance of CarnoSyn.

192.     NAI, knew or should have known that consumers, such as Plaintiffs herein, would foreseeably suffer injury as a result of the NAI's failure to exercise reasonable and ordinary care.

193.     As a direct and proximate result of NAI's carelessness and negligence, and of the unreasonably dangerous and defective characteristics of CarnoSyn and Jack3d, Plaintiffs suffered severe and permanent injuries. Plaintiffs endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiffs incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and were otherwise physically, emotionally, and economically injured. Plaintiffs suffered severe pecuniary loss.  The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT IV

## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

### (All Plaintiffs Against USP and DOES 1 - 500)

194.     Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

195.     At all times material to this action, USP and DOES 1-500, and each of them, were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement Jack3d and OxyELITE, which are defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

- 43 -

196.    At all times material to this action, Jack3d and OxyELITE were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the respective DEFENDANTS in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    When placed in the stream of commerce, the drugs contained unreasonably dangerous design defects and were not reasonably safe and fit for their intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiffs, to risks which exceeded the benefits of the drug;

b.    The drugs did not perform as safely as an ordinary consumer would have expected them to perform when used in an intended or reasonably foreseeable way;

b.    The drugs were insufficiently tested;

c.    The drugs caused harmful side effects that outweighed any potential utility;

d.    The drugs were more dangerous than other dietary supplements on the market; and

e.    The drugs were not accompanied by adequate labeling or instructions for use to fully apprise the public and consumers, including Plaintiffs, of the potential risks and serious side effects associated with its use.

197.    In light of the potential and actual risk of harm associated with the drugs' use, a reasonable person who had actual knowledge of this potential risk of harm would have concluded Jack3d and OxyELITE should not have been marketed in that condition.

198.    There existed safer alternative designs, but USP and DOES 1-500 chose to market a more dangerous design.

199.    At all times relevant herein, USP and DOES 1-500 knew that Jack3d and OxyELITE would be purchased by members of the general public and would be used by such purchasers without a prescription and without any inspections for defects, and would rely upon the representations made by USP and DOES 1-500 on the product label and in their marketing including public statements and promotional and sales materials.

200.    At all times material to this action, Jack3d and OxyELITE were expected to reach,

Exhibit C - 000051

1  aud did reach, consumers in the State of California and throughout the United States, including

2  Plaintiffs, without substantial change in the condition in which it was sold.

3      201.    USP and DOES 1-500 knew or should have known of the defective nature of Jack3d

4  and OxyELITE but continued to research, develop, design, test, manufacture, package, formulate,

5  inspect, label, distribute, market, promote, sell and otherwise release these products into the stream

6  of commerce so as to maximize sales and profits at the expense of the public health and safety, in

7  conscious disregard of the foreseeable harm caused by their products, including serious

8  cardiovascular disorders, stroke, heart attack, dizziness, loss of consciousness, death, kidney failure,

9  liver conditions, rhabdomyolysis, seizures and other health problems.

10     202.    At all times, Plaintiffs used Jack3d and OxyELITE for their intended or reasonably

11  foreseeable purpose.

12     203.    As a direct and proximate result of the defective and unreasonably dangerous

13  condition of Jack3d and OxyELITE and of their failure to perform safely, Plaintiffs suffered injuries

14  as set forth above.

15                          **COUNT V**

16          **STRICT PRODUCTS LIABILITY -- DESIGN DEFECT**

17      **(Plaintiffs JEREMY REED, TIMOTHY ANDERSON, DAN ANDERSON, NADIA**

18  **BLACK, MICHAEL CENICOLA, JASON JARAMILLO, KEVIN MULLEN, PAUL**

19  **NEIDIGH, MELISSA MILLER, JOSEPH MORRIS, LASAGON MAGEE, TORREY**

20  **HAMPTON, and ZELL JOHNSON Against GNC)**

21      **(Plaintiffs ANIL D'SOUZA, CHRIS NEE, JEFFREY DONATO, JOHN OBST, and**

22  **JOHNATHAN ASAHI Against VITAMIN SHOPPE)**

23      **(Plaintiff JEREMY REED Against NUTRISHOP)**

24     204.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint

25  as though set forth in full in this cause of action.

26     205.    At all times material to this action, RETAILER DEFENDANTS, and each of them,

27  were responsible for testing, packaging, promoting, marketing, distributing, labeling, and/or selling,

28  directly and indirectly, through third parties or related entities the dietary supplement Jack3d and

—————————

– 45 –

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000052

1   OxyELITE, which are defective and unreasonably dangerous to users and/or consumers of the drug,
2   including Plaintiffs.

3       206.    At all times material to this action, Jack3d and OxyELITE were tested, packaged,
4   promoted, marketed, distributed, labeled, and/or sold by RETAILER DEFENDANTS, and each of
5   them, in a defective and unreasonably dangerous condition in ways which included, but were not
6   limited to, one or more of the following particulars:

7       a.      When placed in the stream of commerce, the drugs contained unreasonably
8               dangerous design defects and were not reasonably safe and fit for their intended or
9               reasonably foreseeable purpose or as intended to be used, thereby subjecting users
10              and/or consumers of the drug, including Plaintiffs, to risks which exceeded the
11              benefits of the drug;

12      b.      The drugs did not perform as safely as an ordinary consumer would have expected
13              them to perform when used in an intended or reasonably foreseeable way;

14      b.      The drugs were insufficiently tested;

15      c.      The drugs caused harmful side effects that outweighed any potential utility;

16      d.      The drugs were more dangerous than other dietary supplements on the market; and

17      e.      The drugs were not accompanied by adequate labeling or instructions for use to fully
18              apprise the public and consumers, including Plaintiffs, of the potential risks and serious side
                effects associated with its use.

19      207.    In light of the potential and actual risk of harm associated with the drugs' use, a
20  reasonable person who had actual knowledge of this potential risk of harm would have concluded
21  Jack3d and OxyELITE should not have been marketed in that condition.

22      208.    There existed safer alternative designs, but RETAILER DEFENDANTS, and each of
23  them, chose to market a more dangerous design.

24      209.    At all times relevant herein, RETAILER DEFENDANTS, and each of them, knew
25  that Jack3d and OxyELITE would be purchased by members of the general public and would be
26  used by such purchasers without a prescription and without any inspections for defects, and would

27

28

1   rely upon the representations made by RETAILER DEFENDANTS in their marketing including

2   public statements and promotional and sales materials.

3       210.   At all times material to this action, Jack3d and OxyELITE were expected to reach,

4   and did reach, consumers in the State of California and throughout the United States, including

5   Plaintiffs, without substantial change in the condition in which it was sold.

6       211.   RETAILER DEFENDANTS, and each of them, knew or should have known of the

7   defective nature of Jack3d and OxyELITE but continued to test, package, inspect, label, distribute,

8   market, promote, sell and otherwise release these products into the stream of commerce so as to

9   maximize sales and profits at the expense of the public health and safety, in conscious disregard of

10   the foreseeable harm caused by their products, including serious cardiovascular disorders, stroke,

11   heart attack, dizziness, loss of consciousness, death, kidney failure, liver conditions, rhabdomyolysis,

12   seizures and other health problems.

13       212.   At all times, Plaintiffs used Jack3d and OxyELITE for their intended or reasonably

14   foreseeable purpose.

15       213.   As a direct and proximate result of the defective and unreasonably dangerous

16   condition of Jack3d and OxyELITE and of their failure to perform safely, Plaintiffs suffered injuries

17   as set forth above.

18   **COUNT VI**

19   **STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

20   **(Plaintiffs JEREMY REED, DAN ANDERSON, MICHAEL CENICOLA, ANIL**

21   **D'SOUZA, KEVIN MULLEN, CHRIS NEE, PAUL NEIDIGH, JEFFREY DONATO,**

22   **JOHN OBST, and ZELL JOHNSON Against NAI)**

23       214.   Plaintiffs incorporate by reference each and every prior paragraph of this Complaint

24   as though set forth in full in this cause of action.

25       215.   At all times material to this action, NAI was responsible for research, development,

26   testing for safety, formulation, promotion, advertising, marketing, designing, and selling, directly

27   and indirectly, through third parties or related entities the dietary supplement CamoSyn, which is

28   defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

216.    At all times material to this action, CarnoSyn was researched, developed, formulated, promoted, advertised, marketed, and designed, by NAI in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiffs, to risks which exceeded the benefits of the drug;

b.    The drug did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way;

c.    The drug was insufficiently tested;

d.    The drug caused harmful side effects that outweighed any potential utility;

e.    The drug was more dangerous than other dietary supplements on the market; and

f.    The drug was not accompanied by adequate labeling or instructions for use to fully apprise the public and consumers, including Plaintiffs, of the potential risks and serious side effects associated with its use both alone and when used in conjunction with sympathomimetics and as used in Jack3d.

217.    In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential risk of harm would have concluded CarnoSyn should not have been marketed in that condition.

218.    There existed safer alternative designs, but NAI chose to market a more dangerous design.

219.    At all times relevant herein, NAI knew that CarnoSyn and Jack3d containing CarnoSyn would be purchased by members of the general public and would be used by such purchasers without a prescription and without any inspections for defects, and would rely upon the representations made by NAI through its advertising, marketing and other public statements and on the Jack3d label.

Exhibit C - 000055

220.    At all times material to this action, CarnoSyn was expected to reach, and did reach, consumers in the State of California and throughout the United States, including Plaintiffs, without substantial change in the condition in which it was sold.

221.    NAI knew or should have known of the defective nature of CarnoSyn but continued to develop, design, formulate, market, promote, sell and otherwise release these products into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their products, including serious cardiovascular disorders, stroke, heart attack, dizziness, loss of consciousness, death, and other health problems.

222.    At all times, Plaintiffs used CarnoSyn for its intended or reasonably foreseeable purpose.

223.    As a direct and proximate result of the defective and unreasonably dangerous condition of CarnoSyn and of its failure to perform safely, Plaintiffs suffered injuries as set forth above.

## COUNT VII

## STRICT PRODUCTS LIABILITY -- FAILURE TO WARN

### (All Plaintiffs Against USP and DOES 1-500)

224.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

225.    At all times material to this action, USP and Does 1-500 were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement Jack3d and OxyELITE, which are defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

226.    At all times material to this action, Jack3d and OxyELITE were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by USP and Does 1-500 in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

- 49 -

a.     they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous risks and reactions associated with Jack3d and OxyELITE, and the comparative severity, duration and the extent of the risks and reactions;

b.     they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the propensity to cause a substantial increased risk of serious bodily harm;

c.     they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous drug-drug interactions and food-drug interactions; and

d.     The warnings that were given by the USP and Docs 1-500 were not accurate, clear, and/or were ambiguous.

227.     Plaintiffs could not have discovered any defect in Jack3d and OxyELITE through the exercise of reasonable care.

228.     USP and Does 1-500, as manufacturers, sellers and/or distributors of Jack3d and OxyELITE, are held to the level of knowledge of an expert in the field.

229.     Plaintiffs reasonably relied on the skill, superior knowledge, and judgment of USP and Does 1-500.

230.     USP and Does 1-500 had a continuing duty to warn the Plaintiffs of the dangers associated with the use of Jack3d and OxyELITE.

231.     Plaintiffs consumed and used Jack3d and OxyELITE for their intended purpose as a dietary workout supplement.

232.     Had Plaintiffs received adequate warnings regarding the risks of Jack3d and OxyELITE, Plaintiffs would not have used them.

233.     As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

Exhibit C - 000057

## COUNT VIII

### STRICT PRODUCTS LIABILITY – FAILURE TO WARN

**(Plaintiffs JEREMY REED, TIMOTHY ANDERSON, DAN ANDERSON, NADIA BLACK, MICHAEL CENICOLA, JASON JARAMILLO, KEVIN MULLEN, PAUL NEIDIGH, MELISSA MILLER, JOSEPH MORRIS, LASAGON MAGEE, TORREY HAMPTON, and ZELL JOHNSON Against GNC)**

**(Plaintiffs ANIL D'SOUZA, CHRIS NEE, JEFFREY DONATO, JOHN OBST, and JOHNATHAN ASAHI Against VITAMIN SHOPPE)**

**(Plaintiff JEREMY REED Against NUTRISHOP)**

234.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

235.    At all times material to this action, RETAILER DEFENDANTS, and each of them, were responsible for testing, packaging, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement Jack3d and OxyELITE, which are defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

236.    At all times material to this action, Jack3d and OxyELITE were tested, packaged, promoted, marketed, distributed, labeled, and/or sold by RETAILER DEFENDANTS, and each of them, in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous risks and reactions associated with Jack3d and OxyELITE, and the comparative severity, duration and the extent of the risks and reactions;

b.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the propensity to cause a substantial increased risk of serious bodily harm;

c.    they contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous drug-drug interactions and food-drug interactions; and

Exhibit C - 000058

d.   The warnings that were given by the RETAILER DEFENDANTS, and each of them, were not accurate, clear, and/or were ambiguous.

237.   Plaintiffs could not have discovered any defect in Jack3d and OxyELITE through the exercise of reasonable care.

238.   RETAILER DEFENDANTS, and each of them, as sellers and/or distributors of Jack3d and OxyELITE, are held to the level of knowledge of an expert in the field.

239.   Plaintiffs reasonably relied on the skill, superior knowledge, and judgment of RETAILER DEFENDANTS.

240.   RETAILER DEFENDANTS, and each of them, had a continuing duty to warn the Plaintiffs of the dangers associated with the use of Jack3d and OxyELITE.

241.   Plaintiffs consumed and used Jack3d and OxyELITE for their intended purpose as a dietary workout supplement.

242.   Had Plaintiffs received adequate warnings regarding the risks of Jack3d and OxyELITE, Plaintiffs would not have used them.

243.   As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

## COUNT IX

### STRICT PRODUCTS LIABILITY – FAILURE TO WARN

(Plaintiffs JEREMY REED, DAN ANDERSON, MICHAEL CENICOLA, ANIL D'SOUZA, KEVIN MULLEN, CHRIS NEE, PAUL NEIDIGH, JEFFREY DONATO, JOHN OBST, and ZELL JOHNSON Against NAI)

244.   Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

245.   At all times material to this action, NAI was responsible for designing, developing, promoting, marketing, distributing, labeling, and/or selling, directly and indirectly, through third parties or related entities the dietary supplement CarnoSyn, which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiffs.

246.    At all times material to this action, CarnoSyn was designed, developed, promoted, marketed, distributed, labeled, and/or sold by NAI in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a.    it contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous risks and reactions associated with CarnoSyn when used alone and when used in dietary supplements like Jack3d containing sympathomimetics, and the comparative severity, duration and the extent of the risks and reactions;

b.    it contained warnings insufficient to alert consumers, including Plaintiffs herein, of the propensity to cause a substantial increased risk of serious bodily harm;

c.    it contained warnings insufficient to alert consumers, including Plaintiffs herein, of the dangerous drug-drug interactions and food-drug interactions, specifically the interactions between CarnoSyn and DMAA and caffeine; and

d.    most basically, it contained no warnings.

247.    Plaintiffs could not have discovered any defect in CarnoSyn through the exercise of reasonable care.

248.    NAI as a designer of CarnoSyn is held to the level of knowledge of an expert in the field.

249.    Plaintiffs reasonably relied on the skill, superior knowledge, and judgment of the NAI.

250.    NAI had a continuing duty to warn the Plaintiffs of the dangers associated with the use of CarnoSyn and Jack3d.

251.    Plaintiffs consumed and used CarnoSyn for its intended purpose as a dietary workout supplement.

252.    Had Plaintiffs received adequate warnings regarding the risks of CarnoSyn, Plaintiffs would not have used Jack3d.

Exhibit C - 000060

253.    As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of CarnoSyn, Plaintiffs suffered injuries as set forth above.

## COUNT X

## BREACH OF EXPRESS WARRANTY

### (All Plaintiffs Against USP DEFENDANTS and DOES 1-500)

254.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

255.    At all times, USP expressly warranted that Jack3d and OxyELITE were safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, that they were made from natural ingredients (i.e. geranium), and that they were adequately tested and fit for their intended purpose. Specifically, in reference to research funded by USP, USP represented on its website and through its advertising that:

a.   "The hemodynamic response to acute ingestion was assessed as well. OxyElite Pro did not result in a statistically significant change in heart rate or diastolic pressure, but did cause a statistically significant change in systolic blood pressure from baseline. This increase was mild and transient, and was similar to the changes reported in the scientific literature for subjects ingesting an amount of caffeine equivalent to 2-3 cups of coffee."

b.   "Jack3d, which contains DMAA, was well tolerated and no serious adverse events were noted."

c.   "At the beginning and end of the study, blood pressure, heart rate and various indicators of renal and liver function were assessed. The study found that there were no statistically significant changes from baseline to the end of the study. No serious adverse events were noted."

Exhibit C - 000061

d.  "NEWLY RELEASED, GROUNDBREAKING RESEARCH STUDIES SHOW USPLABS' DMAA SUPPLEMENTS ARE SAFE AND EFFECTIVE."

256.    At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of Jack3d and OxyELITE, USP knew or should have known that despite the above and other warranties alleged herein:

a.  In fact, the studies cited found statistically increased blood pressure, myocardial work and RPP;

b.  That participants in the studies did experience adverse cardiovascular effects from use of products even if not serious;

c.  USP's studies, given their underpowered size, did not and could not prove that Jack3d and OxyELITE do not result in serious adverse events;

d.  USP's claims of safety and efficacy were not supported by researchers at the University of Memphis even though said researchers were financially interested and biased researchers;

e.  Jack3d and OxyELITE contained DMAA, which was synthetically derived, and not natural;

f.  that geranium plants and oil do not contain detectable amounts of DMAA and therefore synthetic DMAA cannot be equivalent to geranium; and that

g.  Since USP knew FDA had received 42 serious adverse events from DMAA products, Jack3d and OxyELITE containing DMAA were unsafe.

257.    At the time of making these warranties and other similar warranties, USP knew or should have known that, in fact, even apart from the result of USP funded studies the representations and warranties were false, misleading, and untrue in that Jack3d and OxyELITE were not safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they

1    were not of merchantable quality, that they did produce dangerous side effects, and that they were

2    not adequately tested or fit for their intended purpose.

3         258.    Plaintiffs reasonably relied upon the skill and judgment of USP, and upon said

4    express warranties in using Jack3d and OxyELITE. As a result, Plaintiffs used Jack3d and

5    OxyELITE for their intended purpose.

6         259.    USP breached said express warranties, in that, Jack3d and OxyELITE were not safe,

7    effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused

8    serious and potentially lethal side effects to consumers when taken in their recommended dose.

9         260.    Due to USP's wrongful conduct as alleged herein, Plaintiffs could not have known

10   about the nature of the risks and side effects associated with Jack3d and OxyELITE until after they

11   used them.

12        261.    As a direct and proximate result of the USP's breach of express warranties and the

13   unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered

14   injuries as set forth above.

15                                  **COUNT XI**

16                       **BREACH OF EXPRESS WARRANTY**

17   **(Plaintiffs JEREMY REED, TIMOTHY ANDERSON, DAN ANDERSON, NADIA**

18   **BLACK, MICHAEL CENICOLA, JASON JARAMILLO, KEVIN MULLEN, PAUL**

19   **NEIDIGH, MELISSA MILLER, JOSEPH MORRIS, LASAGON MAGEE, TORREY**

20   **HAMPTON, and ZELL JOHNSON Against GNC)**

21        262.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint

22   as though set forth in full in this cause of action.

23        263.    At all times, GNC expressly warranted that Jack3d and OxyELITE were safe,

24   effective and fit for use by consumers and users, including Plaintiffs, for its intended use, that they

25   were of merchantable quality, that they did not produce dangerous side effects, that they were made

26   from natural ingredients (i.e. geranium),  and that they were adequately tested and fit for their

27   intended purpose. Specifically, GNC represented on its website and through its advertising that:

28        a.   "DMAA is perfectly safe when taken as directed."

b. OxyELITE is "Pharmacist formulated"

c. "What we particularly love about the OxyELITE Pro formula...aside from its effectiveness...is that it doesn't make you feel wired and jittery, nor does it dry out your mouth and keep you up at night."

d. "Jack3d is now backed by multiple University studies, **including double-blind, placebo-controlled research.**"

264. At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of Jack3d and OxyELITE, GNC knew or should have known that despite the above and other warranties alleged herein:

a. USP's university studies did not and could not prove that Jack3d and OxyELITE do not result in serious adverse events;

b. OxyELITE was not formulated by a licensed pharmacist;

c. GNC's claims of safety and efficacy were not supported by any research let alone researchers at the University of Memphis;

d. DMAA is not safe when used as directed; and

e. Since GNC knew FDA had received 42 serious adverse events from DMAA products, Jack3d and OxyELITE containing DMAA were unsafe.

265. At the time of making these warranties and other similar warranties, GNC knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that Jack3d and OxyELITE were not safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

266. Plaintiffs reasonably relied upon the skill and judgment of GNC, and upon said express warranties in using Jack3d and OxyELITE. As a result, Plaintiffs used Jack3d and OxyELITE for their intended purpose.

267.    GNC breached said express warranties, in that, Jack3d and OxyELITE were not safe, effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in their recommended dose.

268.    Due to GNC's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with Jack3d and OxyELITE until after they used them.

269.    As a direct and proximate result of the GNC's breach of express warranties and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

## COUNT XII

## BREACH OF EXPRESS WARRANTY

**(Plaintiffs JEREMY REED, DAN ANDERSON, MICHAEL CENICOLA, ANIL D'SOUZA, KEVIN MULLEN, CHRIS NEE, PAUL NEIDIGH, JEFFREY DONATO, JOHN OBST, and ZELL JOHNSON Against NAI)**

270.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

271.    At all times, NAI expressly warranted that CarnoSyn was safe, effective and fit for use by consumers and users, including Plaintiffs, for its intended use, that it was of merchantable quality, that it did not produce dangerous side effects, and that it was adequately tested and fit for its intended purpose. Specifically, NAI represented on its website and through its advertising that:

    a.  In nearly every athletic endeavor, from bodybuilding and cycling to running and swimming, numerous clinical studies have proven Beta-Alanine is effective in boosting muscle carnosine, buffering lactic acid, increasing strength and endurance and speeding recovery; and

    b.  virtually any athlete is going to be benefitted by supplementing with beta-alanine.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000065

272.    At the time of making these warranties, NAI knew or should have known that the representations and warranties were false, misleading, and untrue in that despite the warranties, CarnoSyn and beta-alanine are not safe and not effective. Further, CarnoSyn is not proven to increase strength or endurance.

273.    Plaintiffs reasonably relied upon the skill and judgment of NAI, and upon said express warranties in purchasing Jack3d containing CarnoSyn/beta-alanine.

274.    Plaintiffs used Jack3d and CarnoSyn for their intended purpose.

275.    NAI breached said express warranties, in that, CarnoSyn/beta-alanine was not safe, effective and fit for its intended purpose, was not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in its recommended dose.

276.    Due to NAI's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with CarnoSyn/beta-alanine until after they used it.

277.    As a direct and proximate result of the NAI's breach of express warranties and the unreasonably dangerous and defective characteristics of Jack3d, Plaintiffs suffered injuries as set forth above.

## COUNT XIII

## BREACH OF IMPLIED WARRANTY

### (Against USP and Does 1-500)

278.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

279.    At all times, USP and Does 1-500 impliedly warranted that Jack3d and OxyELITE were safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were of merchantable quality, that they did not produce dangerous side effects, and that they were adequately tested and fit for their intended purpose.

Exhibit C - 000066

280.    At the time of making these warranties, USP and Does 1-500 knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that Jack3d and OxyELITE were not safe, effective and fit for use by consumers and users, including Plaintiffs, for their intended use, that they were not of merchantable quality, that they did produce dangerous side effects, and that they were not adequately tested or fit for their intended purpose.

281.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of USP and Does 1-500 and upon said implied warranties in using Jack3d and OxyELITE. As a result, Plaintiffs used Jack3d and OxyELITE for its intended purpose.

282.    USP and Does 1-500 breached said implied warranties, in that, Jack3d and OxyELITE were not safe, effective and fit for their intended purpose, were not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in their recommended dose.

283.    Due to USP and Does 1-500's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with Jack3d and OxyELITE until after they used them.

284.    As a direct and proximate result of the USP and Does 1-500's breach of implied warranties and the unreasonably dangerous and defective characteristics of Jack3d and OxyELITE, Plaintiffs suffered injuries as set forth above.

## COUNT XIV

### BREACH OF IMPLIED WARRANTY

(Plaintiffs JEREMY REED, TIMOTHY ANDERSON, DAN ANDERSON, NADIA BLACK, MICHAEL CENICOLA, JASON JARAMILLO, KEVIN MULLEN, PAUL NEIDIGH, MELISSA MILLER, JOSEPH MORRIS, LASAGON MAGEE, TORREY HAMPTON, and ZELL JOHNSON Against GNC)

(Plaintiffs ANIL D'SOUZA, CHRIS NEE, JEFFREY DONATO, JOHN OBST, and JOHNATHAN ASAHI Against VITAMIN SHOPPE)

(Plaintiff JEREMY REED Against NUTRISHOP)

285.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000067

1  as though set forth in full in this cause of action.

2  286.    At all times, RETAILER DEFENDANTS, and each of them, impliedly warranted that

3  Jack3d and OxyELITE were safe, effective and fit for use by consumers and users, including

4  Plaintiffs, for their intended use, that they were of merchantable quality, that they did not produce

5  dangerous side effects, and that they were adequately tested and fit for their intended purpose.

6  287.    At the time of making these warranties, RETAILER DEFENDANTS, and each of

7  them, knew or should have known that, in fact, the representations and warranties were false,

8  misleading, and untrue in that Jack3d and OxyELITE were not safe, effective and fit for use by

9  consumers and users, including Plaintiffs, for their intended use, that they were not of merchantable

10  quality, that they did produce dangerous side effects, and that they were not adequately tested or fit

11  for their intended purpose.

12  288.    Members of the public, including Plaintiffs, reasonably relied upon the skill and

13  judgment of RETAILER DEFENDANTS, and each of them, and upon said implied warranties in

14  using Jack3d and OxyELITE. As a result, Plaintiffs used Jack3d and OxyELITE for their intended

15  purpose.

16  289.    RETAILER DEFENDANTS, and each of them, breached said implied warranties, in

17  that, Jack3d and OxyELITE were not safe, effective and fit for their intended purpose, were not of

18  merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers

19  when taken in their recommended dose.

20  290.    Due to RETAILER DEFENDANTS' wrongful conduct as alleged herein, Plaintiffs

21  could not have known about the nature of the risks and side effects associated with Jack3d and

22  OxyELITE until after they used them.

23  291.    As a direct and proximate result of the RETAILER DEFENDANTS' breach of

24  implied warranties and the unreasonably dangerous and defective characteristics of Jack3d and

25  OxyELITE, Plaintiffs suffered injuries as set forth above.

26  ///

27  ///

28

Exhibit C - 000068

## COUNT XV

## BREACH OF IMPLIED WARRANTY

**(Plaintiffs JEREMY REED, DAN ANDERSON, MICHAEL CENICOLA, ANIL D'SOUZA, KEVIN MULLEN, CHRIS NEE, PAUL NEIDIGH, JEFFREY DONATO, JOHN OBST, and ZELL JOHNSON Against NAI)**

292.    Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

293.    At all times, NAI impliedly warranted that CarnoSyn was safe, effective and fit for use by consumers and users, including Plaintiffs, for its intended use, that it was of merchantable quality, that it did not produce dangerous side effects, and that it was adequately tested and fit for its intended purpose.

294.    At the time of making these warranties, NAI knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that CarnoSyn was not safe, effective and fit for use by consumers and users, including Plaintiffs, for its intended use, that it was not of merchantable quality, that it did produce dangerous side effects, and that it was not adequately tested or fit for its intended purpose.

295.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of NAI and upon said implied warranties in using CarnoSyn. As a result, Plaintiffs used CarnoSyn for its intended purpose.

296.    NAI breached said implied warranties, in that, CarnoSyn was not safe, effective and fit for its intended purpose, was not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in its recommended dose.

297.    Due to NAI's wrongful conduct as alleged herein, Plaintiffs could not have known about the nature of the risks and side effects associated with CarnoSyn until after they used it.

298.    As a direct and proximate result of the NAI's breach of implied warranties and the unreasonably dangerous and defective characteristics of CarnoSyn, Plaintiffs suffered injuries as set forth above.

Exhibit C - 000069

**COUNT XVI**

**UNLAWFUL BUSINESS ACTS AND PRACTICES IN VIOLATION OF**

**CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 ET SEQ.**

**(All Plaintiffs Against USP DEFENDANTS and DOES 1-500)**

299. Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

300. California Business and Professions Code §17200 prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, USP has engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business and Professions Code §17200, specifically including but not limited to mischaracterizing research conducted on DMAA and USP products and promoting Jack3d and OxyELITE as safe and effective, when in fact Jack3d and OxyELITE are neither safe nor effective.

301. California Business and Professions Code §17200 also prohibits any "unlawful . business act or practice." USP has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1770, California Business and Professions Code §17200 et seq., California Health and Safety Code §§110660, 110760, 110765, the DSHEA (Pub. L. No. 103-417, 108 Stat. 4325 (1994)), 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45(a)(1), 49 Fed. Reg. 30999 (Aug. 2, 1984), Federal Food, Drug and Cosmetic Act §402(f)(1)(A) (21 U.S.C. §342), and the common law.

302. Plaintiffs reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

303. California Business and Professions Code §17200 also prohibits any "unfair . . . business act or practice."

304. USP's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code §17200 *et seq.* in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

– 63 –

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000070

305.  As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth-in-advertising laws in California and other states resulting in harm to consumers.  Plaintiffs assert violation of the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of California Business and Professions Code §17200 et seq.

306.  There were reasonably available alternatives to further USP's legitimate business interests, other than the conduct described herein.

307.  California Business and Professions Code §17200 also prohibits any "fraudulent business act or practice."

308.  USP's claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of California Business and Professions Code §17200.

309.  USP's conduct caused and continues to cause substantial injury to Plaintiffs and other consumers.  Plaintiffs have suffered injury as a result of USP's unfair conduct.

310.  USP has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiffs to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.

311.  Additionally, pursuant to California  Business and Professions Code §17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices, and requiring USP to engage in a corrective advertising campaign, including notification of Jack3d and OxyELITE's health risks.

### Punitive Damages Allegations

### (All Plaintiffs Against USP)

**(Plaintiffs JEREMY REED, TIMOTHY ANDERSON, DAN ANDERSON, NADIA BLACK, MICHAEL CENICOLA, JASON JARAMILLO, KEVIN MULLEN, PAUL NEIDIGH, MELISSA MILLER, JOSEPH MORRIS, LASAGON MAGEE, TORREY HAMPTON, and ZELL JOHNSON Against GNC)**

312.  Plaintiffs incorporate by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

313.    At all times material hereto, USP and GNC knew that the use of Jack3d and OxyELITE could result in the development of serious harm and death. Additionally, USP and GNC knew that the use of Jack3d and OxyELITE would cause certain susceptible users to suffer serious injury and death, including Plaintiffs.

314.    At all times material hereto, USP and GNC engaged in conduct that constitutes malice, oppression or fraud, including without limitation the misrepresentations, warranties and omissions set forth above.

315.    USP and GNC continued to aggressively market Jack3d and OxyELITE to consumers, including Plaintiffs, without disclosing the fact that use of Jack3d and OxyELITE could result in the development of serious injuries, that it was ineffective, that it was not made from natural ingredients, that DMAA was an amphetamine, that FDA considered Jack3d and OxyELITE illegal, that DMAA was known to cause serious cardiovascular effects, that several countries had banned DMAA, that FDA had received numerous adverse reports from users of Jack3d and OxyELITE and other information about the safety of Jack3d and OxyELITE. They did so knowing that their failure to reveal the probable consequences of ingesting Jack3d and OxyELITE would seriously injure or kill consumers, including Plaintiffs, in order to make a profit and in so doing they acted with malice.

316.    USP and GNC went further than failing to warn of Jack3d and OxyELITE's defective and dangerous nature. They intentionally and falsely represented and warranted that Jack3d and OxyELITE was safe when they knew that, in fact, Jack3d and OxyELITE were unsafe and posed a serious risk of injury to consumers, including Plaintiffs. They further concealed the true risks of Jack3d and OxyELITE as alleged herein. USP threatened and intimidated individuals revealing the risks of DMAA to further conceal dissemination of the safety risks of DMAA. In so doing, they acted with fraud.

317.    USP and GNC continued to sell Jack3d and OxyELITE despite FDA's warning that the product was illegal and posed material safety risks. Even after FDA warned USP a second time that they would take all necessary action to remove Jack3d and OxyELITE from the market, USP attempted to mislead consumers by publicly stating it would stop selling Jack3d and OxyELITE but then secretly and recklessly continuing to sell Jack3d and OxyELITE to GNC. Despite FDA's very

1    clear warning that DMAA is illegal, dangerous and that it would take all necessary steps to remove it

2    from the market, GNC continued to sell Jack3d and OxyELITE until the Department of Justice

3    seized their inventory pursuant to court order, and on information and belief, continue to sell Jack3d

4    and OxyELITE with DMAA. USP continued to sell its inventory to GNC until being forced by FDA

5    to destroy $8 million worth of inventory, further exposing consumers and Plaintiffs herein to

6    unreasonable dangers. Such conduct is despicable and oppressive.

7        318.    USP and GNC's acts of malice, oppression and fraud were on the part of corporate

8    officers, directors or managing agents, or were on the part of employees and were ratified or

9    authorized by USP and GNC, respectively.

10        319.    USP and GNC's intentional and/or reckless failure to disclose information deprived

11    Plaintiffs of necessary information to enable Plaintiffs to weigh the true risks of Jack3d and

12    OxyELITE against the benefits in making their decision to use Jack3d and OxyELITE.

13        320.    As a direct and proximate result of the USP and GNC's conscious and deliberate

14    disregard for the rights and safety of consumers, Plaintiffs suffered severe injury and loss. Plaintiffs

15    likewise suffered loss as alleged herein. Plaintiffs seek actual and punitive damages from USP and

16    GNC as alleged herein.

17        321.    The aforesaid conduct of the USP and GNC was committed with knowing,

18    conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiffs

19    herein, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish USP and

20    GNC and deter them from similar conduct in the future.

21

22                        **PRAYER FOR RELIEF**

23    WHEREFORE, Plaintiffs pray for judgment as follows:

24    a.        As to all Counts and all DEFENDANTS, damages to the Plaintiffs according to proof

25    including as applicable:

26        i.        Past and future medical and care expenses of Plaintiffs according to proof;

27        iii.    Past and future loss of earnings (and/or profits) of Plaintiffs according to

28    proof;

Exhibit C - 000073

iii.    Other economic loss;

b.    As to all Counts and all DEFENDANTS, Non-economic damages according to proof including as applicable:

    i.    Compensation for physical pain and discomfort

    ii.    Compensation for fright, nervousness, anxiety, worry, and apprehension

    iii.    Loss of consortium;

c.    As to all Counts and all DEFENDANTS, Awarding pre-judgment and post-judgment interest to the Plaintiffs according to proof;

d.    As to all Counts and all DEFENDANTS, Awarding reasonable costs to the Plaintiffs as provided by law;

e.    As to Count XVI and USP, Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein;

f.    As to Count XVI and USP, Ordering Defendants to engage in a corrective advertising campaign;

g.    As to Counts IV, V, VII, VIII, X, XI, XIII, XIV and XVI and USP and GNC, Awarding Plaintiffs punitive and treble damages; and

h.    As to all Counts and all DEFENDANTS, Granting all such other relief as the Court deems necessary, just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Date: 11/1/2013

ANDREWS THORNTON

Attorneys for Plaintiff

- 67 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit C - 000074

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sean T. Higgins, Esq., SBN: 266988<br>Andrews & Thornton<br>2 Corporate Park, Suite 110<br><br>Irvine, CA 92606 | |

TELEPHONE NO.: (949) 748-1000    FAX NO. *(Optional)* (949) 315-3540
E-MAIL ADDRESS *(Optional):* shiggins@andrewsthornton.com
ATTORNEY FOR *(Name):* Plaintiffs, Jeremy Reed, et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego**
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice Courthouse

PLAINTIFF/PETITIONER: Jeremy Reed, et al.

DEFENDANT/RESPONDENT: USPLABS, LLC, et al.

CASE NUMBER:
37-2013-00074052-CU-PL-CTL

JUDICIAL OFFICER:

| **NOTICE OF RELATED CASE** | DEPT.: |
|---|---|

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Justin Carolyne, et al. v. USPLABS, LLC, et al.
   b. Case number: BC508212
   c. Court: [ ] same as above
      [X] other state or federal court *(name and address):* California Superior Court, County of Los Angeles, 111 N. Hill Street, Los Angeles, CA 90012
   d. Department:
   e. Case type: [ ] limited civil  [X] unlimited civil  [ ] probate  [ ] family law  [ ] other *(specify):*

   f. Filing date: May 8, 2013
   g. Has this case been designated or determined as "complex?"  [X] Yes   [ ] No
   h. Relationship of this case to the case referenced above *(check all that apply):*
      [X] involves the same parties and is based on the same or similar claims.
      [X] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      [ ] involves claims against, title to, possession of, or damages to the same property.
      [ ] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         [ ] Additional explanation is attached in attachment 1h
   i. Status of case:
      [X] pending
      [ ] dismissed  [ ] with  [ ] without prejudice
      [ ] disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: [ ] same as above
      [ ] other state or federal court *(name and address):*

   d. Department:

**NOTICE OF RELATED CASE**

Legal
Solutions
& Plus

Page 1 of 3
Cal. Rules of Court, rule 3.300

Exhibit C - 000075

| | | CM-015 |
|---|---|---|
| PLAINTIFF/PETITIONER: Jeremy Reed, et al. | CASE NUMBER: | |
| DEFENDANT/RESPONDENT: USPLABS, LLC, et al. | | |

**2. (continued)**

e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other (specify):

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

h. Relationship of this case to the case referenced above (check all that apply):

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 2h

i. Status of case:

☐ pending

☐ dismissed ☐ with ☐ without prejudice

☐ disposed of by judgment

**3.** a. Title:

b. Case number:

c. Court: ☐ same as above

☐ other state or federal court (name and address):

d. Department:

e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other (specify):

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

h. Relationship of this case to the case referenced above (check all that apply):

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 3h

i. Status of case:

☐ pending

☐ dismissed ☐ with ☐ without prejudice

☐ disposed of by judgment

**4.** ☐ Additional related cases are described in Attachment 4. Number of pages attached:

Date: 11/1/2013

Sean T. Higgins, Esq., SBN: 266888
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]          **NOTICE OF RELATED CASE**          Page 2 of 3

Exhibit C - 000076

CM-015

| PLAINTIFF/PETITIONER: Jeremy Reed, et al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: USPLABS, LLC, et al. | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*
   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:
   a. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(TYPE OR PRINT NAME OF DECLARANT)

▶

_____
(SIGNATURE OF DECLARANT)

Exhibit C - 000077

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7071 |

| PLAINTIFF(S) / PETITIONER(S):   Jeremy Reed et.al. |
|---|

| DEFENDANT(S) / RESPONDENT(S):   Usplabs LLC et.al. |
|---|

| REED VS. USPLABS LLC [IMAGED] |
|---|

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE | CASE NUMBER: 37-2013-00074052-CU-PL-CTL |
|---|---|

## CASE ASSIGNMENT

Judge:  Ronald S. Prager                                            Department: C-71

**COMPLAINT/PETITION FILED:** 11/01/2013

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/30/2014 | 01:00 pm | C-71 | Ronald S. Prager |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

---

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants, and a Certificate of Service (SDSC form #CIV-345) filed within 60 days of filing.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, each party demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) for each party on or before the date scheduled for the initial case management conference in the action.

MANDATORY eFILE: Case assigned to mandatory eFile program per CRC 3.400-3.403 and SDSC Rule 2.4.11. All documents must be eFiled at www.onelegal.com.  Refer to General Order 010313 at www.sdcourt.ca.gov for guidelines and procedures.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

---

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7071 |

PLAINTIFF(S) / PETITIONER(S):   Jeremy Reed et.al.

DEFENDANT(S) / RESPONDENT(S):   Usplabs LLC et.al.

REED VS. USPLABS LLC [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE | CASE NUMBER:<br>37-2013-00074052-CU-PL-CTL |
|---|---|

## CASE ASSIGNMENT

Judge:  Ronald S. Prager                                    Department: C-71

COMPLAINT/PETITION FILED: 11/01/2013

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/30/2014 | 01:00 pm | C-71 | Ronald S. Prager |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants, and a Certificate of Service (SDSC form #CIV-345) filed within 60 days of filing.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, each party demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) for each party on or before the date scheduled for the initial case management conference in the action.

MANDATORY eFILE: Case assigned to mandatory eFile program per CRC 3.400-3.403 and SDSC Rule 2.4.11. All documents must be eFiled at www.onelegal.com. Refer to General Order 010313 at www.sdcourt.ca.gov for guidelines end procedures.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

SDSC CIV-721 (Rev. 08-12)

Page: 1
Exhibit C - 000079

# Exhibit D

{}

ORIGINAL

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Sean T. Higgins, Esq., SBN: 266888<br>Andrews & Thornton<br>2 Corporate Park, Suite 110<br><br>Irvine, CA 92606<br>TELEPHONE NO.: (949) 748-1000    FAX NO. *(Optional)*: (949) 315-3540<br>E-MAIL ADDRESS *(Optional)*: shiggins@andrewsthornton.com<br>ATTORNEY FOR *(Name)*: Plaintiffs, Jeremy Reed, et al. | 2013 NOV -1  AM 11: 59<br><br>CLERK- ··· ··· DR COURT<br>SAN DIL ··· ···NTY, CA<br>   L    E   D<br>Clerk of the Superior Court<br><br>NOV 0 1 2013<br><br>By: _____ Deputy |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego<br>STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Hall of Justice Courthouse | |
|---|---|
| PLAINTIFF/PETITIONER: Jeremy Reed, et al. | CASE NUMBER:<br>**37-2013-00074052-CU-PL-CTL** |
| DEFENDANT/RESPONDENT: USPLABS, LLC, et al. | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Justin Carolyne, et al. v. USPLABS, LLC, et al.

    b. Case number: BC508212

    c. Court: ☐ same as above

        ☒ other state or federal court *(name and address)*: California Superior Court, County of Los Angeles, 111 N. Hill Street, Los Angeles, CA 90012

    d. Department:

    e. Case type: ☐ limited civil  ☒ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify)*:

    f. Filing date: May 8, 2013

    g. Has this case been designated or determined as "complex?"  ☒ Yes  ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply)*:

        ☒ involves the same parties and is based on the same or similar claims.

        ☒ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 1h

    i. Status of case:

        ☒ pending

        ☐ dismissed  ☐ with  ☐ without prejudice

        ☐ disposed of by judgment

2. a. Title:

    b. Case number:

    c. Court: ☐ same as above

        ☐ other state or federal court *(name and address)*:

    d. Department:

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rule 3.300 |
|---|---|---|---|

Exhibit D - 000001

CM-015

| PLAINTIFF/PETITIONER:  Jeremy Reed, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  USPLABS, LLC, et al. | |

2. *(continued)*

  e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify)*:

  f. Filing date:

  g. Has this case been designated or determined as "complex?"  ☐ Yes  ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply)*:

    ☐ involves the same parties and is based on the same or similar claims.

    ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    ☐ involves claims against, title to, possession of, or damages to the same property.

    ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 2h

  i. Status of case:

    ☐ pending

    ☐ dismissed  ☐ with  ☐ without prejudice

    ☐ disposed of by judgment

3. a. Title:

  b. Case number:

  c. Court:  ☐ same as above

      ☐ other state or federal court *(name and address)*:

  d. Department:

  e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify)*:

  f. Filing date:

  g. Has this case been designated or determined as "complex?"  ☐ Yes  ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply)*:

    ☐ involves the same parties and is based on the same or similar claims.

    ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    ☐ involves claims against, title to, possession of, or damages to the same property.

    ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 3h

  i. Status of case:

    ☐ pending

    ☐ dismissed  ☐ with  ☐ without prejudice

    ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached:

Date: 11/1/2013

Sean T. Higgins, Esq., SBN: 266868
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)                    (SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]                **NOTICE OF RELATED CASE**                Page 2 of 3

Exhibit D - 000002

CM-015

| | |
|---|---|
| PLAINTIFF/PETITIONER: Jeremy Reed, et al. <br><br> DEFENDANT/RESPONDENT: USPLABS, LLC, et al. | CASE NUMBER: |

### PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action**. I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*


2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*
   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:
   a. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(TYPE OR PRINT NAME OF DECLARANT)

▶

_____
(SIGNATURE OF DECLARANT)

| | | |
|---|---|---|
| CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Page 3 of 3 |

Exhibit D - 000003

# Exhibit E

{}

# ANDREWS █ THORNTON

Anne Andrews
aa@andrewsthornton.com
John C. Thornton
jct@andrewsthornton.com
Sean T. Higgins
shiggins@andrewsthornton.com
Lila Razmara
lr@andrewsthornton.com
Of Counsel:
Karren Schaeffer
kschaeffer@andrewsthornton.com

Attorneys at Law, A Law Corporation

2 Corporate Park, Suite 110
Irvine, California 92606
Telephone: 949.748.1000
Facsimile: 949.315.3540
www.andrewsthornton.com

*For the Most Recent Updates*
*Follow Us On Our Blog!*

*AndrewsThorntonBlog.com*

*You Can Also Find Us On:*

  

December 27, 2013

## VIA USPS FIRST CLASS

President of USPLabs, LLC
10761 King William Drive
Dallas, TX 75220

President of USPLabs Jack3d, LLC
3904 Central Ave Ste A-171
Cheyenne, WY 82001

President of USPLabs OxyElite, LLC
3904 Central Ave Ste A-171
Cheyenne, WY 82001

President of USPLabs OxyElite PN, LLC
3904 Central Ave Ste A-171
Cheyenne, WY 82001

President of GNC Corporation
GNC Corporate Office Headquarters
300 Sixth Avenue
Pittsburgh, PA 15222

RE:   *Notice of Claims*

Please take notice that this firm represents the following claims for personal injury resulting from USPLabs LLC products (and where indicated sold by GNC). They are accompanied by a general estimate of value, despite the fact counsel has not yet had an opportunity for a full investigation of the respective cases.

Exhibit E - 000001

# ANDREWS THORNTON

Anne Andrews
aa@andrewsthornton.com
John C. Thornton
jct@andrewsthornton.com
Sean T. Higgins
shiggins@andrewsthornton.com
Lila Razmara
lr@andrewsthornton.com
Of Counsel:
Karren Schaeffer
kschaeffer@andrewsthornton.com

Attorneys at Law, A Law Corporation

2 Corporate Park, Suite 110
Irvine, California 92606
Telephone: 949.748.1000
Facsimile: 949.315.3540
www.andrewsthornton.com

**For the Most Recent Updates
Follow Us On Our Blog!**

AndrewsThorntonBlog.com

**You Can Also Find Us On:**

  

## JACK3D/OXYELITE PRO (with DMAA) CASES

| Last Name | First Name | Injury | Retailer | Estimate |
|---|---|---|---|---|
| Hill | Novallie | stroke | | $10,000,000 |
| Mattson | Kaui | Liver injury | GNC | $1,000,000 |
| Allen | Blake | liver failure | | $10,000,000 |
| Ashworth | Jeff | stroke | | $10,000,000 |
| Book | Justin | stroke | GNC | $50,000,000 |
| Gosser | Denise | Death/hepatic pancreatitis | GNC | $50,000,000 |
| Little | Dominic | liver failure | | $10,000,000 |
| Sanches | Martin | heart attack | GNC | $5,000,000 |
| Restauri | Daniel | stroke/death | | $50,000,000 |
| Wolnik | Rich | cardiac arrest | | $10,000,000 |
| Norris | Brian | aortic dissection | | $10,000,000 |
| Wade | Charles | aortic dissection | | $10,000,000 |
| Lang | Edward obo Kathleen | death | GNC | $50,000,000 |
| Stevens | Casey | Seizure | | $1,000,000 |
| Williams | Kevin | Pulmonary embolism/liver injury | | $1,000,000 |
| Luba | Leonard | Liver injury | | $1,000,000 |
| Bainter | John | Liver injury | GNC | $1,000,000 |

Exhibit E - 000002